Slip Op. 19-67

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,** | |
| **Plaintiff,** | |
| **and** | |
| **CELTIC CO., LTD. ET AL.,** | |
| **Consolidated Plaintiffs,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Consol. Court No. 18-00002** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,** | |
| **Defendant-Intervenor.** | |

### OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's final determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China.]

Dated: June 3, 2019

Gregory S. Menegaz and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, D.C., argued for Plaintiff Linyi Chengen Import and Export Co., Ltd., Consolidated Plaintiffs Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Anhui Hoda Wood Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Linyi Evergreen Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Timber International Trade Co. Ltd., Linyi Sanfortune Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Suining Pengxiang Wood Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., Xuzhou Pinlin International Trade Co. Ltd., Linyi Glary Plywood Co., Ltd.,

Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Shandong Qishan
International Trading Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Linyi
Huasheng Yongbin Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Linyi
Jiahe Wood Industry Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Xuzhou Longyuan Wood
Industry Co., Ltd., Far East American, Inc., and Shandong Dongfang Bayley Wood Co., Ltd.,
and Plaintiff-Intervenors Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Anhui Hoda
Wood Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi
Glary Plywood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin
Wood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi
Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and
Export Co., Ltd., Shandong Qishan International Trading Co., Ltd., Shanghai Futuwood Trading
Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd.,
Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou
Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou
Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and
Xuzhou Timber International Trade Co., Ltd.  With them on the brief was J. Kevin Horgan.  John
J. Kenkel also appeared.

Jeffrey S. Neeley and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for
Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland Industries Inc.,
Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High
Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd.,
G.D. Enterprise Limited, Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng
Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star
International Co., Ltd., Linyi City Dongfang Jinxin Economic & Trade Co., Ltd., Linyi City
Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and
Qingdao Top P&Q International Corp.

Jill A. Cramer and Yuzhe PengLing, Mowry & Grimson, PLLC, of Washington, D.C., argued for
Consolidated Plaintiffs and Plaintiff-Intervenors Taraca Pacific, Inc., Canusa Wood Products
Ltd., Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods
International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC,
USPLY LLC, and Concannon Corporation.  With them on the briefs was Jeffrey S. Grimson.
Bryan P. Cenko, James C. Beaty, Kristin H. Mowry, and Sarah M. Wyss also appeared.

Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice, of Washington, D.C., argued for Defendant United States.  With her on
the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and
Tara K. Hogan, Assistant Director.  Of counsel were Jessica R. DiPietro and Nikki Kalbing,
Attorneys, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of
Commerce.

Stephanie M. Bell, Wiley Rein, LLP, of Washington, D.C., argued for Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood.  With her on the brief were Timothy C. Brightbill, Jeffrey O. Frank, and Elizabeth S. Lee.  Adam M. Teslik, Cynthia C. Galvez, Derick G. Holt, Laura El-Sabaawi, Maureen E. Thorson, Tessa V. Capeloto, and Usha Neelakantan also appeared.


      Choe-Groves, Judge:  This action arises from the U.S. Department of Commerce's ("Department" or "Commerce") final determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China ("China"), in which Commerce found that the subject merchandise is being sold for less than fair value.  See Certain Hardwood Plywood Products From the People's Republic of China, 82 Fed. Reg. 53,460 (Dep't Commerce Nov. 16, 2017) (final determination of sales at less than fair value, and final affirmative determination of critical circumstances, in part), as amended, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (amended determination of sales at less than fair value and antidumping duty order) (collectively, "Final Determination"); see also Issues and Decision Memorandum for the Final Determination of the Antidumping Duty Investigation of Certain Hardwood Plywood Products from People's Republic of China, PD 871, bar code 3639791-01 (Nov. 16, 2017) ("Final IDM").  For the following reasons, the court sustains in part and remands in part the Final Determination.

## ISSUES PRESENTED

The court reviews the following issues:

1.  Whether Commerce's actions regarding the administrative record were arbitrary and

    capricious;

2.  Whether Commerce's application of the intermediate input methodology was supported by substantial evidence;

3.  Whether Commerce's valuation of veneer inputs was supported by substantial evidence;

4.  Whether Commerce must recalculate the antidumping margins assigned to Consolidated Plaintiffs and other separate rate respondents;

5.  Whether Commerce's determination to apply AFA to Bayley was supported by substantial evidence and in accordance with the law;

6.  Whether Commerce's determination not to verify certain submissions is in accordance with the law; and

7.  Whether Commerce's actions regarding Bayley's affiliation with Company D is in accordance with the law and not arbitrary and capricious.

## PROCEDURAL HISTORY

Commerce initiated an antidumping investigation on hardwood plywood products from China on December 8, 2016, at the request of Petitioner Coalition for Fair Trade in Hardwood Plywood ("Coalition").  See Certain Hardwood Plywood Products From the People's Republic of China, 81 Fed. Reg. 91,125 (Dep't Commerce Dec. 16, 2016) (initiation of less-than-fair-value investigation) ("Initiation Notice").  The period of investigation was from April 1, 2016 through September 30, 2016.  See id. at 91,126.  Commerce selected Shandong Dongfang Bayley Wood Co., Ltd. ("Bayley") and Linyi Chengen Import and Export Co., Ltd. ("Linyi Chengen") as mandatory respondents.  See Decision Memorandum for the Preliminary Determination in the Antidumping Duty Investigation of Certain Hardwood Plywood Products

from the People's Republic of China, PD 734, bar code 3582552-01 (June 16, 2017) ("Prelim.

IDM").

Commerce published its preliminary determination on June 23, 2017.  See Certain

Hardwood Plywood Products From the People's Republic of China, 82 Fed. Reg. 28,629 (Dep't

Commerce June 23, 2017) (preliminary affirmative determination of sales at less than fair value,

preliminary affirmative determination of critical circumstances, in part), as amended, 82 Fed.

Reg. 32,683 (Dep't Commerce July 17, 2017) (amended preliminary determination of sales at

less than fair value) (collectively, "Preliminary Determination").  Commerce preliminarily

calculated a zero or de minimis dumping margin for Linyi Chengen.  See Preliminary

Determination, 82 Fed. Reg. at 28,637.  With respect to Bayley, the Department preliminarily

determined that application of facts available with an adverse inference ("AFA") was warranted

based on Bayley's failure to cooperate.  See Prelim. IDM at 7.  Specifically, Commerce found

that Bayley allegedly failed to disclose information regarding four affiliated companies, see id. at

21, and assigned an AFA rate of 114.72% to Bayley.  See Preliminary Determination, 82 Fed.

Reg. at 28,637.  Because of the preliminary application of AFA to Bayley, the Department

decided not to verify Bayley's information.  See id. at 28,637.  Commerce preliminarily

calculated a weighted-average dumping margin of 57.36% for all companies eligible for a

separate rate.  See id.

Petitioners urged Commerce to depart from its normal practice and utilize its intermediate

input methodology in calculating Linyi Chengen's factors of production in preliminary

comments.  See Prelim. IDM at 16; see also Petitioners' Resubmission of Comments on

Chengen's Questionnaire Responses at 15, PD 696, bar code 3576089-01 (May 30, 2017).  In

applying the intermediate input methodology, Commerce would value core and face veneers as opposed to logs.  See Prelim. IDM at 16.  Linyi Chengen argued against using the methodology. See Prelim. IDM at 16; see also [Linyi] Chengen & Bayley Pre-Preliminary Comments at 1, PD 637, bar code 3573393-01 (May 17, 2017); [Linyi] Chengen Rebuttal Comments at 1–7, PD 405, bar code 3555234-01 (Mar. 27, 2017).  Commerce stated that its "general practice for integrated firms is to value all factors used in each stage of production."  See Prelim. IDM at 16. Commerce found, based on questionnaire responses and supporting documentation filed by Linyi Chengen, that Linyi Chengen demonstrated that "it is an integrated producer which begins its manufacture of hardwood plywood with the purchase of logs."  Prelim. IDM at 16.  Commerce did not "find the record meets the limited exceptions for applying the intermediate input methodology" at the time.  Id. at 17.

Commerce conducted verification for Linyi Chengen in September 2017.  See [Linyi] Chengen Verification Report, PD 834, bar code 3624132-01 (Sept. 29, 2017).

The Department received administrative case briefs and rebuttal briefs from Bayley, Linyi Chengen, and the Coalition from August through October 2017.  See Final IDM at 2–3. Commerce rejected Linyi Chengen's initial submission as an "untimely filed written argument" and as containing "untimely filed new factual information" under 19 C.F.R. § 351.302(d).  See Dep't Rejection Ltr., PD 887, bar code 3644833-01 (Nov. 27, 2017).  Linyi Chengen resubmitted its brief with the information redacted, which Commerce accepted as a part of the record.  See [Linyi] Chengen Refiled Rebuttal Brief, PD 849, bar code 3631855-01 (Oct. 20, 2017).

Commerce issued its Final Determination on November 16, 2017.  See Certain Hardwood Plywood Products From the People's Republic of China, 82 Fed. Reg. 53,460 (Dep't Commerce

Nov. 16, 2017) (final determination of sales at less than fair value, and final affirmative

determination of critical circumstances, in part).  Based on its analysis of the comments received

and findings at verification, the Department applied the intermediate input methodology instead

of its general practice of valuing all factors consumed by a respondent in each stage of

production to generate a unit of the subject merchandise.  See Final IDM at 7.  Before

verification, the Department understood that Linyi Chengen's documents, such as its raw

material ledgers, inventory movement worksheets, warehouse-out slips, and accounting

vouchers, supported the quantity of logs that Linyi Chengen purchased and consumed during the

period of investigation.  See id. at 24.  Commerce considered Linyi Chengen's reporting of the

log quantity to be "imprecise" based on observations made at verification, such as how the

suppliers marked and measured the log diameter, how the production manager verified the log

supply through spot checks, and whether Linyi Chengen used the Chinese National Standard

conversion table.  See id.  When describing the intermediate input methodology, Commerce

stated:

> In some cases, a respondent may report factors used to produce an
> intermediate input that accounts for an insignificant share of total output.
> When the potential increase in accuracy to the overall calculation that
> results from valuing each of the [factors of production] is outweighed by
> the resources, time, and burden such an analysis would place on all parties
> to the proceeding, the Department has valued the intermediate input directly
> using a [surrogate value].  Also, there are circumstances in which valuing
> the [factors of production] used to yield an intermediate product would lead
> to an inaccurate result because the Department would not be able to account
> for a significant cost element adequately in the overall factors buildup.  In
> this situation, the Department would also value the intermediate input
> directly.

Final IDM at 23 (footnotes omitted).  As a result of applying its intermediate input methodology, Commerce assigned a dumping margin rate of 183.36% for Linyi Chengen.  See id.  The Department then applied Linyi Chengen's rate to the separate rate respondents.  See id.  The Department continued to apply total adverse facts available to Bayley and calculated a weighted-average dumping margin of 183.36%.  See id. at 7–8.  The Department stated that because its general practice is to use the highest calculated dumping margin of any respondent, i.e., Linyi Chengen's weighted-average dumping margin, the margin rate of 183.36% was appropriate for Bayley.  See id.  The Department also used Linyi Chengen's margin for the separate rate respondents. See id. at 7.

Linyi Chengen submitted ministerial error allegations, contesting Commerce's use of its intermediate input methodology.  See Chengen Ministerial Error Allegation, PD 884, bar code 3643402-01 (Nov. 20, 2017).  Linyi Chengen alleged in its submission that Commerce improperly resorted to the intermediate input methodology in the Final Determination based on inadvertent errors, including Commerce's characterization of documents reviewed and events that occurred at verification.  See id. at 2–8 ("[T]he final decision is clearly at odds with the Department's own verification report (including the understanding of its own verifiers) on the most important facts of this case.").  Commerce considered Linyi Chengen's ministerial error allegations and rejected them as not constituting ministerial errors within the meaning of its regulation.  See Dep't Ministerial Error Memorandum at 5, PD 891, bar code 3649811-01 (Dec. 8, 2017).  Commerce identified other ministerial errors and published an amended final determination on January 4, 2018.  See Certain Hardwood Plywood Products From the People's

Republic of China, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (amended final

determination of sales at less than fair value, and antidumping duty order).

Plaintiffs and Consolidated Plaintiffs commenced multiple actions in the court to contest

Commerce's final determination.  The court consolidated cases on May 30, 2018.  See Order,

May 30, 2018, ECF No. 30.  Before the court are five Rule 56.2 motions for judgment on the

agency record.

Plaintiff Linyi Chengen submitted a Rule 56.2 motion for judgment on the agency record.

See Pl.'s Mot. J. Agency R., July 13, 2018, ECF No. 32; see also Pl.'s Rule 56.2 Mem. Supp.

Mot. J. Agency R., July 13, 2018, ECF No. 32-2 ("Linyi Chengen's Br.").  Linyi Chengen raises

three issues: (1) whether Commerce acted arbitrarily and capriciously in its handling of the

record; (2) whether Commerce's determination that Linyi Chengen's books and records did not

adequately capture the volume of its log inputs, which led to Commerce's application of the

intermediate input methodology, is supported by substantial evidence; and (3) whether

Commerce's valuation of veneer inputs is supported by substantial evidence and constitutes the

best available information.  See Linyi Chengen's Br. 5.

Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland

Industries, Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd.,

Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov

International Co., Ltd., G.D. Enterprise Limited., Deqing China-Africa Foreign Trade Port Co.,

Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co.,

Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic and Trade Co.,

Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading

Co., Ltd., and Qingdao Top P&Q International Corp. (collectively, "Zhejiang Dehua et al.") filed

a single Rule 56.2 motion for judgment on the agency record.  See Mot. J. Agency R. Consol.

Pls. Zhejiang Dehua TB Imp. & Exp. Co., Ltd., et al., July 20, 2018, ECF No. 33; see also Mem.

Supp. Rule 56.2 Mot. J. Agency R. Consol. Pls. Zhejiang Dehua TB Imp. & Exp. Co. Ltd., et al.,

July 20, 2018, ECF No. 33 ("Zhejiang Dehua's Br.").  The motion adopts Linyi Chengen's

arguments and asserts that Commerce should recalculate the final dumping margin assigned to

the separate rate companies based on a revision of Linyi Chengen's calculated dumping margin.

See Zhejiang Dehua's Br. 1.

      Consolidated Plaintiffs Celtic Co., Ltd., Anhui Hoda Wood Co., Ltd., Far East American,

Inc., Jiaxing Gsun Import and Export Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi

Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd.,

Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng

Yongbin Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd.,

Qingdao Good Faith Import and Export Co., Ltd., Shanghai Futuwood Trading Co., Ltd.,

Shandong Qishan International Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian

Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd.,

Xuzhou Andefu wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou

Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou

Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd.

(collectively, "Separate Rate Plaintiffs") filed a single Rule 56.2 motion for judgment on the

agency record.  See Consol. Separate Rate Pls.' Rule 56.2 Mot. J. Agency R., July 20, 2018, ECF

No. 34; see also Consol. Separate Rate Pls.' Rule 56.2 Mem. Supp. Mot. J. Agency R., July 20,

2018, ECF No. 34-2 ("Separate Rate Pls.' Br."). The Separate Rate Plaintiffs support and

incorporate Linyi Chengen's arguments, and ask that any reductions to Linyi Chengen's

dumping margin as a result of this litigation be reflected in a new margin for separate rate

companies. See Separate Rate Pls.' Br. 4.

Bayley filed a Rule 56.2 motion, contesting various findings made by Commerce with

respect to the investigation into Bayley. See Consol. Pl. Shandong Dongfang Bayley Wood Co.,

Ltd. Mot. J. Agency R., July 20, 2018, ECF No. 36; see also Consol. Pl. Shandong Dongfang

Bayley Wood Co., Ltd. Rule 56.2 Mem. Supp. Mot. J. Agency R., July 20, 2018, ECF No. 36-1

("Bayley's Br.").

Taraca Pacific filed a Rule 56.2 motion on behalf of itself, Canusa Wood Products Ltd.,

Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation,

Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods,

Inc., Richmond International Forest Products, LLC, and USPly LLC. See Rule 56.2 Mot. J.

Agency R. Consol. Pls. Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp.

DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest

International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc. Richmond

International Forest Products, LLC & USPly LLC, July 20, 2018, ECF No. 35; see also Mem. P.

& A. Supp. Rule 56.2 Mot. J. Agency R. Consol. Pls. Taraca Pacific, Inc., Canusa Wood

Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry

Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest

Hardwoods, Inc. Richmond International Forest Products, LLC & USPly LLC, July 20, 2018,

ECF No. 35-1 ("Taraca Pacific's Br."). Taraca Pacific adopts and incorporates by reference the

briefs filed by Linyi Chengen and Bayley.  <u>See</u> Taraca Pacific's Br. 1.  Taraca Pacific argues

additionally that Linyi Chengen's weighted-average dumping margin amounts to an AFA rate

because Commerce calculated it based on substituted facts.  <u>See id.</u> at 3.  Because Commerce

typically excludes AFA rates from its calculation of a separate rate, Taraca Pacific contends that

Commerce's assignment of a separate rate in this investigation based on Linyi Chengen's rate is

improper.  <u>See id.</u>

This court held oral argument on March 27, 2019.  <u>See</u> Oral Argument, Mar. 27, 2019,

ECF No. 79.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) (2012)[1] and 28

U.S.C. § 1581(c), which grant the court the authority to review actions contesting the final

results of an administrative review of an antidumping duty order.  The court will uphold

Commerce's determinations, findings, or conclusions unless they are unsupported by substantial

evidence on the record, or otherwise not in accordance with the law.  19 U.S.C.

§ 1516a(b)(1)(B)(i).  Substantial evidence "means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  <u>A.L. Patterson, Inc. v. United States</u>, 585

Fed. Appx. 778, 781–82 (Fed. Cir. 2014) (quoting <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305

U.S. 197, 229 (1938)).

---

[1] All further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of
Title 19 of the U.S. Code.  All further citations to the U.S. Code are to the 2012 edition, with
exceptions.  All further citations to 19 U.S.C. § 1677b(e) are to the 2015 version, as amended
pursuant to The Trade Preferences Extension Act of 2015, Pub. L. No. 114–27, 129 Stat. 362
(2015).  All citations to the Code of Federal Regulations are to the 2017 edition.

The court will uphold also Commerce's determinations unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(ii).  An agency acted in an arbitrary and capricious manner if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Al. Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

## ANALYSIS

The Parties filed five separate Rule 56.2 motions for judgment on the agency record.  The court will address each motion, and the issues contained within, in turn.

## I.      Linyi Chengen's Rule 56.2 Motion for Judgment on the Agency Record

Linyi Chengen, one of the mandatory respondents in this investigation, contests three aspects of Commerce's findings and actions in this investigation: (A) Commerce's handling of the record evidence; (B) Commerce's use of the intermediate input methodology to value Linyi Chengen's log inputs; and (C) Commerce's selection of the veneer input surrogate values.

### A.  Commerce's Handling of Record Evidence

Commerce "made observations" at verification "that called into question the accuracy of [Linyi] Chengen's log purchase and consumption records, and its ability to substantiate such records."  Final IDM at 24.  These observations include Commerce's finding that Linyi Chengen's "reporting of the log quantity is imprecise" because Linyi Chengen spot-checks to confirm the accuracy of measurements for log deliveries and uses the diameter of the small end

of the log and its length to calculate the logs' volume.  Id. at 24–25.  Commerce also took issue

with Linyi Chengen's claims that the formula it uses to measure log volume is the Chinese

National Standard, which was allegedly provided at verification.  See id. at 25.  Commerce

observed further that Linyi Chengen was unable to provide supplier invoices for its purchases of

poplar log, which is Linyi Chengen's "most significant input."  Id. at 24–25.

       Linyi Chengen contends that Commerce mishandled the administrative record and acted

in an arbitrary and capricious manner.  See Linyi Chengen's Br. 13.  Linyi Chengen argues that

Commerce "made several factual misrepresentations" in the Final Determination, "which in turn

became the basis for applying" Commerce's intermediate input methodology.  Id.  These alleged

factual misrepresentations "contradict findings in the verification report and ignore observations

and information provided at verification."  Id.  Specifically, Linyi Chengen takes issue with

(1) Commerce's rejection of Linyi Chengen's method of spot-checking to confirm the accuracy

of measurements for log deliveries, even though that is the exact same method that Commerce's

representatives used at verification; (2) Commerce's finding that Linyi Chengen's conversion

table and formula are "inherently imprecise" because they rely only on the diameter of the

smaller end of the log and its length; (3) Commerce's conclusion that "there is no evidence that

the conversion table and formula" that Linyi Chengen relies upon is the Chinese National

Standard; and (4) Commerce's finding that Linyi Chengen's reported log consumption is

unreliable because it cannot be cross-checked with supplier invoices.  See id. 13–23.  Linyi

Chengen argues that it attempted to correct these alleged errors that first appeared in the Final

Determination, but Commerce acted arbitrarily in refusing to accept the corrections.  See id. at

24.

Defendant counters that "[a]ny variance between [Linyi] Chengen's interpretation of the verification report and Commerce's <u>Final Determination</u> does not constitute arbitrary and capricious handling of record evidence, but rather reflects Commerce's weighing of the evidence." Def.'s Resp. 43.  Defendant notes further that "the fact that the verification report did not specifically identify concerns about [Linyi] Chengen's spot[-]checking methodology does not mean that the report confirmed its accuracy." <u>Id.</u>  Although it is true that a reweighing of the evidence is improper at this stage of the proceedings, <u>see</u> <u>Downhole Pipe & Equip., L.P. v. United States</u>, 776 F.3d 1367, 1376–77 (Fed. Cir. 2015), the law clearly requires Commerce to explain the basis for its decisions.  <u>See, e.g.,</u> <u>Motor Vehicle Mfrs. Ass'n.</u>, 463 U.S. at 43 (An agency's action is arbitrary and capricious if it offers "an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."); <u>NMB Singapore Ltd. v. United States</u>, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009) ("[W]hile its explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court."). Commerce's <u>Final Determination</u> critiques multiple aspects of Linyi Chengen's calculations of its log supply, but fails to explain how the record, particularly the verification report and related exhibits, supports Commerce's conclusion that Linyi Chengen's log consumption calculations were unreliable.

For instance, Commerce determined that Linyi Chengen's method to measure its logs and its conversion table and formula were problematic.  <u>See</u> Final IDM at 24–25.  Commerce stated that the company's calculations were "inherently imprecise," and doubted whether the conversion table and formula used was the Chinese National Standard, as Linyi Chengen

claimed.  See id. at 25 ("[T]here is no evidence on the record that supports [Linyi] Chengen's

claim that the conversion table and formula used by [Linyi] Chengen elicits the log's actual

volume, or that this conversion table and formula is the Chinese National [S]tandard.").  The

conversion table and formula on the record is partially translated.  The eleven Chinese characters

at the top of the document allegedly state that it is the Chinese National Standard, but the

characters are not translated.  See Verification Exhibit 26, at 9, CD 628, bar code 3622212-27

(Sept. 22, 2017); see also Linyi Chengen's Br. 19.  Linyi Chengen claims that the first page of

this original document was the title page and had a translated title describing the document as the

Chinese National Standard.  See Linyi Chengen's Br. 19–20.  Commerce's verifiers allegedly

detached the title page and accepted only the second page with the conversion table and formula.

The court is troubled by the varying accounts of events at verification presented by the Parties.

        Commerce found also that it was "unable to cross-check [Linyi] Chengen's reported

consumption of poplar against any third-party sources (e.g., supplier invoices)."  Final IDM at

25.  The Final Determination does not address the delivery sheets provided by suppliers

("warehouse-in tickets") or the copies of invoices provided by Linyi Chengen to its suppliers for

official value-added tax purposes.  See [Linyi] Chengen Verification Exhibit 26, at 9, 32–53, CD

628, bar code 3622212-27 (Sept. 22, 2017) (titled "Poplar Log Cost Package Part 1").  There is

no explanation on the record as to why Commerce found these documents to be insufficient for

the purposes of calculating Linyi Chengen's consumption of poplar logs.

        The court concludes that Commerce's Final Determination is arbitrary and capricious in

light of perceived inconsistencies on the record.  The court remands the Final Determination for

further proceedings consistent with this opinion.

### B.  Intermediate Input Methodology

Pursuant to the Tariff Act, Commerce may determine that a foreign country "does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."  19 U.S.C. § 1677(18)(A).  In antidumping proceedings involving nonmarket economy countries, such as China, Commerce calculates normal value based on the factors of production used to produce the subject merchandise and other costs and expenses.  Id. § 1677b(c)(1).  Commerce typically must examine the "quantities of raw materials employed" by a company in reviewing factors of production to calculate normal value.  See id. at § 1677b(c)(3)(B).

In the Preliminary Determination, Commerce calculated Linyi Chengen's normal value by applying a surrogate value to the individual factors of production used to produce the subject merchandise, which in this case was logs.  Commerce changed its calculation for the Final Determination and instead decided to utilize its intermediate input methodology to value Linyi Chengen's factors of production.  Under the intermediate input methodology, Commerce calculated Linyi Chengen's normal value by applying a surrogate value to an intermediate input, which in this case was veneers.

Commerce rarely applies its immediate input methodology and has done so only in limited circumstances.  See, e.g., Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 498 (Dep't Commerce Jan. 31, 2003) (notice of final antidumping duty determination of sales at less than fair value and affirmative critical circumstances), and accompanying Issues and Decision Memorandum, at Comment 3 (applying the intermediate input methodology due to problems with upstream data from respondents, such as misreported or

unreported factors of production); <u>Honey from the People's Republic of China</u>, 71 Fed. Reg.

34,893 (Dep't Commerce June 16, 2006) (final results and final rescission of antidumping duty

administrative review), and accompanying Issues and Decision Memorandum, at Comment 9

(valuing the raw honey consumed as opposed to the factors of production used to produce the

raw honey because of respondent's inability to accurately record and substantiate the complete

costs associated with production); <u>Fresh Garlic from the People's Republic of China</u>, 71 Fed.

Reg. 26,329 (Dep't Commerce May 4, 2006) (final results and partial rescission of antidumping

duty administrative review and final results of new shipper reviews), and accompanying Issues

and Decision Memorandum, at Comment 1 (resorting to the intermediate input methodology

because respondents were unable to record accurately and substantiate the costs of growing

garlic).  Commerce has utilized this methodology when the factors of production for the

intermediate input accounts for an insignificant share of the total output, and the burden

associated with calculating each factor of production outweighs the potential increase of

calculation accuracy.  <u>See</u> Final IDM at 23.  Commerce has applied this methodology also when

valuing the factors of production associated with producing the intermediate input would result

in inaccurate calculations because Commerce is not able to value a significant cost in the overall

factors buildup.  <u>See</u> <u>id.</u>

Linyi Chengen argues that Commerce's determination that Linyi Chengen's log volume

reporting was "imprecise" is not supported by substantial evidence on the record.  <u>See</u> Linyi

Chengen's Br. 26–34.  Linyi Chengen contends that because Commerce's finding regarding

Linyi Chengen's log volume reporting is unsupported by substantial evidence, Commerce had no

reason to resort to the intermediate input methodology.  <u>See</u> <u>id.</u>  As stated above, the court is

remanding the <u>Final Determination</u> for Commerce to reconsider its finding regarding Linyi

Chengen's log volume reporting.  Because Commerce's findings are subject to change on

remand, the court will not rule on this issue at this juncture.

### C.  Veneer Input Surrogate Values

Commerce chose Romania as the primary surrogate country for this investigation in the

<u>Preliminary Determination</u>.  <u>See</u> Prelim. IDM at 16.  Linyi Chengen supported Commerce's use

of Romanian wood log surrogate values.  <u>See</u> Linyi Chengen's Br. 35.  Commerce continued to

find that Romania was the appropriate primary surrogate country in the <u>Final Determination</u>, but

because it decided to apply the intermediate input methodology, Commerce utilized the

Romanian surrogate value for beech veneer.  Linyi Chengen contests Commerce's selection of

Romanian beech veneer and argues that the value of beech veneer is "illogically priced and less

specific to the input."  Linyi Chengen's Br. 35.

When valuing a respondent's factors of production in proceedings involving nonmarket

economy countries, Commerce shall use the "best available information regarding the values of

such factors in a market economy country or countries considered to be appropriate by

[Commerce]."  19 U.S.C. § 1677b(c)(1)(B).  To the extent possible, Commerce uses factors of

production from market economy countries that are: "(A) at a level of economic development

comparable to that of the nonmarket economy country, and (B) significant producers of

comparable merchandise."  19 U.S.C. § 1677b(c)(4).  Commerce's regulatory preference is to

"value all factors in a single surrogate country."  19 C.F.R. § 351.408(c)(2).  Commerce's

methodology for selecting the best available information evaluates data sources based upon their:

(1) specificity to the input; (2) tax and import duty exclusivity; (3) contemporaneity with the

period of review; (4) representativeness of a broad market average; and (5) public availability.

See Imp. Admin., U.S. Dep't Commerce, Non-Market Economy Surrogate Country Selection

Process, Policy Bulletin 04.1 (Mar. 1, 2004), available at http://ia.ita.doc.gov/policy/bull04-

1.html (last visited June 3, 2019).

  Although Commerce has discretion to determine which evidence is the "best available

information," Commerce's findings must be reasonable and supported by substantial evidence on

the record.  See Qingdao Sea-Line Trading Co., 766 F.3d at 1386; Shakeproof Assembly

Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir.

2001).  The court examines the information used by the Department by inquiring "whether a

reasonable mind could conclude that Commerce chose the best available information."  Zhejiang

DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1341 (Fed. Cir. 2011).

  Because Commerce's Final Determination is subject to change on remand, including the

application of the intermediate input methodology, the court reserves its decision on this issue.

## II. Separate Rate Respondents' Rule 56.2 Motions for Judgment on the Agency Record

  Commerce assigned a separate weighted average dumping margin to every company that

was not individually examined in the investigation.  Commerce based the separate rate on Linyi

Chengen's weighted-average dumping margin.  The Separate Rate Respondents each filed their

own Rule 56.2 motions for judgment on the agency record.  See Mot. J. Agency R. Consol. Pls.

Zhejiang Dehua TB Imp. & Exp. Co., Ltd., et al., July 20, 2018, ECF No. 33; Consol. Separate

Rate Pls.' Rule 56.2 Mot. J. Agency R., July 20, 2018, ECF No. 34; Rule 56.2 Mot. J. Agency R.

Consol. Pls. Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA

Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest

International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc. Richmond

International Forest Products, LLC & USPly LLC, July 20, 2018, ECF No. 35.  The Separate

Rate Respondents adopt Linyi Chengen's Rule 56.2 motion in full and contend that any changes

to Linyi Chengen's weighted average dumping margin as a result of this litigation requires

Commerce to recalculate the rate applied to the Separate Rate Respondents.  Because the court

remands the <u>Final Determination</u> with respect to Commerce's calculation of Linyi Chengen's

rate, as stated above, the court grants the Separate Rate Respondents' Rule 56.2 motions for

judgment on the agency record.  Commerce is instructed on remand to reconsider the rate applied

to the Separate Rate Respondents based on any changes to Linyi Chengen's margin on remand.

### III.    Bayley's Rule 56.2 Motion for Judgment on the Agency Record

#### A.  Commerce's Application of AFA to Bayley

Section 776 of the Tariff Act provides that if "necessary information is not available on

the record" or if a respondent "fails to provide such information by the deadlines for submission

of the information or in the form and manner requested," then the agency shall "use the facts

otherwise available in reaching" its determination.  19 U.S.C. § 1677e(a)(1), (a)(2)(B).  If the

Department finds further that "an interested party has failed to cooperate by not acting to the best

of its ability to comply with a request for information" from the agency, then the Department

"may use an inference that is adverse to the interests of that party in selecting from among the

facts otherwise available."  <u>Id.</u> § 1677e(b)(1)(A).  The U.S. Court of Appeals for the Federal

Circuit has interpreted these two subsections to have different purposes.  <u>See</u> <u>Mueller Comercial</u>

<u>de Mexico, S. de R.L. De C.V. v. United States</u>, 753 F.3d 1227, 1232 (Fed. Cir. 2014).

Subsection (a) applies "whether or not any party has failed to cooperate fully with the agency in

its inquiry." Id. (citing Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333,

1346 (Fed. Cir. 2011)).  On the other hand, subsection (b) applies only when the Department

makes a separate determination that the respondent failed to cooperate "by not acting to the best

of its ability." Id. (quoting Zhejiang DunAn Hetian Metal Co., 652 F.3d at 1346).

When determining whether a respondent has complied to the "best of its ability,"

Commerce "assess[es] whether [a] respondent has put forth its maximum effort to provide

Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel v.

United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  This finding requires both an objective and

subjective showing.  Id.  Commerce must determine objectively "that a reasonable and

responsible importer would have known that the requested information was required to be kept

and maintained under the applicable statutes, rules, and regulations." Id. (citing Ta Chen

Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)).  Next,

Commerce must demonstrate subjectively that the respondent's "failure to fully respond is the

result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all

required records, or (b) failing to put forth its maximum efforts to investigate and obtain the

requested information from its records." Id. at 1382–83.  Adverse inferences are not warranted

"merely from a failure to respond," but rather in instances when the Department reasonably

expected that "more forthcoming responses should have been made." Id. at 1383.  "The statutory

trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to

the best of respondent's ability, regardless of motivation or intent." Id.

Commerce may rely on information derived from the petition, a final determination in the

investigation, a previous administrative review, or any other information placed on the record

when making an adverse inference.  See 19 U.S.C. § 1677e(b)(2); 19 C.F.R. § 351.308(c).

Respondents should be forthcoming with information, regardless of their views on relevancy, in

the event the agency finds differently.  See POSCO v. United States, 42 CIT __, __, 296 F. Supp.

3d 1320, 1340–41 (citing Essar Steel Ltd. v. United States, 34 CIT 1057, 1073, 721 F. Supp. 2d

1285, 1299 (2010)).

### B.  Commerce's Affiliation Determination

Commerce found that Bayley "failed to cooperate by not acting to the best of its ability to

comply" with the Department's requests for information by not disclosing the full extent of its

affiliations as required by the initial questionnaire.  Final IDM at 13; see also Prelim. IDM at 25–

31; Dep't Initial Antidumping Questionnaire at A-12, PD 149, bar code 3535284-01 (Jan. 9,

2017) (instructing the companies to provide affiliation information).  Bayley contends that the

Department's application of AFA because of its alleged affiliation with one of its customers,

Shelter Forest International Acquisition Inc. ("Shelter" or "SFIA"), is unsupported by substantial

evidence.  See Bayley's Br. 14–16.  Bayley contends that Commerce relied on (1) inconclusive

information that Petitioner placed on the record from an antidumping investigation on hardwood

plywood that took place in 2012 ("Plywood I")[2], (2) discredited information from a cached

webpage, and (3) conjecture on the relationship between two U.S. companies.  Id. at 3.

---

[2] See Hardwood Plywood from China, 78 Fed. Reg. 76,857 (Int'l Trade Comm. Dec. 19, 2013) (determinations).

Bayley attempted to rebut the evidence Petitioner placed on the record by arguing that

SFIA is not the same company as that operating in 2012.  See Prelim. IDM at 27; see also Bayley

Rebuttal to Petitioners' March 20, 2017 Comments on Bayley Questionnaire at 7, PD 446, bar

code 3559726-01 (Apr. 3, 2017).  Bayley stated that the Plywood I documents refer to Shelter

Forest International, Inc. ("SFII"), which is a different company than that at issue in this

investigation.  See Prelim. IDM at 27; see also Bayley Rebuttal to Petitioners' March 20, 2017

Comments on Bayley Questionnaire at 4, PD 446, bar code 3559726-01 (Apr. 3, 2017).  Bayley

placed each company's business registration with the Oregon Secretary of State on the record,

arguing that the two companies are different because the registrations show two different

companies with two different addresses.  See Prelim. IDM at 28.  Commerce made a "full

examination of the business registration documents that are publicly available" and found that

Bayley failed to provide available attachments showing that the president of both Shelter

companies is the same person, supporting a finding of affiliation.  See Prelim. IDM at 28–29; see

also Dep't Memorandum re: Shelter International Corporate Documents, PD 736, bar code

3582562-01 (June 16, 2017).

The court finds that it was reasonable for Commerce to suspect that Bayley failed to

provide Commerce with information at the outset of the investigation, based on the evidence on

the record.  After investigating Bayley's rebuttal evidence further, Commerce found substantial

evidence that Bayley and Shelter are affiliated.  The court concludes that Commerce's decision

to apply AFA was reasonable.  See Nippon Steel, 337 F.3d at 1383 (holding that "intentional

conduct, such as deliberate concealment or inaccurate reporting" shows a failure to cooperate);

Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (finding that "[p]roviding

false information and failing to produce key documents unequivocally" shows that respondent

"did not put forth its maximum effort"); <u>Maverick Tube Corp. v. United States</u>, 857 F.3d 1353,

1360 (Fed. Cir. 2017) (concluding that substantial evidence supports Commerce's decision to

apply AFA where respondent failed to provide information requested by Commerce and "never

claimed that it was unable to provide" the information).  The court concludes that Commerce's

decision to apply AFA to Bayley for failure to disclose the full extent of its affiliations is

supported by substantial evidence.

### C.  Commerce's Decision to Not Verify Bayley's Questionnaire Responses

Commerce "shall verify all information relied upon in making a final determination in an

investigation." 19 U.S.C. § 1677m(i)(1); <u>see also</u> 19 C.F.R. § 351.307(b).  At verification,

Commerce employees "will request access to all files, records, and personnel which the

Secretary considers relevant to factual information submitted of: [] producers, exporters, or

importers." 19 C.F.R. § 351.307.  Commerce need not consider information submitted by an

interested party if the information "is so incomplete that it cannot serve as a reliable basis for

reaching the applicable determination." 19 U.S.C. § 1677m(e)(3).

Bayley contends that Commerce should have verified its questionnaire responses.  <u>See</u>

Bayley's Br. 30.  Bayley contends also that Commerce should have verified the evidence

Petitioner put on the record, including the documents from Plywood I, the cached website

information, and Bayley's alleged affiliations with other Chinese producers, once Bayley denied

any affiliation with Shelter.  <u>See</u> <u>id.</u>  This is incorrect.  Because Commerce did not rely upon

Bayley's questionnaires, it did not need to verify them.  The evidence that Petitioner placed on

the record was not their own and therefore there were no "files, records, and personnel" that

Commerce could request from Petitioner to verify it.  Commerce considered the evidence to find

it was reasonable to suspect Bayley's responses were "so incomplete" as to not "serve as a

reliable basis for reaching the applicable determination."  Bayley had the burden to rebut this

presumption and it was not able to do so.  The court concludes that Commerce's decision not to

verify both Bayley's questionnaire responses and the evidence the Petitioner put on the record is

in accordance with the law.

### D.  Commerce's Failure to Issue an Additional Questionnaire to Bayley

If Commerce "determines that a response to a request for information . . . does not

comply with the request," Commerce "shall promptly inform the person submitting the response

of the nature of the deficiency and shall, to the extent practicable, provide that person with an

opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  Commerce "satisf[ies]

its obligations under section 1677m(d) when it issue[s] a supplemental questionnaire specifically

pointing out and requesting clarification of [the party's] deficient responses."  NSK Ltd. v.

United States, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007).  "[N]othing in the [language of the

statute] compels Commerce to treat intentionally incomplete data as a 'deficiency' and then to

give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well

as to 'explain.'"  Papierfabrik August Koehler SE v. United States, 843 F.3d 1373, 1384 (Fed.

Cir. 2016), cert. denied, 138 S. Ct. 555 (2017).

During the investigation, Commerce's initial questionnaire requested that Bayley report

all affiliated and cross-owned companies.  See Dep't Initial Antidumping Questionnaire at A-12,

PD 149, bar code 3535284-01 (Jan. 9, 2017).  Bayley reported that it was partially-owned by

Person A and majority-owned by Person B, a husband and wife.  See Prelim. IDM at 25.  Bayley

originally did not list Company D as an affiliate.  See id. at 30; see also Bayley Section A

Questionnaire Response at 14, PD 307, bar code 3543235-01 (Feb. 13, 2017).  Commerce

discovered that Bayley failed to report an additional affiliate, Company D, based on publicly

available information in the companion countervailing duty investigation.  See Prelim. IDM at

30.  Company D manufacturers an input used in hardwood plywood production and is wholly-

owned by Person C, the father-in-law of Person A and father of Person B.  See id.  Bayley

argued that it reported all suppliers in this investigation, but Commerce concluded that it did "not

change the fact that Company D represents an affiliate that should have been reported.  By not

reporting Company D on the record of this investigation, Bayley withheld necessary information

that was requested."  Final IDM at 15.

        Bayley contends that Commerce's (1) refusal to consider Company D's questionnaire

response; (2) refusal to issue Bayley a supplemental questionnaire; and (3) refusal to consider the

information Bayley offered to clarify its lack of affiliations, are not in accordance with the law.

See Bayley's Br. 29–43.  The record evidence establishes that Bayley intentionally submitted

incomplete information to Commerce regarding its affiliations because it did not report Company

D as an affiliated company.  See 19 U.S.C. § 1677(33)(A) (providing that "the following persons

shall be considered to be 'affiliated' or 'affiliated persons': [m]embers of a family, including . . .

lineal descendants.").  The court finds that Commerce's conclusion that Bayley provided

incomplete information was reasonable because under United States law, Bayley should have

provided information about the affiliated relationship of Person C and Person B who are lineal

descendants.  Commerce satisfied its burden under section 1677m(d) both to inform Bayley that

Bayley's affiliation response was deficient and to allow Bayley to correct its response after

Commerce issued the first supplemental questionnaire.  See NSK Ltd., 481 F.3d at 1360 n.1.

Bayley contends also that Commerce must provide a party with an opportunity to remedy or

explain a deficiency "regardless of whether the Department, the respondent, or any other party

first brings such a deficiency to the Department's" attention.  Bayley's Br. 33; see also 19 U.S.C.

§ 1677m(d).  Bayley relies on China Kingdom Import & Export Co. Ltd v. United States, 31 CIT

1329, 507 F. Supp. 2d 1337 (2007), as support for this proposition.  Commerce applied AFA for

failure to comply after Bayley did not include all affiliation information in response to the initial

questionnaire and first supplemental questionnaire and it therefore did not need to consider

Bayley's submission regarding Company D.

      Bayley contends further that Commerce's disregard of Bayley's proffered information

regarding Company D is arbitrary and capricious.  See Bayley's Br. 41–43.  Commerce

addressed Bayley's argument that it reported all suppliers in this antidumping investigation as

opposed to the parallel countervailing duty investigation and noted that "this does not change the

fact that Company D represents an affiliate that should have been reported.  By not reporting

Company D on the record of this investigation, Bayley has withheld necessary information that

was requested."  Final IDM at 15.  Commerce requested information from Bayley, which Bayley

withheld at the outset.  It was reasonable for Commerce to rebuff Bayley's later attempts because

of Bayley's failure to cooperate and comply with Commerce's requests, and the court finds that

Commerce's decision here was not arbitrary and capricious.

## CONCLUSION

      For the aforementioned reasons, the court concludes that:

1.   Commerce's actions regarding the administrative record were arbitrary and

     capricious;

2.   Commerce's application of the intermediate methodology is reserved for remand;

3.   Commerce's valuation of veneer inputs is reserved for remand;

4.   Commerce's calculation of the antidumping margins assigned to Consolidated

     Plaintiffs and other separate rate respondents should be reconsidered on remand based

     on any changes to Linyi Chengen's margin on remand;

5.   Commerce's determination to apply AFA to Bayley regarding an alleged affiliation

     with one of its customers was supported by substantial evidence and in accordance

     with the law;

6.   Commerce's decision not to conduct verification on Bayley is supported by

     substantial evidence and in accordance with the law; and

7.   Commerce's actions regarding Bayley's affiliation with Company D is in accordance

     with the law and not arbitrary and capricious.

Commerce's Final Determination is sustained in part and remanded in part.  Accordingly, it is

hereby

     **ORDERED** that Commerce's Final Determination is remanded for further proceedings

consistent with this opinion; and it is further

     **ORDERED** that Commerce shall file the remand redetermination on or before August 2,

2019; and it is further

     **ORDERED** that Commerce shall file the administrative record on the remand

redetermination on or before August 16, 2019; and it is further

Consol. Court No. 18-00002                                    Page 30

**ORDERED** that the Parties shall file comments in opposition to the remand redetermination on or before September 3, 2019; and it is further

**ORDERED** that the Parties shall file comments in support of the remand redetermination on or before October 3, 2019; and it is further

**ORDERED** that the joint appendix on the remand redetermination shall be filed on or before October 17, 2019.

/s/ Jennifer Choe-Groves
 Jennifer Choe-Groves, Judge

Dated: June 3, 2019
        New York, New York