Slip Op. 20-22

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., <br><br> Plaintiff, <br><br> and <br><br> CELTIC CO., LTD., ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br> Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge <br><br> Consol. Court No. 18-00002 |

OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand redetermination as to the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China.]

Dated: February 20, 2020

Gregory S. Menegaz, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiff Linyi Chengen Import and Export Co., Ltd., and Consolidated Plaintiffs Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Anhui Hoda Wood Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Linyi Evergreen Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Timber International Trade Co. Ltd., Linyi Sanfortune Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Suining Pengxiang Wood Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., Xuzhou Pinlin International Trade Co. Ltd., Linyi Glary Plywood Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Shandong Qishan International Trading Co., Ltd.,

Suzhou Oriental Dragon Import and Export Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Far East American, Inc., and Shandong Dongfang Bayley Wood Co., Ltd., and Plaintiff-Intervenors Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Anhui Hoda Wood Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shandong Qishan International Trading Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd.  With him on the brief were J. Kevin Horgan and Alexandra H. Salzman.

Jeffrey S. Neeley and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland Industries, Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D. Enterprise Limited, Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic & Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

Jeffrey S. Grimson, Mowry & Grimson, PLLC, of Washington, D.C., for Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corporation d/b/a Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and US Ply LLC.  With him on the brief were Jill A. Cramer and Bryan P. Cenko.

Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director.  Of counsel was Nikki Kalbing, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood.  With him on the brief were Jeffrey O. Frank, Stephanie M. Bell, and Elizabeth Lee.

Choe-Groves, Judge:  At the center of this case is a discrepancy over one document – apparently during verification, the Department of Commerce ("Commerce") requested that Plaintiff Linyi Chengen Import and Export Co., Ltd. ("Linyi Chengen") provide a copy of the Chinese National Standard used to calculate the volume of purchased logs.  Linyi Chengen attempted to provide a 12-page document representing the Chinese National Standard used for log volume, but Commerce accepted only a two-page excerpt of that document into evidence containing a conversion table.  Apparently the two-page excerpt contained a phrase written in Chinese identifying the conversion table as the Chinese National Standard, without an English translation.  Commerce agreed that the two-page conversion table excerpt was relevant to Linyi Chengen's manner of calculating log volumes reported in its questionnaire responses, but Commerce rejected the remaining pages as prohibited new factual information.  Linyi Chengen alleges that the two pages are only one portion taken out of context of a larger 12-page document and notes that the 10 additional pages include the cover page identifying the document in English as the Chinese National Standard, the document requested by Commerce.  The controversy in this case centers around Commerce's subsequent findings that Linyi Chengen provided incomplete information regarding volume calculations, conversions, and formulas, and that Linyi Chengen failed to establish that it applied the Chinese National Standard in calculating its log volumes.  Thus, the question before the court is whether Commerce's conclusion is supported by substantial evidence that Linyi Chengen failed to apply the Chinese National Standard, when Commerce itself prevented Linyi Chengen from submitting a complete document that could provide relevant factual information.  For the following reasons, the court concludes that

Commerce's determination is not supported by substantial evidence and remands for further proceedings consistent with this opinion.

  This case involves a challenge to Commerce's final affirmative determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China. See <u>Certain Hardwood Plywood Products From the People's Republic of China</u>, 82 Fed. Reg. 53,460 (Dep't Commerce Nov. 16, 2017) (final determination of sales at less than fair value, and final affirmative determination of critical circumstances, in part), PR 882, <u>as amended</u>, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (amended determination of sales at less than fair value and antidumping duty order), PR 894 (collectively, "<u>Final Determination</u>"); <u>see also</u> Issues and Decision Memorandum for the Final Determination of the Antidumping Duty Investigation of Certain Hardwood Plywood Products from People's Republic of China, PR 871 (Nov. 16, 2017) ("<u>Final IDM</u>"); <u>Certain Hardwood Plywood Products From the People's Republic of China</u>, 82 Fed. Reg. 28,629 (Dep't Commerce June 23, 2017) (preliminary affirmative determination of sales at less than fair value, preliminary affirmative determination of critical circumstances, in part), <u>as amended</u>, 82 Fed. Reg. 32,683 (Dep't Commerce July 17, 2017) (amended preliminary determination of sales at less than fair value) (collectively, "<u>Preliminary Determination</u>").

  Before the court are Commerce's remand results filed in response to the court's opinion and order in <u>Linyi Chengen Import and Export Co., Ltd. v. United States</u>, 43 CIT ___, 391 F. Supp. 3d 1283 (2019) ("<u>Linyi Chengen</u>"), Final Results of Redetermination Pursuant to Court Remand, ECF No. 89-1 ("Remand Results"), and Plaintiffs' Linyi Chengen Import and Export Co., Ltd., Shandong Dongfang Bayley Wood Co., Ltd., and the Separate Rate Plaintiffs' Motion

for Leave to File Reply Comments, ECF No. 101.[1] The court decides the matter on the parties' written submissions and denies the motion seeking leave to file reply comments.[2]

I. **BACKGROUND**

The court assumes familiarity with the underlying facts and procedural history of this case as set forth in Linyi Chengen. 391 F. Supp. 3d at 1287–92.

In the Preliminary Determination, Commerce declined Defendant-Intervenor's request to value Linyi Chengen's poplar log inputs using its intermediate input methodology and assigned Linyi Chengen a zero or *de minimis* dumping margin and a 57.36% dumping margin as to the separate rate companies. 82 Fed. Reg. at 28,637. In the Final Determination, Commerce changed course and applied its intermediate input methodology to value Linyi Chengen's log inputs. 82 Fed. Reg. at 53,461; Final IDM at 23 (valuing veneers as the input used to produce hardwood plywood). Linyi Chengen's margin calculation changed from 0% to a final dumping

---

[1] Linyi Chengen moved on behalf of Consolidated Plaintiffs Celtic Co., Ltd., Anhui Hoda Wood Co., Ltd., Far East American, Inc., Jiaxing Gsun Import and Export Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Shandong Qishan International Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd. (collectively, "Separate Rate Plaintiffs").

[2] The court has broad discretion to manage its docket and deny a party's request to file reply comments after remand. USCIT R. 56.2(h)(6); see Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008) ("District courts . . . are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them." (citations omitted)).

Consol. Court No. 18-00002                                                                                           Page 6

margin calculation of 183.36%.  Final Determination, 82 Fed. Reg. at 53,462.  Commerce then applied Linyi Chengen's rate to the separate rate respondents.  Id.

Commerce used its intermediate input methodology after concluding that Linyi Chengen's log volume reporting methods were "inherently imprecise." Final IDM at 25, 27 (noting that applying the intermediate input methodology to veneers instead of logs will yield a more accurate calculation).  Commerce contended that Linyi Chengen had not shown that the conversion table and formula used to calculate log volume were the Chinese National Standard or that use of the conversion table and formula yielded accurate reported log volume.  Id. at 25.  Commerce also noted that it was unable to cross-check Linyi Chengen's reported log consumption against any third-party sources, such as supplier invoices.  Id.

The court remanded the case for Commerce to reconsider how Linyi Chengen's log consumption calculations were unreliable when the record reflected conflicting accounts at verification as to whether the conversion table and formula Linyi Chengen used to compute its log consumption volume were the Chinese National Standard.  Linyi Chengen, 391 F. Supp. 3d at 1294.  Because Commerce applied Linyi Chengen's 183.36% dumping margin to the non-examined companies, the court also directed Commerce to reconsider the rates applied to the separate rate companies if Commerce changed Linyi Chengen's margin on remand.  Linyi Chengen, 391 F. Supp. 3d at 1301; Final Determination, 82 Fed. Reg. at 53,462.

On remand, Commerce faulted Linyi Chengen again for failing to build an adequate administrative record, found that Linyi Chengen was unable to report and substantiate its log volume factors of production accurately, and reapplied the intermediate input methodology.

Remand Results at 60; Final IDM at 23. Commerce made no changes to the 183.36% dumping margin applied to Linyi Chengen and the separate rate companies. Remand Results at 60.

Commerce continued to find that Linyi Chengen's log volumes were unreliable because of a lack of record evidence showing that the conversion table and formula are the Chinese National Standard or that the table and formula elicit accurate log volumes. Id. at 24. Commerce reasoned that it disregarded Linyi Chengen's log consumption data because Linyi Chengen provided no third-party documentation supporting those reported log volumes. Id. at 15–32, 60. Commerce found that the value-added tax ("VAT") invoices and warehouse-in tickets that Linyi Chengen provided lacked third-party confirmation against which Commerce could cross-check Linyi Chengen's reported log volumes. Id. at 25–26, 45–54.

After the court issued Linyi Chengen, Commerce appended an extra-record declaration to the Remand Results. Id., Analyst Decl., Attachment to Remand Results. In the analyst declaration, Commerce purports to explain how the verification team handled the conversion table and formula exhibit. Id.

Plaintiffs Linyi Chengen,[3] Taraca Pacific, Inc. ("Taraca"),[4] and Zhejiang Dehua TB Import & Export Co., Ltd. ("Dehua TB")[5] filed comments opposing the Remand Results. Dehua

---

[3] Comments were filed collectively on behalf of Chengen and the Separate Rate Plaintiffs.

[4] Comments were filed collectively on behalf of Taraca, Canusa Wood Products Ltd., Concannon Corp. d/b/a Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPly LLC.

[5] Comments were filed collectively on behalf of Dehua TB, Highland Industries, Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D.

TB Cmts. on Remand Redetermination, ECF No. 93 ("Dehua TB Cmts."); Taraca's Cmts. on Final Remand Redetermination, ECF No. 94 ("Taraca Cmts."); Linyi Chengen Cmts. on Remand Redetermination, ECF No. 95. Defendant United States ("Defendant") and Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood ("Defendant-Intervenor") filed comments in support of the Remand Results. Def.'s Resp. to Cmts. on Remand Redetermination, ECF No. 97 ("Def. Resp."); Def.-Intervenor's Cmts. in Resp. to Remand Redetermination, ECF No. 100 ("Def.-Int. Resp.").

## II. JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). The court will uphold Commerce's antidumping determination, including redeterminations made on remand, unless the findings are unsupported by substantial record evidence, or are otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The court also reviews determinations made on remand for compliance with the court's remand order. Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## III. DISCUSSION

Linyi Chengen and Taraca argue that Commerce erred in finding the conversion table and formula unreliable because Commerce rejected a document showing that the conversion table

---

Enterprise Limited., Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic and Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

and formula are the Chinese National Standard and that use of the table and formula yield accurate log volume calculations. Linyi Chengen Cmts. 1–10, 23–30; Taraca Cmts. at 4–8.[6] Linyi Chengen avers also that Commerce ignored third-party documentation, such as VAT invoices and warehouse-in tickets, that substantiated its reported log consumption. Linyi Chengen Cmts. at 10; Taraca Cmts. at 9–12 (arguing that the third-party confirmation requirement has no support in the law and facts on the record). Defendant responds that it was proper for Commerce to reject the 10 pages of the Chinese National Standard document because Linyi Chengen developed an inadequate administrative record and should have provided the document before verification. Def.'s Resp. at 8–23. Defendant asserts also that it was reasonable for Commerce to conclude that the record evidence Linyi Chengen put forth substantiating its log volume did not constitute proper third-party documentation because Commerce could not cross-check the reported log volume figures against independently-generated documents. Id. at 23–29; Def-Int. Resp. at 11.

### A. Handling of Record Evidence at Verification

Linyi Chengen argues that Commerce erred in using the intermediate input methodology because at verification, Commerce accepted only a portion of the document containing the entirety of the Chinese National Standard. Linyi Chengen Cmts. 1–10; Taraca Cmts. at 4–8 (The removal of the pages identifying the document in English as the Chinese National Standard "is also the single most important decision that catapulted Linyi Chengen's antidumping margin

---

[6] Dehua TB joins in and incorporates by reference Chengen's comments and asserts that any change Commerce makes to Chengen's margin calculation should be applied to the Separate Rate Plaintiffs. Dehua TB Cmts. at 1–2.

from *de minimis* at the preliminary determination to the punitive final antidumping margin."). Defendant responds that Commerce appropriately rejected the documents as to the provenance and function of the conversion table and formula at verification as prohibited new facts. Def. Resp. at 8, 16–18.

Generally, Commerce examines the record at verification to test the accuracy of information collected during the investigation. Tianjin Machinery Imp. & Exp. Corp. v. United States, 28 CIT 1635, 1644 (2004), aff'd, 146 Fed. App'x 493 (Fed. Cir. 2005). Yet, Commerce has developed a practice of accepting new facts at verification when: "(1) the need for that information was not evident previously, (2) the information makes minor corrections to information already on the record, or (3) *the information corroborates, supports, or clarifies information already on the record*." TMK IPSCO v. United States, 40 CIT ___, 179 F. Supp. 3d 1328, 1354 n.34 (2016) (citation omitted) (emphasis added).

The question in this case is whether it was reasonable for Commerce to deem only two pages (the "conversion table") of a document as relevant while rejecting the remaining pages of the whole 12-page Chinese National Standard document as improper new factual information, particularly when Commerce later faulted Linyi Chengen for failing to show that it applied the Chinese National Standard in its volume calculations. At oral argument, Linyi Chengen averred that it provided to Commerce "a partially translated 12-page log standard, and [Commerce] [tore] off the cover page, which is the full translation." Oral Arg. Tr. 10:25–11:19, ECF No. 80 (noting that the two pages Commerce retained as a verification exhibit contained the untranslated "11-character Chinese standard [located] on one line at the top of the page").

Consol. Court No. 18-00002   Page 11

The court finds Commerce's explanation to be unreasonable for rejecting the 12-page complete document representing the entirety of the Chinese National Standard.  See Remand Results at 43 ("[T]he cover page and additional pages that purportedly explain the provenance and methodology underlying the conversion table and formula were new factual information that [Linyi] Chengen should have submitted prior to verification and were information that Linyi Chengen sought . . . to submit to the verifiers.").  The court finds that the 12-page complete document should be construed instead as information corroborating, supporting, or clarifying information already on the record (regarding Linyi Chengen's method of calculating log volumes) that should be accepted pursuant to Commerce's past practices at verification, rather than viewing the pages as prohibited new factual information.  The remaining pages provide context for understanding whether the conversion table for log volume in the initial two pages are part of the Chinese National Standard contained in the complete 12-page document.  By rejecting the additional information, Commerce missed an opportunity to accept evidence that would corroborate, support, or clarify the log volumes reported in the questionnaire responses, as well as provide context as to whether Linyi Chengen applied the Chinese National Standard.  See TMK IPSCO, 179 F. Sup. 3d at 1354 n.34.  It strains logic that Commerce would accept two pages of the conversion table, yet would reject additional pages of the same document that would clarify "the provenance and accuracy of conversion table and formula" used to calculate log volumes.  Remand Results at 11; see Mid Continent Steel & Wire, Inc. v. United States, 941 F.3d 530, 544–45 (Fed. Cir. 2019) ("Practical considerations might play a role in the reasonableness of Commerce's choice.  It might be reasonable to avoid methods that demand information that cannot practically be obtained in reliable form.  On the other hand, it can be

unreasonable for an agency to refuse to obtain readily available, highly relevant information." (citation omitted)).  Similarly, the court concludes that it was unreasonable for Commerce to refuse to consider the entirety of the document purporting to be the Chinese National Standard, when the document is readily available and highly relevant.

The court remands for a second time and instructs that Commerce accept the additional pages representing the entire 12-page document, including the cover page and other pages that were previously rejected at verification, in order to provide a more complete record on which to base Commerce's reasoning.  Because Linyi Chengen's log volume was an integral factor of production used in calculating the dumping margin, Commerce should reconsider modifying Linyi Chengen's margin and the rate assigned to the Separate Rate Plaintiffs.  See Final IDM at 25 (noting that log consumption is "[Linyi] Chengen's most significant input[]").

### B. Third-Party Documentation Requirement

Linyi Chengen and Taraca argue that Linyi Chengen provided ample and reliable record evidence that met Commerce's third-party confirmation requirement.  Linyi Chengen Cmts. at 10–17, Taraca Cmts. at 10–12.  Defendant counters that Commerce was correct in finding Linyi Chengen's evidence, such as VAT invoices and warehouse materials, unreliable because Linyi Chengen alone produced, possessed, and maintained the documents.  Def.'s Resp. at 23–29 (Commerce has a "strong preference" that respondents provide information from "independent sources that are not subject to its investigations or reviews[.]").

Commerce found insufficient record support of Linyi Chengen's log volumes because Commerce could not cross-check the reported log volumes against independent, third-party sources.  Remand Results at 26, 53–54 ("[T]he need for third-party confirmation of [Linyi]

Chengen's log consumption is appropriate . . . because the accuracy of the methodology by which [Linyi] Chengen calculates its log volume is a question at issue in this proceeding."). Commerce's imposition of a third-party confirmation requirement lacks a basis in law and fact.

First, Commerce cites no authority to specifically support its imposition of the third-party confirmation requirement. There does not appear to be a legal basis for requiring that Linyi Chengen must confirm its log consumption by an independent third-party source, and thus the court concludes that Commerce's requirement on this issue is contrary to the law.

Second, the evidence on the record does not support Commerce's conclusion that Linyi Chengen could "manipulat[e] or alter[]" documents under its control, such as the VAT invoices, because the invoices are generated on pre-approved Chinese government forms provided by the Chinese tax authority. Id. at 25–26, 49–51. Commerce identified no record evidence questioning the accuracy and completeness of the VAT invoices when Linyi Chengen maintained the invoices as part of its regular course of business. See Verification Report at 8, 20–21, PR 834. Commerce has cited no evidence on the record as a basis to doubt the accuracy of the VAT invoices when a third party audited Linyi Chengen's financial statements. Commerce dismissed the relevance of the audited financial statements because "it is unclear how [Linyi] Chengen's auditors and the [Chinese] tax authority would validate the quantities reported to Commerce." Remand Results at 51; Linyi Chengen Section A Questionnaire Resp., PR 306, CR 242, Ex. A-3 (2015 Audited Financial Statement). During verification, Commerce reviewed Linyi Chengen's reported per-unit consumption amounts of "poplar log[] [and] wood log" and found "[n]o discrepancies" when it traced the consumption of raw material inputs, as well as "the purchase quantities and values of poplar log[.]" See Linyi Chengen's Verification Report at 20–

21 ("Using the source documents from [Linyi] Chengen['s] . . . accounting and data collection systems, we traced the material inputs from source documents to the accounting vouchers used to record source documents in the general ledger, to the appropriate inventory and production accounts in the general ledger. We observed no discrepancies."). In light of Commerce's statement that there were no discrepancies, the court concludes that Commerce's continued finding that Linyi Chengen's documentation was unreliable for lack of third-party confirmation is unsupported by substantial evidence and otherwise contrary to law.

## IV.   CONCLUSION

For the foregoing reasons, the court remands the matter for Commerce to reconsider its application of the intermediate input methodology and to accept the previously-rejected documents that Linyi Chengen presented at verification representing the complete and accurate Chinese National Standard used for volume conversion. If Commerce makes changes to Linyi Chengen's margin on remand, Commerce should make appropriate adjustments to the separate rates of the other parties before the court in this action. Accordingly, is hereby

**ORDERED** that Linyi Chengen's Motion for Leave to File Reply Comments, ECF No. 101, is denied; and it is further

**ORDERED** that the Remand Results are remanded to Commerce for a second determination; and it is further

**ORDERED** that this case will proceed per the following schedule as to the second remand redetermination:

1. Commerce must file the second remand redetermination by April 20, 2020;
2. Commerce must file the administrative record by May 4, 2020;

Consol. Court No. 18-00002                                                                 Page 15

    3. Comments in opposition must be filed by June 3, 2020;

    4. Comments in support must be filed by July 6, 2020; and

    5. The joint appendix must be filed by July 20, 2020.

                                                   /s/ Jennifer Choe-Groves
                                                 Jennifer Choe-Groves, Judge

Dated: February 20, 2020
        New York, New York