Slip Op. 20-183

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., | |
| Plaintiff, | |
| and | |
| CELTIC CO., LTD., ET AL., | |
| Consolidated Plaintiffs, | Before: Jennifer Choe-Groves, Judge |
| v. | Consol. Court No. 18-00002 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| COALITION FOR FAIR TRADE OF HARDWOOD PLYWOOD, | |
| Defendant-Intervenor. | |

**OPINION AND ORDER**

[Sustaining in part and remanding in part the second remand results of the U.S. Department of Commerce, following the final determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China.]

Dated: December 21, 2020

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiff Linyi Chengen Import and Export Co., Ltd., Consolidated Plaintiffs Far East American, Inc. and Shandong Dongfang Bayley Wood Co., Ltd., and Consolidated Plaintiffs and Plaintiff-Intervenors Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Anhui Hoda Wood Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao

Good Faith Import and Export Co., Ltd., Shandong Qishan International Trading Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd.

Jeffrey S. Neeley and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland Industries Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D. Enterprise Limited, Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic & Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

Jeffrey S. Grimson and Jill A. Cramer, Mowry & Grimson, PLLC, of Washington, D.C., for Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products, Ltd., Concannon Corporation d/b/a Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPLY, LLC.

Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Ethan P. Davis, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director.  Of counsel was Savannah Rose Maxwell, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Jeffrey O. Frank, Stephanie M. Bell, and Elizabeth S. Lee, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood.

     Choe-Groves, Judge:  This action concerns the import of hardwood and decorative plywood and certain veneered panels into the United States from the People's Republic of China ("China"), subject to the final affirmative determination in an antidumping duty investigation by the U.S. Department of Commerce ("Commerce").  See Certain Hardwood Plywood Products from the People's Republic of China, 82 Fed. Reg. 53,460 (Dep't Commerce Nov. 16, 2017) (final determination of sales at less than fair value), PR 882, as amended, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (amended final determination of sales at less than fair value), PR

894 (collectively, "Final Determination"); see also Issues and Decision Mem. for the Final Determination of the Antidumping Duty Investigation of Certain Hardwood Plywood Products from People's Republic of China, ECF No. 25-7, PR 871 (Nov. 6, 2017) ("Final IDM").

Before the court are the Final Results of Redetermination Pursuant to Court Remand, ECF Nos. 113-1, 114-1 ("Second Remand Results"), which the court ordered in Linyi Chengen Import & Export Co. v. United States, 44 CIT __, 433 F. Supp. 3d 1278 (2020) ("Linyi Chengen II").  Plaintiff Linyi Chengen Import & Export Co. ("Linyi Chengen" or "Plaintiff") filed comments in support of the Second Remand Results.  Pl.'s Resp. Comments in Supp. Second Remand Redetermination, ECF No. 125 ("Pl. Cmts.").  Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co. ("Dehua TB"), Celtic Co. ("Celtic"), and Taraca Pacific, Inc. ("Taraca") each filed comments in opposition to the Second Remand Results.  Shandong Dongfang Bayley Wood Co. ("Bayley"), a Consolidated Plaintiff and mandatory respondent, did not file comments in response to the Second Remand Results.  See Final IDM at 2.

Dehua TB filed comments collectively on behalf of itself and Highland Industries, Inc., Jiashan Dalin Wood Industry Co., Happy Wood Industrial Group Co., Jiangsu High Hope Arser Co., Suqian Yaorun Trade Co., Yangzhou Hanov International Co., G.D. Enterprise, Ltd., Deqing China-Africa Foreign Trade Port Co., Pizhou Jin Sheng Yuan International Trade Co., Xuzhou Shuiwangxing Trading Co., Cosco Star International Co., Linyi City Dongfang Jinxin Economic & Trade Co., Linyi City Shenrui International Trade Co., Jiangsu Qianjiuren International Trading Co., and Qingdao Top P&Q International Corp.  Comments in Opp'n to Remand Redetermination on Behalf of Consolidated Pls. Zhejiang Dehua TB Import & Export Co., ECF Nos. 116, 117 ("Dehua TB Cmts.").

Celtic filed comments collectively on behalf of itself and Anhui Hoda Wood Co., Far East American, Inc., Jiaxing Gsun Import & Export Co., Jiaxing Hengtong Wood Co., Linyi Evergreen Wood Co., Linyi Glary Plywood Co., Linyi Jiahe Wood Industry Co., Linyi Linhai Wood Co., Linyi Hengsheng Wood Industry Co., Linyi Huasheng Yongbin Wood Co., Linyi Mingzhu Wood Co., Linyi Sanfortune Wood Co., Qingdao Good Faith Import & Export Co., Shanghai Futuwood Trading Co., Shandong Qishan International Trading Co., Suining Pengxiang Wood Co., Suqian Hopeway International Trade Co., Suzhou Oriental Dragon Import & Export Co., Xuzhou Andefu Wood Co., Xuzhou Jiangyang Wood Industries Co., Xuzhou Longyuan Wood Industry Co., Xuzhou Pinlin International Trade Co., Xuzhou Shengping Import & Export Co., and Xuzhou Timber International Trade Co.  Consolidated Separate Rate Pls.' Comments in Opp'n to Second Remand Redetermination, ECF No. 118 ("Celtic Cmts.").

Taraca filed comments collectively on behalf of itself and Canusa Wood Products, Ltd., Concannon Corp. d/b/a Concannon Lumber Co., Fabuwood Cabinetry Corp., Holland Southwest International, Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPLY, LLC.  Consolidated Pls. Taraca Pacific, Inc., Canusa Wood Products, Ltd., Concannon Corp. d/b/a Concannon Lumber Co., Fabuwood Cabinetry Corp., Holland Southwest International, Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPLY, LLC Comments on Final Remand Redetermination, ECF No. 119 ("Taraca Cmts.").

The court refers collectively to the non-examined parties that filed Dehua TB Cmts., Celtic Cmts., and Taraca Cmts. as "Separate Rate Plaintiffs."  The court also refers collectively to the non-examined parties that filed separate rate applications in the preliminary proceedings

and were assigned the all-others separate rate as "separate rate respondents." See Final IDM at 2–3; Second Remand Results at 3, 49.

Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood ("Defendant-Intervenor") filed comments and reply comments in opposition to the Second Remand Results. Def.-Interv. Coal. Fair Trade Hardwood Plywood's Comments in Opp'n to Remand Redetermination, ECF Nos. 121, 122, 123 ("Def.-Interv. Cmts."); Def.-Interv. Coal. Fair Trade Hardwood Plywood's Resp. to Comments in Opp'n to Remand Redetermination, ECF No. 127 ("Def.-Interv. Reply Cmts."). Defendant United States ("Defendant") filed a reply to all comments in opposition to the Second Remand Results. Def.'s Resp. to Comments on Remand Redetermination, ECF Nos. 128, 129 ("Def. Resp.").

For the reasons discussed below, the court sustains in part and remands in part Commerce's Second Remand Results.

## ISSUES PRESENTED

The court reviews the following issues:

1. Whether Commerce's revised dumping margin for Linyi Chengen is supported by substantial evidence; and

2. Whether Commerce's revised dumping margin for the Separate Rate Plaintiffs is supported by substantial evidence.

## BACKGROUND

The court assumes familiarity with the underlying facts and procedural history of this case as set forth in Linyi Chengen Import & Export Co. v. United States, 43 CIT __, __, 391 F. Supp. 3d 1283, 1287–92 (2019) ("Linyi Chengen I") and Linyi Chengen II, 433 F. Supp. 3d at 1280–84.

In the Final Determination, Commerce applied its intermediate input methodology to value Linyi Chengen's log inputs after determining that Linyi Chengen's log volume reporting methods were inherently imprecise. 82 Fed. Reg. at 53,461; Final IDM at 23, 25 (valuing veneers, instead of logs, as the input used to produce hardwood plywood). Commerce stated that it was unable to verify Linyi Chengen's reported log consumption against any third-party sources, such as supplier invoices. Final IDM at 25. Based on Commerce's application of the intermediate input methodology, Linyi Chengen's margin calculation changed from 0% to a final dumping margin calculation of 183.36%. Final Determination, 82 Fed. Reg. at 53,462. Commerce applied Linyi Chengen's rate to the Separate Rate Plaintiffs. Id.; Final IDM at 48. The court remanded the Final Determination for Commerce to reconsider the accuracy of Linyi Chengen's log consumption calculations. Linyi Chengen I, 391 F. Supp. 3d at 1294. Because Commerce applied Linyi Chengen's 183.36% dumping margin to the Separate Rate Plaintiffs, the court also directed Commerce to reconsider the rates applied to the Separate Rate Plaintiffs if Commerce changed Linyi Chengen's margin on remand. Id. at 1297.

Commerce continued to determine on remand that Linyi Chengen's log volumes were unreliable because the record failed to show that the conversion table and formula used by Linyi Chengen reflected the Chinese National Standard and failed to demonstrate accurate log volumes. Final Results of Redetermination Pursuant to Court Remand at 24, ECF Nos. 88-1, 89-1 ("Remand Results"). Commerce disregarded Linyi Chengen's log consumption data based on Linyi Chengen's purported failure to provide third-party documentation supporting its reported log volumes, even though Commerce rejected the documents offered by Linyi Chengen at verification. Id. at 24–32, 60. Commerce determined that it could not verify the accuracy of Linyi Chengen's reported log volumes because the value-added tax invoices and warehouse-in

tickets provided by Linyi Chengen could not be confirmed by third-party documentation. Id. at 25–26, 49–54. The court again remanded for Commerce to reconsider its application of the intermediate input methodology and to accept the log volume conversion documents presented by Linyi Chengen at verification. Linyi Chengen II, 433 F. Supp. 3d at 1286. The court directed Commerce to make appropriate adjustments to the rate applied to the Separate Rate Plaintiffs if Commerce changed Linyi Chengen's margins. Id.

Commerce accepted Linyi Chengen's verification documents on second remand and determined that Linyi Chengen's reported log volumes were accurate. Second Remand Results at 10. Commerce refrained from applying the intermediate input methodology to calculate Linyi Chengen's dumping margins and instead applied its normal methodology to value all factors of production used in each stage of production. Id. at 26. Because Commerce determined that Linyi Chengen's reported log volumes were accurate, Commerce did not apply adverse facts available ("AFA") to Linyi Chengen. Id. at 40. Commerce revised Linyi Chengen's dumping margin from 183.36% to 0%. Id. at 8. Commerce determined that the other mandatory respondent, Bayley, was a China-wide entity and imposed a revised rate of 114.72%. Id. at 15. Commerce recalculated the Separate Rate Plaintiffs' dumping margin by averaging Linyi Chengen's 0% rate and Bayley's 114.72% rate. Id. at 16. The Separate Rate Plaintiffs were assigned a revised dumping margin rate of 57.36%. Id.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c). The court will uphold Commerce's antidumping determinations unless they are unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The court also reviews determinations made on remand for compliance

with the court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### A. Commerce's Revised Dumping Margin for Linyi Chengen

The first issue considered by the court is whether Commerce's revised dumping margin for Linyi Chengen is supported by substantial evidence.  Defendant-Intervenor contends that Commerce's determination of Linyi Chengen's revised dumping margin is not supported by substantial evidence because Linyi Chengen's reported log volumes are inaccurate and Commerce should have used the intermediate input methodology.  Def.-Interv. Cmts. at 2–24.  Defendant-Intervenor argues that Commerce should have applied AFA to Linyi Chengen.  Id. at 25–27.  Defendant defends Commerce's revision of Linyi Chengen's dumping margin by citing the accuracy of Linyi Chengen's reported log volumes and Commerce's determination that the facts do not merit the use of the intermediate input methodology.  Def. Resp. at 9–10; see also Second Remand Results at 26.

In antidumping proceedings involving non-market economy countries, Commerce calculates normal value based on the factors of production used to produce the subject merchandise and other costs and expenses.  19 U.S.C. § 1677b(c)(1).  Commerce examines the quantities of raw materials employed by a company in its review of factors of production to calculate normal value.  See id. § 1677b(c)(3)(B).  Under certain circumstances, Commerce will modify its standard factors of production methodology and may choose to apply a surrogate value to an intermediate input instead of the individual factors of production used to produce that intermediate input.  See Final IDM at 23.  Commerce rarely applies this intermediate input methodology unless there are questions about the accuracy and validity of reported factors of

production. See id. at 23–24.  Commerce has used the intermediate input methodology: (1) when a "respondent may report factors used to produce an intermediate input that accounts for an insignificant share of the total output," (2) when the burden associated with calculating each factor outweighs the potential increase of calculation accuracy, or (3) when valuing the factors of production associated with producing the intermediate input would result in inaccurate calculations because Commerce is unable to value a significant cost in the overall factors buildup.  Final IDM at 23; see, e.g., Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 4986–93 (Dep't Commerce Jan. 31, 2003) (applying the intermediate input methodology due to problems with upstream data from respondents, such as misreported or unreported factors of production); Honey from the People's Republic of China, 71 Fed. Reg. 34,893 (Dep't Commerce June 16, 2006) (valuing the raw honey consumed as opposed to the factors of production used to produce the raw honey because of respondent's inability to accurately record and substantiate the complete costs associated with production); Fresh Garlic from the People's Republic of China, 71 Fed. Reg. 26,329 (Dep't Commerce May 4, 2006) (resorting to the intermediate input methodology because respondents were unable to record accurately and substantiate the costs of growing garlic).

On second remand, Commerce verified the reliability of Linyi Chengen's conversion table and the accuracy of Linyi Chengen's reported factors of production and financial statements based on a review of the record.  Second Remand Results at 27–29.  Commerce rejected purported discrepancies raised by Defendant-Intervenor and verified the overall accuracy of Linyi Chengen's reported log volumes, including Linyi Chengen's log-to-veneer conversion and reported grade of veneers.  Id. at 29–36.  Commerce determined that minor typographical errors in Linyi Chengen's conversion table did not impact the reliability of the

table overall.  Id. at 21.  After Commerce replaced the obvious typographical errors in the conversion table with the expected sequence, Commerce verified that the formula produced correct results.  Id.  Commerce determined that the conversion table reflected a correct application of the Chinese National Standard formula to Linyi Chengen's reported log volumes and factors of production.  Id.

　　　Commerce verified Linyi Chengen's reported factors of production by reviewing numerous business documents placed on the record by Linyi Chengen.  Id. at 27–28.  Commerce also verified Linyi Chengen's cost of goods sold by confirming consistent audited financial statements and log value accounting.  Id. at 28–29.  Commerce determined based on its review of the record that Linyi Chengen's log-to-veneer volume conversion was accurate because it reflected Linyi Chengen's core veneer production, which allowed for cracks, holes, stains, and knots, and yielded more veneer per log.  Id. at 27–30.  Commerce determined that even though Linyi Chengen did not record its grade of veneers consumed, the practice did not give Linyi Chengen any productive benefit because the surrogate value used did not account for grades of veneers.  Id. at 32–35.  After reviewing Linyi Chengen's factors of production and confirming their accuracy, Commerce determined that Linyi Chengen's reported log volumes represented the accurate volume of logs purchased and consumed by Linyi Chengen.  Id. at 10.  Commerce determined that the facts did not merit a departure from Commerce's normal methodology.  Id. at 38.  Commerce revised Linyi Chengen's dumping margin to 0% after using the normal methodology in lieu of the intermediate input methodology.  Id. at 16.

　　　The court observes that Commerce supported its determination and application of the chosen methodology by verifying the accuracy of Linyi Chengen's conversion table, reported factors of production with related financial statements, reported log volumes, and relevant log-to-

veneer volume conversion, and by addressing minor discrepancies raised by Defendant-Intervenor. Because Commerce had no questions about the accuracy or validity of Linyi Chengen's factors of production, it was reasonable for Commerce to apply its normal methodology to calculate Linyi Chengen's normal value instead of the intermediate input methodology. See 19 U.S.C. § 1677b(c)(3)(B). The court sustains Commerce's revised dumping margin for Linyi Chengen as reasonable and supported by substantial evidence.

### B.     Commerce's Revised Dumping Margin for the Separate Rate Plaintiffs

The second issue considered by the court is whether Commerce's revised dumping margin for the Separate Rate Plaintiffs is supported by substantial evidence. The Separate Rate Plaintiffs argue that Commerce erred by averaging Linyi Chengen's de minimis dumping margin and Bayley's China-wide entity dumping margin. Dehua TB Cmts. at 3–11; Celtic Cmts. at 2–5; Taraca Cmts. at 2–11. Defendant maintains that Commerce applied an average of Linyi Chengen's and Bayley's rates properly because the exception in 19 U.S.C. § 1673d(c)(5)(B) allows Commerce to use "any reasonable method" to calculate the all-others separate rate. Def. Resp. at 17; see also Second Remand Results at 14–15, 43.

Commerce is authorized by statute to calculate and impose a dumping margin on imported subject merchandise after determining it is sold in the United States at less than fair value. 19 U.S.C. § 1673. Under § 1673d(c)(5)(A), Commerce determines an all-others rate assigned to non-examined companies by calculating the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely on the basis of facts available, including adverse facts available. Id. § 1673d(c)(5)(A); see Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345, 1351 (Fed. Cir. 2016). If the

estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis, or are determined entirely under 19 U.S.C. § 1677e, Commerce may invoke an exception to establish a separate rate for exporters and producers not individually investigated.  19 U.S.C. § 1673d(c)(5)(B).  The Statement of Administrative Action provides guidance that when the dumping margins for all individually examined respondents are determined entirely on the basis of the facts available or are zero or de minimis, the "expected method" of determining the all-others rate is to weight-average the zero and de minimis margins and margins determined pursuant to the facts available, provided that volume data is available.  Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201.  Commerce may depart from the "expected method" and use "any reasonable method," but only if Commerce reasonably concludes that the expected method is not feasible or results in an average that would not be reasonably reflective of potential dumping margins.  See 19 U.S.C. § 1673d(c)(5)(B); Navneet Publ'ns (India) Ltd. v. United States, 38 CIT __, __, 999 F. Supp. 2d 1354, 1358 (2014) ("[T]he following hierarchy [is applied] when calculating all-others rates—(1) the '[g]eneral rule' set forth in § 1673d(c)(5)(A), (2) the alternative 'expected method' under § 1673d(c)(5)(B), and (3) any other reasonable method when the 'expected method' is not feasible or does not reasonably reflect potential dumping margins."); see also SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201; Albemarle Corp., 821 F.3d at 1351–52 (quoting SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201).  Commerce must determine that the expected method is not feasible or would not be reasonably reflective of the potential dumping margins for non-investigated exporters or producers based on substantial evidence.  Albemarle Corp., 821 F.3d at 1352–53; see also Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1012

(Fed. Cir. 2017). The exception in 19 U.S.C. § 1673d(c)(5)(B) applies expressly to market economy proceedings but has been extended to non-market economy proceedings as well. Albemarle Corp., 821 F.3d at 1352 n.6; see also Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1374 (Fed. Cir. 2013) ("Bestpak").

On second remand, Commerce noted that "because there are no calculated rates for individually-investigated respondents other than zero or rates based on total AFA, we have applied the simple average of the revised AFA rate of 114.72[%] and the [0%] rate calculated for [Linyi] Chengen as a reasonable method to determine the rate assigned to the producer/exporter combinations that are party to this litigation and that have been found to be eligible for a separate rate." Second Remand Results at 44. To justify its departure from the expected method, Commerce stated that the expected method of weight-averaging the zero and de minimis margins and margins determined pursuant to the facts available (i.e., using the 0% rate assigned to Linyi Chengen) would not be reasonably reflective of the potential dumping margins for the Separate Rate Plaintiffs. Id.

Commerce attempted to identify several facts supporting its methodology of departing from the expected method. First, Commerce explained that the mandatory respondents in this investigation, Linyi Chengen and Bayley, were not representative of the Separate Rate Plaintiffs because Bayley was ultimately determined to be a China-wide entity due to Bayley's failure to provide essential information regarding Bayley's ownership and management during the investigation. See id. at 48–49. After noting Bayley's designation as a China-wide entity, Commerce stated that, "[b]ased on that conclusion, we cannot presume that [Linyi] Chengen's rate, who is only one of two mandatory respondents in this investigation, is reasonably reflective of the potential dumping margins for the non-investigated companies." Id. at 49.

Second, Commerce asserted that "additional record evidence indicates that affirmative dumping potentially existed during the [period of investigation], such that the 0% rate calculated for [Linyi] Chengen would not be representative of the estimated dumping margins for the non-investigated companies." Id. Commerce cited evidence of actual price quotes for subject merchandise exported from China to United States customers during the period of investigation by an exporter other than Linyi Chengen, which was alleged in the Petition. Id. Commerce determined that based on the margins of 114.72% and 104.06% contained in the Petition, "record evidence demonstrates that potential dumping by the separate rate companies existed during the [period of investigation] far in excess of the 0% rate calculated for [Linyi] Chengen." Id. Commerce determined that Linyi Chengen's 0% dumping margin would not reflect the potential dumping margins of the Separate Rate Plaintiffs because the record did not support a de minimis rate for Bayley and a "cursory analysis indicate[d] that Bayley's reported data [were] widely divergent from [Linyi] Chengen's data." Id. at 50.

Commerce is required to support its departure from the expected method by demonstrating that Linyi Chengen's 0% dumping margin rate would not be reasonably reflective of the Separate Rate Plaintiffs' potential dumping margins based on substantial evidence. Albemarle Corp., 821 F.3d at 1352–53; see also Changzhou Hawd, 848 F.3d at 1012.

With respect to the first purported fact asserted by Commerce, that Bayley's designation as a China-wide entity supports the conclusion that Linyi Chengen's 0% rate is not reasonably reflective of the potential dumping margins for the non-investigated companies, the court notes that Commerce's assertion is merely that, a bald assertion without any citations to evidence on the record. Commerce merely concluded, without any evidentiary support, that Bayley's lack of cooperation and designation as a China-wide entity led to the logical conclusion that the Separate

Rate Plaintiffs' potential dumping margin rate was different than Linyi Chengen's dumping rate of 0%. Commerce failed to provide any evidence showing how the Separate Rate Plaintiffs' potential dumping margin was different than Linyi Chengen's dumping margin. Commerce also failed to provide any evidence showing what the Separate Rate Plaintiffs' potential dumping margin might be. As noted in Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370 (Fed. Cir. 2013), Commerce creates its own problems when it selects only two mandatory respondents and has minimal information on the record to support its assertions regarding the potential dumping margins of separate rate respondents. Bestpak, 716 F.3d at 1376–79 (citing Yangzhou Bestpak Gifts & Crafts Co. v. United States, 35 CIT 948, 955 n.4 (2011) ("Commerce put itself in a precarious situation when it selected only two mandatory respondents.").

With respect to the second purported fact asserted by Commerce, that the margins of 114.72% and 104.06% contained in the Petition were record evidence demonstrating that potential dumping by the separate rate companies existed during the period of investigation far in excess of the 0% rate calculated for Linyi Chengen, this is the only evidentiary assertion in the Second Remand Results. Plaintiffs argue that Bayley's AFA rate of 114.72% was not based on economic reality or the company's actual sales or factors of production and is "simply an estimated rate from the petition that is totally unconnected to Bayley's actual antidumping margin." Dehua TB Cmts. at 8. In addition, Plaintiffs assert that Commerce's "reasoning has nothing to do with the record facts concerning the separate rate companies themselves." Celtic Cmts. at 5. The court finds that the margins of 114.72% and 104.06% contained in the Petition do not provide support for the assertion that the Separate Rate Plaintiffs' dumping margins are different than Linyi Chengen's 0% rate because the margins in the Petition are "untethered" to the actual dumping margins of the Separate Rate Plaintiffs. See Bestpak, 716 F.3d at 1379.

Commerce cited no credible economic evidence on the record showing that the Separate Rate Plaintiffs' dumping margins are different than Linyi Chengen's 0% rate or connecting the Separate Rate Plaintiffs' dumping margins with the rate of 57.36% that was derived from the average of Linyi Chengen's 0% rate and Bayley's AFA rate of 114.72%.

The court concludes that Commerce's explanations, without citations to any credible record documents, do not rise to the level of substantial evidence required to support Commerce's departure from the expected method and apply the "any reasonable method" exception in 19 U.S.C. § 1673d(c)(5)(B). Commerce's mere assertions without substantial evidence do not serve the purpose of calculating dumping margins as accurately as possible. Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The court remands the Second Remand Results for Commerce to provide more evidence, or otherwise change its determination in accordance with this opinion.

## CONCLUSION

For the reasons set forth above, the court sustains Commerce's Second Remand Results with respect to Commerce's revised dumping margin for Linyi Chengen, and remands Commerce's determination of the dumping margin for the Separate Rate Plaintiffs.

Accordingly, it is hereby

**ORDERED** that the Second Remand Results are remanded to Commerce to provide more evidence, or otherwise change its determination regarding the dumping margin for the Separate Rate Plaintiffs; and it is further

**ORDERED** that Commerce shall afford the parties at least twelve (12) business days to comment on the draft third remand results; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1) Commerce shall file the third remand results on or before February 5, 2021;

(2) Commerce shall file the administrative record on or before February 19, 2021;

(3) Comments in opposition to the third remand results shall be filed on or before March 19, 2021;

(4) Comments in support of the third remand results shall be filed on or before April 16, 2021; and

(5) The joint appendix shall be filed on or before April 30, 2021.

    /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:   December 21, 2020
       New York, New York