PUBLIC VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| Linyi Chengen Import and Export Co., Ltd | )<br>)<br>) |
| Plaintiff, | ) |
| and | )<br>) |
| Celtic Co., Ltd.., et al., | ) Consol. Ct. No. 18-00002 |
| Plaintiff-Intervenors, | )<br>) **PUBLIC VERSION** |
| | ) Business Proprietary Information |
| v. | ) Removed at page 4 and 5 |
| United States | )<br>)<br>) |
| Defendant, | ) |
| and | )<br>) |
| Coalition for Fair Trade in Hardwood Plywood | )<br>) |
| Defendant-Intervenor. | )<br>) |

**COMMENTS IN OPPOSITION TO THE THIRD REMAND REDETERMINATION ON BEHALF OF CONSOLIDATED PLAINTIFFS ZHEJIANG DEHUA TB IMPORT & EXPORT CO., LTD. ET.AL.**

Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
750 17th St., NW
Ste 900
Washington, DC 20006
(202) 378-2409
Email: Jeffrey.Neeley@huschblackwell.com

Dated: May 3, 2021

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.   FACTS ..................................................................................................................... 1

III.  ARGUMENT........................................................................................................... 3

IV.  CONCLUSION ....................................................................................................... 8

# TABLE OF AUTHORITIES

## Cases

*Albemarle Corporation v. United States*, 821 F.3d 1345 (Fed. Cir. 2016) .................................. 4

*Amanda Foods (Vietnam) Ltd. v. United States*, 714 F.Supp.2d 1282 (Ct. Int'l Trade 2010) ........ 4

*Amanda Foods (Vietnam) Ltd. v. United States*, 837 F.Supp.2d 1338 (Ct. Int'l Trade 2012) ........ 7

*Baroque Timber Industries (Zhongshan) Company Limited v. United States*, 971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) .................................. 4

*Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006 (Fed. Cir. 2017) ....................... 4

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) .................................. 4

*F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed.Cir.2000) .................................. 3

*Linyi Chengen Imp. & Exp. Co. v. United States*, 487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) .................................. 2, 7

*Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1365 (Ct. Int'l Trade 2014) .................................. 7

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) .................................. 3

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ............. 3

**COMMENTS IN OPPOSITION TO THE THIRD REMAND REDETERMINATION ON BEHALF OF CONSOLIDATED PLAINTIFFS ZHEJIANG DEHUA TB IMPORT & EXPORT CO., LTD. ET.AL.**

I.   INTRODUCTION

Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., et. al. ("Consolidated Plaintiffs")[1] hereby file these comments in opposition to the third remand redetermination filed by Defendant United States on March 22, 2021 pursuant to Slip Op. 20-183 (CIT December 21, 2020). Final Results of Redetermination Pursuant to Court Remand Order in *Linyi Chengen Import and Export Co., Ltd. v. United States*, Consol. Court No. 18-0002, dated March 22, 2021 ("Third Remand Redetermination'). In its Third Remand Redetermination, the U.S. Department of Commerce ("Commerce") again erred in the margin assigned to non-selected cooperative respondents ("Separate Rate Respondents"). For the reasons argued below, Consolidated Plaintiffs respectfully request that the Court remand this case with instructions that Commerce again reconsider the calculation of the margin assigned to Separate Rate Respondents.

II.   FACTS

In its second remand, Commerce assigned Chengen a margin of 0.00 percent. Given Chengen's revised margin, Commerce was required to revise the margin for Separate Rate Respondents since their margin was based on Chengen's margin in the underlying investigation.

---

[1] In addition to Zhejiang Dehua TB Import & Export Co., Ltd., the Consolidated Plaintiffs represented by Husch Blackwell, LLP are Highland Industries, Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D.Enterprise Limited., Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic and Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

Instead of continuing to base the separate rate on Chengen's rate, i.e. the only rate calculated for a mandatory respondent, Commerce calculated a rate for Separate Rate Respondents based on the simple average of Chengen's 0.00 percent rate with the revised rate assigned to the PRC-wide entity of 114.72 percent. This resulted in a margin for Separate Rate Respondents of 57.36 percent.

In its decision on the second remand, the Court rejected Commerce's determination to base the rate for Separate rate respondents on the average of Linyi Chengen's rate and the AFA rate. In rejecting Commerce's previous attempt to apply a rate of 57.36 percent to Separate Rate Respondents, the Court found that "Commerce cited no credible economic evidence on the record showing that the Separate Rate Plaintiffs' dumping margins are different than Linyi Chengen's 0% rate or connecting the Separate Rate Plaintiffs' dumping margins with the rate of 57.36% that was derived from the average of Linyi Chengen's 0% rate and Bayley's AFA rate of 114.72%." *Linyi Chengen Imp. & Exp. Co. v. United States,* 487 F. Supp. 3d 1349, 1358-1359 (Ct. Int'l Trade 2020). The Court remanded the issue to Commerce again to "support its departure from the expected method by demonstrating that Linyi Chengen's 0% dumping margin rate would not be reasonably reflective of the Separate Rate Plaintiffs' potential dumping margins based on substantial evidence." *Id.* In this Third Remand Redetermination, Commerce again refuses to assign Separate Rate Respondents the only calculated rate for a fully investigated respondent on the record, the zero rate assigned to Linyi Chengen, and continues to defend its decision to assign Separate Rate Respondents a rate of 57.36 percent.

2

### III.  ARGUMENT

Commerce's Third Remand Redetermination continues to be unsupported by substantial evidence and is otherwise not in accordance with law.  The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") addressed the same factual scenario in *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed. Cir. 2013) ("Bestpak").  In that case, one of the two mandatory respondents was assigned a total AFA rate and the other was assigned a de minimis rate. Commerce likewise initially assigned separate rate respondents an average of the two rates, stating that this was a reasonable method.  On appeal, the Federal Circuit held that this methodology was unreasonable as applied since it did not reflect economic reality and had no relationship to the separate rate respondents actual dumping margin.  The same is true based on the facts of this case.  As the Federal Circuit explained,  "{a}n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible"  and the rate determination for non-mandatory, cooperative respondents must "bear some relationship to the actual dumping margins." *Id*. at 1379-1380 *citing Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  The Court also noted that it was unreasonable to assign a cooperative respondent a rate that was half of the PRC-wide rate when the respondent had demonstrated that it was independent of government control and that such a result may amount to being punitive, which is not permitted by the statute  *Id*. at 1379 *citing F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed.Cir.2000) ("{T}he purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins.").  Commerce's actions for the Separate Rates Respondents here result in just the opposite of encouraging cooperation – Commerce is effectively telling separate rates companies that their cooperation

3

will not matter and that Commerce will simply assign an arbitrary and punitive rate to them, regardless of their cooperation.  The Courts have made similar decisions in a number of cases. *See Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012); *Baroque Timber Industries (Zhongshan) Company Limited v. United States*, 971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014); *Navneet Publications (India) Ltd. v. United States*, 999 Fed. Supp. 2d 1354 (Ct. Int'l Trade 2014); A*manda Foods (Vietnam) Ltd. v. United States,* 714 F.Supp.2d 1282 (Ct. Int'l Trade 2010); *Albemarle Corporation v. United States,* 821 F.3d 1345 (Fed. Cir. 2016); and *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006 (Fed. Cir. 2017).

     In this case, Commerce again fails to provide adequate evidence to support its methodology.   Rather, Commerce merely cherry-picks the record in an attempt to find differences between Separate Rate Respondents and Linyi Chengen and makes absolutely no attempt to connect the Separate Rate Plaintiffs' dumping margins with the rate of 57.36%. This analysis suffers from the same deficiencies as in the Commerce's previous remand redetermination and should be rejected as not supported by substantial evidence or otherwise in accordance with law.

     In the Third Remand Redetermination, Commerce again attempts to justify its reliance on the rate calculated in the petition as an element of the rate assigned to Separate Rate Respondents.   Commerce's justifications, however, do not change the fact that the rate calculated in the petition and used as a punitive rate, was based on offers to sell, rather than actual commercial transactions.   The fact remains that the rate calculated for [

] in the petition is not evidence of any actual dumping by [

] and the fact that the record contains an invoice from [            ] that allegedly

4

supports the accuracy of the price quote does not change this failure to show actual dumping. Ultimately, Commerce has information on a single U.S. sale by a single Separate Rate Respondent and no way to accurately calculate the normal value for that company. This inadequate information cannot reasonably be used to support a rate of 57.36 percent for all Separate Rate Respondents.

Commerce also attempts to distinguish Chengen from the separate rate companies based on the claim that, unlike Chengen, some of the separate rate respondents acted as resellers of merchandise produced by unaffiliated companies and, therefore, may have had a different cost structure than Chengen. However, Commerce offers no evidence to support its speculation that any of these Separate Rate Respondents actually had different costs than Chengen or that those differences would lead to a higher, as opposed to an even lower margin than Chengen's margin. Ultimately, Commerce itself has to admit that "[t]here are too many possible, unknown variables in the cost structure of a trader/reseller to definitively state the extent of the operational differences between these 25 separate companies involved in this litigation and Chengen." Third Remand Redetermination at 20.

Commerce then attempts to distinguish separate rate respondents from Chengen by comparing the single invoice each separate rate respondents submitted with their Separate Rate Application to Chengen's entire sales database. For example, based on this limited information, Commerce concludes that there are differences between the Separate Rate Respondents and Chengen:

> An analysis of the data provided in SRAs indicates that, of the 15 separate rate companies which are party to this litigation and appear to have produced all of the plywood they sold to the United States during the POI, three of those companies had sales of plywood at prices lower than Chengen's lowest selling price of any product ([    ] USD/m3).

Third Remand Redetermination at 22.

> More broadly, of the 40 non-examined, separate rate companies involved this litigation 14 companies reported sales of wood species or products that were not sold by Chengen and for which we also have no comparison data from which to draw any conclusions.

Third Remand Redetermination at 23.  It is unreasonable and without evidentiary support for Commerce to rely on a single invoice to generalize about each company's possible selling behavior and then to further speculate about the possible selling behavior of all Separate Rate Respondents compared to Chengen.  One could just as easily say that 12 of the 15 companies had sales of plywood at prices higher than Chengen's lowest selling price of any product, but that would not support Commerce's apparent goal of obtaining a higher separate rate.  In addition, it is not a fair comparison because Chengen reported all of its sales to the United States during the course of the investigation.  By contrast, for Separate Rate Respondents, Commerce has required submission of only a single invoice in each separate rate application, which was only intended to demonstrate that each company had a sale during the period of investigation and were, therefore, eligible for a separate rate, and not to establish a dumping margin.  This single invoice is insufficient information for Commerce to determine the extent of a company's similarity to Chengen.  Of course, Commerce also does not have any data to determine the normal value for any of the Separate Rate Respondents, in order to determine if their price constituted a dumped price, regardless of how that sole record price compares to Chengen's prices.

Ultimately, Commerce's analysis simply reveals the fact that Commerce does not have the information necessary to calculate a dumping margin for Separate Rate Respondents.  That is true in every case and is the reason that the Courts have required Commerce to base the margin for Separate Rate Respondents on the margins of the mandatory respondents, even when that margin is zero.  As the Court stated in *Navneet*, the zero margin constitutes "…the only contemporaneous evidence of pricing practices among large exporters of subject merchandise

and are presumed to represent respondents as a whole". *Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1365 (Ct. Int'l Trade 2014) citing *Amanda Foods (Vietnam) Ltd. v. United States,* 837 F.Supp.2d 1338, 1345–46 (Ct. Int'l Trade 2012). Moreover, the fact that Commerce does not have more data to determine a different margin for Separate Rate Respondents is Commerce's own fault, as the courts have repeatedly noted. As the U.S. Court of International Trade noted in this case, Commerce created its own problem when in selected only two mandatory respondents.

> As noted in Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370 (Fed. Cir. 2013), Commerce creates its own problems when it selects only two mandatory respondents and has minimal information on the record to support its assertions regarding the potential dumping margins of separate rate respondents. Bestpak, 716 F.3d at 1376–79 (citing Yangzhou Bestpak Gifts & Crafts Co. v. United States, 35 CIT 948, 955 n.4, 783 F.Supp.2d 1343 (2011)) ("Commerce put itself in a precarious situation when it selected only two mandatory respondents.").

*Linyi Chengen Imp. & Exp. Co. v. United States,* 487 F. Supp. 3d 1349, 1358 (Ct. Int'l Trade 2020).

As in the last remand redetermination, Commerce is again relying on scant information and simply cherry-picking data elements from the record that are wholly unconnected to the actual economic experience of the Separate Rate Respondents. By Commerce's criteria, all of the Separate Rate Respondents would apparently have to be the same structure as Chengen with all prices the same or higher than Chengen in order for Commerce to assign as separate rate of zero percent. Given how little information Commerce collects from Separate Rate Respondents, this is a standard that could never be met, and Commerce must know that. In light of the record of this review, the only reasonable margin to assign to Separate Rate Respondents is a margin of zero, based on the calculated rate assigned to the only cooperative respondent in this review. For these reasons, the Court should remand this issue to Commerce again to reconsider the

margin assigned to Separate Rate Respondents.  Alternatively, given Commerce's intransigence, the Court should order Commerce to assign Separate Rate Respondents a zero margin.

## IV. CONCLUSION

In light of the foregoing, Commerce's Third Remand Results continue to be arbitrary and capricious, not supported by substantial evidence, and not in accordance with the law.

Respectfully submitted,

/s/ Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy

**Husch Blackwell LLP**
750 17th St., NW
Ste 900
Washington, DC 20006
(202) 378-2409
Email: Jeffrey.Neeley@huschblackwell.com

*Counsel for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., et. al.*

Dated:  May 3, 2021

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Consolidated Plaintiffs' comments, as computed by Husch Blackwell's word processing system Microsoft Word 2010, is 2,232 words.

/s/ Jeffrey S. Neeley
Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., et. al.*

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing was electronically filed on May 3, 2021, via the Court's ECF filing system, which automatically serves notice on counsel of record.

/s/ Jeffrey S. Neeley
Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., et. al.*
