## UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES,  JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., <br>                Plaintiff, <br><br>    and <br><br> SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,* <br><br>            Consolidated Plaintiffs, <br><br>    v. <br><br> UNITED STATES, <br><br>            Defendant, <br><br>    and <br><br> THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br>          Defendant-Intervenor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Consol. Court No. 18-00002 <br><br><br> **NON-CONFIDENTIAL VERSION** <br> Business Proprietary Information <br> Removed on Pages 11, 13-14 |

---

### DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
Savannah Rose Maxwell
Attorney
U.S. Department of Commerce
Office of the Chief Counsel For Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-3748
Fax: (202) 482-4912
Email:  Savannah.Maxwell@trade.gov

SONIA M. ORFIELD
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 353-0534
Fax: (202) 514-7965
Email: Sonia.M.Orfield@usdoj.gov

June 1, 2021

## TABLE OF CONTENTS

BACKGROUND............................................................................................................2

    I.      Administrative Determination Under Review ..........................................2

    II.     The Court's First Remand Order ...............................................................4

    III.    Commerce's First Remand Redetermination............................................5

    IV.    The Court's Second Remand Order ...........................................................5

    V.     Commerce's Second Remand Redetermination........................................6

    VI.    The Court's Third Remand Order ..............................................................6

    VII.   Commerce's Third Remand Redetermination ..........................................7

ARGUMENT ...............................................................................................................8

    I.      Standard Of Review....................................................................................8

    II.     Commerce's Calculation of the Separate Rate Was Based On Substantial
            Evidence and In Accordance with Law......................................................9

    III.    Dehua TB, Taraca, and the Separate Rate Plaintiff's Arguments Regarding
            Commerce's Calculation of the Separate Rate Are Unavailing ...............14

         A.     Commerce's Calculation of the Separate Rate By Averaging Chengen's
                  Rate with the China-Wide Entity Rate is in Accordance with Law ..............15

         B.     Plaintiff's Additional Arguments That Commerce's Determination Is Not
                  Supported by Substantial Evidence Are Unavailaing ...................................16

         C.     In Light Of Commerce's Lawful Assignment Of A Non-Zero Rate, The
                  Court Need Not Address Plaintiff's Arguments That the Separate Rate
                  Companies Should Be Excluded from The Order.........................................21

CONCLUSION...........................................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Albemarle Corp. & Subsidiaries v. United States,*
    821 F.3d 1345 (Fed. Cir. 2016) ..................................................................10

*Changzhou Hawd Flooring Co. v. United* States,
    324 F.3d 1317 (Ct. Int'l Trade 2018) .....................................................21, 22

*Changzhou Hawd Flooring Co, Ltd. v. United States,*
    848 F.3d 1006 (Fed. Cir. 2017).......................................................... 10, 14. 16

*Changzhou Hawd v. United States,*
    947 F.3d 781 (Fed. Cir. 2020)............................................................ 19, 22, 23

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ...............................................................................8, 16

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) .....................................................................................9

*I.N.S. v. Elias-Zacarias,*
    502 U.S. 478 (1992) .....................................................................................9

*Linyi Chengen Import and Export Co., Ltd. v. United States,*
    391 F. Supp. 1283 (Ct. Int'l Trade 2019)....................................................... 4

*Linyi Chengen Import and Export Co., Ltd. v. United States,*
    433 F. Supp. 3d 1278 (Ct. Int'l Trade 2020) .................................................. 5

*Linyi Chengen Import and Export Co., Ltd., et al. v. United States,*
    487 F. Supp.3d 1349 (Ct. Int'l Trade 2020) .............................................2, 7

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ................................................. 8

*Navneet Publications (India) Ltd. v. United States,*
    999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014) .............................................15, 20

*Timber, Baroque Timber Industries (Zhongshan) Co. Ltd. v. United States,*
    971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) .................................................15

*Transcom, Inc. v. United States,*
    294 F.3d 1371 (Fed. Cir. 2002) ...................................................................... 9

*U.S. Steel Corp. v. United States*,
   34 C.I.T. 252 (2010)............................................................................................20

*Verson, A Div. of Allied Prods. Corp. v. United States*,
   5 F. Supp. 2d 963, (Ct. Int'l Trade 1998)..........................................................21

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,*
   716 F.3d 1370 (Fed. Cir. 2013).......................................................................... 9

## Statutes

19 U.S.C. § 1673d(c)(5).................................................................................14, 16

19 U.S.C. § 1673d(c)(5)(A) ...........................................................................9, 20

19 U.S.C. § 1673d(c)(5)(B)......................................................................... 6, 10, 20

19 U.S.C. § 1677f-1(c)(2) ..................................................................................20

19 U.S.C § 1677m .............................................................................................19

19 U.S.C. §1677m(a) ........................................................................................19

19 U.S.C. § 1677m(a)(1)(A) .............................................................................22

## Regulations

19 C.F.R. 351.204 (e)(1) ...................................................................................21

## Administrative Determinations

*Certain Hardwood Plywood Products from the People's Republic of China,*
   82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (*Final Determination*)................... 2

*Certain Hardwood Plywood Products from the People's Republic of China,*
   83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (*Amended Final Determination and
   Order*)............................................................................................................3, 12

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,<br><br>         Plaintiff,<br><br>   and<br><br>SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,*<br><br>         Consolidated Plaintiffs,<br><br>     v.<br><br>UNITED STATES,<br><br>         Defendant,<br><br>and<br><br>THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>         Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Consol. Court No. 18-00002<br><br><br>**NON-CONFIDENTIAL VERSION**<br>Business Proprietary Information Removed on Pages 11, 13-14 |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by consolidated plaintiffs Taraca Pacific, Inc., *et al.* (Taraca), Zhejiang Dehua TB Import & Export Co., Ltd., *et al.* (Dehua TB), and the Separate Rate Plaintiffs.[1]  *See* Taraca Cmts., May 3, 2021,

---

[1]  Consolidated Plaintiffs, Celtic Co., Ltd., Anhui Hoda Wood Co., Ltd., Far East American, Inc., Jiaxing Gsun Import and Export Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Shandong

ECF No. 164; Dehua TB Cmts., May 3, 2021, ECF No. 162; Separate Rate Plaintiff Cmts., May 3, 2021, ECF No. 166. Their comments and our response concern the Department of Commerce's third remand redetermination, *see Final Results of Remand Pursuant to Court Remand,* March 22, 2021 (*Third Remand Redetermination*), ECF No. 143,[2] issued pursuant to this Court's opinion and order, *Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, 487 F. Supp.3d 1349 (Ct. Int'l Trade 2020) (*Third Remand Order*), ECF No. 136. The Court should sustain the remand redetermination and enter final judgment for the United States because Commerce has complied with the Court's order, and because the remand redetermination is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

### I.    Administrative Determination Under Review

In November 2017, Commerce issued its final affirmative determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China. *See Certain Hardwood Plywood Products from the People's Republic of China* 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (*Final Determination*), P.R. 882,[3] and the accompanying Issues and Decision Memorandum (IDM), P.R. 871. In January

---

Qishan International Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd. (collectively "Separate Rate plaintiffs").

[2] The remand redetermination was issued as a confidential version, ECF No. 143, and a public version, ECF No. 144. References in this brief are to the public version.

[3] "P.R." and "C.R." refer to public and confidential documents, respectively, in the investigation record, while "P.R.R." and "C.R.R." refer to documents in the public remand record and confidential remand record.

2018, Commerce published the amended final determination and order. *See Certain Hardwood Plywood Products from the People's Republic of China,* 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (*Amended Final Determination and Order*), P.R. 894.

In the final determination, Commerce determined that Linyi Chengen Import and Export Co., Ltd. (Chengen) had failed to accurately record and substantiate its log purchase and consumption records for factors of production (FOPs) associated with producing veneers. Specifically, at verification, Commerce learned that Chengen does not receive supplier invoices for poplar logs, Chengen's most significant input. *Id.* at 24-25; Verification Report, P.R. 834 at 13. Rather, upon the delivery of logs, Chengen officials themselves calculate the volume of delivered logs and record those quantities on warehouse-in tickets. IDM at 24-26; P.R. 834 at 11-12. Commerce officials also learned for the first time at verification that Chengen officials calculate log volume using a conversion table and formula that bases log volume on the diameter of the narrow end of a log, but did not receive timely, translated information regarding the origin of this calculation. IDM at 24-25; P.R. 834 at 11-12. Because of concerns with the accuracy of Chengen's calculation and the lack of third-party corroboration Commerce determined that its standard methodology of calculating normal value in non-market economy cases by valuing the FOPs that a respondent consumes in producing subject merchandise was not appropriate. IDM at 23. generated documentation). *Id.* Instead, Commerce determined that applying the alternate intermediate input methodology to calculate normal value would result in more accurate margin calculations. *Id.* at 23. Accordingly, Commerce applied this methodology using Chengen's consumption of veneers used in the production of hardwood plywood. *Id.*

Chengen, as well as several companies subject to Commerce's separate rate

calculation, which was based on Chengen's dumping margin, filed actions challenging the final determination. These challenges were consolidated into this action.

## II.     The Court's First Remand Order

In its first remand order, this Court held that Commerce failed to explain how record evidence – particularly the verification report and related exhibits – supported Commerce's findings that Chengen's log consumption calculations were unreliable. *Linyi Chengen Import and Export Co., Ltd. v. United States,* 391 F. Supp. 1283, 1294 (Ct. Int'l Trade 2019) (*First Remand Order*). The Court identified two evidentiary issues: (1) conflicting accounts between Commerce and Chengen regarding whether the conversion table and formula Chengen used to calculate its log consumption volume were the Chinese National Standard and whether they yielded accurate log volumes; and (2) whether the record contains third-party confirmation – including warehouse in-tickets and value-added tax invoices – of Chengen's reported log consumption. *Id.* The Court specifically contrasted Commerce's determination that the record did not support Chengen's claim that the conversion table and formula are the Chinese National Standard with Chengen's assertion in its brief that, at verification, Commerce declined to accept pages that Chengen offered along with the requested table and formula. *Id.* Citing perceived inconsistencies in the record and statements made by Chengen before this Court, the Court held that Commerce's *Final Determination* was arbitrary and capricious, and remanded for Commerce to reconsider its findings regarding Chengen's reporting of its log consumption. *Id.* at 1294, 1301. The Court further directed Commerce to reconsider the rates applied to the separate rate companies, if Commerce were to change Chengen's margin on remand. *Id.* at 1301.

4

III.    **Commerce's First Remand Redetermination**

On August 23, 2019, Commerce issued the results of its first remand redetermination, in which it provided further explanation about the perceived inconsistencies in the record, including a declaration explaining that Chengen did not timely submit information demonstrating that the conversion table and formula it uses are the Chinese National Standard and that they yield accurate log volumes,.but continued to find that Chengen had failed to substantiate its log volume consumption and reporting. *First Remand Redetermination,* ECF No. 88, 89*,* at 3; *Id.* at 15-24, 57-60; Based upon this explanation, Commerce continued to find that Chengen had failed to substantiate its poplar log volume consumption and reporting and continued to apply the intermediate input methodology to value Chengen's consumption of veneers. *Id.* at 60. Accordingly, Commerce made no changes to Chengen's margin or the separate rate. *Id.*

IV.    **The Court's Second Remand Order**

In its second remand order, the Court concluded that it was "unreasonable for Commerce to refuse to consider the entirety of the document purporting to be the Chinese National Standard when the document is readily available and highly relevant." *Linyi Chengen Import and Export Co., Ltd. v. United States,* 433 F. Supp. 3d 1278, 1285 (Ct. Int'l Trade 2020) (*Second Remand Order*). The Court instructed Commerce to to reconsider its final determination in light of this information. *Id.* In addition, the Court concluded that Commerce's requirement that Chengen support its reported volumes of log consumption by an independent third-party source was contrary to law. *Id.* at 1285-86. Finally, the Court directed Commerce to "make appropriate adjustments to the separate rate parties before the court in this action" if Commerce made changes to Chengen's dumping margin on remand. *Id.* at 1286.

## V.      Commerce's Second Remand Redetermination

Under respectful protest, Commerce reconsidered the record evidence and revised Chengen's

margin calculation by calculating normal value using Chengen's log FOPs, rather than the

intermediate input methodology based on FOPs of wood veneers.  *Second Remand*

*Redetermination,* ECF No. 113, 114, at 3.  Commerce also recalculated the margin for the non-

individually examined, separate rate companies involved in this litigation, by averaging

Chengen's 0.00 percent rate with the rate assigned to the China-wide entity in the final

determination (183.36 percent), and assigned them a rate of 91.68 percent for the draft remand.

ECF 113, 114 at 8.

Following the receipt of interested parties' comments regarding the calculation of the

separate rate, Commerce revised the rate assigned to the China-wide entity to 114.72 percent,

the highest dumping margin alleged in the petition.  Thus, Commerce recalculated the rate

assigned to the non-individually examined separate rate companies that are parties to this

litigation by averaging Chengen's new 0.00 percent rate with the 114.72 percent rate assigned to

the China-wide entity, resulting in a rate of 57.36 percent.  *Second Remand Redetermination* at

4.

## VI.     The Court's Third Remand Order

The Court subsequently sustained Commerce's revised estimated weighted average dumping

margin for Chengen as reasonable and supported by substantial evidence.  The Court, however,

instructed Commerce to either provide more evidence supporting its departure from the expected

method in calculating the rate applied to separate rate respondents, or to change its

determination.  Specifically, the Court held that Commerce did not sufficiently justify its

departure from the "expected method" in 19 U.S.C. § 1673d(c)(5)(B) because the dumping

margins of 114.72 and 104.06 contained in the petition do not support the conclusion that the

Separate Rate Plaintiffs' dumping margins are different than Chengen's zero percent rate. The Court found that "the margins in the Petition are 'untethered' to the actual dumping margins of the Separate Rate Plaintiffs." *Third Remand Order*, 487 F. Supp. 3d at 1358.

The Court further found that Commerce must support its departure from the expected method with substantial evidence demonstrating that Chengen's zero percent dumping margin rate would not be reasonably reflective of the Separate Rate Plaintiffs' potential dumping margins. The Court held that Commerce's assertion that the lack of cooperation by the other mandatory respondent, Shandong Dongfang Bayley Wood Co., Ltd. (Bayley), and its designation as part of the China-wide entity did not equate to a conclusion that the Separate Rate Plaintiffs' potential dumping margin rate was different than Chengen's dumping rate of zero percent. The Court further stated that Commerce cited no "economic evidence" showing that the Separate Rate Plaintiffs' dumping margins are different from Chengen's, and ordered Commerce to provide more evidence, or otherwise change its determination regarding the estimated weighted-average dumping margin for the Separate Rate Plaintiffs. *Third Remand Order*, 487 F. Supp.3d at 1358-1359.

## VII.   Commerce's Third Remand Redetermination

On January 19, 2021, Commerce released its draft results of redetermination, citing additional record evidence and continuing to average Chengen's zero rate with the rate assigned to the China-wide entity. *Draft Results of Remand Redetermination*, P.R.R. 1. After consideration of the parties' comments, Commerce issued its third remand redetermination on March 22, 2021. *Third Remand Redetermination*, P.R.R. 7. Commerce provided additional explanation concerning its conclusions in the *Second Remand Redetermination* and continued to calculate an estimated dumping margin for non-examined companies receiving a separate rate by

averaging Chengen's 0.00 percent rate with the rate assigned to the China-wide entity. *Third Remand Redetermination* at 5. Commerce examined the relevant economic evidence on the record. Specifically, Commerce considered an invoice from a commercial transaction of the separate rate applicant exporter which formed the basis for the price quotes in the petition, as well as commercial invoices submitted by each of the Separate Rate Plaintiffs for a sale of subject merchandise during the period of investigation. *Id*. at 17 and 21. *Third Remand Redetermination* at 17 and 21.

Commerce determined that these invoices supported the conclusion that the separate rate companies' potential dumping differed from that of Chengen's pricing behavior, and thus Chengen's rate alone was not reflective of the separate rate companies' potential dumping during the period of investigation. Thus, Commerce, operating under the exception to the expected method, calculated the rate assigned to the non-individually examined separate rate companies that are party to this litigation by averaging Chengen's sustained 0.00 percent rate with the 114.72 percent rate assigned to the China-wide entity, resulting in a rate of 57.36 percent. *Third Remand Redetermination* at 5.

## **ARGUMENT**

### I.  **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States,* 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Under this

standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966) (citations omitted).   Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.   *See I.N.S. v. Elias-Zacarias,* 502 U.S. 478, 483-84 (1992).

## II.   Commerce's Calculation of the Separate Rate Was Based On Substantial Evidence and In Accordance with Law

The Court's remand order directed Commerce to: (a) provide "credible economic evidence" showing that the Separate Rate Plaintiffs' dumping margins are different than Chengen's rate, or connecting such dumping margins with the rate of 57.36 percent that was derived from averaging Chengen's zero percent rate and the China-wide rate of 114.72 percent, or (b) change its determination in accordance the Court's opinion.   *See Third Remand Order* at 1358-59.   On remand, Commerce complied with the Court's order by supporting its determination to depart from the expected method with record evidence that the pricing behavior of the Separate Rate Plaintiffs was different from Chengen's experience.   Commerce's calculation of the separate rate was supported by substantial evidence, in accordance with law, and should be sustained.

Commerce's practice is to assign to separate-rate entities that were not individually examined a rate equal to the average of the rates calculated for the individually investigated respondents, excluding any rates that are zero, *de minimis*, or based entirely on adverse facts available (AFA), consistent with 19 U.S.C. § 1673d(c)(5)(A).   *See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,* 716 F.3d 1370, 1374 (Fed. Cir. 2013) (*citing Transcom, Inc. v.*

*United States,* 294 F.3d 1371, 1374 (Fed. Cir. 2002)).  However, when, as here, the estimated

weighted-average dumping margins for all exporters and producers individually investigated are

zero, *de minimis*, or determined entirely under section 1677e of the Act, Commerce may use

"any reasonable method to establish the rate for exporters and producers not individually

investigated, including averaging the estimated weighted average dumping margins determined

for the exporters and producers individually investigated."  19 U.S.C. § 1673d(c)(5)(B).  "{T}he

expected method in such cases will be to weight-average the zero and *de minimis* margins and

margins determined pursuant to the facts available."  Statement of Administrative Action

accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA) at

873.

      However, "if this method is not feasible, or if it results in an average that would not be

reasonably reflective of potential dumping margins for non-investigated exporters or producers,

Commerce may use other reasonable methods."  *Id*.  Thus, although the rates determined for the

"mandatory respondents are assumed to be representative" of the experience of the non-selected

companies, this "presumption of representativeness may be overcome" when there is a

"reasonable basis for concluding that the separate respondents' dumping is different" from the

mandatory respondents.  *Changzhou Hawd Flooring Co, Ltd. v. United States,* 848 F.3d 1006,

1012 (Fed. Cir. 2017) (*citing Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345,

1351-54 (Fed. Cir. 2016) (explaining that Commerce cannot "deviate from the expected method

unless it is found, based on substantial evidence, that the separate-rate firms' dumping is

different from that of the mandatory respondents.").

      Because the record does not contain the information needed to determine the actual

dumping margins of the separate rate companies, Commerce looked for record evidence that

would allow it to conduct the analysis requested by the Court: whether the rate assigned to the Separate Rate Plaintiffs is representative, or "tethered," to the "actual" dumping margins of those respondents. *Third Remand Redetermination* at 17. Commerce considered actual commercial transactions by the same separate rate applicant exporter (Petition SRA Exporter) from which the price quotes in the petition were obtained, as well as commercial invoices for a sale of subject merchandise during the period of investigation for each of the Separate Rate Plaintiffs. *Id.* at 17 and 21.

     The commercial invoice for the Petition SRA Exporter indicates an actual U.S. sale during the period of investigation of [    ] cubic meters (m³) of [                            ] at a [        ] price of [   ] U.S. dollars/m³. *See* Petition SRA Exporter's Letter, "Submission of [        ] Separate Rate Application," dated January 17, 2017 (Petition Rate SRA) at Exhibit 1, P.R. [   ] , C.R. [   ]. Given that this price was almost identical to one of the price quotes for the Petition SRA Exporter in the petition, which identified [      ] prices for [             ] plywood of [        ], Commerce determined that this evidence of an actual sale supported its inference that this sale would have had a transaction specific margin in the range of the petition rates. *Third Remand Redetermination* at 18-19. Thus, Commerce determined that the prices that formed the basis for the dumping margins in the petition are not "untethered" from the Separate Rate Plaintiffs' actual pricing behavior, but are supported by actual prices at which plywood was sold by a cooperating separate rate respondent during the period of investigation. *Third Remand Redetermination* at 18. Further, Commerce compared this sale with Chengen's sale of the same product and determined that Chengen sold [                        ] at a [      ] price of [   ] USD/m³. *Third Remand Redetermination* at 19 (*citing* Chengen's Letter,

"Revised U.S. Sales Database," dated September 29, 2017 at Exhibit 1 (Chengen's U.S. Sales Database), C.R. 666). Commerce concluded that because Chengen's price is almost 20 percent higher than the price merchandise was sold at by the Petitioner SRA Exporter, the likelihood that the products sold by the Petition SRA Exporter were being dumped is significantly greater than the likelihood that Chengen was dumping its products during the period of investigation. *Third Remand Redetermination* at 19. Commerce concluded that this evidence tied the petition rates to actual prices of merchandise sold by a separate rate company, and that because those prices were significantly lower than the prices at which Chengen sold the same product, Chengen's zero percent rate is not representative of the rate applicable to non-examined separate rate companies in this investigation.

Additionally, as part of its separate rate application, each separate rate applicant was required to submit documentation related to the first sale to an unaffiliated party in the United States during the period of investigation. Accordingly, the record contains at least one commercial invoice for a sale of the merchandise under consideration during the period of investigation for each of the Separate Rate Plaintiffs. *Third Remand Redetermination* at 21-25. Based on its examination of those invoices, Commerce found other facts to support the determination that Chengen's rate is not reflective of the potential selling behavior of the separate rate companies that are party to this litigation.

First, Chengen exclusively sold plywood that was produced by its affiliated company. *See Third Remand Redetermination* at 20; *see also Order*, 83 Fed. Reg. at 505; *see also* Memorandum, "Preliminary Determination of Affiliation for Linyi Chengen Import and Export Co., Ltd. and Linyi Dongfangjuxin Wood Co., Ltd.," dated June 16, 2017, P.R. 744. Comparing this information to the commercial invoices of the Separate Rate Plaintiffs, Commerce

12

determined that only 15 out of 40 exported and self-produced the plywood they sold to the United States. *See Third Remand Redetermination* at 19 and Attachment I.  The remaining 25 companies reported reselling plywood that they purchased from as many as 35 unaffiliated manufacturers. *Id*.  Commerce explained that this difference indicates a completely different cost structure from that of an organization like Chengen, which produces all of its own products internally.  *Third Remand Redetermination* at 20.  Commerce determined that, of the 15 separate rate companies that self-produced and exported the plywood they sold, three of those companies had U.S. sales of plywood at prices lower than Chengen's lowest selling price of any product. *Id*. at 22.  In addition, nine of those separate rate companies had sales of plywood at prices lower than the average price of the product that accounted for the vast majority of Chengen's sales during the period of investigation.  *Id*.  From these fact patterns, Commerce reasonably concluded that the likelihood of these sales being made at dumped prices is significantly greater than at the price at which Chengen sold its product in the highest volumes during the period of investigation.

Commerce also more broadly examined the data from the 40 non-examined separate rate companies involved in this litigation.  Fourteen companies reported sales of wood species or products that were not sold by Chengen and for which there is no comparison data from which to draw any conclusions.  *Third Remand Redetermination* at 22-24; 34.  Commerce concluded that for this reason, Chengen's margin alone, based on different products, would not necessarily be representative of these companies' actual margins.  *Id*.  Finally, with respect to the product sold by Chengen in the highest volumes during the period of investigation, ([█████████████ █████████████]), more than half of the separate rate litigants -- 23 companies -- sold plywood at prices lower than Chengen's average price, 18 of which also identified the species of

plywood as [███].  *See Third Remand Redetermination* at 22-23.

Based on this analysis, Commerce determined that record evidence showed that, on the whole, the selling structure, prices, and products of the Separate Rate Plaintiffs are dissimilar to Chengen's during the period of investigation.  Because these differences indicate that that the likelihood of these sales being made at dumped prices is significantly greater than the price at which Chengen sold its highest volumes, Commerce determined that Chengen's zero percent rate alone is not representative of the potential dumping of the Separate Rate Plaintiffs.  *See Third Remand Redetermination* at 34-36.  Thus, Commerce continued to depart from the "expected method" of calculating the separate rate and averaged Chengen's zero percent rate with the rate assigned to the China-wide entity, which includes Bayley as the other mandatory respondent in this investigation.  *Third Remand Redetermination* at 24-25; 34.

Accordingly, the Court should uphold Commerce's calculation of a separate rate of 57.36 percent as reasonable because it is based on record evidence, consistent with the Court's *Third Remand Order*, and otherwise in accordance with law.

## III.    Dehua TB, Taraca, and the Separate Rate Plaintiff's Arguments Regarding Commerce's Calculation of the Separate Rate Are Unavailing

Dehua TB, Taraca, and the Separate Rate Plaintiffs argue that Commerce's calculation of the separate rate is neither in accordance with law, nor supported by substantial evidence. Separate Rate Plaintiff Cmts. at 7; Dehua TB Cmts. at 3-5; Taraca Cmts. at 2-4.  Contrary to plaintiffs argument with respect to the legal framework, both statute and case law permit Commerce to "depart from the expected rate if it is not be feasible or would result in margins that would 'not be reasonably reflective of potential dumping margins' for the separate respondents," as Commerce correctly determined here. *See Albermarle*, 821 F.3d at 1349 (citing 19 U.S.C. § 1673d(c)(5)); *see also Changzhou Hawd Flooring Co., Ltd.*, 848 F.3d at 1011-12.

14

**A.**    **Commerce's Calculation of the Separate Rate By Averaging Chengen's Rate with the China-Wide Entity Rate is in Accordance with Law**

Although plaintiffs rely on the Federal Circuit's ruling in *Bestpak*, and this court's rulings in *Baroque Timber* and *Navneet Publications* to argue that it is unlawful for Commerce to average the zero and AFA rate, or for Commerce to use an AFA rate in the calculation of the separate rate, those authorities support Commerce's position. As the Federal Circuit observed, "{the Act} and the SAA explicitly allow Commerce to factor both *de minimis* and AFA rates into the calculation methodology" and this methodology was "derived from the relevant statutory language." *Bestpak*, 716 F.3d at 1378. Applying *Bestpak*, this Court has held that "it is not *per se* unreasonable for Commerce to use a simple average of *de minimis* and AFA rates to calculate the separate rate antidumping duty margin." *Baroque Timber*, *Baroque Timber Industries (Zhongshan) Co. Ltd. v. United States*, 971 F. Supp. 2d 1333, 1341 (Ct. Int'l Trade 2014). Similarly, the Court held that "the all-others rate statute expressly permits the inclusion of facts available rates" and noted that the Federal Circuit "summarily rejected the argument that Commerce may never use an AFA rate when deriving a 'separate rate' for cooperative, uninvestigated respondents in {non-market economy} proceedings." *Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1358-59 (Ct. Int'l Trade 2014).

Plaintiffs maintain that the separate rate must be consistent with the economic reality of those companies, and that Commerce should apply Chengen's rate because it is the only calculated rate on the record. Dehua TB Cmts. at 6-7; Separate Rate Plaintiff Cmts. at 11. However, this argument ignores the law permitting Commerce to depart from the expected method for calculating the separate rate "if Commerce determines that following the expected method would not be feasible or would result in margins that would 'not be reasonably reflective of potential dumping margins' for the separate respondents," *Albemarle*, 821 F.3d at 1349

(citing 19 U.S.C. § 1673d(c)(5)); *see also Changzhou Hawd Flooring Co., Ltd.*, 848 F.3d at 1011-12. Under those circumstances, "Commerce may use 'other reasonable methods.'" *Id.* Commerce found that those factual circumstances were met here. *Third Remand Redetermination* at 47. Thus, Commerce's calculation of the separate rate by averaging Chengen's rate with the China-wide entity rate is consistent with statute and the SAA.

**B.    Plaintiff's Additional Arguments That Commerce's Determination Is Not Supported by Substantial Evidence Are Unavailaing**

Plaintiffs argue that the invoices Commerce relied upon are not "credible economic evidence." Separate Rate Plaintiff Cmts. at 11-13; Dehua TB Cmts. at 3-5; Taraca Cmts. at 2-4. Dehua TB argues that it is unreasonable to rely upon a single invoice to generalize about each company's selling behavior. Dehua TB Cmts. at 9. As an initial matter, plaintiffs' arguments fail to acknowledge the substantial evidence standard. Although, "{s}ubstantial evidence is more than a mere scintilla" it does not require overwhelming evidence. Rather, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York*, 305 U.S. at 229. The evidence relied upon by Commerce meets that standard. In fact, the invoices Commerce analyzed represented a broad sampling from a large number of exporters (*i.e.*, all of the separate rate companies that are party to this litigation). *Third Remand Redetermination* at 34. Although the data for each exporter were limited, as a whole, Commerce was able to make observations from a consistent and uniform reference point, *i.e.*, each exporter's first sale to an unaffiliated party in the United States during the period of investigation. *Third Remand Redetermination* at 35. Commerce did not cherry-pick the invoices it examined, but, as directed by the Court, examined the available data on the record -- the separate rate applications of all of the separate rate companies that are party to this litigation -- and compared that information with the record information about Chengen. *Third*

*Remand Redetermination* at 34-36.

Although the information pertaining to the Separate Rate Plaintiffs is limited, Commerce reasonably determined that it was nevertheless "*instructive* in distinguishing the separate rate litigants from Chengen." *See Third Remand Redetermination* at 35 (emphasis added). Dehua TB argues that Commerce cannot rely on these invoices because in doing so Commerce is cherry picking the record and claims that the data are "wholly unconnected to the actual economic experience of the Separate Rate Respondents." Dehua TB Cmts. at 10. To the contrary, each separate rate company's invoices, showing actual <u>prices at which merchandise was sold during the period of investigation</u>, is highly probative evidence of the separate rate companies' pricing behavior. *Third Remand Redetermination* at 34. Commerce observed that these data demonstrated differences between the overall sample of U.S. prices, product mix, and production practices of Chengen and the separate rate companies that are party to this litigation. Commerce reasonably concluded that these data provide evidence of potential dumping at levels greater than Chengen's dumping during the period of investigation. *Third Remand Redetermination* at 35.

Taraca argues that by not applying Chengen's rate to the separate rate companies, Commerce is somehow trying to protest the zero percent rate it assigned Chengen in the Second Remand Redetermination. Taraca Cmts. at 9. This argument is meritless because Commerce did include Chengen's rate in calculating the separate rate. Nor is Commerce trying to change the calculation of Chengen's rate in this redetermination; the Court has already sustained Commerce's calculation of Chengen's rate. *See Third Remand Order* at 1355. Instead, Commerce examined the record evidence indicating the selling behavior of the Separate Rate Plaintiffs during the period of investigation, in an effort to tie the calculation of the separate rate to the Separate Rate Plaintiffs' potential dumping during the period of investigation, *i.e.* the

17

analysis required by this Court.  *See Third Remand Order* at 1355.  Further, Commerce has explained that record evidence distinguishes the selling activities, prices, and products of the Separate Rate Plaintiffs from that of Chengen, such that relying on Chengen's rate *alone* would not be representative of the "potential dumping of the Separate Rate Companies."  Hence, Commerce calculated the separate rate using an average of Chengen's rate and the China-wide entity rate.  *Third Remand Redetermination* at 38.

The Separate Rate Plaintiffs and Taraca argue that the petition data are unreliable, citing the fact that the normal value was based on surrogate values from Thailand, whereas in the final determination Commerce relied on surrogate data from Romania.  Separate Rate Plaintiff Cmts. at 3-4; Taraca Cmts. at 14-16.  As Commerce concluded, however, the petition rate was based on a comparison between normal value and net U.S. price that is supported by record information. *Third Remand Redetermination* at 35 *citing* the Petition at 2-21 and Exhibit II-2, Exhibit II-7, Exhibit II-10, Exhibit II-14, Exhibit II-15, and Exhibit II-23; *see also* U.S. price information compared to Petition Rate SRA at Exhibit 1.  In addition, neither the Separate Rate Plaintiffs nor Taraca have identified any material differences between the surrogate value data obtained from Thai sources versus those obtained from Romanian sources.  Nor has either party demonstrated that the results would have been different had Commerce used Romanian information to calculate the petition rate.  Thus, because the petition data are supported by record information, it was reasonable for Commerce to rely on the petition rate in its analysis for this redetermination.

The Separate Rate Plaintiffs also argue that Commerce should have relied on Jiangyang Wood to calculate an individual estimated weighted-average dumping margin for these final results of redetermination.  Separate Rate Plaintiffs cmts at 15.  Commerce declined to do so because all of the necessary information to calculate an individual rate for Jiangyang Wood is

not on the record. *Third Remand Redetermination* at 43-45.

Although Jiangyang Wood satisfied the threshold requirement of 19 U.S.C. §1677m(a) for consideration as a voluntary respondent, Jiangyang Wood's initial responses to Commerce's antidumping questionnaire is not comparable information to the documentation respondents generally submit during an investigation. Commerce only evaluates the questionnaire responses for companies that are not initially selected for individual examination but have voluntarily provided the information requested of the mandatory respondents if Commerce makes a determination to individually examine the voluntary respondent. *See* 19 U.S.C § 1677m. Only then does Commerce notify a voluntary respondent of any deficiencies in its initial responses, and issue supplemental requests for information. 19 U.S.C. §1677m. Because Commerce did not select Jiangyang Wood as a voluntary respondent, Commerce never collected the scope of data that it would have obtained through this process. *Third Remand Redetermination* at 38.

In *Changzhou Hawd,* the Federal Circuit accepted the premise that Commerce may, with respect to separate rate companies that request treatment as voluntary respondents, "conclude that it has insufficient knowledge to make confident predictions about the actual behavior {of an unexamined firm}, compared to a firm that has gone through an individual investigation." *Changzhou Hawd v. United States*, 947 F.3d 781, 791 (Fed. Cir. 2020) (*Changzhou Hawd 2020).* Crucially, Jiangyang Wood did not challenge Commerce's decision not to select it as a voluntary respondent in the investigation. Rather, long after the briefing has concluded and this court has issued multiple remand orders, the Separate Rate Plaintiffs argue that Commerce should calculate a rate using Jiangyang Wood's initial questionnaire information. However, Commerce determined it would not be appropriate to calculate an individual weighted-average dumping margin for Jiangyang Wood based on the limited and untested information it provided to qualify

as a voluntary respondent because its data have not been subjected to the same process and standards that Commerce employs to calculate individual dumping margins in all investigations. *Third Remand Redetermination* at 45. That determination is reasonable.

Plaintiffs argument is based on the tenuous assertion that Commerce is authorized to individually calculate a rate for a voluntary respondent without obtaining all necessary documentation, but plaintiffs do not articulate the statutory basis for this proposed analysis. Even assuming that the record contained all necessary information to calculate an individual rate for Jiangyang Wood, or individual rates for the separate rate companies, doing so would not be appropriate here. 19 U.S.C. § 1677f-1(c)(2) authorizes Commerce to determine the weighted-average dumping margins for a reasonable number of producers and/or exporters (rather than the for each known exporter/producer, as directed by section 1677f-1(c)(1)) if there are a large number of producers/exporters involved in the investigation. Section 1673d(c)(5)(A) provides guidance to Commerce with regard to calculating a single rate for those entities that were not individually examined in non-market economy dumping proceedings. Calculating multiple rates would defeat the purpose of limited examination and would reintroduce the burden that section 1677f-1(c)(2) is intended to relieve. Thus, Commerce reasonably declined to calculate an individual rate for Jiangyang Wood using its unvetted information, because it would add an unnecessary layer of complexity to the analysis, without necessarily increasing the accuracy of the overall result. *Third Remand Redetermination* at 37-39.; *See Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d at 1359 ("§ 1673d(c)(5)(B) accords Commerce discretion to select among a variety of reasonable methods") (citing SAA, 1994 U.S.C.C.A.N. at 4201); *U.S. Steel Corp. v. United States*, 34 C.I.T. 252, 257 (2010) (noting that "in light of Commerce's broad discretion" with respect to another type of calculation "this court

has observed that it 'must accept Commerce's methodology if that methodology is reasonable.'") (citation omitted).

### C. In Light Of Commerce's Lawful Assignment Of A Non-Zero Rate, The Court Need Not Address Plaintiff's Arguments That the Separate Rate Companies Should Be Excluded from The Order

Finally, the Separate Rate Plaintiffs argue that the Court should direct Commerce to apply Chengen's zero rate to the separate rate companies party to this litigation, and exclude them from the order, or at least exclude the companies that requested voluntary treatment from the order. Separate Rate Plaintiffs Cmts. at 10-15. As explained above, Commerce correctly calculated a separate rate under the exception to the expected method, and not a zero rate. Commerce correctly determined that because the separate rate calculated for the final results of redetermination is not zero, the question of whether certain separate rate companies should be excluded from the order is not presented. *Third Remand Redetermination* at 39-40. The Court need not go any further. *See, e.g., Verson, A Div. of Allied Prods. Corp. v. United States*, 5 F. Supp. 2d 963, 966, (Ct. Int'l Trade 1998) ("{A} federal court does not have the power to render an advisory opinion on a question simply because {it} may have to face the same question in the future.") (internal quotation marks and citations omitted).

Even if the separate rate companies were to receive a zero margin, Commerce may lawfully keep the separate rate companies subject to the *Order*. Specifically, in *Changzhou Hawd 2018*, this Court considered whether 19 C.F.R. 351.204 (e)(1) and section 1673d(a)(4) of the statute requires separate rate respondents to be released from an antidumping duty order when the separate rate was *de minimis*. *Changzhou Hawd Flooring Co. v. United* States, 324 F.3d 1317, 1326-1328 (Ct. Int'l Trade 2018) (*Changzhou Hawd 2018*). In that context, this Court upheld keeping the separate rate companies under the *Order*. *Id*. The Federal Circuit also

affirmed Commerce's position that separate rate companies should remain under the order as "a reasonable interpretation of the statute," and one which "reflects a reasonable policy judgement and is supported by Commerce's formal regulations." *Id.* at 791. Moreover, despite the Separate Rate Plaintiff's claims to the contrary, the court's decision in *Changzhou Hawd 2018* does not stand for the proposition that Commerce must necessarily exclude companies that requested voluntary treatment[4] from an order when applying a non-zero rate to the separate rate companies. Separate Rate Plaintiff's Cmts. at 11-15. Indeed, in *Changzhou Hawd 2020*, the Federal Circuit examined Commerce's rationale for keeping unexamined firms subject to the order and held that "exclusion from an order should be treated 'as an extraordinary measure, and one that should only be available in limited circumstances to companies that have been subject to individual investigation and all that entails (*i.e.*, providing full and complete questionnaire responses, cooperating with {Commerce}, subject to verification, etc.).'" *Changzhou Hawd 2020*, 947 F.3d at 794. Crucially, the Court of International Trade directed that the companies that requested voluntary respondent status be excluded, in light of the unique procedural posture of that case, and not as a mandate required in all situations. *See Changzhou Hawd CIT 2018*, 324 F. Supp. 3d at 1328 ("Here, though, too much time has passed for Commerce to individually examine the Voluntary Applicants. Also, this is the *seventh* court decision, reviewing the *sixth* administrative determination. And there may well be an appeal. A final judgment moves this action toward final resolution." (emphasis in original) (citations and quotations omitted)); and *Changzhou*

---

[4] Of the seven companies that requested voluntary treatment, only Dehua and Jiangyang met the threshold requirements of 19 U.S.C. § 1677m(a)(1)(A) that would have qualified them for consideration as voluntary respondents, had Commerce selected voluntary respondents in the investigation. *See Third Remand Redetermination* at 42 (citing Memorandum, "Antidumping Duty Investigation of Certain Hardwood Plywood from the People's Republic of China: Selection of Voluntary Respondent," dated April 4, 2017 (Voluntary Respondent Selection Memo), P.R. 451, at 1).

*Hawd 2020*, 947 F.3d 794 ("We understand the Trade Court decision as not going beyond holding that Commerce has not in *this* proceeding provided a sufficient rationale for continuing to include the voluntary-review firms in the order, and we rely on that understanding in affirming the Trade Court's judgment" (emphasis added)).

Because the separate rate companies are not receiving a zero or *de minimis* rate, Commerce reasonably concluded that there is no basis in law to exclude these companies from the order.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director


s/Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                          s/Sonia M. Orfield
Savannah Rose Maxwell                SONIA M. ORFIELD
Attorney                             Trial Attorney
U.S. Department of Commerce          U.S. Department of Justice
Office of the Chief Counsel For Trade   Civil Division
    Enforcement and Compliance    Commercial Litigation Branch
1401 Constitution Avenue, NW         P.O. Box 480
Washington, D.C. 20230               Ben Franklin Station
Tel: (202) 482-3748                  Washington D.C. 20044
Fax: (202) 482-4912                  Tel: (202) 353-0534
Email: Savannah.Maxwell@trade.gov    Fax: (202) 514-7965
                                     Email: Sonia.M.Orfield@usdoj.gov


June 1, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that the brief, Defendant's Response To Comments On Remand Redetermination, complies with the word-count limitation.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief.  According to the word count, the brief contains 6796 words.


<u>/s/ Sonia Orfield</u>
June 1, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____

|  |  |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD. | ) ) ) |
| Plaintiff, | ) |
| and | ) ) |
| SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,* | ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | )         Consol. Court No. 18-00002 |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | ) ) ) |
| Defendant-Intervenor. | ) |

_____

## ORDER

Upon consideration of final results of remand, *see Final Results of Remand Pursuant to Court Remand,* March 22, 2021 (*Third Remand Redetermination*), ECF No. 143, the comments filed by consolidated plaintiffs Taraca Pacific, Inc., *et al.* (Taraca), Zhejiang Dehua TB Import & Export Co., Ltd., *et al.* (Dehua TB), and the Separate Rate Plaintiffs.  *See* Taraca Cmts., May 3, 2021, ECF No. 164; Dehua TB Cmts., May 3, 2021, ECF No. 162; Separate Rate Plaintiff Cmts., May 3, 2021, ECF No. 166, and Defendant's Response to Comments on Remand Results, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's Remand Results are sustained in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
JUDGE

Dated: _____