Slip Op. 21-127

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,** | |
| **Plaintiff,** | |
| **and** | |
| **CELTIC CO., LTD., ET AL.,** | |
| **Consolidated Plaintiffs,** | **Before:  Jennifer Choe-Groves, Judge** |
| **v.** | **Consol. Court No. 18-00002** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **COALITION FOR FAIR TRADE OF HARDWOOD PLYWOOD,** | |
| **Defendant-Intervenor.** | |

## <u>OPINION AND ORDER</u>

[Remanding the third remand determination of the U.S. Department of Commerce, following the final determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China.]

Dated: September 24, 2021

<u>Gregory S. Menegaz</u>, <u>J. Kevin Horgan</u>, and <u>Alexandra H. Salzman</u>, deKieffer &

Horgan, PLLC, of Washington, D.C., for Plaintiff Linyi Chengen Import and Export Co., Ltd., Consolidated Plaintiffs Far East American, Inc. and Shandong Dongfang Bayley Wood Co., Ltd., and Consolidated Plaintiffs and Plaintiff-Intervenors Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Anhui Hoda Wood Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shandong Qishan International Trading Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd.

Jeffrey S. Neeley and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland Industries Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D. Enterprise Limited, Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic & Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

Jeffrey S. Grimson and Jill A. Cramer, Mowry & Grimson, PLLC, of Washington, D.C., for Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products, Ltd., Concannon Corporation d/b/a Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPLY LLC.

Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director.  Of counsel was Savannah Rose Maxwell, Attorney, Office of the Chief Counsel for Trade

Enforcement and Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Jeffrey O. Frank, Stephanie M. Bell, and Elizabeth S. Lee, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood.

Choe-Groves, Judge:  This action concerns the import of hardwood and decorative plywood and certain veneered panels into the United States from the People's Republic of China ("China"), subject to the final affirmative determination in an antidumping duty investigation by the U.S. Department of Commerce ("Commerce").  See Certain Hardwood Plywood Products from the People's Republic of China, 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (final determination of sales at less than fair value), as amended, 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (amended final determination of sales at less than fair value), (collectively, "Final Determination"); see also Issues and Decision Mem. for the Final Determination of the Antidumping Duty Investigation of Certain Hardwood Plywood Products from People's Republic of China, ECF No. 25-7 ("Final IDM").

Before the Court are the Final Results of Redetermination Pursuant to Court Remand, ECF Nos. 143-1, 144-1 ("Third Remand Determination"), which the Court ordered in Linyi Chengen Import & Export Co. v. United States ("Linyi Chengen III"), 44 CIT __, 487 F. Supp. 3d 1349 (2020).  Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co. ("Dehua TB"), Taraca Pacific, Inc.

("Taraca"), and Celtic Co. ("Celtic") each filed comments in opposition to the

Third Remand Determination.  Plaintiff Linyi Chengen Import & Export Co.

("Linyi Chengen"), a mandatory respondent, and Consolidated Plaintiff Shandong

Dongfang Bayley Wood Co. ("Bayley"), a mandatory respondent, did not file

comments in response to the Third Remand Determination.

  Dehua TB filed comments collectively on behalf of itself and Highland

Industries, Inc., Jiashan Dalin Wood Industry Co., Happy Wood Industrial Group

Co., Jiangsu High Hope Arser Co., Suqian Yaorun Trade Co., Yangzhou Hanov

International Co., G.D. Enterprise Ltd., Deqing China-Africa Foreign Trade Port

Co., Pizhou Jin Sheng Yuan International Trade Co., Xuzhou Shuiwangxing

Trading Co., Cosco Star International Co., Linyi City Dongfang Jinxin Economic

& Trade Co., Linyi City Shenrui International Trade Co., Jiangsu Qianjiuren

International Trading Co., and Qingdao Top P&Q International Corp.  Comments

Opp'n Third Remand Redetermination Behalf Consol. Pls. [Dehua TB] et. al., ECF

Nos. 162, 163 ("the Dehua TB Comments" or "Dehua TB Cmts.").

  Taraca filed comments collectively on behalf of itself and Canusa Wood

Products, Ltd., Concannon Corp. d/b/a Concannon Lumber Co., Fabuwood

Cabinetry Corp., Holland Southwest International, Inc., Liberty Woods

International, Inc., Northwest Hardwoods, Inc., Richmond International Forest

Products, LLC, and USPLY LLC.  Consol. Pls. [Taraca], Canusa Wood Products

Ltd., Concannon Corp. [d/b/a] Concannon Lumber Co., Fabuwood Cabinetry

Corp., Holland Southwest International Inc., Liberty Woods International, Inc.,

Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, &

USPLY LLC Comments Opp'n Third Remand Redetermination, ECF Nos. 164,

165 ("the Taraca Comments" or "Taraca Cmts.").

     Celtic filed comments collectively on behalf of itself and Anhui Hoda Wood

Co., Far East American, Inc., Jiaxing Gsun Import & Export Co., Jiaxing Hengtong

Wood Co., Linyi Evergreen Wood Co., Linyi Glary Plywood Co., Linyi Jiahe

Wood Industry Co., Linyi Linhai Wood Co., Linyi Hengsheng Wood Industry Co.,

Linyi Huasheng Yongbin Wood Co., Linyi Mingzhu Wood Co., Linyi Sanfortune

Wood Co., Qingdao Good Faith Import & Export Co., Shanghai Futuwood Trading

Co., Shandong Qishan International Trading Co., Suining Pengxiang Wood Co.,

Suqian Hopeway International Trade Co., Suzhou Oriental Dragon Import &

Export Co., Xuzhou Andefu Wood Co., Xuzhou Jiangyang Wood Industries Co.,

Xuzhou Longyuan Wood Industry Co., Xuzhou Pinlin International Trade Co.,

Xuzhou Shengping Import & Export Co., and Xuzhou Timber International Trade

Co.  Consol. Separate Rate Pls.' Comments Opp'n Third Remand

Redetermination, ECF Nos. 166, 167 ("the Celtic Comments" or "Celtic Cmts.").

     The Court refers collectively to the non-examined parties that filed the

Dehua TB Comments, the Taraca Comments, and the Celtic Comments as the

Consol. Court No. 18-00002                                         Page 6

"Separate Rate Plaintiffs."

Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood ("Defendant-Intervenor") filed comments in support of the Third Remand Determination.  [Def.-Intervenor]'s Comments in Supp. of Commerce's Remand Redetermination, ECF Nos. 195, 198 ("Def.-Interv.'s Cmts.").  Defendant United States ("Defendant") responded to all filed comments.  Def.'s Resp. Comments Remand Redetermination, ECF Nos. 196, 197 ("Def.'s Resp.").

The Court reviews whether Commerce's separate rate for the non-examined companies that were granted separate rate status, including Separate Rate Plaintiffs, ("all-others separate rate") is supported by substantial evidence.  For the reasons discussed below, the Court holds that the all-others separate rate is not supported by substantial evidence and remands Commerce's Third Remand Determination.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural history of this case and recites the facts relevant to the Court's review of the Third Remand Determination.  See Linyi Chengen Imp. & Exp. Co. v. United States, 43 CIT__, __, 391 F. Supp. 3d 1283, 1287–92 (2019); Linyi Chengen Imp. & Exp. Co. v. United States, 44 CIT __, __, 433 F. Supp. 3d 1278, 1280–84 (2020); Linyi Chengen III, 44 CIT at __, 487 F. Supp. 3d at 1353–59.

Consol. Court No. 18-00002                                                    Page 7

Commerce initiated an antidumping investigation after reviewing an

antidumping duty petition ("Petition") submitted by Defendant-Intervenor.  See

Certain Hardwood Plywood Products from the People's Republic of China, 81 Fed.

Reg. 91,125 (Dep't of Commerce Dec. 16, 2016) (initiation of less-than-fair-value

investigation).  The Petition contained price quotes, i.e., "two offers for sale for

hardwood plywood produced in [China] from a Chinese exporter," as the basis for

its estimated dumping margins ranging from 104.06% to 114.72%.  See id. at

91,128–29.

Commerce accepted applications from exporters and producers seeking to

obtain separate rate status in the investigation ("separate rate applications") to

avoid the country-wide dumping margin because the investigation involved

products from China, a non-market economy.  See id. at 91,129.  A company must

provide the commercial invoice for the first sale to an unaffiliated party in the

United States during the period of investigation with its separate rate application.

Third Remand Determination at 21.  Commerce assigned the all-others separate

rate to the companies that were not individually examined but demonstrated their

eligibility for separate rate status ("separate rate respondents").  Final

Determination, 82 Fed. Reg. at 53,462.  Commerce selected Bayley and Linyi

Chengen as the only mandatory respondents in the investigation.  See Decision

Mem. Prelim. Determination Antidumping Duty Investigation of Certain

Hardwood Plywood Products from the People's Republic of China (June 16, 2017) ("Prelim. DM") at 4, PR 734.[1]

In Linyi Chengen III, the Court sustained Commerce's determination, under protest, that Linyi Chengen's dumping margin was 0%. See Linyi Chengen III, 44 CIT at __, 487 F. Supp. 3d at 1356; Final Results of Redetermination Pursuant to Court Remand at 3, ECF Nos. 113-1, 114-1. Commerce explained that assigning Linyi Chengen's 0% rate as the all-others separate rate would not be reasonably reflective of the potential or actual dumping margins of the separate rate respondents—referring to the theoretical dumping margin of each of the separate rate respondents if they had been individually investigated. See Linyi Chengen III, 44 CIT at __, 487 F. Supp. 3d at 1357. Commerce determined the all-others separate rate of 57.36% on second remand by applying a simple average of Bayley's 114.72% Adverse Facts Available ("AFA") China-wide entity rate and Linyi Chengen's 0% rate. Id. at __, 487 F. Supp. 3d at 1354, 1357. The Court concluded that Commerce did not support with substantial evidence its departure from the expected method and its determination of the all-others separate rate of 57.36%, and remanded for Commerce to reconsider or provide additional evidence. Id. at __, 487 F. Supp. 3d at 1358–59.

---

[1] Citations to the administrative record reflect the public record ("PR") document numbers.

In calculating the all-others separate rate on third remand, Commerce again departed from the expected method.  Third Remand Determination at 24. Commerce applied "any reasonable method" and again calculated the all-others separate rate of 57.36% by using the simple average of Linyi Chengen's 0% with Bayley's AFA rate of 114.72%.  Id. at 24–25.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court also reviews determinations made on remand for compliance with the Court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.      Legal Framework

Commerce is authorized by statute to calculate and impose a dumping margin on imported subject merchandise after determining it is sold in the United States at less than fair value.  19 U.S.C. § 1673.  The statute authorizes Commerce to determine an estimated weighted average dumping margin for each individually

Consol. Court No. 18-00002                                        Page 10

examined exporter and producer and one all-others rate for non-examined

companies.  Id. § 1673d(c)(1)(B).  The U.S. Court of Appeals for the Federal

Circuit has upheld Commerce's reliance on the method for determining the

estimated all-others rate in § 1673d(c)(5) "in determining the separate rate for

exporters and producers from nonmarket economies that demonstrate their

independence from the government but that are not individually investigated."

Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1011 (Fed. Cir.

2017) (citation omitted).

        The general rule under the statute for calculating the all-others rate is to

weight-average the estimated weighted average dumping margins established for

exporters and producers individually investigated, excluding any zero and de

minimis margins, and any margins determined entirely on the basis of facts

available, including adverse facts available.  19 U.S.C. § 1673d(c)(5)(A).  If the

estimated weighted average dumping margins established for all exporters and

producers individually investigated are zero or de minimis, or are determined

entirely under 19 U.S.C. § 1677e, Commerce may invoke an exception to the

general rule.  Id. § 1673d(c)(5)(B).  The Statement of Administrative Action

provides guidance that when the dumping margins for all individually examined

respondents are determined entirely on the basis of the facts available or are zero

or de minimis, the "expected method" of determining the all-others rate is to

Consol. Court No. 18-00002                                           Page 11

weight-average the zero and de minimis margins and margins determined pursuant

to the facts available, provided that volume data is available.  Uruguay Round

Agreements Act, Statement of Administrative Action ("SAA"), H.R. Doc. No.

103-316, vol. 1, at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201.

      Commerce may depart from the "expected method" and use "any reasonable

method" if Commerce reasonably concludes that the expected method is not

feasible or results in an average that would not be reasonably reflective of potential

dumping margins for non-investigated exporters or producers.  See 19 U.S.C.

§ 1673d(c)(5)(B); Navneet Publ'ns (India) Ltd. v. United States, 38 CIT __, __,

999 F. Supp. 2d 1354, 1358 (2014) ("[T]he following hierarchy [is applied] when

calculating all-others rates—(1) the '[g]eneral rule' set forth in § 1673d(c)(5)(A),

(2) the alternative 'expected method' under § 1673d(c)(5)(B), and (3) any other

reasonable method when the 'expected method' is not feasible or does not

reasonably reflect potential dumping margins."); see also SAA at 873, reprinted in

1994 U.S.C.C.A.N. at 4201; Albemarle Corp., 821 F.3d at 1351–52 (quoting SAA

at 873, reprinted in 1994 U.S.C.C.A.N. at 4201)  Commerce must determine that

the expected method is not feasible or would not be reasonably reflective of the

potential dumping margins for non-investigated exporters or producers based on

substantial evidence.  Albemarle Corp., 821 F.3d at 1352–53; see also Changzhou

Hawd Flooring, 848 F.3d at 1012.

## II.     The All-Others Separate Rate is Unsupported by Substantial Evidence

### A.     Commerce's Departure from the Expected Method

Commerce is required to support with substantial evidence its departure from the expected method based on its determination that Linyi Chengen's 0% dumping margin would not be reasonably reflective of the separate rate respondents' potential dumping margins.  See Albemarle Corp., 821 F.3d at 1352–53; see also Changzhou Hawd Flooring, 848 F.3d at 1012.

On third remand, Commerce determined that departure from the expected method of calculating the all-others separate rate was warranted because Linyi Chengen's 0% rate would not be reflective of the potential dumping margins of the Separate Rate Plaintiffs.  Third Remand Determination at 13.  First, Commerce compared the two price quotes from a Chinese exporter in the Petition to the commercial invoice in that same Chinese exporter's separate rate application ("Petition Separate Rate Application") and determined that the price on the commercial invoice was "almost identical" to one of the price quotes in the Petition.  Id. at 18.  Commerce inferred that the dumping margin range in the Petition was "supported by actual prices at which plywood was sold by a cooperating separate rate respondent in [the] investigation during the [period of investigation]" and was representative of the dumping selling behavior of the

separate rate respondents during the period of review.  Id. at 17–18.  Commerce

noted that Linyi Chengen sold the same product for almost 20% higher than the

price quoted in the Petition.  Id. at 18–19.

Commerce also explained that Linyi Chengen exported merchandise

produced by its affiliated producer and none of the Separate Rate Plaintiffs shared

Linyi Chengen's selling and cost structure.  Id. at 19.  Of the forty Separate Rate

Plaintiffs, fifteen companies export merchandise that is self-produced and twenty-

five companies resell merchandise that is purchased from unaffiliated producers.

Id. at 19–20.  Commerce explained that the twenty-five resellers had different cost

structures and exporter-to-producer combinations than Linyi Chengen and there

were "too many possible, unknown variables . . . to definitively state the extent of

the operational differences" between those twenty-five companies and Linyi

Chengen.  Id.

In addition, Commerce analyzed commercial invoices from each of the

separate rate applications submitted by the Separate Rate Plaintiffs.  Id. at 21.

Based on the data provided in the separate rate applications, Commerce noted that

half of the Separate Rate Plaintiffs "sold plywood at prices lower than [Linyi]

Chengen's average price, [eighteen] of which also identified the [same] species of

plywood as [Linyi Chengen]."  Id. at 23–24.  Commerce concluded that "these fact

patterns indicate[d] that the likelihood of these sales being made at dumped prices

is significantly greater than at the price at which [Linyi] Chengen sold its product

. . . during the [period of investigation]." Id. at 24. Commerce determined that

based on the record, "the selling activities, in both prices and products, of the

Separate Rate Plaintiffs [were] dissimilar to [Linyi] Chengen's" and indicated that

Linyi Chengen's 0% dumping margin was not "necessarily representative of the

estimated weighted-average dumping margin that would apply to the Separate Rate

Plaintiffs." Id.

     Commerce supported its determination that Linyi Chengen's dumping

margin would not be reasonably reflective of the Separate Rate Plaintiffs' potential

dumping margins by analyzing economic evidence on the record showing

differences between Linyi Chengen's and the Separate Rate Plaintiffs' selling and

cost structure and pricing during the period of investigation. While the Court notes

that Commerce acknowledged the sparse record, the Court concludes that

Commerce has reasonably supported its determination to depart from the expected

method because the Separate Rate Plaintiffs' potential dumping margins would not

be represented by Linyi Chengen's 0% dumping margin in light of evidence

reviewed by Commerce, including the comparability of a Petition price quote to a

price from the Petition Separate Rate Application, differences between Linyi

Chengen's and the Separate Rate Plaintiffs' pricing and cost structures, and

commercial invoices showing disparities between the Separate Rate Plaintiffs' and

Linyi Chengen's selling activities.  Thus, the Court sustains Commerce's departure

from the expected method.

### B.     Commerce's Application of "Any Reasonable Method"

After determining that departure from the expected method was appropriate,

Commerce used "any reasonable method" under 19 U.S.C. § 1673d(c)(5)(B) to

calculate the all-others separate rate of 57.36% by applying the simple average of

Linyi Chengen's 0% rate with Bayley's 114.72% AFA rate.  Id. at 25.

The Separate Rate Plaintiffs challenge Commerce's determination on

numerous grounds, including Commerce's use of the estimated dumping margin

from the Petition as highly speculative and not based on any company's actual

data.  Dehua TB Cmts. at 4–5; Taraca Cmts. at 15–19 (incorporating by reference

the Celtic Comments and the Dehua TB Comments); Celtic Cmts. at 3–4.  The

Separate Rate Plaintiffs assert that the price on a single commercial invoice

included in the Petition Separate Rate Application has "no rational bearing" on the

representativeness of the Petition margin.  Celtic Cmts. at 3–4; see also Dehua TB

Cmts. at 4–5; Taraca Cmts. at 15–19.  The Separate Rate Plaintiffs also dispute

Commerce's comparison of Linyi Chengen's pricing data to the Petition Separate

Rate Application's single commercial invoice price and the other Separate Rate

Plaintiffs' single commercial invoice prices.  Celtic Cmts. at 4; see also Dehua TB

Cmts. at 4–6; Taraca Cmts. at 18–19.  The Separate Rate Plaintiffs argue that the

evidence of a single commercial invoice price does not support the application of a dumping margin of 57.36% to the Separate Rate Plaintiffs. Celtic Cmts. at 4; Dehua TB Cmts. at 4–6; Taraca Cmts. at 15. The Separate Rate Plaintiffs assert that the presence of a single sale with a lower price than Linyi Chengen's lowest sales price does not indicate that the company would be dumping overall, much less at a rate of 57.36%. Celtic Cmts. at 5; Dehua TB Cmts. at 4–6; Taraca Cmts. at 18–19. Defendant-Intervenor avers that Commerce's calculation was reasonable and supported by substantial evidence. See Def.-Interv.'s Cmts. at 8. Defendant defends Commerce's determination as supported by substantial evidence and urges the Court to sustain Commerce's "any reasonable method" used in the Third Remand Determination. See Def.'s Resp. at 9–23.

One substantiated and calculated basis, Linyi Chengen's dumping margin, was available on the record for Commerce's consideration for its all-others separate rate remand determination because Commerce selected only two mandatory respondents, which resulted in the 0% rate for Linyi Chengen and an AFA China-wide entity rate of 114.72%. Third Remand Determination at 13. As discussed above, Commerce explained and the Court sustains Commerce's determination that Linyi Chengen's 0% rate would not be representative of the separate rate respondents' actual dumping margins.

Commerce noted the lack of information on the record from which to

calculate the actual dumping margins for the Separate Rate Plaintiffs.  Id. at 17.

Commerce determined that the estimated dumping margins in the Petition were

representative of the selling behavior of the separate rate respondents.  Id.

Commerce cited one commercial invoice from the Petition Separate Rate

Application as record evidence showing a single sale of products similar to

products sold by Linyi Chengen, noting that the price of the single sale was

"almost identical" to one of the price quotes used to determine the estimated

dumping margins in the Petition.  Id. at 18.  While recognizing the lack of

"necessary information to determine the transaction-specific dumping margin of

this particular sale," Commerce found "it reasonable to infer . . . that this sale

would have had a transaction-specific dumping margin in the range of the Petition

rates."  Id. at 17–18.  Commerce explained that Linyi Chengen sold the same

products at prices almost 20% higher than the price shown on the invoice from the

Petition Separate Rate Application, and inferred that "the likelihood of the

products sold by the Petition [Separate Rate Application] Exporter being made at

dumped prices is significantly greater than at the price sold by [Linyi] Chengen

during the [period of investigation]."  Id. at 18–19.  Commerce concluded, based

on its review of the commercial invoice, that the approximately 20% difference

between the prices of the Petition Separate Rate Application and Linyi Chengen

supported Commerce's application of a 57.36% rate to the Separate Rate Plaintiffs.

Consol. Court No. 18-00002                                           Page 18

Id. at 18–19, 25.

     Commerce must support with substantial evidence its application of a

57.36% all-others separate rate.  See 19 U.S.C. § 1516a(b)(1)(B)(i).  The Court

notes Commerce's acknowledgment that the record provides no opportunity for

Commerce to know or to calculate the actual dumping margins of the Separate

Rate Plaintiffs.  See Third Remand Determination at 16.  Nonetheless, Commerce

is still required to assign dumping margins as accurately as possible.  Rhone

Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  Commerce

created its own problems when it selected only two mandatory respondents, which

resulted in sparse information on the record to support its assertions regarding the

potential dumping margins of the separate rate respondents.  See Yangzhou

Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1376–79 (Fed. Cir.

2013) (citing Yangzhou Bestpak Gifts & Crafts Co. v. United States, 35 CIT 948,

955 n.4 (2011) ("Commerce put itself in a precarious situation when it selected

only two mandatory respondents.")).  Because Commerce cited as record evidence

only one commercial invoice showing an approximately 20% price difference, the

Court concludes that Commerce's 57.36% separate rate assigned to the voluntary,

cooperating Separate Rate Plaintiffs is not reasonable and is unsupported by

substantial evidence.

Consol. Court No. 18-00002                                          Page 19

## CONCLUSION

For the foregoing reasons, the Court remands Commerce's <u>Third Remand Determination</u>.

Accordingly, it is hereby

**ORDERED** that the <u>Third Remand Determination</u> is remanded for Commerce to reconsider the all-others separate rate consistent with this opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1)   Commerce shall file the fourth remand determination on or before October 27, 2021;

(2)   Commerce shall file the administrative record on or before November 10, 2021;

(3)   Comments in opposition to the fourth remand determination shall be filed on or before December 15, 2021;

(4)   Comments in support of the fourth remand determination shall be filed on or before January 19, 2022; and

(5)   The joint appendix shall be filed on or before February 2, 2022.

 /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:   September 24, 2021
New York, New York