A-570-051
Remand
Slip Op. 21-127
POI:  04/01/2016 – 09/30/2016
**Public Version**
E&C/OV:  JMN

## FINAL RESULTS OF REDETERMINATION
## PURSUANT TO COURT REMAND
### *Linyi Chengen Import and Export Co., Ltd., et al. v. United States*
### Consol. Court No. 18-00002, Slip Op. 21-127 (CIT September 24, 2021)

I.    SUMMARY

The Department of Commerce (Commerce) has prepared these final results of

redetermination in accordance with the opinion and remand order of the U.S. Court of

International Trade (CIT) in *Linyi Chengen Import and Export Co., Ltd., et al. v. United States*,

Consol. Court No. 18-00002, Slip Op. 21-127 (CIT September 24, 2021) (*Remand Order IV*).

These final results of redetermination concern Commerce's less-than-fair-value (LTFV)

investigation of certain hardwood plywood products (plywood) from the People's Republic of

China (China) and its method of calculating the estimated weighted-average dumping margin

assigned to the non-individually-examined companies that demonstrated they were eligible for a

separate rate and that are party to this litigation (identified either directly or *via* their importer(s)

that are party to this litigation).  Although the Court sustained Commerce's departure from the

"expected method" in determining the rate assigned to these companies,[1] the Court held that the

separate rate assigned to the "voluntary, cooperating Separate Rate Plaintiffs is not reasonable

---

[1] *See Remand Order IV* at 14.

and is unsupported by substantial evidence."[2]  Therefore, the Court instructed Commerce to reconsider the all-others separate rate consistent with its opinion.[3]

In accordance with *Remand Order IV*, we have reconsidered the separate rate assigned to the parties to this litigation.  After weighing all options, we continue to find that the rate of 57.36 percent is the most reasonable rate to assign to the parties in question, given the available record information and the alternatives on the record.

On October 15, 2021, Commerce released to interested parties the Draft Remand and established October 20, 2021, as the deadline for interested parties to submit comments on the Draft Remand.[4]  On October 20, 2021 the Coalition for Fair Trade in Hardwood Plywood (the petitioner); a coalition of separate rate applicants (SRA Plaintiffs); Taraca Pacific, Inc., *et al.* (Taraca Pacific); and Zhejiang Dehua TB Import & Export Co., Ltd., (Dehua) *et al.* (collectively, Dehua TB) submitted comments on the Draft Remand.[5]

---

[2] *Id.* at 18.
[3] *Id.* at 19.
[4] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Remand," dated October 15, 2021 (Draft Remand).  *See also* Memorandum, "Deadline for Comments on Draft Remand Redetermination," dated October 18, 2021.
[5] *See* Petitioner's Comments, "Certain Hardwood Plywood Products from the People's Republic of China: Comments on Draft Results of Redetermination Pursuant to Court Remand," dated October 20, 2021 (Petitioner's Draft Comments); *see also* SRA Plaintiff's Comments, "Hardwood Plywood from the People's Republic of China: Slip Op. 21-127 Comments on Fourth Remand Results," dated October 20, 2021 (SRA Plaintiffs' Draft Comments); Taraca Pacific's Comments, "Certain Hardwood Plywood Products from the People's Republic of China: Comments of Taraca Pacific, Inc. *et al.* on Draft Results of Redetermination Pursuant to Court Order (Ct. No. 18-00002)," dated October 20, 2021 (Taraca Pacific's Draft Comments); and Dehua TB's Comments "Hardwood Plywood from the People's Republic of China:  Comments on Draft Results of Redetermination Pursuant to Court Order in *Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, Consol. Court No. 18-00002, Slip Op. 21-127 (CIT September 24, 2021)," dated October 20, 2021 (Dehua TB's Draft Comments).

II.    DISCUSSION

A. Background

On December 8, 2016, Commerce initiated an LTFV investigation on plywood from China,[6] and we issued our *Final Determination* in this investigation in November 2017.[7]  In the *Final Determination*, Commerce calculated the normal value (NV) for mandatory respondent Linyi Chengen Import and Export Co., Ltd. (Chengen) by applying the "intermediate input" methodology and valuing Chengen's consumption of wood veneers,[8] rather than by valuing Chengen's consumption of wood logs.[9]  Commerce further assigned to the companies eligible for a separate rate an estimated weighted-average dumping margin based on Chengen's estimated weighted-average dumping margin.[10]

In *Linyi Chengen Imp. & Exp. Co. v. United States*, 391 F. Supp. 3d 1283 (CIT 2019) (*Remand Order I*), the CIT highlighted its concern with two evidentiary issues:  (1) conflicting accounts between Commerce and Chengen regarding whether the conversion table and formula Chengen used to calculate its log consumption volume were from the Chinese National Standard and whether they yielded accurate log volumes; and (2) whether the record contains sources, independent of documents generated by Chengen itself, to validate Chengen's reported log

---

[6] *See Certain Hardwood Plywood Products from the People's Republic of China:  Initiation of Less-Than-Fair-Value Investigation*, 81 FR 91125 (December 16, 2016).

[7] *See Certain Hardwood Plywood Products from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*, 82 FR 53460 (November 16, 2017) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

[8] Commerce's general practice in non-market economy proceedings, consistent with section 773(c)(1)(B) of the Tariff Act of 1930, as amended (the Act), is to calculate NV using the factors of production (FOPs) that a respondent consumes in order to produce a unit of the subject merchandise.  There are circumstances, however, in which Commerce will modify its standard FOP methodology, choosing instead to apply a surrogate value to an intermediate input instead of the individual FOPs used to produce that intermediate input.  *See Final Determination* IDM at Comment 2.

[9] *See Final Determination* IDM; *see also Certain Hardwood Plywood Products from the People's Republic of China:  Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 FR 504 (January 4, 2018) (*Order*).

[10] *See Final Determination*, 82 FR at 53462.

consumption.[11]  On remand, Commerce maintained in its *Redetermination I* that Chengen had failed to build an adequate administrative record prior to the verification conducted in the LTFV investigation and that Chengen was unable to report and substantiate its log volume FOPs accurately; as a result, Commerce continued to apply the intermediate input methodology, as in the underlying *Final Determination*, and made no change to the estimated weighted-average dumping margin assigned to the companies eligible for a separate rate that are participating in this litigation.[12]

In its *Remand Order II*, the CIT concluded that Commerce's position that Chengen's documentation was unreliable for lack of third-party confirmation was contrary to law and instructed Commerce to "accept the previously-rejected documents that Chengen presented at verification representing the complete and accurate Chinese National Standard used for volume conversion."[13]  On remand and under respectful protest,[14] Commerce requested that Chengen supply the additional pages accompanying its log volume calculation table and formula that Chengen attempted to provide to Commerce verifiers at the time of Chengen's verification and provided an opportunity for interested parties to comment on the new factual information.[15]  In its *Redetermination II*, Commerce, also under respectful protest, reconsidered the application of the intermediate input methodology to Chengen and calculated an estimated weighted-average dumping margin based on the valuation of Chengen's log FOPs, which resulted in an estimated

---

[11] *See Remand Order I*, 391 F. Supp. 3d at 1294; *see also Final Results of Redetermination Pursuant to Court Remand Order in Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, Court No. 18-00002, Slip Op. 19-67 (CIT June 3, 2019), dated August 23, 2019 (*Redetermination I*).

[12] *See Redetermination I.*

[13] *See Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, 433 F. Supp. 3d 1278, 1286 (CIT 2020) (*Remand Order II*) at 14.

[14] *See Viraj Group, Ltd. v. United States*, 343 F. 3d 1371, 1376 (Fed. Cir. 2003).

[15] *See Final Results of Redetermination Pursuant to Court Remand Order in Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, Court No. 18-00002, Slip Op. 20-22 (CIT February 20, 2020), dated June 18, 2020 (*Redetermination II*); *see also* Memorandum, "Requesting 12-page Document Rejected at Verification Pursuant to Court Order and Comments on Such Information," dated March 4, 2020.

weighted-average dumping margin for Chengen of zero percent.[16]  In addition, Commerce revised the estimated weighted-average dumping margin for the China-wide entity to be equal to the highest dumping margin alleged in the Petition, 114.72 percent,[17] and revised the estimated weighted-average dumping margin assigned to the companies eligible for a separate rate that are participating in this litigation.  Commerce established this rate, in accordance with section 735(c)(5)(B) of the Act, by averaging Chengen's zero percent rate with the rate assigned to the China-wide entity.[18]  This resulted in a rate assigned to the non-examined, separate rate companies involved in this litigation of 57.36 percent.[19]

In its *Remand Order III*,[20] the CIT sustained Commerce's revised estimated weighted-average dumping margin for Chengen as reasonable and supported by substantial evidence but instructed Commerce to either provide more evidence supporting its departure from

---

[16] *See Redetermination II*; *see also* Memorandum, "Antidumping Duty Investigation of Certain Hardwood Plywood Products from the People's Republic of China:  Draft Redetermination Analysis Memorandum for Linyi Chengen Import and Export Co., Ltd.," dated April 22, 2020.
[17] *See Redetermination II* at 15 and Issue 3; *see also* Petitioner's Letter, "Certain Hardwood Plywood Products from the People's Republic of China:  Petitions for the Imposition of Antidumping and Countervailing Duties," dated November 18, 2016 (Petition).
[18] *See Redetermination II* at 16 and 52.  The separate rate is the simple average of the rates determined for Chengen and the China-wide entity.  The methodology for calculating this rate is also discussed in the *Preliminary Determination* in the LTFV investigation.  *See Certain Hardwood Plywood Products from the People's Republic of China:  Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part*, 82 FR 28629 (June 23, 2017) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 21.
[19] *See Redetermination II* at 17 and Attachment.
[20] *See Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, 487 F.Supp.3d 1349 (CIT 2020) (*Remand Order III*).

the "expected method"[21] in calculating the rate applied to the Separate Rate Plaintiffs,[22] or to change its determination.[23]  In *Redetermination III*,[24] Commerce provided additional explanation concerning its conclusions in *Redetermination II* and continued to calculate an estimated dumping margin for non-examined companies receiving a separate rate by averaging Chengen's zero percent rate with the rate assigned to the China-wide entity.  As a result, we continued to assign to the non-examined, separate rate companies involved in this litigation (either directly or identified via their importers that are party to this litigation) a rate of 57.36 percent.[25]

---

[21] Normally, Commerce's practice is to assign to separate-rate entities that were not individually examined a rate equal to the average of the rates calculated for the individually-investigated respondents, excluding any rates that are zero, *de minimis*, or based entirely under section 776 of the Act, consistent with section 735(c)(5)(A) of the Act. Where the estimated weighted-average dumping margins for all exporters and producers individually investigated are zero, *de minimis*, or determined entirely under section 776 of the Act, the Act provides an exception to the general rule to calculate the estimated "all-others" rate.  Under the exception to the general rule for determining the all-others rate, Commerce may use "any reasonable method to establish the rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated."  The SAA states that, under the exception to the general rule, "the expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available."  *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA) at 870-873.

[22] In its *Remand Order III*, the CIT refers to the following parties as "Separate Rate Plaintiffs":  Zhejiang Dehua TB Import & Export Co.; Highland Industries, Inc.; Jiashan Dalin Wood Industry Co.; Happy Wood Industrial Group Co.; Jiangsu High Hope Arser Co.; Suqian Yaorun Trade Co.; Yangzhou Hanov International Co.; G.D. Enterprise, Ltd.; Deqing China-Africa Foreign Trade Port Co.; Pizhou Jin Sheng Yuan International Trade Co.; Xuzhou Shuiwangxing Trading Co.; Cosco Star International Co.; Linyi City Dongfang Jinxin Economic & Trade Co.; Linyi City Shenrui International Trade Co.; Jiangsu Qianjiuren International Trading Co.; Qingdao Top P&Q International Corp.; Celtic Co.; Anhui Hoda Wood Co.; Far East American, Inc.; Jiaxing Gsun Import & Export Co.; Jiaxing Hengtong Wood Co.; Linyi Evergreen Wood Co.; Linyi Glary Plywood Co.; Linyi Jiahe Wood Industry Co.; Linyi Linhai Wood Co.; Linyi Hengsheng Wood Industry Co.; Linyi Huasheng Yongbin Wood Co.; Linyi Mingzhu Wood Co.; Linyi Sanfortune Wood Co.; Qingdao Good Faith Import & Export Co.; Shanghai Futuwood Trading Co.; Shandong Qishan International Trading Co.; Suining Pengxiang Wood Co.; Suqian Hopeway International Trade Co.; Suzhou Oriental Dragon Import & Export Co.; Xuzhou Andefu Wood Co.; Xuzhou Jiangyang Wood Industries Co. (Jiangyang); Xuzhou Longyuan Wood Industry Co.; Xuzhou Pinlin International Trade Co.; Xuzhou Shengping Import & Export Co.; Xuzhou Timber International Trade Co.; Taraca Pacific, Inc.; Canusa Wood Products, Ltd.; Concannon Corp. d/b/a Concannon Lumber Co.; Fabuwood Cabinetry Corp.; Holland Southwest International, Inc.; Liberty Woods International, Inc.; Northwest Hardwoods, Inc.; Richmond International Forest Products, LLC; and USPLY, LLC.  Hereafter, we also refer to these companies collectively as the "Separate Rate Plaintiffs."

[23] *See Remand Order III*, 487 F.Supp.3d at 1358.

[24] *See Final Results of Redetermination Pursuant to Court Remand Order in Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, Court No. 18-00002, Slip Op. 20-183 (CIT December 21, 2020), dated March 22, 2021 (*Redetermination III*).

[25] The separate rate is the simple average of the rates determined for Chengen and the China-wide entity.

In its *Remand Order IV*,[26] the Court sustained Commerce's departure from the expected method, finding that Commerce had reasonably supported its determination to depart from the expected method in establishing the estimated dumping margin for the non-examined companies, and that the separate rate companies' potential dumping margins would not be represented by Chengen's zero percent dumping margin.[27]  However, the Court held that, because Commerce cited as record evidence only one commercial invoice from the Petition showing an approximately 20 percent price difference between the invoice price and similar products sold by Chengen, Commerce's selection of the all-others separate rate of 57.36 percent was not reasonable and was not supported by substantial evidence.[28]  The Court held that Commerce is required to assign the most accurate dumping margin possible, and it remanded the assignment of the separate rate to Commerce to "reconsider the all-others separate rate consistent with {its} opinion."[29]

### B.    *Redetermination III* and *Remand Order IV*

As noted above, in *Redetermination III*, Commerce demonstrated, using record evidence, that Chengen's revised rate of zero percent alone, calculated under protest in *Redetermination II*, would not be reasonably reflective of the rate of estimated dumping by the non-examined separate rate companies participating in this litigation.[30]  We further found that the prices that formed the basis for the dumping margins in the Petition were supported by actual prices at which plywood was sold by a cooperating separate rate respondent, which were lower than the price for the same product sold by Chengen.[31]  Therefore, we concluded that:  (1) it was likely

---

[26] *See Linyi Chengen Import and Export Co., Ltd., et al. v. United States*, Consol. Ct. No. 18-00002, Slip. Op. 21-127 (CIT September 24, 2021) (*Remand Order IV*).
[27] *See Remand Order IV* at 14-15.
[28] *Id*. at 18.
[29] *Id*. at 18-19.
[30] *See Redetermination III* at 13 and 38.
[31] *Id*. at 18-19.

that the products sold by the entity in the Petition were dumped at significantly greater rates than Chengen's rate of dumping during the period of investigation (POI); and (2) the Petition rates were directly tied to the actual prices at which a cooperative separate rate respondent sold the merchandise under consideration during the POI.  Given these facts, we found that Chengen's zero percent rate would not be representative of the rate applicable to the non-examined separate rate companies in this investigation.  Accordingly, as the rate for those companies, we continued to apply the simple average of:  (1) the revised adverse facts available (AFA) rate applied to the China-wide entity (which includes mandatory respondent Shandong Dongfang Bayley Wood Co., Ltd. (Bayley)) of 114.72 percent; and (2) the zero percent rate calculated for Chengen.

In its *Remand Order IV*, the Court sustained Commerce's departure from the expected method in establishing the separate rate, finding that Commerce had reasonably supported its determination that Chengen's zero percent dumping margin would not be representative of the separate rate companies' potential dumping margins.[32]  However, the Court found that, because Commerce cited only one commercial invoice from the Petition as record evidence, and that invoice showed only an approximately 20 percent price difference between the invoice price and similar products sold by Chengen, Commerce's selection of the all-others separate rate of 57.36 percent was not reasonable.[33]  The Court ordered Commerce to reconsider the selection of the separate rate, noting that Commerce is required to assign the most accurate dumping margin possible.[34]

---

[32] *See Remand Order IV* at 14.
[33] *Id*. at 18.
[34] *Id*. at 18-19.

## C.  Analysis

As an initial matter, we acknowledge the Court held that the chosen rate of 57.36 percent is not reasonable or supported by substantial evidence, in light of the analysis presented in *Redetermination III*.  However, given the paucity of alternatives and for the reasons discussed below, we continue to find that the most reasonable and appropriate method for determining the separate rate is to average the only rates established in this investigation, *i.e.*, the rate for the China-wide entity (which includes mandatory respondent Bayley), based on AFA, and Chengen's zero percent rate, to determine the rate assigned to the Separate Rate Plaintiffs.

Section 735(c)(5)(A) of the Act instructs Commerce to calculate an all-others rate using the weighted average of the estimated weighted-average dumping margins established for the exporters and producers individually investigated, excluding any zero or *de minimis* weighted-average dumping margins or any dumping margins based entirely on facts available. Accordingly, Commerce's normal practice has been to weight average the rates for the mandatory respondent(s), excluding rates that are zero, *de minimis*, or based entirely on facts available.[35]  However, based on the circumstances of this case, Commerce cannot rely on section 735(c)(5)(A) of the Act in its calculation of the rate for the non-examined companies and must resort to the exception to the general rule.

Under the exception to the general rule for determining the all-others rate, Commerce may use "any reasonable method to establish the rate for exporters and producers not individually investigated, including averaging the estimated weighted-average dumping margins

---

[35] *See, e.g.*, *Certain Frozen Warmwater Shrimp from Thailand:  Final Results of Antidumping Duty Administrative Review, Partial Rescission of Review, and Revocation of Order (in Part); 2011-2012*, 78 FR 42497 (July 16, 2013) (*Shrimp from Thailand*), and accompanying IDM at Comment 3 (citing *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom:  Final Results of Antidumping Duty Administrative Reviews and Rescission of Reviews in Part*, 73 FR 52823, 52824 (September 11, 2008), and accompanying IDM at Comment 16).

determined for the exporters and producers individually investigated."[36]  The SAA states that,

under the exception to the general rule, "the expected method in such cases will be to weight-

average the zero and *de minimis* margins and margins determined pursuant to the facts

available."[37]  However, the SAA goes on to state that, "if this method is not feasible, or if it

results in an average that would not be reasonably reflective of potential dumping margins for

non-investigated exporters or producers, Commerce may use other reasonable methods."[38]

In this case, Chengen is the only individually-investigated respondent with a rate, other

than the China-wide entity.  As we explained in *Redetermination II*, following the expected

method under section 735(c)(5)(B) of the Act and applying Chengen's zero percent rate to the

separate rate respondents participating in this litigation would not be appropriate because this

rate would not be reasonably reflective of potential dumping margins for non-investigated

exporters or producers.[39]  Given the facts present in this case, the Court sustained Commerce's

reliance on the exception to the "expected method" in *Remand Order IV*, finding that it was

reasonably supported.[40]  As such, in accordance with section 735(c)(5)(B) of the Act, Commerce

may use any other reasonable method to determine the rate for the Separate Rate Plaintiffs.

We recognize that the Court did not sustain our selection of the 57.36 percent rate applied

to the Separate Rate Plaintiffs and it directed us to reconsider that rate.  As an initial matter, we

---

[36] *See* section 735(c)(5)(B) of the Act.
[37] *See* SAA at 870-873.
[38] *Id.*; *see also Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1013 (Fed. Cir. 2017) (*Changzhou Hawd CAFC 2017*).
[39] *See Redetermination II* at 15.
[40] *See Remand Order IV* at 14-15 (stating "the Court concludes that Commerce has reasonably supported its determination to depart from the expected method because the Separate Rate Plaintiffs' potential dumping margins would not be represented by Linyi Chengen's 0% dumping margin in light of evidence reviewed by Commerce, including the comparability of a Petition price quote to a price from the Petition Separate Rate Application, differences between Linyi Chengen's and the Separate Rate Plaintiffs' pricing and cost structures, and commercial invoices showing disparities between the Separate Rate Plaintiffs' and Linyi Chengen's selling activities.  Thus, the Court sustains Commerce's departure from the expected method").

reiterate that the record provides no opportunity for Commerce to know or to calculate the actual

dumping margins of the Separate Rate Plaintiffs[41] and, thus, it is not possible for us to determine

with certainty whether any particular rate is an accurate estimate of the actual dumping margins

of the Separate Rate Plaintiffs.[42]  As we explained in *Redetermination III*, we have determined

that the dumping margins alleged in the Petition are representative of the actual selling behavior

of separate rate recipients and that additional record evidence distinguishes Chengen's selling

behavior during the POI from the selling behavior of the Separate Rate Plaintiffs.[43]  In other

words, the limited record information available indicates that selling behavior varied during the

POI.

   We are mindful that any selected rate needs to be based on evidence on the record, and

the only alternative rates in this case are limited to the rates listed in the Petition.[44]  These rates

are 104.06 percent and 114.72 percent, or a derivative thereof.  As required by the Court, we

have considered each of these alternatives.

   At the outset, we note that both of the Petition rates begin with the pricing established by

the Petition SRA Exporter,[45] who was a separate rate recipient, and, therefore, each of these rates

---

[41] The Court reasoned that Commerce "created its own problems when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions." *See Remand Order IV* at 18.  Section 777A of the Act permits Commerce to limit the number of companies individually examined in an investigation, and Commerce selected two exporters for individual investigation in this case.  The lack of information arose here not because of this limitation but because that second exporter, Bayley, failed to provide useable data.  Nevertheless, Commerce fulfilled its mandate to investigate and collect information to serve as the basis of its determination. Here, Commerce issued multiple supplemental questionnaires to the second respondent, Bayley, who continued to actively argue its case until the *Final Determination*.  *See Final Determination* IDM at Comment 1.  Moreover, Commerce received 84 separate rate applications.  *See Preliminary Determination* PDM at 17-21.  Commerce issued numerous supplemental questionnaires to separate rate applicants, even in close proximity to the *Preliminary Determination*.  *Id.*
[42] *See Redetermination III* at 16; *see also Remand Order IV* (noting Commerce's duty to assign dumping margins as accurately as possible).
[43] *Id.* at 17.
[44] *See* the Petition.
[45] *See Redetermination III* at 16-17 (identifying the company that provided the basis for the Petition rates (Petition SRA Exporter) and the separate rate application that supports the prices in the Petition (Petition Rate SRA).

is, to some extent, representative of the dumping behavior of the Separate Rate Plaintiffs.

Further, because both of the prices on which the Petition rates are based are for in-scope

plywood products, there is no basis to choose between them.  Commerce's practice is to consider

the petition rates equally representative (when the use of an adverse inferences is not warranted),

and it has averaged those rates when determining the all-others or non-examined/separate rate in

a given proceeding.[46]  An average of the two Petition rates would result in a rate of 109.39

percent.

While Commerce could potentially rely on its practice here, doing so would require us to

ignore the additional evidence on the record of this investigation.  In the cited determinations, the

investigation in question resulted in no calculated margins for the mandatory respondents.  Here,

however, Chengen received a rate of zero percent, calculated under protest.  While the Court

sustained our determination that Chengen's zero percent margin would not be reasonably

reflective of the potential Separate Rate Plaintiff's actual dumping margins, the record also

indicates that separate rate companies had potential dumping margins during the POI at levels of

the highest Petition rate of 114.72.  Based on this limited information, it is reasonable to

conclude that the selling behavior of the separate rate companies, of which the Separate Rate

Plaintiffs are a subset, varied during the POI.  Because the Petition rates, either individually, or

averaged, would not reflect this variation in selling behavior, we find that a reasonable method to

determine the separate rate is to average the rates determined in this segment of the proceeding,

---

[46] *See, e.g.*, *Ceramic Tile from the People's Republic of China:  Final Affirmative Determination of Sales at Less Than Fair Value, and Final Partial Affirmative Critical Circumstances Determination*, 85 FR 19425 (April 7, 2020); *Polyester Textured Yarn from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances*, 84 FR 63850 (November 19, 2019); *Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from Italy:  Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 83 FR 16289 (April 16, 2018); and *Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value, Final Affirmative Determination of Critical Circumstances*, 83 FR 16319 (April 16, 2018).

*i.e.*, Chengen's calculated margin, and the rate assigned to the China-wide entity (which includes Bayley, the other mandatory respondent in this investigation).[47]  We recognize that the Court requires that the chosen method be reasonable and based on the record evidence, and we believe that we have best fulfilled this mandate by averaging these two rates rather than using the Petition rates, singly, or the average of the Petition rates.

Finally, we note that, although the Court pointed to the approximately 20 percent difference between the price at which Chengen sold the same product as the Petition SRA Exporter, this 20 percent difference alone is not indicative of the potential level of dumping by that exporter.  This is because a margin must be calculated by reference to a U.S. price and an NV, and the Petition SRA Exporter's own, company-specific NV is not on the record of this investigation.  Absent a company-specific NV for the Petition SRA Exporter, the price comparison in *Redetermination III* merely shows that the Separate Rate Exporters priced their products at potentially much lower levels than the pricing level for Chengen's U.S. plywood exports (with the reasonable assumption that the dumping rates would also increase) and, thus, that Chengen's rate, alone, is not a good proxy for the Separate Rate Plaintiffs' rate.  However, that 20 percent price difference says nothing about the possible differences in NV of the product (*i.e.*, a full half of the dumping equation).  Thus, while Commerce pointed to a 20 percent price difference between Chengen and known separate rate recipients in *Redetermination III*, that observation does not stand for the proposition that the 20 percent price difference would result in

---

[47] There is a well-established basis, both in law and Commerce's practice, to calculate the non-selected respondents' dumping margin based on the margins determined in the course of a proceeding.  *See Shrimp from Thailand* IDM at Comment 3; *see also Albemarle Corp. v. United States*, 821 F. 3d 1345, 1352 (Fed. Cir. 2016) (*Albemarle*) ("The expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available").  Further, in *Baroque Timber*, the Court ruled that "it is not *per se* unreasonable for Commerce to use a simple average of zero and AFA rates to calculate the separate rate."  *See Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333, 1341 (*Baroque Timber*) (citing *Bestpak*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).

a commensurate 20 percent difference in the potential dumping margin.  Instead, record evidence indicates that the potential dumping margins could be at least the rate assigned to the China-wide entity, 114.72 percent, which is based on the highest Petition rate, a rate that is also rooted in the record and tied to actual selling behavior of a separate rate recipient in this investigation.

In light of the Court's order to reconsider the separate rate, consistent with the *Remand Order IV*, we have reviewed the record of this investigation and our administrative precedent and have reconsidered the separate rate assigned to the Separate Rate Plaintiffs.  For the reasons previously provided, and sustained by the Court in the *Remand Order IV*, in calculating the rate assigned to the Separate Rate Plaintiffs, departure from the expected method is warranted under section 735(c)(5)(B) of the Act.  As the separate rate, we continue to apply the simple average of (a) the revised AFA rate applied to the China-wide entity (which includes mandatory respondent Bayley) of 114.72 percent, and (b) the zero percent rate calculated for Chengen.  After full consideration of the limited alternative rate choices based on the record of this investigation, we find this to be the most reasonable method to determine the rate assigned to those exporters.

## III.   COMMENTS FROM INTERESTED PARTIES

On October 15, 2021, Commerce released the Draft Remand and invited parties to comment.[48]  The petitioner; Dehua TB; the SRA Plaintiffs; and Taraca Pacific submitted comments on the Draft Remand.[49]  These comments are addressed below.

---

[48] *See* Draft Remand.
[49] *See* Petitioner's Draft Comments; *see also* Dehua TB's Draft Comments; SRA Plaintiffs' Draft Comments; and Taraca Pacific's Draft Comments.

**Issue 1:  Selecting the Appropriate Separate Rate**

*Dehua TB's Draft Comments*:[50]

- Commerce's methodology is contrary to case law as decided by the U.S. Court of Appeals for the Federal Circuit (CAFC) and the CIT.

- In *Bestpak*, the CAFC ruled that Commerce's decision to assign cooperative separate rate respondents an average of a *de minimis* rate and the AFA China-wide rate was not supported by substantial evidence.[51]  The *Bestpak* Court held that it was generally unreasonable to assign a cooperative respondent a rate that was half of the China-wide rate when the respondent had demonstrated that it was independent of government control and where such a result may amount to being punitive, "which is not permitted by the statute."[52]  The *Bestpak* Court also explained that "{a}n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible" and the rate determination for non-mandatory, cooperative respondents must "bear some relationship to the actual dumping margins."[53]

- In *Changzhou Hawd CAFC 2017*, the CAFC specifically found it unlawful to infer any adverse inference applied to non-cooperating companies to cooperating separate rate companies, explaining "the separate-rate firms' decisions to respond to the questionnaires might suggest that they are more similar to other firms, like the mandatory respondents, that responded."[54]

---

[50] *See* Dehua TB's Draft Comments at 2-6.
[51] *Id.* at 2 (citing *Bestpak*, 716 F.3d 1370).
[52] *Id.* at 3 (citing *Bestpak*, 716 F.3d at 1379).
[53] *Id.*
[54] *Id.* (citing *Changzhou Hawd CAFC 2017*, 848 F.3d at 1012).

- In *Albemarle* and *Changzhou Hawd CAFC 2017*, the CAFC held that it is not the separate rate applicant's burden to establish that it is like the exporters that received a *de minimis* dumping rate.[55]  Further, in *Albemarle*, the CAFC explained that "Commerce must find based on substantial evidence that there is a reasonable basis for concluding that the separate respondents' dumping is different."[56]

- In *Changzhou Wujin*, the CAFC explained that "applying an adverse rate to cooperating respondents undercuts the cooperation-promoting goal of the AFA statute."[57]

- The CIT explained in *Baroque Timber* that the mere presence of non-cooperating parties "fails to justify {Commerce's} choice of dumping margin for the cooperative uninvestigated respondents."[58]  The CIT further explained in *Baroque Timber* that "… the fact that the AFA rate applies to other companies is not evidence of dumping on the part of the separate rate companies. {citation omitted}.  Commerce cannot use the AFA rate in calculating the separate rate for cooperating parties without explanation."[59]

- The CIT erred in its decision that it was reasonable based on record evidence for Commerce to conclude that the Separate Rate Plaintiffs' potential dumping margins would not be represented by Chengen's zero percent dumping margin.  Commerce's determination was not supported by substantial evidence or otherwise in accordance with law.

- Nonetheless, Commerce must still support with substantial evidence its application of a 57.36 percent rate for the Separate Rate Plaintiffs.  Even though the CIT has already found that

---

[55] *Id.* at 4 (citing *Albemarle*, 821 F.3d at 1353); *see also id.* at 4 (citing *Changzhou Hawd CAFC 2017*, 848 F.3d at 1012).
[56] *Id.* (citing *Albemarle*, 821 F.3d at 1353).
[57] *Id.* (citing *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1378 (Fed. Cir. 2012) (*Changzhou Wujin*)).
[58] *Id.* (citing *Baroque Timber*, 971 F. Supp. 2d at 1343; and *Amanda Foods (Vietnam) Ltd. v. United States*, 647 F. Supp. 2d 1368, 1381 (CIT 2009)).
[59] *Id.* at 3-4 (citing *Baroque Timber*, 971 F. Supp. 2d at 1343).

Commerce failed to meet this burden by citing only one commercial invoice showing an approximate 20 percent price difference, Commerce offered no further support for its selected rate in its Draft Remand.

- Commerce's reliance on the lack of evidence on the record does not obviate the need to support its finding with substantial evidence, as the lack of information on the record was an issue of Commerce's own making. Commerce could have gathered more information, but instead refused to further investigate the companies that requested to be voluntary respondents.

- Commerce ignores evidence that the margin for separate rate respondents should be significantly less than 57.36 percent, a rate far higher than the margin assigned to separate rate companies in the first administrative review of the order, where Commerce applied a separate rate of 14.95 percent.[60]

- Under the circumstances of this case, the only reasonable margin that has been proposed to assign to the separate rate companies in the final remand redetermination is the zero percent margin assigned to the only mandatory respondent, and this rate should be selected for the final remand redetermination.

*Taraca Pacific's Draft Comments*:[61]

- The 57.36 percent rate is rate based in part on an AFA margin and unrepresentative Petition information. It is unreasonable to assign this rate to the Separate Rate Plaintiffs in this case, given the record evidence.

---

[60] *Id.* at 6 (citing *Certain Hardwood Plywood Products from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 FR 77157 (December 1, 2020)).
[61] *See* Taraca Pacific's Draft Comments at 2-8.

- In *Bestpak*, the CAFC stated that "{w}hile various methodologies {to calculate the separate rate} are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case."[62]  In *Changzhou Wujin*, the CAFC explained that the Act's "requirement that the method be 'reasonable' imposes a duty on Commerce to select a method appropriate for the circumstances."[63]

- The *Bestpak* Court further held that, while "Commerce may be permitted to use a simple average methodology to calculate the separate rate," the particular facts of a case may "render{} a simple average of a de minimis and AFA China-wide rate unreasonable as applied."[64]

- When faced with a zero and AFA margin for the two mandatory respondents, Commerce must determine a separate rate that is accurate and fair, and a constraint on agency resources does not provide relief from this requirement.[65]

- In *Remand Order IV*, the CIT rejected Commerce's reliance on a commercial invoice from the Petition to support its application of the 57.36 percent rate to the Separate Rate Plaintiffs,[66] yet Commerce seeks to apply the same rate without advancing any new reasoning.  The Court held that the incomplete nature of the record cannot be used as a reason to apply a separate rate that is not substantiated by actual evidence.[67]  This holding prohibits Commerce from continuing to apply the 57.36 percent rate.

---

[62] *Id.* at 3 (citing *Bestpak*, 716 F.3d at 1378).
[63] *Id.* (citing *Changzhou Wujin*, 701 F.3d at 1379).
[64] *Id.* (citing *Bestpak*, 716 F.3d at 1378).
[65] *Id.* (citing *Bestpak*, 716 F.3d at 1380).
[66] *Id.* at 4 (citing *Remand Order IV* at 18).
[67] *Id.* (citing *Remand Order IV* at 10).

- Commerce's claim in the Draft Remand that the only alternative rates available in this proceeding are those found in the Petition is untrue, as Chengen's calculated zero percent rate is also available for use as the Separate Rate Plaintiffs' rate.

- Commerce failed to consider available record evidence from separate rate exporters who provided invoices demonstrating a wide variety of pricing.

- Commerce engaged in an ends-oriented analysis.  This is demonstrated by the fact that Commerce disregarded the lower of the two dumping rates alleged in the Petition, 104.06 percent, without even considering averaging this lower rate with Chengen's calculated zero percent rate (or, alternatively, averaging the two Petition rates before combining it with Chengen's rate).[68]  Commerce acknowledges that the Petition rates are only "to some extent" representative of the Separate Rate Plaintiffs' experience and that "there is no basis to choose between" the two Petition prices.[69]

- It is patently unreasonable for Commerce to disregard other commercial invoices on the record from the Separate Rate Plaintiffs, to reject the representativeness of Chengen's zero percent rate, to ignore the flaws in the Petition rates (such as the Petition dumping rates being based on an entirely different surrogate country), and to ultimately select only the highest possible Petition rate to derive the separate rate applied to the Separate Rate Plaintiffs.

- The substantial evidence standard used by the Court to review Commerce's determination dictates that Commerce's decisions must be based on the whole record, including whatever in the record "fairly detracts from its weight."[70]  Commerce fails to consider information that

---

[68] These calculations would have resulted in rates of 52.03 percent and 54.70 percent, respectively, rather than the chosen rate of 57.36 percent.
[69] *Id.* at 6 (citing Draft Results at 10-11).
[70] *Id.* at 7 (citing *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006)).

detracts from its conclusions in the Draft Remand and focuses only on potential outcomes that yield high dumping margins.

- Commerce failed to adequately address the Court's skepticism as to the reasonableness of the 57.36 percent rate given the 20 percent price difference between the prices in the Petition Separate Rate Application and that of Chengen.  Commerce's explanation in the Draft Remand is not reasonable and disregards the possibility that the separate rate respondents' NVs, had they been investigated, would have resulted in margins even lower than the 20 percent difference suggested by the pricing information.

- Commerce has failed in its mandate of ensuring that "accuracy and fairness" are its "primary objectives in calculating a separate rate for cooperating exporters."[71]  The CAFC has held that "Commerce must have as its primary objective the calculation of an accurate rate."[72]

- Commerce must revisit the separate rate and apply the only calculated margin on the record, Chengen's zero percent rate, given that Commerce has repeatedly been unable to develop a separate rate that is consistent with its mandate to calculate margins as accurately as possible based on substantial record evidence.

---

[71] *Id.* at 8 (citing *Albemarle*, 821 F.3d at 1354).
[72] *Id.* (citing *Mueller Comercial De Mexico v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014)).

*SRA Plaintiffs' Draft Comments*:[73]

- The premise behind the statutory provision for limiting individual review assumes that the pricing behavior of non-examined companies is similar to the pricing behavior of the cooperating respondents, and Court precedent affirms this.  Therefore, Commerce should assume that the pricing behavior of the separate rate companies is similar to Chengen's.

- Commerce's averaging of a total AFA rate and a *de minimis* rate for the fully cooperating separate rate applicants contravenes the clear holding of *Bestpak*, in which the CAFC held that it was unreasonable to ascribe to cooperating exporters found to be separate from the Chinese Government any rate assigned to such a state-controlled entity.[74]  The SRA Plaintiffs have fully cooperated, having responded to all inquiries made by Commerce and having established that they are separate from the Chinese Government.

- In *Changzhou Hawd CAFC 2017*, the CAFC observed that the record not only contained no information to suggest the separate rate firms were not similar to the cooperating respondents, but, in fact, the only reasonable way to construe the record was to support a finding that cooperating respondents *are* similar to the cooperating respondent.[75]  Therefore, Commerce should only apply the rate individually calculated for the cooperating exporter deemed separate from the Chinese Government, *i.e.*, Chengen, to the rates for other exporters deemed separate from the Chinese Government, *i.e.*, the SRA Plaintiffs.  Chengen's data include both verified cost data and data for over 300 sales to the United States, providing substantial evidence of the actual dumping rate of a cooperating exporter during the POI.

---

[73] *See* SRA Plaintiffs' Draft Comments at 1-8.
[74] *Id.* at 6 (citing *Bestpak*, 716 F.3d at 1378).
[75] *Id.* at 7 (citing *Changzhou Hawd CAFC 2017*, 848 F.3d at 1012).

- The CIT instructed Commerce in *Remand Order IV* that a single commercial invoice is not substantial evidence to support assigning the SRA Plaintiffs a margin of 57.36 percent, and Commerce's continued reliance on this information, without any further argument or information, cannot stand.

- The U.S. Supreme Court has explained that "substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[76] The CAFC has further explained that substantial evidence must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence."[77] The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'"[78]

- In *Remand Order III*, the CIT found that the Petition price quote was untethered from any actual dumping margins and found that this was not credible economic evidence that the SRA Plaintiffs' dumping behavior was different than Chengen's or that it was at the level computed for the Separate Rate Plaintiffs.[79] While Commerce in *Redetermination III* attempted to "tether" the Petition price quote to a commercial invoice in the Separate Rate Application of the same exporter (leading Commerce to conclude that the record "indicates that separate rate companies had potential dumping margins during the POI at levels of the

---

[76] *Id.* at 2 (citing *Universal Camera Corp. v. NLRB*, 340 US 474, 477 (1951) (*Universal Camera*) (quoting *Consolidated Edison Corp. v. Labor Board*, 305 US 197, 229 (1938))). In their comments, the SRA Plaintiffs characterize this as the "SRA Margin." Although this is unclear, we presume that they are referring to the rate assigned to the Separate Rate Plaintiffs.

[77] *Id.* at 3 (citing *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (CAFC 1984)).

[78] *Id.* (citing *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (CAFC 1997) (quoting *Universal Camera*, 340 US at 487)).

[79] *Id.* (citing *Remand Order III* at 15-16).

highest petition rate of 114.72"),[80] this attempt fails because:  (1) numerous SRA companies had sales prices in the range of, or higher than, Chengen's sales prices;[81] and (2) Chengen's actual weighted-average dumping margin was below zero percent.  This latter fact negates the price difference between the invoice price relied on by Commerce and Chengen's prices; it also further magnifies the vast difference between the Petition rates and the actual dumping rates of cooperating exporters.

- Commerce has also not considered that two other companies provided complete sales databases on the record of the investigation, Bayley and Jiangyang Wood (an exporter which requested voluntary respondent treatment).  While Commerce ultimately applied total AFA to Bayley, that determination did not undermine its U.S. sales invoice data of record.  Given these submissions, the overall record does not support Commerce's conclusion that the SRA Plaintiffs' pricing is different than Chengen's pricing or that these companies are dumping at such materially higher levels than Chengen.

- Similarly, Commerce has not considered that the Petition rate was based on:  (1) pricing data from a different surrogate country than the primary surrogate country in the investigation; and (2) estimates of cost (rather than credible surrogate values from an economically-comparable surrogate country).  Therefore, the Petition margin is fictitious and not based on the "best available information" statutorily required to value the FOPs.  The Petition margin only serves to demonstrate that plywood from China *may possibly be* dumped and that the initiation of an investigation is warranted.

---

[80] *Id.* (citing Draft Remand at 11).
[81] *Id.* (citing *Redetermination III* at Attachment 1).

- Finally, Commerce's Draft Remand does not address the overarching issue that applying a non-contemporaneous (pre-POI) total AFA margin to the cooperating mandatory respondents is unreasonable and not reflective of their potential dumping *per se*.

- Given that Commerce is obliged to consider the entire record, Commerce's conclusion that the SRA Plaintiffs' margin must be higher than Chengen's is unsupported. Commerce has not cited any credible evidence that the SRA Plaintiffs' dumping margins would be remotely represented by the 57.36 percent margin.

*Petitioner's Draft Comments*:[82]

- Commerce's Draft Remand complies with the Court's views in *Remand Order IV*, and Commerce should continue to apply a margin of 57.36 percent to the separate rate companies.

- Commerce provided a detailed explanation, supported by substantial record evidence, demonstrating why it is reasonable to rely on the average of Chengen's zero percent margin and the Petition rate, given that they are the only two sources of dumping margins on the record. Commerce's approach in its Draft Remand is consistent with the framework provided for under the Act and is supported by the record.

- Commerce's normal practice in assigning a rate to separate rate companies is to average the margins calculated for the individually-investigated companies, excluding any rates that are zero, *de minimis*, or based entirely on facts available. However, where all rates determined for the individually-investigated companies are zero, *de minimis*, or based entirely on facts available, Commerce is expected to average those rates, unless doing so is not feasible or would result in a rate that would not be reasonably reflective of potential dumping. If

---

[82] *See* Petitioner's Draft Comments at 7-11.

Commerce determines that this expected approach is not appropriate, then the agency may rely on "other reasonable methods."

- Given that the Court has sustained Commerce's determination that the application of Chengen's zero percent rate would not be appropriate, Commerce appropriately relied on "any reasonable method" as provided for in section 735(c)(5)(B) of the Act.

- Commerce's determination in the Draft Remand is based on an examination of the available rates on the record – Chengen's rate and the Petition rates, is reasonable, and is supported by the record.  The Petition rate is representative of at least one separate rate company and supports the conclusion that the margins of the separate rate companies could be as high as those calculated in the Petition.  As a result, relying on an average of the rates that represent the upper and lower limits of the calculated rates on the record provides a reasonable methodology for calculating the rate for the separate rate companies.

- As Commerce's determination is consistent with the statutory language and based on and supported by the information on the record, the agency does not need to go further to attempt to identify the actual dumping margins of the separate rate companies.

- It would not be consistent with the Act, nor would it be practical, to require that Commerce essentially undertake a complete analysis of a non-individually-investigated company's dumping in order to support the separate rate.

- The Act indisputably permits the use of methods other than the expected method and states that, in doing so, "any reasonable method" may be used.  To find something other than the expected method to be supported or permitted only in situations that almost certainly never occur (*i.e.*, when record information allows Commerce to calculate a dumping margin for a non-individually-examined company) would be to read this recognition out of the Act.

25

- There is no information on the record which indicates that the dumping margins of the separate rate companies are not represented by Commerce's selected methodology.  Rather, the rate calculated by Commerce can be corroborated with other record evidence on pricing by using the quantity and value (Q&V) questionnaire responses.

- While all Separate Rate Applicants provided a response to the Q&V questionnaires (wherein they reported their average U.S. prices during the POI), they did not provide any data which could be used to establish NV, and the only information on the record which could be used for NV is information contained in the Petition.

- Using the average NV from the Petition, as well as the average pricing information reported in the Q&V responses for all SRA companies yields a dumping margin of 57.17 percent. Moreover, that rate would likely be even higher, as the Q&V prices are gross unit prices and do not subtract out any sales adjustments, which would be required to derive the ex-factory price needed for dumping calculations.

- This rate is even further underestimated given that these margins are not based on zeroing and allow for companies with higher U.S. prices to completely offset the margins for companies with lower U.S. prices.

- Given that the rate selected by Commerce in the Draft Remand is not beset by these issues that call into question using the Q&V data of the Separate Rate Applicants as the basis for their separate rate, the 57.36 percent rate selected by Commerce is further supported by substantial evidence and consistent with the CIT's order in *Remand Order IV*.

**Commerce's Position:**

As we noted in the Draft Remand, it is not possible for Commerce to determine with certainty whether any particular rate accurately reflects the actual dumping margins of the

Separate Rate Plaintiffs.[83]  However, under the relevant statutory guidance, section 735(c)(5)(B) of the Act and the exception to the "expected method," the separate rate is considered to be an accurate estimate of the margins for the companies receiving the rate so long as the method for determining the rate is reasonable.  Given the facts and circumstances present in this investigation, we believe the method we have selected for this final redetermination is reasonable within the meaning of the Act, and, thus, results in an accurate estimate of the dumping behavior of the Separate Rate Plaintiffs.  The CAFC has recognized that, as a general matter, "{c}onstructing values for use in antidumping investigations is by necessity imperfect."[84]  Given the inherent imperfection that lies in crafting an antidumping duty rate for companies for which Commerce has limited information, it follows that a proceeding's given record, alone, must serve as the basis for establishing a separate rate for companies that have satisfactorily complied with Commerce's requests for information.  It is with this understanding that we note the limits of the information on the record available to us.

Within this framework, we have examined the record of this investigation[85] and find that there is additional information that further supports the reliability and relevance of the Petition price quotes and, therefore, the probative value of the Petition margin.  In addition, in light of the absence of any other information, we continue to find that an average of Chengen's zero percent

---

[83] *See* Draft Remand at 10.

[84] *See Thai I-Mei Frozen Foods Co. v. United States*, 616 F.3d 1300, 1309 (CAFC 2010).

[85] We note Dehua TB argues that Commerce has ignored evidence that purportedly indicates the separate rate companies' potential dumping is lower.  *See* Dehua TB's Draft Comments at 6.  However, we note that Dehua TB is citing to the first administrative review of hardwood plywood, which is a separate, later-in-time segment of the proceeding and is based on a separate record.  As both the CIT and CAFC have upheld, an "administrative review is a separate segment of {the} proceeding {} with its own unique facts.  Indeed, if the facts remained the same from period to period, there would be no need for administrative reviews."  *See Shandong Huarong Mach. C. v. United States*, 29 CIT 484, 491 (May 2, 2005); *see also Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016); *see also Hyundai Heavy Indus. Co. v. United States*, 332 F. Supp. 3d 1331, 1342 (CIT 2018).  Commerce's determination in a later-in-time administrative review is not probative to the potential dumping of the separate rate companies *during the period of the investigation*.  Accordingly, as explained further below, Commerce has examined all evidence on the record of *this* investigation in determining the separate rate.

margin and Bayley's China-wide AFA margin, based on the highest Petition rate, represents a "reasonable" method by which to calculate the separate rate assigned to the Separate Rate Plaintiffs.

First, and most importantly, is the zero percent rate calculated under protest for Chengen as a result of *Remand Order II*.  As the CIT agreed in *Remand Order IV*, this rate would not be representative of the separate rate respondents' actual dumping margins.[86]  Moreover, as we acknowledged in *Redetermination III*, the "representativeness" of individually-investigated exporters is the basis of Congress' preference for the expected method as applied under section 735(c)(5)(A) of the Act, and deviation from this methodology is only permitted where Commerce has found "based on substantial evidence that there is a reasonable basis for concluding that the separate rate respondents' dumping is different."[87]

Given that the Court in *Remand Order IV* sustained our conclusion regarding the non-representativeness of Chengen's calculated zero percent rate *vis-à-vis* the Separate Rate Plaintiffs, other information on the record must serve as the basis for the rate applied to the Separate Rate Plaintiffs.  Indeed, while interested parties continue to argue that Commerce should apply Chengen's rate as the separate rate and that "the separate-rate firms' decisions to respond to the questionnaires might suggest that they are more similar to other firms, like the mandatory respondents, that responded,"[88] these arguments ignore that the Court agreed with Commerce in *Remand Order IV* that Chengen's rate "would not be representative of the separate rate respondents' actual dumping margins."[89]  Accordingly, Commerce must demonstrate that

---

[86] *See Remand Order IV* at 16.
[87] *See Redetermination III* at 14-15; *see also Changzhou Hawd CAFC 2017*, 848 F.3d at 1012.
[88] *See* Dehua TB's Draft Comments at 2 (citing *Changzhou Hawd CAFC 2017*, 848 F.3d at 1012).
[89] *See Remand Order IV* at 16.

the method used to calculate the separate rate is reasonable and that the resulting separate rate is representative of the Separate Rate Plaintiffs' dumping behavior during the POI.

In both *Redetermination III* and the Draft Remand, and given the Court's finding that Chengen's zero percent rate would not be reflective of the Separate Rate Plaintiffs' actual dumping, Commerce demonstrated, using information from the Petition, that the rate applied to the Separate Rate Plaintiffs could be "reasonabl{y} reflective of potential dumping margins,"[90] even as we acknowledged that "the record provides no opportunity for Commerce to know or to calculate the 'actual' dumping margins of the Separate Rate Plaintiffs."[91]  The substantial evidence we relied upon in our application of this rate to the separate rate companies involved in this litigation includes both price quotes in the Petition from [          ] (Petition SRA Exporter), as well as a single invoice from this same company.  As explained in *Redetermination III*, the Petition SRA Exporter was itself a company that applied, and was granted, a separate rate.[92]  Both the Petition SRA Exporter's price quote in the Petition, as well as the invoice it provided in its separate rate application, contained pricing and sales information for the same type of plywood products that were sold by Chengen.

As an initial matter, we find that the price quote that forms the basis of the Petition rate, as well as the invoice that corroborates that same exporter's selling practices and the additional record evidence discussed below, constitute substantial evidence.  Comparing prices between two companies selling comparable goods is a reasonable analysis to conduct in the antidumping context, where price comparisons form the basis of all calculated rates.  Both the price quote forming the basis for the Petition rate, as well as the invoice provided in the Petition SRA

---

[90] *See* SAA at 873.
[91] *See Redetermination III* at 16.
[92] *Id.* at 15.

Exporter's separate rate application, substantiated the pricing and selling activities of the Petition SRA Exporter and indicated that the Petition rates were both relevant and reliable as to actual dumping behavior during the POI.  As the Court in *Remand Order IV* held, information on the record including price quotes and the Petition rate derived from it, as well as an invoice from the same company, constituted sufficient evidence of meaningful differences between Chengen's and the separate rate applicants' pricing and cost structures, as well as their selling activities.[93] Given these differences, it is reasonable to conclude that the dumping margins too are different between Chengen and the Separate Rate Plaintiffs, such that Chengen's margin, *i.e.*, zero percent, would not be reflective of the dumping behavior of the Separate Rate Plaintiffs. Commerce demonstrated through an exhaustive analysis in both *Redetermination III* and the Draft Remand that the record supports the conclusion that the cost structures and the selling activities of Chengen are different than those of a significant portion of the Separate Rate Plaintiffs, and that such a difference signifies that a zero percent rate would not be reasonably representative of the Separate Rate Plaintiffs dumping behaviors.  Moreover, additional information on the record of this investigation that is tethered to the actual selling activities of separate rate recipients during the POI, described below, indicates that sales were made during the POI at prices even lower than those that resulted in the Petition rates, suggesting that potential dumping occurred at levels even higher than the Petition rates during the same period. Our analysis lends further support to our conclusions in *Redetermination III*, and leads us to conclude that, although the highest Petition rate was the rate applied as AFA to the China-wide entity (which includes Bayley), this rate also bears a rational connection to the record and the actual dumping levels of separate rate recipients during the POI.  We acknowledge that although

---

[93] *See Remand Order IV* at 14.

the zero percent rate alone would not be reflective of the potential dumping rates of the Separate

Rate Plaintiffs, neither would either of the Petition rates alone be the most appropriate rate to

apply to the Separate Rate Plaintiffs.  By averaging Chengen's zero percent rate with the China-

wide entity rate (which is based on the highest Petition rate) we account for those Separate Rate

Plaintiffs whose dumping may more closely adhere to the levels of the Petition SRA Exporter as

well as those whose dumping behavior may be more similar to that of Chengen's.  Thus,

although Taraca Pacific argues that we have not taken into consideration those Separate Rate

Plaintiffs whose pricing may have been different than the Petition SRA Exporter, the average of

these two rates considers the likely range of dumping behavior by those parties.

Although we maintain that our analysis, rooted in record evidence, has demonstrated the

probative value of this Petition rate, thus rendering it an appropriate rate to include in the

calculation of the separate rate, we recognize that several interested parties and the Court have

noted that the Petition rate is supported by only a single commercial invoice.[94]  Accordingly, we

have reexamined the record and identified additional information that not only indicates the

Petition rates are reliable but also that the Petition SRA Exporter was likely dumping at even

higher levels than the Petition rates during the POI.  This information is described below.

In a supplemental questionnaire, Commerce requested additional invoices from the

Petition SRA Exporter for plywood purchased from each of its suppliers.[95]  In response, the

Petition SRA Exporter stated that one of its sales channels involved unaffiliated suppliers who

sold plywood to the Petition SRA Exporter's affiliate; this affiliated company, in turn, resold the

---

[94] *See, e.g.*, *Remand Order IV* at 17 ("Commerce cited one commercial invoice from the Petition Separate Rate
Application as record evidence showing a single sale of products similar to products sold by Linyi Chengen, noting
that the price of the single sale was 'almost identical' to one of the price quotes used to determine the estimated
dumping margins in the Petition").
[95] *See* Petition SRA Exporter's Letter, "Certain Hardwood Plywood Products from the People's Republic of China:
Submission of [                ] Supplemental Response," dated [           ] (Petition SRA Exporter Supplemental)
at 5.

merchandise to the Petition SRA Exporter who then sold it to the United States.[96]  This indicates

an additional level of price markup than the sales channel where the Petition SRA Exporter

purchased directly from suppliers.  Specifically, the Petition SRA Exporter provided value-added

tax (VAT) invoices from its Chinese affiliate, who was also granted a separate rate in this

investigation, that reflect prices for the identical merchandise that was the subject of the Petition

rate at prices significantly lower than the prices on which the Petition rate was based.  Those

VAT invoices reflect prices of [    ] U.S. dollars (USD)/cubic meter (m$^3$) for merchandise that

the Petition SRA Exporter, in turn, sold at a significantly higher markup of [    ] USD/m$^3$.[97]

Despite the markup, the documentation demonstrates that the Petition SRA Exporter sold

plywood to the United States during the POI at even lower rates than the prices identified in the

Petition.  The single commercial invoice identified in *Redetermination III* indicates an actual sale

of [    ] m$^3$ of [                                        ], which is very

similar to the products sold by Chengen,[98] at a free-on-board (FOB) price of [    ] USD/m$^3$,

which is also nearly identical to the Petition price quote.[99]  Additional documentation provided

by the Petition SRA Exporter demonstrates that the Petition SRA Exporter made additional sales

of identical plywood, in substantial quantities and under FOB sales terms, at the same or even

lower prices than the prices identified in the Petition.  Specifically, the Petition SRA Exporter

---

[96] We acknowledge that this affiliated sale is not a sale we would normally consider in the exercise of calculating the dumping margin in an NME context, however, given the task laid before us by this Court, we are considering it as relevant evidence for purposes of calculating the separate rate.

[97] *Id.* at Exhibit [    ] (including a VAT invoice from [                    ] at a unit price of [        ] renminbi/kilogram (kg).  Using the m$^3$ ([        ]) and net weight ([    ] kg) listed on the Petition SRA Exporter's corresponding invoice, and the POI average exchange rate reported by Chengen in its U.S. sales database (6.557) yields a price of [    ] USD/m$^3$.  *See also* Chengen's Letter, "Revised U.S. Sales Database," dated September 29, 2017 at Exhibit 1 (Chengen's U.S. Sales Database).  Additional documentation demonstrates even lower prices from the Chinese affiliate.  *See* Petition SRA Exporter Supplemental at Exhibit [                ] (indicating prices of [    ] USD).

[98] *See* Chengen's U.S. Sales Database.

[99] *See* Petition Rate SRA at Exhibit 1.

sold [                                                    ] supplied by three different producers at prices

between [                        ], including more than [        ] at [            ].  Accordingly, the record

includes multiple commercial invoices indicating that the Petition SRA Exporter made sales

during the POI at the same, or lower, prices than the price quote upon which the Petition rate is

based (*i.e.*, [        ] USD/m$^3$).  This evidence thus indicates that the Petition SRA Exporter made

sales of significant quantities of identical plywood at potential dumping rates higher than the

Petition rates throughout the POI.  Therefore, we continue to find that the Petition rates are a

reliable and relevant indicator of the potential dumping rate of the Separate Rate Plaintiffs during

the POI.  Additionally, this evidence further supports Commerce's calculation of the separate

rate utilizing Chengen's rate and the China-wide entity rate (based on highest Petition rate).

Given this additional evidence indicating sales at lower prices by the Petition SRA Exporter,

Commerce's calculation of the separate rate is "reasonable" within the meaning of the SAA[100]

because it incorporates the range of potential dumping during the POI, *i.e.*, Chengen's zero

percent rate and the China-wide entity rate that is based on the higher Petition rate, to account for

those separate rate companies, like the Petition SRA Exporter, that made sales at these lower

prices, and potentially dumped at higher margins.

   In response to the Court's instruction in *Remand Order IV*, we have calculated a rate for

the Separate Rate Plaintiffs under the exception to the general rule, using a reasonable method to

establish the rate for exporters and producers not individually investigated.  Our review of the

record and of comments by interested parties indicates that there is no other information on the

record which would be *more representative* of the dumping behavior of the Separate Rate

---

[100] *See* SAA at 873; *see also Changzhou Hawd CAFC 2017*, 848 F.3d at 1011.

Plaintiffs during the POI than the rate we selected in *Redetermination III* and the Draft Remand. We find that no such information exists that fits these criteria.

In reaching this conclusion, it is appropriate to first define the universe of information on the record. As we explained in *Redetermination III* and the Draft Remand, this universe includes the potential dumping margins provided in the Petition, one of which we have already discussed at length as an appropriate surrogate for the pricing behavior of the Separate Rate Plaintiffs. As Taraca Pacific noted in its comments, Commerce did not consider averaging the lower of the two potential dumping margins listed in the Petition, 104.06 percent, with Chengen's calculated zero percent margin. This is because, in determining "any reasonable method to establish the rate for exporters and producers not individually investigated," we believe it is more reasonable to use as guidance the method expressly contemplated by Congress when the margins for all exporters and producers selected for individual examination are zero, *de minimis*, or determined entirely under section 776 of the Act (the "expected method"), even where the situation warrants a departure from that expected method of determining the separate rate. However, we also note that it could not have been the intent of Congress for us to conduct an exhaustive and detailed analysis, such as that provided in *Redetermination III*, in order to demonstrate that a separate rate based on the calculation method expected (*i.e.*, anticipated) under the law is appropriate. Thus, our analysis goes beyond what would normally be expected of Commerce when calculating a separate rate under similar circumstances. Because this analysis is supported by substantial evidence, it represents a reasonable method.

In addition to the information underlying the Petition rates, we have available information on the record from the Q&V responses. The petitioner has suggested that a subset of these responses, from only those companies that were granted a separate rate, could serve to

corroborate the rate selected by Commerce in *Redetermination III*.  However, we consider this information to be less representativeness than the information on which we are currently relying (the sales invoice and pricing information of a separate rate applicant that sold merchandise that is very similar to that sold by Chengen) because the Q&V data do not distinguish among products sold in the same manner as the information we relied on from the Petition in *Redetermination III* and in this redetermination.  However, we agree with the petitioner that its analysis of the Q&V data is instructive and serves as an additional data point to support the conclusion that Chengen's zero percent margin is not the appropriate margin to apply to the Separate Rate Plaintiffs.

We disagree with the SRA Plaintiffs and Taraca Pacific that the Petition rates suffer from fatal flaws because they were not based on pricing data from Romania and rely on pre-POI information.  We do not consider these arguments to detract from the relevance of the Petition rates to this investigation.  This investigation was initiated using data from Thailand as the surrogate country because Thailand is a market economy that was at a level of economic development comparable to that of China at the time of initiation and it was a significant producer of comparable merchandise.[101]  Indeed, parties continued to advocate for Thailand as the primary surrogate country as late in the proceeding as in case briefs submitted immediately prior to the final determination.[102]  Thus, despite the SRA Plaintiffs' claims to the contrary, the Petition rates were in fact based on credible surrogate values from an economically-comparable surrogate country.  In addition, the SRA Plaintiffs' claim that the Petition rate represents a pre-POI AFA rate is simply not supported by the record.  Specifically, the Petition rate at issue was

---

[101] *See Certain Hardwood Plywood Products from the People's Republic of China:  Initiation of Less-Than-Fair-Value Investigation*, 81 FR 91125 (December 16, 2016) (*Initiation Notice*).

[102] *See* Petitioner's Letter, "Case Brief of the Coalition for Fair Trade in Hardwood Plywood," dated October 6, 2017 at 21-28.

based on a comparison of a price quote during the POI, which we have demonstrated is

corroborated by multiple, actual sale prices by separate rate companies during the POI, with

actual consumption rates experienced during the POI by a plywood producer in the United States

that employed a production process similar to that of Chinese producers for identical or similar

merchandise.[103]  Consistent with section 732(b)(1) of the Act, the Petition contained information

in support of their allegations that was reasonably available to the Petitioner at the time of

initiation and fully in accordance with the law.[104]

 The SRA Plaintiffs also argue that Commerce's analysis disregards the possibility that

the separate rate respondents' NVs, had they been investigated, would have resulted in margins

even lower than the 20 percent difference suggested by the pricing information.  We find this

argument is unpersuasive.  Because Commerce selected certain companies for individual

examination and did not collect the extensive information required to calculate the NV for each

of the separate rate respondents, there is no evidentiary support for the SRA Plaintiff's assertion.

The SRA Plaintiffs merely presume that the NVs for the separate respondents would have been

meaningfully different (*e.g.*, lower) than the NVs in the petition, thereby resulting in a lower

dumping margin, but they very well could have been higher.  Making any conclusions about the

NVs of the separate rate applicants without additional record information would be pure

speculation.

 We do not agree that further information on the record, such as the sales information

provided by Bayley and Jiangyang Wood referenced by some of the Separate Rate Plaintiffs in

their comments on the Draft Remand, would provide a more accurate basis by which to calculate

---

[103] *See* Volume II of the Petition at 1, 14-15, and Exhibit II-10.
[104] *See*, *e.g.*, *Initiation Notice*, 81 FR at 91126.

the separate rate for Separate Rate Plaintiffs.[105]  As we explained in *Redetermination III* with respect to Jiangyang Wood, Commerce did not subject Jiangyang Wood's data to further inquiry in the form of supplemental questionnaires, nor did any interested parties comment on the company's data.[106]  Accordingly, we have no assurances that Jiangyang's data, as submitted and unvetted, were complete or accurate, and we have no confidence that reliance on these data, absent further inquiry, would have resulted in an accurate individual dumping margin.[107]  The accuracy of our assessment can be seen through the resources expended during the investigation to investigate Chengen – Chengen submitted nine supplemental questionnaire responses[108] and four U.S. sales and FOP databases,[109] and its data underwent a full week of verification.  This level of scrutiny is typical of Commerce's investigations to ensure that Commerce fulfills its statutory obligation to calculate dumping margins as accurately as possible.[110]  It is, therefore, reasonable to expect that the initial questionnaire responses provided by Jiangyang would also require significant probing, analysis, and revision, in accordance with our normal practice, to reach an accurate and reliable result.  Although Dehua TB argues that Commerce could have gathered more information from the companies that requested voluntary respondent status, we

---

[105] *See* SRA Plaintiffs' Draft Comments at 5-6.

[106] *See Redetermination III* at 44.

[107] *Id.*

[108] *See, e.g.*, Chengen's Letter, "Hardwood Plywood from the People's Republic of China:  Slip Op. 19-67, Comment on Draft Remand Determination," dated August 5, 2019 at 2 ("Chengen fully answered all of {Commerce's} extensive questionnaires on the matters that were of interest to {Commerce} - including nine supplemental questionnaire responses.  {Commerce} asked for purchase invoices for several other material inputs, log warehouse-out slips, raw material ledgers, documentation of production processes, monthly consumption worksheets for raw materials, and full reconciliations for the various workshops including the core veneer cutting workshop").

[109] *See* Memorandum, "Antidumping Duty Investigation of Certain Hardwood Plywood Products from the People's Republic of China:  Final Analysis Memo for Linyi Chengen Import and Export Co., Ltd.," dated November 6, 2017 at 1 (Stating that we calculated a margin for Chengen using "the U.S. sales database (ChengenUS04.sas) provided in Chengen's September 29, 2017, response, and factors of production (FOP) database (chenfp04.sas) submitted on August 23, 2017."  The numerical indicators "fp04" and US04" indicate that these are the fourth iterations of said databases).

[110] *See, e.g., Bestpak*, 716 F.3d at 1379.

responded to requests by potential voluntary respondents that satisfied the threshold

requirements for consideration as voluntary respondents in this investigation (*i.e.*, requested

voluntary status and timely submitted all questionnaire responses by the deadlines specified for

the mandatory respondents).  Our decision not to individually examine any voluntary

respondents was fully explained and made in due consideration of the law (*i.e.*, sections

782(a)(2)(A)-(C) of the Act) and the particular facts of this investigation.  Given Commerce's

resource constraints existing at the time of this investigation, and the complexity of the issues

faced during the course of it, Commerce simply did not have the ability to individually examine

a third respondent,[111] nor did we anticipate the need to gather data which would be used solely

for the type of analysis undertaken here.  To suggest otherwise is simply unrealistic.

As for Bayley's data,[112] we continue to find this company's data to be unreliable as a

basis for calculating an individual dumping margin given the application of total AFA to this

company in the investigation, and particularly considering that the basis for total AFA was the

determination that Bayley failed to provide complete and accurate information in its

questionnaire responses.[113]

Finally, to the extent that the record may contain evidence that certain parties made sales

at prices higher than the Petition SRA Exporter, the method we have selected here accounts for

the variation in dumping behavior of the Separate Rate Plaintiffs during the POI.  As we have

---

[111] *See* Memorandum, "Antidumping Duty Investigation of Certain Hardwood Plywood from the People's Republic of China:  Selection of Voluntary Respondent," dated April 4, 2017 at 3-4 ("In considering the statutory factors in section 782(a)(2)(A), we find that the complexity of the issues and information presented in this particular investigation have created an additional burden on {Commerce's} already-strained resources… In considering the statutory factor in section 782(a)(2)(B) of the Act, we find that the investigation is further complicated by the fact that the issues and information presented may be matters of first impression in an investigation, as {Commerce} has not had prior experience in examining either respondent… Finally, with respect to the statutory factor in section 782(a)(2)(C) of the Act, {Commerce} took into account its workload and limited resources in determining whether it could individually examine voluntary respondents in addition to the two mandatory respondents")
[112] *See* SRA Plaintiffs' Draft Comments at 5-6.
[113] *See Final Determination* IDM at Comment 1.

previously explained, we find it reasonable to conclude that the selling behavior of the separate

rate companies, of which the Separate Rate Plaintiffs are a subset, varied during the POI.  By

averaging Chengen's zero percent rate and the China-wide entity (which is based on the highest

Petition rate) we account for this variation in selling behavior; an average, by its nature,

encompasses variation between two data points.  Therefore, we disagree that we are ignoring

record information; any data points that fall within the zero percent and the 114 percent do not

detract from our analysis because they are already accounted for by our selected methodology.

Relying upon *Bestpak*, Dehua TB[114] and the SRA Plaintiffs[115] premise their arguments on

the idea that the separate rate must be anchored in the economic reality of the separate rate

companies, and in doing so they argue that applying Chengen's rate to the separate rate

companies is the only reasonable method to calculate the separate rate.  As we explained in both

*Redetermination II* and *Redetermination III*,[116] the Act contains no such requirement; indeed,

Commerce may depart from the expected method for calculating the separate rate "if Commerce

determines that following the expected method would not be feasible or would result in margins

that would 'not be reasonably reflective of potential dumping margins' for the separate

respondents."[117]  In *Remand Order IV*, the CIT upheld Commerce's determination that

Chengen's rate would not be reasonably reflective of the separate rate companies' dumping.[118]

Moreover, by arguing that applying Chengen's zero percent rate is the only "reasonable"

method for Commerce to calculate the separate rate in this investigation, Dehua TB and the SRA

Plaintiffs are asking for Commerce to ignore record evidence.  As explained both above and in

---

[114] *See* Dehua TB's Draft Comments at 2.
[115] *See* SRA Plaintiffs' Draft Comments at 6.
[116] *See Redetermination II* at 44-45; *see also Redetermination III* at 31-32.
[117] *See Albemarle*, 821 F.3d at 1349 (citing 19 USC 1673d(c)(5)); *see also Changzhou Hawd CAFC 2017*, 848 F.3d at 1011-12.
[118] *See Remand Order IV* at 14-15.

*Redetermination III*, record evidence demonstrates that certain separate rate companies sold plywood at prices lower than Chengen, and that the separate rate companies had varying pricing and cost structures such that Chengen's rate is not reflective of the potential margins of the Separate Rate Plaintiffs.[119]  However, if Commerce were to simply apply Chengen's rate to the Separate Rate Plaintiffs, it would require Commerce to ignore record evidence demonstrating that Chengen's rate by itself is not reflective of the separate rate companies' potential dumping. Instead, Commerce's calculation relying on an average of the rates that represent the upper (the 114.72 percent China-wide entity rate)[120] and lower (Chengen's zero percent rate) limits of the calculated rates on the record provides a reasonable methodology for calculating the rate for the Separate Rate Plaintiffs.  Further, we agree with the petitioner that, if Commerce were required to apply Chengen's zero percent rate despite evidence of higher levels of potential dumping on the record, it would render the "any reasonable method" language in 735(c)(5)(B) of the Act inoperative.

Although Dehua TB,[121] Taraca Pacific,[122] and the SRA Plaintiffs[123] continue to point to *Bestpak* and *Baroque Timber* to support the argument that an average of the zero and AFA rates is inappropriate, or that inclusion of a rate based on AFA in the calculation of the separate rate is unlawful, we disagree.  Contrary to this assertion, in *Bestpak*, the CAFC observed that "{the Act} and the SAA explicitly allow Commerce to factor both *de minimis* and AFA rates into the calculation methodology" and that this methodology was "derived from the relevant statutory language."[124]  Based on the ruling in *Bestpak*, the CIT found in *Baroque Timber* that "it is not

---

[119] *See Redetermination III* at 18-25.
[120] Given that the record reflects actual sale prices during the POI at prices that could result in potential dumping margins greater than 114.72 percent, this rate is potentially conservative.
[121] *See* Dehua TB's Draft Comments at 2.
[122] *See* Taraca Pacific's Draft Comments at 3.
[123] *See* SRA Plaintiffs' Draft Comments at 6.
[124] *See Bestpak*, 716 F. Supp. 3d at 1378.

*per se* unreasonable for Commerce to use a simple average of *de minimis* and AFA rates to calculate the separate rate antidumping duty margin."[125] This finding is in no way punitive, nor does it undercut "the cooperation-promoting goal of the AFA statute,"[126] given that the rate calculated for the Separate Rate Plaintiffs is based on the best available record information, reflects the reasonable inference based on the limited record information that the selling behavior of the separate rate companies (of which the Separate Rate Plaintiffs are a subset) varied during the POI, and is not equal to the zero percent rate the Court agreed was unsuitable for use as the rate of the Separate Rate Plaintiffs.

Therefore, the information discussed above constitutes sufficient evidence, and provides a reasonable basis for drawing conclusions regarding the potential dumping behavior of the Separate Rate Plaintiffs. Given the available information on the record, we cannot say that selecting any alternative data would provide us with an understanding of the Separate Rate Plaintiffs' potential dumping behavior that is *more representative* than the data on which we relied in *Redetermination III* and in these final results of redetermination. The invoice and pricing information we relied on, as well as the additional information described, *supra*, demonstrates similarity to Chengen's own behavior in terms of the products sold, and because this information was provided by a company granted a separate rate in the *Final Determination*, we continue to find that our reliance on the invoices and price quote information from the Petition SRA Exporter is warranted. Thus, the relevant record evidence provides a reasonable basis to conclude that the average of Chengen's zero percent and the AFA rate applied to the China-wide entity (which includes Bayley) is a reasonable method for calculating a separate rate that is representative of the likely dumping behavior of the Separate Rate Plaintiffs.

---

[125] *See Baroque Timber*, 971 F. Supp. 2d at 1341.
[126] *See Changzhou Wujin*, 701 F.3d at 1378.

Accordingly, for these final results of redetermination, Commerce is assigning the most accurate

dumping margin possible based on the record information, *i.e.*, 57.36 percent, to the Separate

Rate Plaintiffs, in accordance with the Court's instructions.[127]

## IV.    FINAL RESULTS OF REDETERMINATION

Based on the foregoing, and pursuant to the CIT's *Remand Order IV*, we have

reconsidered the record evidence and, as a result, continue to conclude that the appropriate

method for calculating an estimated weighted-average dumping margin for the Separate Rate

Plaintiffs is to calculate the simple average of Chengen's zero percent rate with the rate assigned

to the China-wide entity, which is 114.72 percent.  We find that this a reasonable method for

determining this rate, in accordance with section 735(c)(5)(B) of the Act, and substantial

evidence supports our finding that this rate is a reasonably accurate estimate of the Separate

Plaintiffs' dumping behavior during the POI.  Accordingly, for these final results of

redetermination, we continue to calculate a separate rate of 57.36 percent, and a cash deposit rate

of 45.55 percent, as shown below.

---

[127] *See Remand Order IV* at 14-15.

| Exporter | Producer | Estimated Dumping Margin (Percent) | Cash Deposit Rate (Percent) |
|---|---|---|---|
| Linyi Chengen Import and Export Co., Ltd. | Linyi Dongfangjuxin Wood Co., Ltd. | 0.00 | N/A |
| Separate Rate Litigants[128] | | 57.36 | 45.55 |
| China-Wide Entity[129] | | 114.72 | 114.72 |

Dated:  November 10, 2021

11/10/2021

X ~~Ryan Majerus~~

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties of the
  Assistant Secretary for Enforcement and Compliance

---

[128] *See* Attachment for the exporter/producer combinations whose rates we are revising.
[129] The China-wide entity includes mandatory respondent, Shandong Dongfang Bayley Wood Co., Ltd.

**Attachment**

***Public Information***

All case numbers associated with exporter litigants + all exporter/producer combinations enjoined by importer litigants - duplicates removed without regard

**Company Case**

| # | Exporter Name | Manufacturer Name |
|---|---|---|
| A570051001 | LINYI CHENGEN IMPORT AND EXPORT CO., LTD. | LINYI DONGFANGJUXIN WOOD CO., LTD. |
| A570051002 | ANHUI HODA WOOD CO., LTD. | FEIXIAN JIANXIN BOARD FACTORY |
| A570051003 | ANHUI HODA WOOD CO., LTD. | LINYI XICHENG WOOD CO., LTD |
| A570051004 | ANHUI HODA WOOD CO., LTD. | LINYI LONGXIN WOOD CO., LTD |
| A570051005 | ANHUI HODA WOOD CO., LTD. | FENGXIAN JIHE WOOD CO., LTD |
| A570051006 | ANHUI HODA WOOD CO., LTD. | XUZHOU CHUNYIYANG WOOD CO., LTD. |
| A570051007 | ANHUI HODA WOOD CO., LTD. | LINYI LANSHAN DISTRICT XIANGFENG DECORATIVE BOARD FACTORY |
| A570051008 | ANHUI HODA WOOD CO., LTD. | LINYI LANSHAN DISTRICT FUBAI WOOD BOARD FACTORY |
| A570051009 | ANHUI HODA WOOD CO., LTD. | SHANDONG JUBANG WOOD CO., LTD. |
| A570051010 | ANHUI HODA WOOD CO., LTD. | FEIXIAN SHANGYE TOWN MINGDA MULTI-LAYERED BOARD FACTORY |
| A570051011 | ANHUI HODA WOOD CO., LTD. | XUZHOU DAYUAN WOOD CO., LTD. |
| A570051012 | ANHUI HODA WOOD CO., LTD. | LINYI MINGZHU WOOD CO., LTD. |
| A570051013 | ANHUI HODA WOOD CO., LTD. | LINYI RENLIN WOOD CO., LTD |
| A570051014 | CELTIC CO., LTD. | LINYI CELTIC WOOD CO., LTD. |
| A570051015 | CELTIC CO., LTD. | PINYI FUHUA WOOD CO., LTD. |
| A570051043 | Golder International Trade Co., Ltd | Fengxian Fangyuan Wood Co., Ltd |
| A570051053 | Huainan Mengping Import and Export Co., Ltd | Linyi Qianfeng Panel Factory Co., Ltd. |
| A570051060 | Jiangsu Top Point International Co., Ltd. | Linyi Jinkun Wood Co., Ltd. |
| A570051061 | Jiangsu Top Point International Co., Ltd. | Feixian Huafeng Wood Co., Ltd. |
| A570051063 | Jiangsu Top Point International Co., Ltd. | Feixian Fuyang Plywood Factory |
| A570051067 | JIAXING GSUN IMP. & EXP. CO., LTD | FENGXIAN HENGYUAN WOOD INDUSTRY CO., LTD. |
| A570051068 | JIAXING GSUN IMP. & EXP. CO., LTD | FEIXIAN JUNYANG WOOD INDUSTRY CO., LTD. |
| A570051069 | JIAXING GSUN IMP. & EXP. CO., LTD | FEIXIAN JUNBANG WOOD FACTORY |
| A570051070 | JIAXING GSUN IMP. & EXP. CO., LTD | LINYI CITY LANSHAN DISTRICT MINGDA WOOD FACTORY |
| A570051071 | JIAXING GSUN IMP. & EXP. CO., LTD | FEIXIAN HONGYUN WOOD FACTORY |
| A570051072 | JIAXING GSUN IMP. & EXP. CO., LTD | LINYI CITY LANSHAN DISTRICT XIANGFENG WOOD DECORATION FACTO |
| A570051073 | JIAXING GSUN IMP. & EXP. CO., LTD | SHANDONG JUBANG WOOD CO., LTD |

| A570051074 | JIAXING GSUN IMP. & EXP. CO., LTD | FEIXIAN YIXIN WOOD PROCESSING FACTORY |
| A570051075 | JIAXING GSUN IMP. & EXP. CO., LTD | PIZHOU WANTAI WOOD INDUSTRY CO., LTD. |
| A570051076 | JIAXING GSUN IMP. & EXP. CO., LTD | FEIXIAN FENGXIANG WOOD PROCESSING FACTORY |
| A570051077 | JIAXING GSUN IMP. & EXP. CO., LTD | SHANDONG COMPETE WOOD CO., LTD. |
| A570051078 | JIAXING GSUN IMP. & EXP. CO., LTD | LINYI KUNYU PLYWOOD FACTORY |
| A570051079 | JIAXING HENGTONG WOOD CO., LTD. | JIAXING HENGTONG WOOD CO., LTD. |
| A570051082 | Lianyungang Yuantai International Trade Co., Ltd. | Xinyi Chaohua Wood Co., Ltd. |
| A570051083 | Lianyungang Yuantai International Trade Co., Ltd. | Linyi Huasheng Yongbin Wood Corp |
| A570051087 | Lianyungang Yuantai International Trade Co., Ltd. | Linyi City Lanshan District Fubo Wood Factory |
| A570051088 | Lianyungang Yuantai International Trade Co., Ltd. | Fei County Hongsheng Wood Co., Ltd. |
| A570051089 | Lianyungang Yuantai International Trade Co., Ltd. | Xuzhou Hongwei Wood Co., Ltd. |
| A570051090 | Lianyungang Yuantai International Trade Co., Ltd. | Pizhou Jinguoyuan Wood Co., Ltd. |
| A570051091 | Lianyungang Yuantai International Trade Co., Ltd. | Feixian Wanda Wood Co., Ltd. |
| A570051094 | Lianyungang Yuantai International Trade Co., LTD. | Linyi City Lanshan District Fuerda Wood Factory |
| A570051097 | Lianyungang Yuantai International Trade Co., Ltd. | Shandong Jubang Wood Co., Ltd. |
| A570051100 | Lianyungang Yuantai International Trade Co., Ltd. | Feixian Hongyun Wood Factory |
| A570051101 | Lianyungang Yuantai International Trade Co., Ltd. | Linyi City Lanshan District Xiangfeng Wood Decoration Factory |
| A570051102 | Lianyungang Yuantai International Trade Co., Ltd. | Linyi Renlin Wood Industry Co., Ltd. |
| A570051103 | Lianyungang Yuantai International Trade Co., Ltd. | Linyi City Lanshan District Mingda Wood Factory |
| A570051104 | Linyi City Dongfang Fukai Wood Industry Co., Ltd. | Linyi City Dongfang Fukai Wood Industry Co., Ltd. |
| A570051105 | Linyi City Dongfang Jinxin Economic and Trade Co., Ltd. | Linyi City Dongfang Jinxin Economic and Trade Co., Ltd. |

| | | |
|---|---|---|
| A570051106 | Linyi City Shenrui International Trade Co., Ltd. | Linyi City Dongfang Fuchao Wood Co., Ltd. |
| A570051108 | Linyi Dahua Wood Co., Ltd. | Linyi Dahua Wood Co., Ltd. |
| A570051109 | LINYI EVERGREEN WOOD CO., LTD. | LINYI EVERGREEN WOOD CO., LTD. |
| A570051110 | LINYI GLARY PLYWOOD CO., LTD. | LINYI GLARY PLYWOOD CO., LTD. |
| A570051111 | LINYI HENGSHENG WOOD INDUSTRY CO., LTD. | LINYI HENGSHENG WOOD INDUSTRY CO., LTD. |
| A570051112 | LINYI HUASHENG YONGBIN WOOD CO., LTD. | LINYI HUASHENG YONGBIN WOOD CO., LTD. |
| A570051113 | LINYI JIAHE WOOD INDUSTRY CO., LTD. | LINYI JIAHE WOOD INDUSTRY CO., LTD. |
| A570051114 | LINYI LINHAI WOOD CO., LTD. | LINYI LINHAI WOOD CO., LTD. |
| A570051115 | LINYI MINGZHU WOOD CO., LTD. | LINYI MINGZHU WOOD CO., LTD. |
| A570051116 | LINYI SANFORTUNE WOOD CO., LTD. | LINYI SANFORTUNE WOOD CO., LTD. |
| A570051118 | Pingyi Jinniu Wood Co., LTD. | Pingyi Jinniu Wood Co., LTD. |
| A570051122 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | LINYI FUBO WOOD CO., LTD |
| A570051123 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | LINYI TUOPU ZHIXIN WOODEN INDUSTRY CO., LTD |
| A570051124 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | LINYI HAISEN WOOD CO., LTD |
| A570051125 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | LINYI JUBANG WOOD CO., LTD |
| A570051126 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | XUZHOU CHANGCHENG WOOD CO., LTD |
| A570051127 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | XUZHOU JINGUOYUAN WOOD CO., LTD |
| A570051128 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | XUZHOU XUEXIN WOOD CO., LTD |
| A570051129 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | ANHUI FUYANG QINGLIN WOOD PRODUCTS CO., LTD |
| A570051130 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | ANHUI HUIJIN WOOD CO., LTD |
| A570051131 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | ANHUI LINGFENG WOOD CO., LTD |
| A570051132 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | SUZHOU DONGSHENG WOOD CO., LTD |

| A570051133 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | PIZHOU ZHONGXIN WOOD CO., LTD |
|---|---|---|
| A570051134 | QINGDAO GOOD FAITH IMPORT AND EXPORT CO., LTD. | XUZHOU SPRING ART YANG WOOD INDUSTRY CO., LTD |
| A570051136 | Qingdao Top P&Q International Corp. | Yutai Zezhong Wood Products Co., Ltd. |
| A570051140 | Qingdao Top P&Q International Corp. | Feixian Tanyi Youchengjiafu Wood Products Co., Ltd |
| A570051144 | Qingdao Top P&Q International Corp. | Linyi Qianfeng Wood Products Co., Ltd. |
| A570051147 | Qingdao Top P&Q International Corp. | Xuzhou Chunyiyang Wood Products Co. Ltd |
| A570051150 | Qingdao Top P&Q International Corp. | Linyi Longxin Wood Products Co., Ltd. |
| A570051151 | Qingdao Top P&Q International Corp. | Linyi Lanshan Wanmei Wood Factory |
| A570051154 | Qingdao Top P&Q International Corp. | Di Birch Wood Industry Co., Ltd |
| A570051155 | Qingdao Top P&Q International Corp. | Shandong Junxing Wood Products Co., Ltd. |
| A570051160 | Qingdao Top P&Q International Corp. | Anhui Qinglin Wood Products Co., Ltd. |
| A570051166 | Qingdao Top P&Q International Corp. | Linyi Fuerda Wood Products Co., Ltd. |
| A570051167 | Qingdao Top P&Q International Corp. | Fengxian Shuangxingyuan Wood Co., Ltd. |
| A570051194 | SHANDONG QISHAN INTERNATIONAL TRADING CO., LTD | LINYI TUOPU ZHIXIN WOODEN INDUSTRY CO., LTD. |
| A570051213 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI JINGHUA WOOD INDUSTRY CO., LTD. |
| A570051214 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI LIANBANG WOOD INDUSTRY CO., LTD. |
| A570051215 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI HUADA WOOD INDUSTRY CO., LTD. |
| A570051216 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI JINKUN WOOD INDUSTRY CO., LTD. |
| A570051217 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI YUQIAO BOARD FACTORY |
| A570051218 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI LAITE BOARD FACTORY |
| A570051219 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI TUOPU ZHIXIN WOODEN INDUSTRY CO., LTD. |
| A570051220 | SHANGHAI FUTUWOOD TRADING CO., LTD. | FEIXIAN HUAFENG WOOD INDUSTRY CO., LTD. |
| A570051221 | SHANGHAI FUTUWOOD TRADING CO., LTD. | XUZHOU SHUANGXINGYUAN WOOD INDUSTRY CO., LTD. |

| A570051222 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI YOUCHENG JIAFU WOOD INDUSTRY CO., LTD. |
|---|---|---|
| A570051223 | SHANGHAI FUTUWOOD TRADING CO., LTD. | SHANDONG QINGYUAN WOOD INDUSTRY CO., LTD. |
| A570051224 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI LANSHAN JINHAO BOARD FACTORY |
| A570051225 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI LANSHAN FUBAI WOOD INDUSTRY BOARD FACTORY |
| A570051226 | SHANGHAI FUTUWOOD TRADING CO., LTD. | SIYANG DAZHONG WOOD PRODUCT FACTORY |
| A570051227 | SHANGHAI FUTUWOOD TRADING CO., LTD. | BINZHOU YONGSHENG ARTIFICIAL BOARD INDUSTRIAL TRADE CO., LTD. |
| A570051228 | SHANGHAI FUTUWOOD TRADING CO., LTD. | SHANDONG JINQIU WOOD INDUSTRY CO., LTD. |
| A570051229 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI SENPENG WOOD INDUSTRY CO., LTD. |
| A570051230 | SHANGHAI FUTUWOOD TRADING CO., LTD. | XUZHOU HENG'AN WOOD INDUSTRY CO., LTD. |
| A570051231 | SHANGHAI FUTUWOOD TRADING CO., LTD. | DANGSHAN WEIDI WOOD INDUSTRY CO., LTD. |
| A570051232 | SHANGHAI FUTUWOOD TRADING CO., LTD. | FENGXIAN JIHE WOOD INDUSTRY CO., LTD. |
| A570051233 | SHANGHAI FUTUWOOD TRADING CO., LTD. | YUTAI ZEZHONG WOOD INDUSTRY CO., LTD. |
| A570051234 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI HUASHENG YONGBIN WOOD CO., LTD. |
| A570051235 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI KAIFENG WOOD BOARD FACTORY |
| A570051236 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI MINGDA WOOD INDUSTRY CO., LTD. |
| A570051237 | SHANGHAI FUTUWOOD TRADING CO., LTD. | YANGXIN COUNTY XINTONG DECORATIVE MATERIALS CO., LTD. |
| A570051238 | SHANGHAI FUTUWOOD TRADING CO., LTD. | PINGYI COUNTY ZHONGLI WOOD PRODUCTS FACTORY |
| A570051239 | SHANGHAI FUTUWOOD TRADING CO., LTD. | PINGYI COUNTY YUXIN BOARD FACTORY |

| | | |
|---|---|---|
| A570051240 | SHANGHAI FUTUWOOD TRADING CO., LTD. | LINYI MINGZHU WOOD CO., LTD. |
| A570051254 | SUINING PENGXIANG WOOD CO., LTD. | SUINING PENGXIANG WOOD CO., LTD. |
| A570051256 | Sumec International Technology Co., Ltd. | Shandong Junxing Wood Industry Co., Ltd. |
| A570051258 | Sumec International Technology Co., Ltd. | Linyi Xicheng Wood Industry Co., Ltd. |
| A570051262 | Sumec International Technology Co., Ltd. | Linyi City Lanshan District Linyu Board Factory |
| A570051272 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | XUZHOU HENGLIN WOOD CO., LTD. |
| A570051273 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | QUFU SHENGDA WOOD CO., LTD. |
| A570051274 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | PIZHOU XUEXIN WOOD PRODUCTS CO., LTD. |
| A570051275 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | PIZHOU JIANGSHAN WOOD CO., LTD. |
| A570051276 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | SHANDONG UNION WOOD CO., LTD. |
| A570051277 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | LINYI CITY LANSHAN DISTRICT FUBO WOOD FACTORY |
| A570051278 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | LINYI MINGZHU WOOD CO., LTD. |
| A570051279 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | SUZHOU DONGSHENG WOOD CO., LTD. |
| A570051280 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | LINYI JIAHE WOOD INDUSTRY CO., LTD. |
| A570051281 | SUQIAN HOPEWAY INTERNATIONAL TRADE CO., LTD. | LINYI DAHUA WOOD CO., LTD. |
| A570051282 | Suzhou Dongsheng Wood Co., Ltd. | Suzhou Dongsheng Wood Co., Ltd. |
| A570051283 | Suzhou Fengshuwan Import and Exports Trade Co., Ltd. | Xuzhou Henglin Wood Co., Ltd. |
| A570051289 | Suzhou Fengshuwan Import and Exports Trade Co., Ltd. | Linyi Mingzhu Wood Co., Ltd. |
| A570051291 | Suzhou Fengshuwan Import and Exports Trade Co., Ltd. | Linyi Jiahe Wood Industry Co., Ltd. |
| A570051293 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI TIANCAI TIMBER CO., LTD |

| | | |
|---|---|---|
| A570051294 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINGYI HUASHENG YONGBIN WOOD CO., LTD |
| A570051295 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI XICHENG WOOD PRODUCTS CO., LTD |
| A570051296 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI LONGXIN WOOD CO., LTD |
| A570051297 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI ORIENTAL FUCHAO WOOD CO., LTD. |
| A570051298 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI QIANFENG WOOD CO., LTD |
| A570051299 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | FEIXIAN WANDA WOOD FACTORY |
| A570051300 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | SHANDONG UNION WOOD CO., LTD |
| A570051301 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | SHANDONG JINQIU WOOD CORPORATION |
| A570051302 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | YINHE MACHINERY CHEMICAL LIMITED COMPANY OF SHANDONG PROV |
| A570051303 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI CITY YONGSEN WOOD CORP |
| A570051304 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | XUZHOU CHANGCHENG WOOD CO., LTD |
| A570051305 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | PIZHOU FUSHEN WOOD CO., LTD |
| A570051306 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | PIZHOU YUANXING WOOD CO., LTD |
| A570051307 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | XUZHOU YUANTAI WOOD CO., LTD |
| A570051308 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | XUZHOU HONGFU WOOD CO., LTD |
| A570051309 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | FENG COUNTY SHUANGXINGYUAN WOOD |
| A570051310 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | ANHUI FUYANG QINGLIN WOOD PRODUCTS CO., LTD |
| A570051311 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI DAHUA WOOD CO., LTD. |

| | | |
|---|---|---|
| A570051312 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | JUXIAN DECHANG WOOD CO., LTD |
| A570051313 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | FEIXIAN JINHAO WOOD BOARD PLANT |
| A570051314 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | SIYANG DAHUA PLYWOOD PLANT |
| A570051315 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI LANSHAN DISTRICT FUBO WOODS FACTORY |
| A570051316 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | XUZHOU DEHENG WOOD CO., LTD. |
| A570051317 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI KAIFENG WOOD BOARD FACTORY |
| A570051318 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI ZHENYUAN WOOD PRODUCTS CO., LTD |
| A570051319 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | XUZHOU WEILIN WOOD CO., LTD. |
| A570051320 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI TIANLU WOOD BOARD FACTORY |
| A570051321 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI BAOSHAN BOARD FACTORY |
| A570051322 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | LINYI MINGZHU WOOD CO., LTD. |
| A570051323 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | XINYI CHAOHUA WOOD CO., LTD. |
| A570051324 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | PIZHOU JINGUOYUAN WOOD CO., LTD. |
| A570051325 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | FENG COUNTY JIHE WOOD CO., LTD. |
| A570051326 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | DANGSHAN COUNTY WEIDI WOOD CO., LTD. |
| A570051327 | SUZHOU ORIENTAL DRAGON IMPORT AND EXPORT CO., LTD. | ZHUCHENG RUNHENG INDUSTRIAL AND TRADING CO., LTD. |
| A570051329 | XUZHOU ANDEFU WOOD CO., LTD. | FENGXIAN FANGYUAN WOOD CO., LTD |
| A570051333 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou Longyuan Wood Industry Co., Ltd |
| A570051334 | Xuzhou DNT Commercial Co., Ltd. | Linyi Changcheng Wood Co., Ltd |
| A570051335 | Xuzhou DNT Commercial Co., Ltd. | Feixian Jinde Wood Co., Ltd |

| A570051336 | Xuzhou DNT Commercial Co., Ltd. | Suzhou Dongsheng Wood Co., Ltd |
| A570051337 | Xuzhou DNT Commercial Co., Ltd. | Fengxian Fangyuan Wood Co., Ltd |
| A570051338 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou City Hengde Wood Products Co., Ltd |
| A570051339 | Xuzhou DNT Commercial Co., Ltd. | Pizhou Jiangshan Wood Co., Ltd |
| A570051340 | Xuzhou DNT Commercial Co., Ltd. | Linyi Huasheng Yongbin Wood Corp. |
| A570051341 | Xuzhou DNT Commercial Co., Ltd. | Pizhou Jinguoyuan Wood Co., Ltd |
| A570051342 | Xuzhou DNT Commercial Co., Ltd. | Linyi Mingzhu Wood Co., Ltd |
| A570051343 | Xuzhou DNT Commercial Co., Ltd. | Linyi Renlin Wood Industry Co., Ltd |
| A570051344 | Xuzhou DNT Commercial Co., Ltd. | Binzhou Yongsheng Artificial Board Industrial & Training Co., Ltd |
| A570051345 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou Zhongcai Wood Co., Ltd |
| A570051346 | Xuzhou DNT Commercial Co., Ltd. | Anhui Xinyuanda Wood Co., Ltd |
| A570051347 | Xuzhou DNT Commercial Co., Ltd. | Shandong Lianbang Wood Co., Ltd |
| A570051348 | Xuzhou DNT Commercial Co., Ltd. | Linyi Xinrui Wood Co., Ltd |
| A570051349 | Xuzhou DNT Commercial Co., Ltd. | Shandong Huashi Lvyuan Wood Co., Ltd |
| A570051350 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou Fuyu Wood Co., Ltd |
| A570051351 | Xuzhou DNT Commercial Co., Ltd. | Linyi Dazhong Wood Co., Ltd |
| A570051352 | Xuzhou DNT Commercial Co., Ltd. | Shandong Junxing Wood Co., Ltd |
| A570051353 | Xuzhou DNT Commercial Co., Ltd. | Linyi City Lanshan District Linyu Plywood Factory |
| A570051354 | Xuzhou DNT Commercial Co., Ltd. | Linyi City Dongfang Fuchao Wood Co., Ltd. |
| A570051355 | Xuzhou DNT Commercial Co., Ltd. | Linyi Dahua Wood Co., Ltd. |
| A570051356 | Xuzhou DNT Commercial Co., Ltd. | Linyi Qianfeng Wood Co., Ltd |
| A570051357 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou Zhongtong Wood Co., Ltd |
| A570051358 | Xuzhou DNT Commercial Co., Ltd. | Shandong Oufan Wood Co., Ltd |
| A570051359 | Xuzhou DNT Commercial Co., Ltd. | Shandong Jubang Wood Co., Ltd |
| A570051360 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou Changcheng Wood Products Co., Ltd |
| A570051361 | Xuzhou DNT Commercial Co., Ltd. | Feixian Jinhao Wood Board Plant |
| A570051362 | Xuzhou DNT Commercial Co., Ltd. | Feixian Huafeng Wood Co., Ltd |
| A570051363 | Xuzhou DNT Commercial Co., Ltd. | Dhanshan County Weidi Wood Co., Ltd |
| A570051364 | Xuzhou DNT Commercial Co., Ltd. | Xuzhou Hongmei Wood Development Co., Ltd |
| A570051366 | Xuzhou Eastern Huatai International Trading Co., Ltd. | Linyi Longxin Wood Co., Ltd. |
| A570051367 | Xuzhou Eastern Huatai International Trading Co., Ltd. | Linyi Xicheng Wood Co., Ltd. |

| | | |
|---|---|---|
| A570051368 | Xuzhou Eastern Huatai International Trading Co., Ltd. | Xuzhou Hongfu Wood Co., Ltd. |
| A570051371 | Xuzhou Eastern Huatai International Trading Co., Ltd. | Xu Zhou Chang Cheng Wood Co, Ltd |
| A570051374 | XUZHOU JIANGYANG WOOD INDUSTRIES CO., LTD. | XUZHOU JIANGYANG WOOD INDUSTRIES CO., LTD. |
| A570051375 | XUZHOU LONGYUAN WOOD INDUSTRY CO., LTD. | XUZHOU LONGYUAN WOOD INDUSTRY CO., LTD. |
| A570051379 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | XUZHOU LONGYUAN WOOD INDUSTRY CO., LTD |
| A570051380 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | LINYI CHANGCHENG WOOD CO., LTD |
| A570051381 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | FEIXIAN JINDE WOOD CO., LTD |
| A570051382 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | SUZHOU DONGSHENG WOOD CO., LTD |
| A570051383 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | FENGXIAN FANGYUAN WOOD CO., LTD |
| A570051384 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | XUZHOU CITY HENGDE WOOD PRODUCTS CO., LTD |
| A570051385 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | PIZHOU JIANGSHAN WOOD CO., LTD |
| A570051386 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | LINYI HUASHENG YONGBIN WOOD CORP. |
| A570051387 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | PIZHOU JINGUOYUAN WOOD CO., LTD |
| A570051388 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | LINYI MINGZHU WOOD CO., LTD |
| A570051389 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | LINYI RENLIN WOOD INDUSTRY CO., LTD |
| A570051390 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | BINZHOU YONGSHENG ARTIFICIAL BOARD INDUSTRIAL & TRAINING CO. |
| A570051391 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | XUZHOU ZHONGCAI WOOD CO., LTD |
| A570051392 | XUZHOU PINLIN INTERNATIONAL TRADE CO., LTD. | ANHUI XINYUANDA WOOD CO., LTD |

| | XUZHOU PINLIN INTERNATIONAL | |
|---|---|---|
| A570051393 | TRADE CO., LTD. | SHANDONG LIANBANG WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051394 | TRADE CO., LTD. | LINYI XINRUI WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051395 | TRADE CO., LTD. | SHANDONG HUASHI LVYUAN WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051396 | TRADE CO., LTD. | XUZHOU FUYU WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051397 | TRADE CO., LTD. | LINYI DAZHONG WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051398 | TRADE CO., LTD. | SHANDONG JUNXING WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051399 | TRADE CO., LTD. | LINYI CITY LANSHAN DISTRICT LINYU PLYWOOD FACTORY |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051400 | TRADE CO., LTD. | LINYI CITY DONGFANG FUCHAO WOOD CO., LTD. |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051401 | TRADE CO., LTD. | LINYI DAHUA WOOD CO., LTD. |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051402 | TRADE CO., LTD. | LINYI QIANFENG WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051403 | TRADE CO., LTD. | XUZHOU ZHONGTONG WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051404 | TRADE CO., LTD. | SHANDONG OUFAN WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051405 | TRADE CO., LTD. | SHANDONG JUBANG WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051406 | TRADE CO., LTD. | XUZHOU CHANGCHENG WOOD PRODUCTS CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051407 | TRADE CO., LTD. | FEIXIAN JINHAO WOOD BOARD PLANT |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051408 | TRADE CO., LTD. | FEIXIAN HUAFENG WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051409 | TRADE CO., LTD. | DHANSHAN COUNTY WEIDI WOOD CO., LTD |
| | XUZHOU PINLIN INTERNATIONAL | |
| A570051410 | TRADE CO., LTD. | XUZHOU HONGMEI WOOD DEVELOPMENT CO., LTD |

| | | |
|---|---|---|
| A570051412 | XUZHOU SHENGPING IMP AND EXP CO., LTD. | XUZHOU LONGYUAN WOOD INDUSTRY CO., LTD |
| A570051414 | Xuzhou Shuner Import & Export Trade Co. Ltd. | Pizhou Fushen Wood Co. Ltd. |
| A570051416 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | XUZHOU JIANGHENG WOOD PRODUCTS CO., LTD. |
| A570051417 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | XUZHOU JIANGYANG WOOD INDUSTRIES CO., LTD. |
| A570051418 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | XUZHOU CHANGCHENG WOOD CO., LTD. |
| A570051419 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | FENGXIAN SHUANGXINGYUAN WOOD CO., LTD. |
| A570051420 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | LINYI MINGZHU WOOD CO., LTD. |
| A570051421 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | LINYI CITY LANSHAN DISTRICT DAQIAN WOOD BOARD FACTORY |
| A570051422 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | FEIXIAN HONGSHENG WOOD CO., LTD. |
| A570051423 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | XUZHOU HONGWEI WOOD CO., LTD. |
| A570051424 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | PIZHOU JINGUOYUAN WOOD CO., LTD. |
| A570051425 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | LINYI QIANFENG WOOD FACTORY |
| A570051426 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | LINYI RENLIN WOOD INDUSTRY CO., LTD. |
| A570051427 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | XUZHOU SENYUAN WOOD PRODUCTS CO., LTD. |
| A570051428 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | JIANGSU LISHUN INDUSTRIAL AND TRADING CO., LTD. |
| A570051429 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | PIZHOU XUEXIN WOOD INDUSTRY CO., LTD. |
| A570051430 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | FEIXIAN HONGJING BOARD FACTORY |
| A570051431 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | XUZHOU JIAQIANG WOOD INDUSTRY CO., LTD. |
| A570051432 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | SHANDONG SHELTER FOREST PRODUCTS CO., LTD. |

| | | |
|---|---|---|
| A570051433 | XUZHOU TIMBER INTERNATIONAL TRADE CO., LTD. | JIANGSU BINSONG WOOD CO., LTD. |
| A570051436 | ZHEJIANG DEHUA TB IMPORT & EXPORT CO., LTD. | DEHUA TB NEW DECORATION MATERIAL CO., LTD |
| A570051437 | ZHEJIANG DEHUA TB IMPORT & EXPORT CO., LTD. | ZHANGJIAGANG JIULI WOOD CO., LTD. |
| #N/A | Shandong Dongfang Bayley Wood Co., Ltd. | Shandong Dongfang Bayley Wood Co., Ltd. |
| A-570-051-254 | Suining Pengxiang Wood Co., Ltd. | Suining Pengxiang Wood Co., Ltd. |