UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| and | ) |
| | ) |
| CELTIC CO., LTD. ET AL., | ) |
| | ) |
| Consolidated Plaintiffs, | ) |
| v. | ) Consol. Ct. 18-00002 |
| | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| and | ) |
| | ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD | ) |
| | ) |
| Defendant-Intervenor. | ) |

CONSOLIDATED PLAINTIFFS TARACA PACIFIC, INC., CANUSA WOOD
PRODUCTS LTD., CONCANNON CORP. DBA CONCANNON LUMBER COMPANY,
FABUWOOD CABINETRY CORPORATION, HOLLAND SOUTHWEST
INTERNATIONAL INC., LIBERTY WOODS INTERNATIONAL, INC., NORTHWEST
HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS, LLC,
AND USPLY LLC COMMENTS IN OPPOSITION TO THE FOURTH REMAND
REDETERMINATION

Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Ave., NW
Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

December 29, 2021

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .............................................................................................. ii

**INTRODUCTION AND SUMMARY OF ARGUMENT** ...................................................... 1

**STANDARD OF REVIEW** ................................................................................................. 2

**ARGUMENT** ....................................................................................................................... 2

**I.   COMMERCE'S SEPARATE RATE REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW** ........................ 2

   **A.   The Separate Rate Still Does Not Comply with the Statute and Case Law Precedent** ........................................................................................................................... 3

   **B.   The Separate Rate Is Not Reasonable** ........................................................... 4

   **C.   Commerce Again Improperly Continued to Rely on the China-Wide Entity AFA Rate** ................................................................................................................................... 11

**II.   TARACA ET AL. JOIN THE COMMENTS BEING FILED BY OTHER RESPONDENT PARTIES** .................................................................................................... 13

**CONCLUSION** ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

AG der Dillinger Huttenwerke v. United States,
    28 CIT 94, 310 F. Supp. 2d 1347 (2004) ................................................................. 2

Albemarle Corp. v. United States,
    821 F.3d 1345 (Fed. Cir. 2016) ................................................................................ 4

Atl. Sugar, Ltd. v. United States,
    744 F.2d 1556 (Fed. Cir. 1984) .............................................................................. 11

Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,
    701 F.3d 1367 (Fed. Cir. 2012) ................................................................................ 4

Linyi Chengen Imp. & Exp. Co., Ltd. v. United States,
    No. 18-00002, slip op. 21-127 (Ct. Int'l Trade Sept. 24, 2021) ...................... passim

Linyi Chengen Import & Export Co., Ltd. v. United States,
    __ CIT __, 487 F. Supp. 3d 1349 (2020) ........................................................... 5, 10

Mueller Comercial De Mexico v. United States,
    753 F.3d 1227 (Fed. Cir. 2014) ................................................................................ 4

Navneet Publ'ns (India) Ltd. v. United States,
    __ CIT __, 999 F. Supp. 2d 1354 (2014) ............................................................... 11

Nippon Steel Corp. v. United States,
    458 F.3d 1345 (Fed. Cir. 2006) ................................................................................ 9

NMB Sing. Ltd. v. United States,
    28 CIT 1252 F. Supp. 2d 1327 (2004) ..................................................................... 2

Seah Steel Vina Corp. v. United States,
    950 F.3d 833 (Fed. Cir. 2020) ............................................................................... 11

Universal Camera Corp. v. NLRB,
    340 U.S. 474 (1951) ............................................................................................... 11

Yangzhou Bestpak Gifts & Crafts Co. v. United States,
    35 CIT 948, 783 F. Supp. 2d 1343 (2011) ............................................................. 10

Yangzhou Bestpak Gifts & Crafts Co. v. United States,
    716 F.3d 1370 (Fed. Cir. 2013). ................................................................... 4, 5, 10

**Statutes**

19 U.S.C. § 1516a ......................................................................................................... 2
19 U.S.C. § 1673d ......................................................................................................... 3

**Other Authorities**

THE URUGUAY ROUND AGREEMENTS ACT, STATEMENT OF ADMINISTRATIVE ACTION, H.R. REP.
    No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 ...................................... 3

## INTRODUCTION AND SUMMARY OF ARGUMENT

In accordance with Rule 56.2(h) of the Rules of the U.S. Court of International Trade and the Amended Scheduling Order (Oct. 20, 2021), ECF No. 204, Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC and USPLY LLC (collectively "Taraca et al."), submit these comments in response to the Final Results of Redetermination Pursuant to Court Remand filed by the Department of Commerce ("Commerce") on November 10, 2021.  See Final Results of Redetermination Pursuant to Court Remand (Nov. 10, 2021) (Public Version), ECF No. 206-1 ("Fourth Remand Redetermination").[1]

In its opinion remanding this case to Commerce for a fourth time, the Court held that "{b}ecause Commerce cited as record evidence only one commercial invoice showing an approximately 20% price difference {between the prices of the Petition Separate Rate Application and Linyi Chengen Import and Export Co., Ltd.}, the Court concludes that Commerce's 57.36% separate rate assigned to the voluntary, cooperating Separate Rate Plaintiffs is not reasonable and is unsupported by substantial evidence."  Linyi Chengen Imp. & Exp. Co., Ltd. v. United States, No. 18-00002, slip op. 21-127 at 18 (Ct. Int'l Trade Sept. 24, 2021) ("Linyi Chengen IV").  The Court then directed Commerce to "reconsider the all-others separate rate consistent with this opinion."  Id. at 19.  As discussed below, Commerce has once again improperly implemented this Court's remand order by continuing to apply a 57.36 percent separate rate because Commerce's calculation is unreasonable and is not supported by substantial evidence.

---

[1]   All citations to the record evidence are to public record documents unless otherwise noted.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order.  See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004) (affirming on remand where agency determinations were in accordance with law, supported by substantial evidence and otherwise satisfied the remand order).  Any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B); see also, e.g., AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

## ARGUMENT

I. **COMMERCE'S SEPARATE RATE REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

At the outset of its Fourth Remand Redetermination, Commerce "acknowledge(s) the Court held that the chosen rate of 57.36 percent is not reasonable or supported by substantial evidence, in light of the analysis presented in *Redetermination III*."  Fourth Remand Redetermination at 9.  Commerce's reasoning in this latest redetermination does not rehabilitate the deficiencies in the 57.36 percent separate rate applied to the fully cooperative Separate Rate Plaintiffs.  In the Fourth Remand Redetermination, Commerce continued to apply a separate rate of 57.36 percent by averaging the rate determined for Linyi Chengen (i.e., zero) and the adverse facts available ("AFA") rate applied to the China-wide entity (i.e., 114.72 percent).  See id. at 9, 14.  Commerce reasoned that "it is not possible … to determine with certainty whether any particular rate is an accurate estimate of the actual dumping margins of the Separate Rate Plaintiffs" and concluded that "the dumping margins in the Petition are representative of the actual selling behavior or separate rate recipients and that additional record evidence distinguishes Linyi Chengen's selling behavior during the POI from the selling behavior of the Separate Rate

Plaintiffs." <u>Id.</u> at 11.  Commerce's reasoning, and the record evidence, still does not support the 57.36 percent rate that the Court already found to be unsupported by substantial evidence.

### A.    The Separate Rate Still Does Not Comply with the Statute and Case Law Precedent

Commerce is required by the governing statute to select a reasonable separate rate.  The Tariff Act of 1930, as amended, provides the following directive regarding the determination of the separate rate:

> (A)  General rule. For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

> (B)  Exception. If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5).  The Statement of Administrative Action ("SAA") authorizes Commerce to deviate from applying the expected method in the statute if it chooses another "reasonable" method where the expected method results in an antidumping margin that is not feasible or would result in a margin that is not "reasonably reflective of potential dumping margins" for the non-investigated companies. THE URUGUAY ROUND AGREEMENTS ACT, STATEMENT OF ADMINISTRATIVE ACTION, H.R. REP. No. 103-316 at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201.  The paramount requirement is that the chosen methodology be "reasonable." Commerce has once again not met this standard in its fourth remand determination.

The Federal Circuit has emphasized that in determining the separate rate, "accuracy and fairness must be Commerce's primary objectives in calculating a separate rate for cooperating

exporters." Albemarle Corp. v. United States, 821 F.3d 1345, 1354 (Fed. Cir. 2016); see also Mueller Comercial De Mexico v. United States, 753 F.3d 1227, 1235 (Fed. Cir. 2014) ("Commerce must have as its primary objective the calculation of an accurate rate."). "{R}ate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins." Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1380 (Fed. Cir. 2013). "Although Commerce may be permitted to use a simple average methodology to calculate the separate rate," "the circumstances" of a particular case may "render{} a simple average of a de minimis and AFA Chinawide rate unreasonable as applied." Id. at 1378 (emphasis added). Further, the requirement in the statute that the method used to calculate the separate rate "be 'reasonable' imposes a duty on Commerce to select a method appropriate for the circumstances." Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1379 (Fed. Cir. 2012). In its continued effort to apply the 57.36 percent rate to the Separate Rate Plaintiffs, Commerce has neglected the directive in the statute and case law by failing to select a reasonable separate rate that is reasonably reflective of the Separate Rate Plaintiffs' dumping margins.

**B.    The Separate Rate Is Not Reasonable**

Although the Court in Linyi Chengen IV upheld Commerce's decision not to apply Linyi Chengen's zero rate to the separate rate respondents, a determination that could be further appealed, it rejected Commerce's reliance on a commercial invoice from the Petition to support Commerce's application of the 57.36 percent rate to the Separate Rate Plaintiffs. See Linyi Chengen IV, slip op. at 18. In its Fourth Remand Redetermination, Commerce states that it "recognize{s} that the Court did not sustain {its} selection of the 57.36 percent rate applied to the Separate Rate Plaintiffs and it directed us to reconsider that rate." Fourth Remand Redetermination

at 10. Commerce nevertheless seeks to apply the very same rate already rejected in <u>Linyi Chengen</u> <u>IV</u> without advancing any sustainable reasoning or rationale that supports it determination.

As an initial matter and in an attempted justification of its determination to continue applying the 57.36 percent rate to the Separate Rate Plaintiffs, Commerce contends that "the record provides no opportunity for Commerce to know or to calculate the actual dumping margins of the Separate Rate Plaintiffs." <u>Id.</u> at 11. The Court has already held that the incomplete nature of the record cannot be used as a reason to apply a separate rate that is not substantiated by actual evidence. In <u>Linyi Chengen IV</u>, the Court reiterated that "Commerce created its own problems when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions regarding the potential dumping margins of the separate rate respondents." <u>Linyi Chengen IV</u>, slip. op. at 18; <u>see also</u> <u>Linyi Chengen Imp. & Exp. Co., Ltd. v.</u> <u>United States</u>, 44 CIT __, __, 487 F. Supp. 3d 1349, 1358 (2020) ("<u>Linyi Chengen III</u>") ("As noted in {<u>Bestpak</u>}, Commerce creates its own problems when it selects only two mandatory respondents and has minimal information on the record to support its assertions regarding the potential dumping margins of separate rate respondents.").

The Court's holding prohibits Commerce from once again justifying the application of the 57.36 percent separate rate based on the alleged limited nature of the record information. <u>See</u> Fourth Remand Redetermination at 11. Commerce nevertheless perpetuates its claim that "the record provides no opportunity for Commerce to know or to calculate the actual dumping margins of the Separate Rate Plaintiffs" and therefore that "it is not possible for {it} to determine with certainty whether any particular rate is an accurate estimate of the actual dumping margins of the Separate Rate Plaintiffs." <u>Id.</u> Commerce then asserts that "the only alternative rates in this case are limited to the rates listed in the Petition." <u>Id.</u> That statement is untrue. Commerce also had

5

before it (i) Linyi Chengen's zero percent calculated rate and (ii) the Separate Rate Applications containing commercial invoices of over 100 companies found to be "separate" from the China-wide entity.  As Taraca et al. and other Separate Rate Plaintiffs demonstrated during the third remand proceeding, even reviewing just the forty separate rate exporters subject to the ongoing litigation, the available record evidence included invoices showing a variety of pricing, including numerous exporters whose pricing was higher than that of Linyi Chengen, a company for which Commerce calculated a zero percent dumping margin.  See, e.g., Taraca et al. Cmts. in Opp'n to the Third Remand Redetermination at 9-10, ECF No. 165 ("Taraca Third Remand Cmts.").  Commerce failed to give adequate weight to this record evidence in instead relying exclusively on the higher of two Petition invoices to determine the separate rate.

The flawed nature of Commerce's analysis is highlighted by the fact that Commerce determined that it should rely on the Petition as a source for the separate rate calculation, but that it should consider only the higher of the two dumping margins set forth in the Petition.  See Fourth Remand Redetermination at 11.  This decision cannot be sustained given that Commerce itself recognized that "there is no basis to choose" between the two Petition rates of 114.72 and 104.06 percent because both are for in-scope merchandise.  Id. at 11-12.  In fact, even Commerce acknowledged that the Petition rates are only "to some extent" representative of the Separate Rate Plaintiffs.  Id. at 12.  Yet, Commerce decided not to rely on the 104.06 percent rate, or even an average of the two Petition rates, on the basis that "the record also indicates that separate rate companies had potential dumping margins during the POI at levels of the highest petition rate of 114.72."  Id.  The record also contained evidence in the form of U.S. prices and Linyi Chengen's dumping margin that suggested potential dumping margins at much lower rates than the Petition rate relied on by Commerce.  Taraca et al. and the other Separate Rate Plaintiffs already provided

6

an in-depth analysis of the many flaws in Commerce's determination to rely on Petition rates rather than record evidence, especially when the Petition dumping rates were based on an entirely different surrogate country, Thailand, rather than the surrogate country used in the Final Determination, Romania. See generally Taraca Third Remand Cmts. at 14-18. Commerce claimed in the remand that arguments regarding the unsuitability of the Petition rate based on the fact that the Petition used Thailand as the surrogate do not "detract from the relevance of the Petition rates" because Thailand was also a potential surrogate. See Fourth Remand Redetermination at 35. The Court should reject this argument. The fact remains that the dumping margins calculated in the Final Determination were based on Romanian surrogate values, not Thai values, and relying on a Petition rate using Thailand lends further inaccuracy into Commerce's chosen rate, especially when the single calculated rate using the Romanian surrogate values yielded a zero percent margin.

In addition, given that Commerce found that the Petition rates are only partially, i.e., "to some extent," representative of the Separate Rate Plaintiffs and that there is "no basis to choose between" the two Petition rates, id. at 12, it is patently unreasonable and unsustainable for Commerce to have disregarded the myriad other commercial invoices on the record from the Separate Rate Plaintiffs, rejected the representativeness of Linyi Chengen and ignored the flaws in the Petition rates and ultimately selected only the highest possible Petition rate to derive the separate rate. Commerce itself has acknowledged that it cannot determine whether "any" rate "accurately reflects the actual dumping margins of the Separate Rate Plaintiffs." Id. at 26-27. It then presumes, without citation to specific record evidence, that "the average of {the two petition} rates considers the likely range of dumping behavior" by the Separate Rate Plaintiffs." Id. at 31. At the very same time, Commerce contends that "{m}aking any conclusions about the NVs of the separate rate applicants without additional record evidence would be pure speculation." Id. at 35.

Where the agency itself admits that its rate is not accurate or, at best, reflects only a "likely" range of dumping (without any data to support this contention) based on "speculation," this Court cannot sustain that rate.  Although Commerce claims its selected rate is reasonable, e.g., id. at 27, as discussed above and further below, Commerce's reasoning relies on flawed logic and a distorted reading of the record.

      As yet another defect in Commerce's Fourth Remand Redetermination, Commerce failed to adequately address the Court's skepticism in <u>Linyi Chengen IV</u> as to the reasonableness of the 57.36 percent rate given the 20 percent price difference between the price of the Petition Separate Rate Exporter and that of Linyi Chengen.  See <u>Linyi Chengen IV</u>, slip. op. at 17-18.  Commerce claimed that

> {A}lthough the Court pointed to the approximately 20 percent difference between the price at which Chengen sold the same product as the Petition SRA Exporter, this 20 percent difference alone is not indicative of the potential level of dumping by that exporter. This is because a margin must be calculated by reference to a U.S. price and an NV, and the Petition SRA Exporter's own, company-specific {normal value} is not on the record of this investigation. Absent a company-specific NV for the Petition SRA Exporter, the price comparison in *Redetermination III* merely shows that the Separate Rate Exporters priced their products at potentially much lower levels than the pricing level for Chengen's U.S. plywood exports (with the reasonable assumption that the dumping rates would also increase) and thus that Chengen's rate, alone, is not a good proxy for the Separate Rate Plaintiffs' rate. However, that 20 percent price difference says nothing about the possible differences in NV of the product (*i.e.*, a full half of the dumping equation). Thus, while Commerce pointed to a 20 percent price difference between Chengen and known separate rate recipients in *Redetermination III*, that observation does not stand for the proposition that the 20 percent price difference would result in a commensurate 20 percent difference in the potential dumping margin. Instead, record evidence indicates that the potential dumping margins could be at least the rate assigned to the China-wide entity, 114.72 percent, which is the highest petition rate, a rate that is also rooted in the record and tied to actual selling behavior of a separate rate recipient in this investigation.

Fourth Remand Redetermination at 13-14.

Commerce's explanation is not reasonable because it arbitrarily disregards the opposite equally possible conclusion, namely, that the separate rate respondents' normal values, had they been investigated, would have been even lower than the 20 percent difference suggested by the pricing information in the Petition.   Commerce's explanation therefore fails to consider information that detracts from Commerce's conclusion and focuses only on potential outcomes that yield high dumping margins.   The substantial evidence standard used by the Court to review Commerce's determination dictates that Commerce's decisions must be based on the whole record, including whatever in the record "fairly detracts from its weight."   Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).   Disregarding record information without a valid basis and reaching conclusions grounded in speculation defies this requirement.

The Court should reject Commerce's attempt to discount the 20 percent difference between the price at which Linyi Chengen sold the same product as the Petition Separate Rate Application Exporter on the grounds that the "20 percent price difference says nothing about the possible differences in {normal value} of the product (i.e., a full half of the dumping equation)."   Fourth Remand Redetermination at 13.   Indeed, following Commerce's point to its next logical step, fully half of the dumping margin in the Petition is based not on any evidence of Chinese respondents but instead from a fictitious normal value that is derived from the unverified consumption rates of a U.S. producer as noted in Taraca et al.'s comments on the third remand redetermination.   See, e.g., Taraca Third Remand Cmts. at 16 ("{T}he dumping rates used in the Petition to calculate the separate rate are distortive because the normal value in the Petition is based on usage rates from a U.S. producer, and not a Chinese company.").   It is illogical and unsustainable for Commerce to point to the missing normal value information of Chinese companies on the one hand where on the

9

other hand fully half of the Petition dumping equation is not based on one iota of Chinese company consumption data.

Commerce engaged in an in-depth investigation of Linyi Chengen's consumption data (including the well-litigated veneer-making factors of production), which, together with Linyi Chengen's pricing data, resulted in a zero percent margin.  Because Linyi Chengen's prices were similar to many of the Separate Rate Plaintiffs (even lower in some cases), see Fourth Remand Redetermination at 36, Commerce cannot reasonably conclude that U.S. producer consumption data from the Petition is more probative of Chinese plywood producers' experience than the experience of mandatory and fully-verified respondent Linyi Chengen.  The true missing information is within the Petition dumping equation itself, where to parrot Commerce's words, "a full half of the dumping equation" is based on U.S. plywood producer data rather than Chinese producer data.  See Fourth Remand Redetermination at 13.  Commerce's effort to discount the representativeness of Linyi Chengen's dumping margin by citing a lack of normal value information of the separate rate respondents is nonsensical and arbitrary.

As noted, the Court has already held that the incomplete nature of the record cannot be used as a reason to rely on evidence that is not substantiated by actual evidence.

> As noted in Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370 (Fed. Cir. 2013), Commerce creates its own problems when it selects only two mandatory respondents and has minimal information on the record to support its assertions regarding the potential dumping margins of separate rate respondents. Bestpak, 716 F.3d at 1376–79 (citing Yangzhou Bestpak Gifts & Crafts Co. v. United States, 35 CIT 948, 955 n.4, 783 F. Supp. 2d 1343, 1351 (2011) ("Commerce put itself in a precarious situation when it selected only two mandatory respondents.").

Linyi Chengen III, __ CIT at __, 487 F. Supp. 3d at 1358.   The Separate Rate Plaintiffs provided all information requested of them and provided no less information than what is required in other cases.  Thus, the "limited record information" does not provide a reasonable basis to show that

Linyi Chengen's rate is somehow unreliable in this particular case or that the 57.36 percent is reasonably reflective of the potential dumping margins of the Separate Rate Plaintiffs.  The alleged shortcomings in record evidence are a result of Commerce's own procedures.  Commerce must consider the record as a whole, including information that supports and detracts from its conclusions.  See Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984); Seah Steel Vina Corp. v. United States, 950 F.3d 833, 847 (Fed. Cir. 2020) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  In this case, a fair reading of the entire record demonstrates that the separate rate applied by Commerce in the Fourth Remand Redetermination is not supported by substantial evidence and not in accordance with law.

### C.   COMMERCE AGAIN IMPROPERLY CONTINUED TO RELY ON THE CHINA-WIDE ENTITY AFA RATE

As a further flaw, Commerce's continued insistence on including the AFA rate in the calculation of the separate rate is unreasonable as applied in this case because substantial evidence does not support Commerce's calculation.  The Court has previously rejected a similar attempt by Commerce to average zero margins with an AFA margin to determine the all-others rate where that rate was "purposely selected with adversity in mind and constituted but one sale out of many other non-dumped sales."  Navneet Publ'ns (India) Ltd. v. United States, __ CIT __, __, 999 F. Supp. 2d 1354, 1364-65 (2014).  Here, Commerce's use of an AFA rate in the separate rate calculation appears to be aimed at adversity.   The AFA rate of 114.72 percent was the same rate applied to mandatory respondent Bayley, who was found not to be cooperative.  See Fourth Remand Redetermination at 14.  It is unreasonable to assign fully cooperative separate rate respondents, who have submitted a Q&V questionnaire, completed a separate rate application and responded to any supplemental questionnaires, a dumping margin calculated from the China-wide

rate assigned to respondents who did absolutely nothing. Although the Court sustained Commerce's decision not to apply Linyi Chengen's zero rate to the Separate Rate Plaintiffs, it did not sanction use of the AFA rate to these companies. See Linyi Chengen IV, slip op. at 18. Commerce itself implicitly acknowledged that separate rate respondents are different from companies given an AFA rate when it rejected use of Bayley's data to calculate an individual dumping margin given the "application of total AFA to this company… and particularly considering the basis for total AFA was the determination that Bayley failed to provide complete and accurate information in its questionnaire responses." Fourth Remand Redetermination at 38. The separate rate companies provided significant information on the record demonstrating their independence from the Chinese government along with actual pricing data that Commerce analyzes elsewhere in the Fourth Remand Redetermination. By contrast, the China-wide entity companies did not prove their independence from the Chinese government and did not provide the significant information required by Commerce to prove separate rate eligibility.

Commerce's finding that the separate rate companies were in fact distinct from the China-wide entity makes it unreasonable to apply a separate rate dumping margin that is based on the China-wide rate to those cooperative and fully independent companies. Commerce's determination to grant some companies separate rate status delinked the China-wide entity from the cooperating respondents in every way. Further, Commerce makes no attempt in its Fourth Remand Redetermination to show that Bayley or the China-wide entity is somehow representative of the Separate Rate Plaintiffs. If anything, Commerce itself agreed that Bayley was not representative. Id. ("we continue to find {Bayley's} data to be unreliable as a basis for calculating an individual dumping margin"). It was unreasonable and contradictory for Commerce to have concluded on the one hand that Linyi Chengen's zero margin is not representative of the Separate

Rate Plaintiffs while also concluding that Bayley's rate is sufficiently representative to be included in the separate rate calculation with no analysis whatsoever. For this reason as well, Commerce's separate rate remains unsupported by substantial evidence and not in accordance with law.

## II.   TARACA ET AL. JOIN THE COMMENTS BEING FILED BY OTHER RESPONDENT PARTIES

Taraca et al. also hereby adopt and incorporate by reference the comments being filed on the Fourth Remand Redetermination by other respondent parties regarding the recalculation of the separate rate.

## CONCLUSION

For the above reasons, the Court must remand Commerce's Fourth Remand Redetermination once again. Commerce has failed to assign the Separate Rate Plaintiffs a reasonable separate rate that is supported by substantial evidence.

Dated: December 29, 2021

/s/ Jill A. Cramer
Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com
*Counsel to Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC and USPLY LLC*

13

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jill A. Cramer, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 4,097 words.  This brief thus complies with the Standard Chambers Procedures, which permits briefs of 10,000 words or fewer.

Dated: December 29, 2021

/s/ Jill A. Cramer
Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, DC 20015
202-688-3610 (ph)
202-595-8968 (fax)
*Counsel to Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC and USPLY LLC*