UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,<br>Plaintiff,<br>and<br><br>SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,*<br>Consolidated Plaintiffs,<br>v.<br><br>UNITED STATES,<br>Defendant,<br>and<br>THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br>Defendant-Intervenor. | Consol. Court No. 18-00002<br><br>**NON-CONFIDENTIAL VERSION**<br>Business Proprietary Information Removed on Pages 9 and 10 |

---

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

---

OF COUNSEL:

SAVANAH ROSE MAXWELL
Attorney
Office of the Chief Counsel
For Trade Enforcement and Compliance
United States Department of Commerce

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

SONIA ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-0534
Attorneys for Defendant

February 2, 2022

## TABLE OF CONTENTS

BACKGROUND...................................................................................................2

    I.      Administrative Determination Under Review..........................................2

    II.    Prior Remand Redeterminations..............................................................3

    III.   The Court's Fourth Remand Order And Commerce's Fourth Remand
          Redetermination...................................................................................5

ARGUMENT ......................................................................................................7

    I.  Standard Of Review .................................................................................7

    II.  Commerce's Calculation Of The Separate Rate Was Based On Substantial Evidence....7

        A.  Commerce's Review of Record Evidence ...............................................7

        B.  Plaintiffs' Arguments That Commerce's Determination Is Not Supported by
            Substantial Evidence Are Unavailing.........................................................16

    III.  Commerce's Calculation Of The Separate Rate By Averaging Chengen's Rate
        With The China -Wide Entity Rate Is In Accordance With Law...................20

    IV. In Light Of Commerce's Lawful Assignment Of A Non-Zero Rate, The Court Need
        Not Address Plaintiffs' Arguments That The Separate Rate Companies Should Be
        Excluded from The Order ...........................................................................23

CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Albemarle Corp. & Subsidiaries v. United States,*
   821 F.3d 1345 (Fed. Cir. 2016) ...................................................................20, 22

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
   971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014)...........................................................21

*Bosun Tools Co. v. United States*,
   No. 2021-1929, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022)..............................21, 23

*Changzhou Hawd Flooring Co. v. United States,*
   324 F.3d 1317 (Ct. Int'l Trade 2018) .....................................................................23

*Changzhou Hawd Flooring Co. v. United States*,
   848 F.3d 1006 (Fed. Cir. 2017) ...................................................................20, 22

*Consol. Edison Co. of New York v. N.L.R.B.,*
   305 U.S. 197 (1938)..................................................................................7, 16

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966)..........................................................................................7

*I.N.S. v. Elias-Zacarias,*
   502 U.S. 478 (1992)..........................................................................................7

*Linyi Chengen Import and Export Co. v. United States,*
   391 F. Supp. 1283 (Ct. Int'l Trade 2019) .......................................................3, 19

*Linyi Chengen Import and Export Co. v. United States,*
   433 F. Supp. 3d 1278 (Ct. Int'l Trade 2020)..........................................................3

*Linyi Chengen Import and Export Co. v. United States*,
   539 F. Supp. 3d 1269 (Ct. Int'l Trade 2021)................................................*passim*

*MacLean-Fogg Co. v. United States,*
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)..........................................................7

*Navneet Publications (India) Ltd. v. United States*,
   999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014)........................................................21

*Transcom, Inc. v. United States,*
   294 F.3d 1371 (Fed. Cir. 2002) ...................................................................11

*Verson, A Div. of Allied Prods. Corp. v. United States,*
   5 F. Supp. 2d 963 (Ct. Int'l Trade 1998) ......................................................24

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,*
   716 F.3d 1370 (Fed. Cir. 2013) ............................................... 11, 20, 23

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ......................................................................... 7

19 U.S.C. § 1673d(a)(4) ..................................................................................24

19 U.S.C. § 1673d(c)(5) ...........................................................................*passim*

19 U.S.C. §1677e .................................................................................... 11, 19

19 U.S.C. §1677m ................................................................................... 18, 19

**Regulations**

19 C.F.R. § 351.204(e)(1) ...............................................................................24

**Federal Register**

*Certain Hardwood Plywood Products from the People's Republic of China,*
   82 Fed. Reg. 53,460 (Dep't of Commerce, Nov. 16, 2017) (*Final Determination*)................. 2

*Certain Hardwood Plywood Products from the People's Republic of China,*
   83 Fed. Reg. 504 (Dep't of Commerce, Jan. 4, 2018) )
   (*Amended Final Determination and Order*) ........................................................ 3

*Final Affirmative Determination of Sales at Less Than Fair Value, and Final Partial Affirmative Critical Circumstances Determination of Ceramic Tile from the People's Republic of China,*
   85 Fed. Reg. 19,425 (Dep't of Commerce, Apr. 7, 2020)......................................13

*Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances of Polyester Textured Yarn from the People's Republic of China,*
   84 Fed. Reg. 63,850 (Dep't of Commerce, Nov. 19, 2019) ...................................13

*Initiation of Less-Than-Fair- Value Investigation Certain Hardwood Plywood Products from the People's Republic of China,*
  81 Fed. Reg. 91,125 (Dep't of Commerce, Dec. 16, 2016)....................................................17

**Other Authorities**

Uruguay Round Agreements Act,
H.R. Doc. 103-316, vol. 1 (1994) ...........................................................................................11

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,* | ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) Consol. Court No. 18-00002 |
| UNITED STATES, | ) ) |
| Defendant, | ) **NON-CONFIDENTIAL** |
| | ) **VERSION** |
| and | ) Business Proprietary Information |
| | ) Removed on Pages 9 and 10 |
| THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | ) ) ) |
| Defendant-Intervenor. | ) ) |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by consolidated plaintiffs Taraca Pacific, Inc., *et al.* (Taraca), Zhejiang Dehua TB Import & Export Co., Ltd., *et al.* (Dehua TB), and the Separate Rate Plaintiffs.[1]  *See* Taraca Cmts., December 29,

---

[1] Consolidated Plaintiffs, Celtic Co., Ltd., Anhui Hoda Wood Co., Ltd., Far East American, Inc., Jiaxing Gsun Import and Export Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao

2021, ECF No. 209; Dehua TB Cmts., December 29, 2021, ECF No. 208; Separate Rate

Plaintiff Cmts., December 29, 2021, ECF No. 210. The comments concern the Department of

Commerce's fourth remand redetermination, *Final Results of Remand Pursuant to Court*

*Remand,* November 10, 2021 (*Fourth Remand Redetermination*), ECF No. 206,[2] issued

pursuant to this Court's opinion and order, *Linyi Chengen Import and Export Co., Ltd., et al. v.*

*United States*, 539 F. Supp. 3d 1269 (Ct. Int'l Trade 2021) (*Fourth Remand Order*), ECF No.

202. The Court should sustain the remand redetermination and enter final judgment for the

United States because Commerce has complied with the Court's Fourth Remand Order, and

because the remand redetermination is supported by substantial evidence and otherwise in

accordance with law.

## **BACKGROUND**

### I.    **Administrative Determination Under Review**

In November 2017, Commerce issued its final affirmative determination in the

antidumping duty investigation of certain hardwood plywood products from the People's

Republic of China. *See Certain Hardwood Plywood Products from the People's Republic of*

*China* 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (*Final Determination*), P.R.

882,3 and the accompanying Issues and Decision Memorandum (IDM), P.R. 871. In January

---

Good Faith Import and Export Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Shandong
Qishan International Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway
International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou
Andefu wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood
Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and
Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd. (collectively "Separate Rate
Plaintiffs").

[2] The remand redetermination was issued as a confidential version, ECF No. 205, and a public
version, ECF No. 206. References in this brief are to the public version.

2018, Commerce published the amended final determination and order. *See Certain Hardwood Plywood Products from the People's Republic of China,* 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (*Amended Final Determination and Order*), P.R. 894.

## II.    Prior Remand Redeterminations

Following challenges brought by Linyi Chengen Import & Export Company (Chengen), and several companies subject to Commerce's separate rate calculation, which was based on Chengen's dumping margin, the Court held that Commerce's final determination was arbitrary and capricious. The Court remanded for Commerce to reconsider certain findings regarding Chengen's reporting of its log consumption. *Linyi Chengen Import and Export Co., Ltd. v. United States,* 391 F. Supp. 1283, 1294, 1301 (Ct. Int'l Trade 2019). The Court directed Commerce to reconsider the rates applied to the separate rate companies, if Commerce were to change Chengen's margin on remand. *Id.* at 1301.

Under respectful protest, Commerce reconsidered the record evidence and revised Chengen's margin calculation by calculating normal value using Chengen's log factors of production, rather than the intermediate input methodology based on the factors of production of wood veneers. *Second Remand Redetermination,* ECF No. 113, 114, at 3. Consistent with the Court's second remand Order, Commerce recalculated the rate assigned to the non-individually examined separate rate companies that are parties to this litigation by averaging Chengen's new 0.00 percent rate with the 114.72 percent rate assigned to the China-wide entity, resulting in a rate of 57.36 percent. *Linyi Chengen Import and Export Co., Ltd. v. United States,* 433 F. Supp. 3d 1278, 1285 (Ct. Int'l Trade 2020); *Second Remand Redetermination* at 4.

3

The Court subsequently sustained Commerce's revised estimated weighted average dumping margin for Chengen as reasonable and supported by substantial evidence. *Third Remand Order*, 487 F. Supp. 3d at 1359. The Court, however, instructed Commerce to either provide more evidence supporting its departure from the expected method in calculating the rate applied to separate rate respondents, or to change its determination. *Id.* at 1358. Specifically, the Court held that Commerce did not sufficiently justify its departure from the "expected method" in 19 U.S.C. § 1673d(c)(5)(B) because "the margins in the Petition are 'untethered' to the actual dumping margins of the Separate Rate Plaintiffs." *Id.*

The Court further found that Commerce must support its departure from the expected method with substantial evidence demonstrating that Chengen's zero percent dumping margin rate would not be reasonably reflective of the Separate Rate Plaintiffs' potential dumping margins. The Court held that Commerce's assertion that the lack of cooperation by the other mandatory respondent, Shandong Dongfang Bayley Wood Co., Ltd. (Bayley), and its designation as part of the China-wide entity did not support a conclusion that the Separate Rate Plaintiffs' potential dumping margin rate was different than Chengen's dumping rate of zero percent. The Court further stated that Commerce cited no "economic evidence" showing that the Separate Rate Plaintiffs' dumping margins are different from Chengen's, and ordered Commerce to provide more evidence, or otherwise change its determination regarding the estimated weighted-average dumping margin for the Separate Rate Plaintiffs. *Third Remand Order*, 487 F. Supp. 3d at 1358-59.

On remand, Commerce provided additional explanation concerning its conclusions and continued to calculate an estimated dumping margin for non-examined companies receiving a separate rate by averaging Chengen's 0.00 percent rate with the rate assigned to the China-wide

entity. *Third Remand Redetermination* at 5. Commerce examined the relevant economic evidence on the record. Specifically, Commerce considered an invoice from a commercial transaction of the separate rate applicant exporter which formed the basis for the price quotes in the petition, as well as commercial invoices submitted by each of the Separate Rate Plaintiffs for a sale of subject merchandise during the period of investigation. *Id*. at 17 and 21.

Commerce determined that these invoices (along with other record evidence related to the separate rate companies' variations of cost structure and degree of vertical integration) supported the conclusion that the separate rate companies' potential dumping differed from that of Chengen's pricing behavior, and thus Chengen's rate alone was not reflective of the separate rate companies' potential dumping during the period of investigation. Thus, Commerce, operating under the exception to the expected method, calculated the rate assigned to the non-individually examined separate rate companies that are parties to this litigation by averaging Chengen's sustained 0.00 percent rate with the 114.72 percent rate assigned to the China-wide entity, resulting in a rate of 57.36 percent. *Third Remand Redetermination* at 5.

## III.   The Court's Fourth Remand Order And Commerce's Fourth Remand Redetermination

In its *Fourth Remand Order*, the Court sustained Commerce's departure from the expected method in establishing the separate rate, finding that Commerce had reasonably supported its determination that Chengen's zero percent dumping margin would not be representative of the separate rate companies' potential dumping margins. *Fourth Remand Order*, 539 F. Supp. 3d at 1275 ). However, the Court found that, because Commerce cited only one commercial invoice from the petition as record evidence, and that invoice showed only an approximately 20 percent price difference between the invoice price and similar products sold by Chengen, Commerce's selection of the all-others separate rate of 57.36 percent was not

supported by substantial evidence. *Id*. at 1277. The Court ordered Commerce to reconsider the selection of the separate rate, noting that Commerce is required to assign the most accurate dumping margin possible. *Id*. at 1278.

On October 15, 2021, Commerce released its draft results of redetermination, examining the alternative rates on the record, and continuing to average Chengen's zero rate with the rate assigned to the China-wide entity. *Draft Results of Remand Redetermination*, P.R.R. 1. After consideration of the parties' comments, Commerce issued its fourth remand redetermination. *Fourth Remand Redetermination*, P.R.R. 8. Commerce reexamined the record and identified additional information, including multiple commercial invoices that indicate the reliability of the petition rates. *Fourth Remand Redetermination* at 31.

As directed by the Court, Commerce further examined the rates on the record of this investigation, considered the alternatives, and determined that the most reasonable and appropriate method for calculating the separate rate was to average the only rates established in this investigation: the rate for the China-wide entity (which includes mandatory respondent Bayley), based on adverse facts available, and Chengen's zero percent rate. *Fourth Remand Redetermination* at 42.

Operating under the exception to the expected method, Commerce calculated the rate assigned to the non-individually examined separate rate companies that are parties to this litigation by averaging Chengen's sustained 0.00 percent rate with the 114.72 percent rate assigned to the China-wide entity, resulting in a rate of 57.36 percent. *Fourth Remand Redetermination* at 30.

# ARGUMENT

## I.     Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States,* 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966) (citations omitted). Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See I.N.S. v. Elias-Zacarias,* 502 U.S. 478, 483-84 (1992).

## II.     Commerce's Calculation of the Separate Rate Was Based On Substantial Evidence
### A.  Commerce's Review of Record Evidence

In its previous order, the Court sustained Commerce's determination that Chengen's zero percent rate would not be representative of the separate rate companies dumping margins, but remanded Commerce's calculation of the separate rate. *Fourth Remand Order*, 539 F. Supp. 3d at 1278. Specifically, "{b}ecause Commerce cited as record evidence only one commercial invoice showing an approximately 20 percent price difference, the Court conclude{d} that

Commerce's 57.36 percent separate rate assigned to the voluntary, cooperating Separate Rate Plaintiffs is not reasonable and is unsupported by substantial evidence." *Id.*

On remand, Commerce further examined the rates on the record of this investigation, considered the alternatives, and determined that the most reasonable and appropriate method for calculating the separate rate was to average the only rates established in this investigation: the rate for the China-wide entity (which includes mandatory respondent Bayley), and Chengen's zero percent rate. *Fourth Remand Redetermination* at 14. Further, to address the Court's concerns that the petition rate was only supported by a single commercial invoice, and thus Commerce's calculation was not supported by substantial evidence, Commerce reexamined the record. Commerce identified additional information, including multiple commercial invoices, that provide further support for its conclusion that the petition rate is reliable. *Fourth Remand Redetermination* at 31. Commerce's calculation of the separate rate was supported by substantial evidence, in accordance with law, and should be sustained.

First, Commerce's determination that the petition rates are reliable for purposes of calculating the separate rate is supported by substantial evidence. Commerce's reliance on the petition rate is supported by the price quote that forms the basis of the petition rate, the invoice that corroborates that same exporter's selling practices, and additional record evidence discussed below. *Fourth Remand Redetermination* at 30. As Commerce explained, "comparing prices between two companies selling comparable goods is a reasonable analysis to conduct in the antidumping context, where price comparisons form the basis of all calculated rates." *Id.* at 29. The comparison here provides "sufficient evidence of meaningful differences between Chengen's and the separate rate applicants' pricing and cost structures, as well as their selling activities." *Id.* at 30. Moreover, additional record information sufficiently tethers the actual

selling activities of separate rate recipients during the period of investigation to the margins in the petition in, that it indicates that sales were made during the period of investigation at prices even lower than those that resulted in the petition rates. Commerce found that this record evidence suggested that potential dumping occurred at levels even higher than the petition rates during the same period. *Id*.

During the investigation, Commerce requested additional invoices from the Petition Separate Rate Applicant Exporter (Petition SRA Exporter) for plywood purchased from each of its suppliers in a supplemental questionnaire. *See* Petition SRA Exporter's Letter, "Certain Hardwood Plywood Products from the People's Republic of China: Submission of [█████ ██████] Supplemental Response," dated [████████] (Petition SRA Exporter Supplemental) at 5 [████████]. In response, the Petition SRA Exporter stated that one of its sales channels involved unaffiliated suppliers who sold plywood to the Petition SRA Exporter's affiliate; this affiliated company, in turn, resold the merchandise to the Petition SRA Exporter who then sold it to the United States. *Id*. Notably, these transactions involve an additional level of price markup beyond the sales channel through which the Petition SRA Exporter purchased plywood directly from suppliers. Specifically, the Petition SRA Exporter provided value-added tax (VAT) invoices from its Chinese affiliate, who was also granted a separate rate in this investigation, that reflect prices for the identical merchandise that was the subject of the petition rate at prices lower than the prices on which the petition rate was based (*i.e.*, [████] USD/m3). *Id*. Yet, despite the significant resale markup, the documentation demonstrates that the Petition SRA Exporter sold plywood to the United States during the period of investigation at even lower rates than the prices identified in the petition. Fourth Remand Redetermination at 32.

Specifically, the single commercial invoice identified in *Third Remand Redetermination* indicates an actual sale of [████] m3 of [████████████████████████████████ ████], which is identical to one of the products in the petition price quote. In addition, the single commercial invoice identified in *Third Remand Redetermination* indicates a free-on-board (FOB) price of [████] USD/m³, which is also nearly identical to the petition price quote. *See* Petition Rate SRA at Exhibit 1. In contrast, the additional documentation provided by the Petition SRA Exporter demonstrates that the Petition SRA Exporter made sales of identical plywood, in substantial quantities and under FOB sales terms, at the same or even lower prices than the prices identified in the petition. Those VAT invoices reflect prices of [████] U.S. dollars (USD)/cubic meter (m3) for merchandise that the Petition SRA Exporter, in turn, resold for [████] USD/m3. Petition SRA Supplemental at Exhibit [████]; *see also Fourth Remand Redetermination* at 32. Petition SRA Supplemental. Specifically, the Petition SRA Exporter sold [████████████████████████] supplied by three different producers at prices between [████████████████], including more than [████] at [██████████]. *Id.* Accordingly, the record includes multiple commercial invoices indicating that the Petition SRA Exporter made sales during the period of investigation at the same, or lower, prices than the price quote upon which the petition rate is based (*i.e.*, [████] USD/m3). This evidence indicates that the petition SRA exporter made sales of significant quantities of identical plywood at potential dumping rates higher than the petition rates throughout the period of investigation. *Fourth Remand Redetermination* at 33. Commerce's consideration of these additional invoices further supports its position that separate rate companies had dumping during the POI that was as high as the petition rate (and higher). Thus, Commerce's reliance on the petition rates as a source for calculating the separate rate is supported by substantial evidence on the record.

Second, Commerce reconsidered the 57.36 percent rate applied to the Separate Rate Plaintiffs as directed by the Court, *see Fourth Remand Redetermination* at 11, and provided a reasonable explanation as to why it declined to rely on alternative ways of calculating the rate. Commerce's practice is to assign to separate-rate entities that were not individually examined a rate equal to the average of the rates calculated for the individually investigated respondents, excluding any rates that are zero, *de minimis*, or based entirely on adverse facts available (AFA), consistent with 19 U.S.C. § 1673d(c)(5)(A). *See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,* 716 F.3d 1370, 1374 (Fed. Cir. 2013) (*citing Transcom, Inc. v. United States,* 294 F.3d 1371, 1374 (Fed. Cir. 2002)). However, when, as here, the estimated weighted-average dumping margins for all exporters and producers individually investigated are zero, *de minimis*, or determined entirely under section 1677e of the Act, Commerce may use "any reasonable method to establish the rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." 19 U.S.C. § 1673d(c)(5)(B). "{T}he expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA) at 873.

However, "if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods." *Id*. As explained previously, following the expected method under 19 U.S.C. § 1673d(c)(5)(B) and applying Chengen's zero percent rate to the separate rate respondents participating in this litigation would not be appropriate because this rate would not be reasonably reflective of potential dumping margins for non-investigated

11

exporters or producers. Given the facts present in this case, the Court sustained Commerce's reliance on the exception to the "expected method" in *Fourth Remand Order*, finding that it was reasonably supported. *Fourth Remand Order,* 539 F. Supp. 3d at 1277. As such, in accordance with 19 U.S.C. § 1673d(c)(5)(B), Commerce may use any other reasonable method to determine the rate for the Separate Rate Plaintiffs.

Because the record does not contain the information needed to determine the actual dumping margins of the separate rate companies, Commerce examined the other rates on the record of this investigation. *Fourth Remand Redetermination* at 11. Commerce acknowledged that the Court did not sustain the selection of the 57.36 percent rate applied to the Separate Rate Plaintiffs and that the Court directed it to reconsider that rate. *Fourth Remand Redetermination* at 11. Commerce explained that the record provides no opportunity for Commerce to know or to calculate the actual dumping margins of the Separate Rate Plaintiffs and, thus, it is not possible to determine with certainty whether any particular rate is an accurate estimate of the actual dumping margins of the Separate Rate Plaintiffs. *See Fourth Remand Redetermination* at 11; *see also Fourth Remand Order,* 539 F. Supp. 3d at 1277 (noting Commerce's duty to assign dumping margins as accurately as possible). Commerce further explained that the only rates on the record of the review were the China-wide entity (including Bayley's) rate of 114.72 percent, Chengen's rate calculated under protest of zero percent, and two rates from the petition. *Fourth Remand Redetermination* at 11. As explained in the *Third Remand Redetermination*, Commerce has determined that the dumping margins alleged in the petition are representative of the actual selling behavior of separate rate recipients and that additional record evidence distinguishes Chengen's selling behavior during the period of investigation from the selling behavior of the Separate Rate Plaintiffs. *See Third Remand Redetermination* at 16-17. Therefore, the limited

record information available indicates that selling behavior varied during the period of investigation. As explained at length by Commerce in the *Third Remand Redetermination*, and upheld by the court, record evidence supports Commerce's determination that Chengen's zero percent rate is not reflective of the potential dumping of the separate rate companies during the period of investigation. *Fourth Remand Order*, F. Supp. 3d at 1276-77.

Therefore, Commerce considered the only alternative rates in the case, the rates listed in the petition, which are 104.06 percent and 114.72 percent, or a derivative thereof. *Fourth Remand Redetermination* at 11. In examining these rates, Commerce explained that both of the petition rates begin with the pricing established by the Petition SRA Exporter, who was a separate rate recipient, and, therefore, Commerce determined that both of these rates are representative of the dumping behavior of the Separate Rate Plaintiffs. *Fourth Remand Redetermination* at 12. Further, Commerce determined that because both prices on which the petition rates are based are for in-scope plywood products, there was no basis to choose between them. *Id.* Commerce's practice is to consider the petition rates equally representative (when the use of an adverse inferences is not warranted), and it has averaged those rates when determining the all-others or non-examined/separate rate in a given proceeding. *See, e.g.*, *Final Affirmative Determination of Sales at Less Than Fair Value, and Final Partial Affirmative Critical Circumstances Determination of Ceramic Tile from the People's Republic of China*, 85 Fed. Reg. 19,425 (Dep't of Commerce Apr. 7, 2020); *Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances of Polyester Textured Yarn from the People's Republic of China*, 84 Fed. Reg. 63,850 (Dep't of Commerce Nov. 19, 2019). An average of the two petition rates would result in a rate of 109.39 percent.

However, Commerce determined that applying the petition rates would require Commerce to ignore the additional evidence on the record of this investigation, Chengen's rate of zero percent, calculated under protest. *Fourth Remand Redetermination* at 13. Although the Court sustained Commerce's determination that Chengen's zero percent margin would not be reasonably reflective of the Separate Rate Plaintiff's actual dumping margins, the record also indicates that separate rate companies had potential dumping margins during the period of investigation at levels of the highest petition rate of 114.72. *Fourth Remand Redetermination* at 12; 30. Based on this limited information, Commerce concluded that the selling behavior of the separate rate companies, of which the Separate Rate Plaintiffs are a subset, varied during the period of investigation. *Id*.

Because the petition rates, either individually, or averaged, would not reflect this variation in selling behavior, Commerce declined to apply the petition rates, either individually, or averaged together, as the separate rate. Commerce explained that although Chengen's rate alone "would not be representative of the separate rate respondents' actual dumping margins," neither would either of petition rates alone be the most appropriate rate to apply to the Separate Rate Plaintiffs. *Fourth Remand Redetermination* at 31 (citing *Fourth Remand Order* at 1276). Commerce explained that by averaging Chengen's zero percent rate with the China-wide entity rate (which is based on the highest petition rate) Commerce can account for those Separate Rate Plaintiffs whose dumping may more closely adhere to the levels of the petition SRA Exporter as well as those whose dumping behavior may be more similar to that of Chengen's. *Fourth Remand Redetermination* at 31. Recognizing that its chosen method must be reasonable and based on the record, Commerce fulfilled this requirement by averaging these two rates rather than using a single petition rate, or the average of the petition rates. *Id*. at 41.

Commerce also explained that although the Court cited the approximately 20 percent difference between the price at which Chengen sold the same product as the petition SRA Exporter, this 20 percent difference alone is not indicative of the potential level of dumping by that exporter. *See Fourth Remand Order* at 1277. This is because a margin must be calculated by reference to a U.S. price and a normal value, and the petition SRA Exporter's own, company-specific normal value is not on the record of this investigation. *Fourth Remand Redetermination* at 14. Absent a company-specific normal value for the petition SRA Exporter, the price comparison in the *Third Remand Redetermination* merely shows that the Separate Rate Exporters priced their products at potentially much lower levels than the pricing level for Chengen's U.S. plywood exports (with the reasonable assumption that the dumping rates would also increase) and, thus, that Chengen's rate, alone, is not a good proxy for the Separate Rate Plaintiffs' rate. *Id*. However, that 20 percent price difference says nothing about the possible differences in normal value of the product (*i.e.*, a full half of the dumping equation). Thus, although Commerce pointed to a 20 percent price difference between Chengen and known separate rate recipients in *Redetermination III*, that observation does not stand for the proposition that the 20 percent price difference would result in a commensurate 20 percent difference in the potential dumping margin. *Fourth Remand Redetermination* 13. Instead, record evidence indicates that the potential dumping margins could be at least as high as the rate assigned to the China-wide entity, 114.72 percent, which is based on the highest petition rate, a rate that is also rooted in the record and tied to actual selling behavior of a separate rate respondent in this investigation.

Consistent with the Court's direction, Commerce reviewed the record of this investigation and reconsidered the separate rate assigned to the Separate Rate Plaintiffs. After full consideration of the limited alternative rate choices based on the record, Commerce

determined the most reasonable method of calculation of the separate rate was to apply the simple average of: (a) the revised rate applied to the China-wide entity (which includes mandatory respondent Bayley) of 114.72 percent, and (b) the zero percent rate calculated for Chengen. *Fourth Remand Redetermination* at 14.

Accordingly, the Court should uphold Commerce's calculation of a separate rate of 57.36 percent as reasonable because it is based on record evidence, consistent with the Court's *Fourth Remand Order*, and otherwise in accordance with law

## B. Plaintiffs' Arguments That Commerce's Determination Is Not Supported by Substantial Evidence Are Unavailing

Plaintiffs broadly assert that Commerce has not addressed the Court's order, and that Commerce's calculation of the separate rate is not based on substantial evidence. Taraca Cmts. at 4-6; Dehua TB Cmts. at 1-2; Separate Rate Plaintiff Cmts. at 1-2. As explained above, Commerce complied with the Court's order. Moreover, plaintiffs' arguments fail to acknowledge the substantial evidence standard. Although "{s}ubstantial evidence is more than a mere scintilla," it does not require overwhelming evidence. Rather, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). The evidence relied upon by Commerce meets that standard. Plaintiffs suggest that Commerce's evaluation of the record evidence was faulty, but each of these arguments fail.

First, plaintiffs argue that the petition data are unreliable, citing the fact that the normal value was based on surrogate values from Thailand, whereas in the final determination Commerce relied on surrogate data from Romania. Dehua Cmts. at 3-4; Taraca Cmts. at 7; Separate Rate Plaintiffs Cmts. at 6. Commerce reasonably determined that these arguments do not detract from the relevance of the petition rates to this investigation. This investigation was

initiated using data from Thailand as the surrogate country because Thailand is a market economy that was at a level of economic development comparable to that of China at the time of initiation and it was a significant producer of comparable merchandise. *See Initiation of Less-Than-Fair- Value Investigation Certain Hardwood Plywood Products from the People's Republic of China*, 81 Fed. Reg. 91,125 (Dep't of Commerce Dec. 16, 2016). Indeed, parties continued to advocate for use of Thailand as the primary surrogate country as late in the proceeding as the time for the submission of the case briefs. *See* Petitioner's Letter, "Case Brief of the Coalition for Fair Trade in Hardwood Plywood," dated October 6, 2017 at 21-28 (P.R. 839). In addition, the petition rate was based on a comparison of a price quote during the period of investigation, which is corroborated by multiple, actual sale prices by separate rate companies during the period of investigation, with actual consumption rates experienced by a plywood producer in the United States that employed a production process similar to that of Chinese producers for identical or similar merchandise. *See Fourth Remand Redetermination* at 36 (*citing* Volume II of the petition at 1, 14-15, and Exhibit II-10). Thus, the petition rates were, in fact, based on credible surrogate values from an economically-comparable country. Therefore, because the petition data are supported by record information, it was reasonable for Commerce to rely on the petition rate in its analysis for this redetermination.

Taraca argues that Commerce's selection of the 114.72 percent rate instead of the 104.06 percent rate from the petition, or an average of the two rates, is flawed. Taraca Cmts. at 6. Commerce did not consider averaging the lower of the two potential dumping margins listed in the petition, 104.06 percent, with Chengen's calculated zero percent margin for two reasons. First, the record indicates that sales were made during the period of investigation at prices even lower than those that resulted in the petition rates, suggesting that potential dumping occurred at

levels even higher than the petition rates during the same period. *Fourth Remand Redetermination* at 30. Additionally, Commerce explained that, in determining "any reasonable method to establish the rate for exporters and producers not individually investigated," it is reasonable to use as guidance the method expressly contemplated by Congress when the margins for all exporters and producers selected for individual examination are zero, *de minimis*, or determined entirely under facts available (the "expected method"), even where the situation warrants a departure from that expected method of determining the separate rate.

Both Taraca and the Separate Rate Plaintiffs argue that Commerce did not consider the differing sales prices of the separate rate companies based on information in the company's separate rate application, including those separate rate companies that had sales prices that were higher than Chengen's sales prices. Taraca Cmts. at 5; Separate Rate Plaintiffs Cmts at 9-10. However, Commerce's proposed calculation methodology accounts for these variances. By averaging Chengen's zero percent rate with the China-wide entity rate (which is based on the highest petition rate) Commerce can account for those Separate Rate Plaintiffs whose dumping may more closely adhere to the levels of the petition SRA Exporter as well as those whose dumping behavior may match more closely that of Chengen. *Fourth Remand Redetermination* at 31. Thus, although Taraca Pacific argues that Commerce's calculation has not taken into consideration those Separate Rate Plaintiffs whose pricing may have been different than the petition SRA Exporter, the average of these two rates considers the likely range of dumping behavior by those parties.

The Separate Rate Plaintiffs argue that the sales information provided by Bayley and Jiangyang Wood would provide a more accurate basis by which to calculate the separate rate. Separate Rate Plaintiff Cmts at 7-8. Commerce has provided a reasoned explanation for not

using this information: the information on the record about Jiangyang was limited and the information provided by Bayley was unreliable. Although Jiangyang Wood satisfied the threshold requirement of 19 U.S.C. §1677m(a) for consideration as a voluntary respondent, Jiangyang Wood's initial responses to Commerce's antidumping questionnaire is not comparable information to the documentation respondents generally submit during an investigation. *See Third Remand Redetermination* at 44; *see also Fourth Remand Redetermination* at 37. Commerce only evaluates the questionnaire responses for companies that are not initially selected for individual examination but have voluntarily provided the information requested of the mandatory respondents if Commerce makes a determination to individually examine the voluntary respondent. *See* 19 U.S.C § 1677m. Only then does Commerce notify a voluntary respondent of any deficiencies in its initial responses, and issue supplemental requests for information. 19 U.S.C. §1677m. Because Commerce did not select Jiangyang Wood as a voluntary respondent, Commerce never collected the range of data that it would have obtained through this process. Commerce reasonably determined it would not be appropriate to calculate an individual weighted-average dumping margin for Jiangyang Wood based on the limited and untested information it provided to qualify as a voluntary respondent because its data have not been subjected to the same process and standards that Commerce employs to calculate individual dumping margins in all investigations. *Fourth Remand Redetermination* at 37.

Nor would the sales information provided by Bayley provide a more accurate basis by which to calculate the separate rate. *See* Separate Rate Plaintiffs Cmts at 7-8. Commerce determined that Bayley's data were unreliable as a basis for calculating an individual dumping margin given the application of total adverse facts available pursuant to 19 U.S.C.§ 1677e to this company in the investigation. *Fourth Remand Redetermination* at 38. Commerce's application

19

of AFA was based on the determination that Bayley failed to provide complete and accurate information in its questionnaire responses. *See Final Determination* IDM at 13, Comment 1 (P.R. 871). This Court has already sustained Commerce's application of AFA to Bayley. *Linyi Chengen Import and Export Co., Ltd. v. United States,* 391 F. Supp. 1283, 1294 (Ct. Int'l Trade 2019). Therefore, Commerce's determination that Bayley's data were unreliable for purposes of calculating the separate rate is reasonable.

## III.    Commerce's Calculation of the Separate Rate By Averaging Chengen's Rate with the China-Wide Entity Rate is in Accordance with Law

Dehua TB, Taraca, and the Separate Rate Plaintiffs argue that Commerce's calculation of the separate rate is not in accordance with law. Separate Rate Plaintiff Cmts. at 7; Dehua TB Cmts. at 3-5; Taraca Cmts. at 2-4. Contrary to plaintiffs' argument with respect to the legal framework, Commerce may depart from the expected rate "if Commerce reasonably concludes that the expected method is 'not feasible' or 'would not be reasonably reflective of potential dumping margins,'" as Commerce determined here. *Albermarle*, 821 F.3d 1345, 1352 (Fed. Cir. 2016); *see also Changzhou Hawd Flooring Co., Ltd.* v. United States, 848 F.3d 1006, 1011-12 (Fed. Cir. 2017); 19 U.S.C. § 1673d(c)(5). Moreover, as explained above, Commerce's reliance on the petition rates in its calculation is supported by substantial evidence.

As an initial matter, it is important to recognize that the Court sustained Commerce's departure from the expected method in establishing the separate rate, finding that Commerce had reasonably supported its determination that Chengen's zero percent dumping margin would not be representative of the separate rate companies' potential dumping margins in its *Fourth Remand Order*, but found that Commerce selection of the all-others separate rate of 57.36 percent required further evidentiary support. *Fourth Remand Order*, 539 F. Supp. 3d at 1275. Moreover, plaintiffs reliance upon *Bestpak*, *Baroque Timber*, and *Navneet Publications* in

20

support of its argument that Commerce may not lawfully average the zero and AFA rate, or for Commerce to use an AFA rate in the calculation of the separate rate is misplaced. Those authorities in fact support Commerce's position. As the Federal Circuit observed, "{the Act} and the SAA explicitly allow Commerce to factor both *de minimis* and AFA rates into the calculation methodology" and this methodology was "derived from the relevant statutory language." *Bestpak*, 716 F.3d at 1378. Applying *Bestpak*, this Court has held that "it is not *per se* unreasonable for Commerce to use a simple average of *de minimis* and AFA rates to calculate the separate rate antidumping duty margin." *Baroque Timber Indus. (Zhongshan) Co. Ltd. v. United States*, 971 F. Supp. 2d 1333, 1341 (Ct. Int'l Trade 2014). Similarly, the Court held that "the all-others rate statute expressly permits the inclusion of facts available rates" and noted that the Federal Circuit "summarily rejected the argument that Commerce may never use an AFA rate when deriving a 'separate rate' for cooperative, uninvestigated respondents in {non-market economy} proceedings." *Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1358-59 (Ct. Int'l Trade 2014).

More to the point, the Federal Circuit recently affirmed Commerce's calculation of the separate rate including a zero percent rate and AFA rate. *Bosun Tools Co., Ltd. v. United States*, No. 2021-1929, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022) (mandate pending). Addressing a separate rate company's argument that, based on its cooperation throughout the review, Commerce should not have assigned it a rate calculated using an AFA rate, the Federal Circuit explained that the statute provides that Commerce "may factor an AFA rate into its calculation of a separate rate." *Bosun Tools Co. v. United States*, 2021-1929, 2022 WL 94172 at *4 (explaining that 19 U.S.C. "§ 1673d(c)(5)(B) provides that Commerce may factor an AFA rate into its calculation of a separate rate. The SAA reinforces the statute. It provides that relying on

21

an AFA rate is not only permitted but expected.") (citation omitted).  Accordingly, Commerce

may lawfully average the zero and AFA rate, or use an AFA rate in the calculation of the

separate rate, contrary to plaintiff's claims.

Plaintiffs maintain that the separate rate must be consistent with the economic reality of

those companies, and that Commerce should apply Chengen's rate because it is the only

calculated rate on the record.  Dehua TB Cmts. at 5-6; Separate Rate Plaintiff Cmts. at 10-11;

Taraca Cmts. at 11-12.  However, Commerce may depart from the expected method for

calculating the separate rate "if Commerce determines that following the expected method would

not be feasible or would result in margins that would 'not be reasonably reflective of potential

dumping margins' for the separate respondents," *Albermarle*, 821 F.3d at 1349 (citing 19 U.S.C.

§ 1673d(c)(5)); *see also Changzhou Hawd Flooring*, 848 F.3d at 1011-12.  Under those

circumstances, "Commerce may use 'other reasonable methods.'" *Id.*

Commerce found that those factual circumstances were met here. *Fourth Remand*

*Redetermination* at 39-40.  Specifically, "record evidence demonstrates that certain separate rate

companies sold plywood at prices lower than Chengen, and that the separate rate companies had

varying pricing and cost structures such that Chengen's rate is not reflective of the potential

margins of the Separate Rate Plaintiffs." *Id.* at 40.  Further, by arguing that applying Chengen's

zero percent rate is the only "reasonable" method for Commerce to calculate the separate rate,

Dehua TB and the Separate Rate Plaintiffs are asking for Commerce to ignore record evidence.

*Id.* at 40.  Record evidence demonstrates that certain separate rate companies sold plywood at

prices lower than Chengen, and that the separate rate companies had varying pricing and cost

structures such that Chengen's rate is not reflective of the potential margins of the Separate Rate

Plaintiffs.  *See Third Remand Redetermination* at 18-25; *see also Fourth Remand Order*, 539 F.

Supp. 3d at 1275 (affirming Commerce's determination that Chengen's rate alone is not representative of the separate rate companies potential dumping).   However, if Commerce were to apply Chengen's rate to the Separate Rate Plaintiffs, Commerce would have to find the record evidence demonstrating that Chengen's rate alone is not reflective of the separate rate companies' potential dumping to be less probative.  Moreover, if Commerce were *required* to apply Chengen's zero percent rate despite evidence of higher levels of potential dumping on the record, it would render its statutory ability to use "any reasonable method" a nullity.  *See* 19 U.S.C. § 1673d (c)(5)(B); *see Bosun Tools Co. v. United States*, No. 2021-1930, 2022 WL 94172, at *4 (Fed. Cir. Jan. 10, 2022) (quoting *Bestpak* , 716 Fed. 3d at 1378) ("'{Section} 1673d(c)(5)(B) and the SAA explicitly allow Commerce to factor both *de minimis* and AFA rates into the calculation methodology.'"); *Fourth Remand Redetermination* at 40.  Thus, Commerce's calculation of the separate rate by averaging Chengen's rate with the China-wide entity rate is consistent with law.

## IV. In Light Of Commerce's Lawful Assignment Of A Non-Zero Rate, The Court Need Not Address Plaintiffs' Arguments That the Separate Rate Companies Should Be Excluded from The Order

Finally, the Separate Rate Plaintiffs argue that the Court should direct Commerce to apply Chengen's zero rate to the Separate Rate Plaintiffs, and exclude them from the order, or at least exclude the companies that requested voluntary treatment from the order.  Separate Rate Plaintiffs Cmts. at 13.  As explained above, Commerce lawfully calculated a separate rate under the exception to the expected method, and did not assign a zero rate.  In addition, although the Separate Rate Plaintiffs did not raise this argument in their comments on the draft results of this redetermination, Commerce addressed these arguments at length in the *Third Remand Redetermination*.  *See Third Remand Redetermination* at 39-40; *see also* Def. Resp. to

Comments Upon Third Remand Redetermination, ECF No. 197 at 21-22. As Commerce explained there, the authority relied upon by the separate rate plaintiffs, *Changzhou Hawd Flooring Co. v. United States,* 324 F.3d 1317, 1326-1328 (Ct. Int'l Trade 2018) considered whether 19 C.F.R. § 351.204(e)(1) and section 735(a)(4) of the Act requires separate rate respondents to be released from an antidumping duty order when the separate rate was *de minimis*. *Third Remand Redetermination* at 40. The Court upheld Commerce's determination that separate rate companies should remain under the Order as "a reasonable interpretation of the statute," and one which "reflects a reasonable policy judgement and is supported by Commerce's formal regulations." *Id.* at 791.

Here, because the separate rate calculated for the final results of redetermination is not zero, none of the companies would be eligible for exclusion from the order under 19. U.S.C, § 1673d(a)(4) and Commerce correctly determined that the question of whether certain separate rate companies should be excluded from the order is not presented. *Third Remand Redetermination* at 39-40. Moreover, because as Separate Rate Plaintiffs acknowledge, this issue was "not commented upon by the Court in its recent remand" and "no further discussion or determination has been offered by the Department" the Court need not render an advisory opinion on this issue. *See, e.g., Verson, A Div. of Allied Prods. Corp. v. United States*, 5 F. Supp. 2d 963, 966 (Ct. Int'l Trade 1998) ("{A} federal court does not have the power to render an advisory opinion on a question simply because {it} may have to face the same question in the future.") (internal quotation marks and citations omitted).

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

s/ Sonia Orfield
SONIA ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-0534

OF COUNSEL:

SAVANAH ROSE MAXWELL
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
United States Department of Commerce

February 2, 2022

Attorneys for Defendant

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that the brief,

Defendant's Response To Comments On Remand Redetermination,  complies  with the word-

count limitation.   In making this certification, I have relied upon the word count function of the

Microsoft Word processing system used to prepare the brief.  According to the word count, the

brief contains 7225 words.

<u>/s/ Sonia  Orfield</u><br>
February 2, 2022

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,<br><br>　　　　　　　Plaintiff,<br><br>　　and<br><br>SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,*<br><br>　　　　　　　Consolidated  Plaintiffs,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant,<br><br>　　and<br><br>THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>　　　　　　　Defendant-Intervenor. | Consol.  Court No. 18-00002 |

## <u>ORDER</u>

Upon consideration  of final results of remand, *Final Results of Remand Pursuant to Court Remand,* November 10, 2021, ECF No. 206, the comments filed by the parties, the administrative  record, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand results are sustained in all respects; and it is further

27

ORDERED that judgment is entered in favor of the United States.

_____
JUDGE

Dated: _____