**Slip Op. 22-150**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,** | |
| **Plaintiff,** | |
| **and** | |
| **CELTIC CO., LTD., ET AL.,** | |
| **Consolidated Plaintiffs,** | **Before:  Jennifer Choe-Groves, Judge** |
| **v.** | **Consol. Court No. 18-00002** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **COALITION FOR FAIR TRADE OF HARDWOOD PLYWOOD,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Remanding the fourth remand determination of the U.S. Department of Commerce, following the final determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China.]

Dated: December 21, 2022

Gregory S. Menegaz, Alexandra H. Salzman, James K. Horgan, and John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiff Linyi Chengen Import and Export Co., Ltd., Consolidated Plaintiffs Far East American, Inc. and Shandong Dongfang Bayley Wood Co., Ltd., and Consolidated Plaintiffs and Plaintiff-Intervenors Celtic Co., Ltd., Jiaxing Gsun Import & Export Co., Ltd., Anhui Hoda Wood Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shandong Qishan International Trading Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu Wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd.

Jeffrey S. Neeley, Nithya Nagarajan, and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for Consolidated Plaintiffs Zhejiang Dehua TB Import & Export Co., Ltd., Highland Industries Inc., Jiashan Dalin Wood Industry Co., Ltd., Happy Wood Industrial Group Co., Ltd., Jiangsu High Hope Arser Co., Ltd., Suqian Yaorun Trade Co., Ltd., Yangzhou Hanov International Co., Ltd., G.D. Enterprise Limited, Deqing China-Africa Foreign Trade Port Co., Ltd., Pizhou Jin Sheng Yuan International Trade Co., Ltd., Xuzhou Shuiwangxing Trading Co., Ltd., Cosco Star International Co., Ltd., Linyi City Dongfang Jinxin Economic & Trade Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Jiangsu Qianjiuren International Trading Co., Ltd., and Qingdao Top P&Q International Corp.

Jeffrey S. Grimson, Bryan P. Cenko, Jill A. Cramer, Kristin H. Mowry, and Sarah M. Wyss, Mowry & Grimson, PLLC, of Washington, D.C., for Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products, Ltd., Concannon Corporation d/b/a Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, and USPLY LLC.

Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.

With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of counsel were <u>Nikki Kalbing</u>, Attorney, and <u>Savannah R. Maxwell</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

<u>Timothy C. Brightbill</u>, <u>Adam M. Teslik</u>, <u>Derick G. Holt</u>, <u>Elizabeth S. Lee</u>, <u>Jeffrey O. Frank</u>, <u>Laura El-Sabaawi</u>, <u>Maureen E. Thorson</u>, <u>Stephanie M. Bell</u>, and <u>Tessa V. Capeloto</u>, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood.

Choe-Groves, Judge: This action concerns the import of hardwood and decorative plywood and certain veneered panels into the United States from the People's Republic of China ("China"), subject to the final affirmative determination in an antidumping duty investigation by the U.S. Department of Commerce ("Commerce").  <u>See</u> <u>Certain Hardwood Plywood Products from the People's Republic of China</u>, 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (final determination of sales at less than fair value), <u>as amended</u>, 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (amended final determination of sales at less than fair value) (collectively "<u>Final Determination</u>"); <u>see also</u> Issues and Decision Mem. for the Final Determination of the Antidumping Duty Investigation of Certain Hardwood Plywood Products from People's Republic of China ("Final IDM"), ECF No. 25-7.

Before the Court are the Final Results of Redetermination Pursuant to Court Remand ("<u>Fourth Remand Determination</u>"), ECF Nos. 205-1, 206-1, which the Court ordered in <u>Linyi Chengen Import & Export Co. v. United States</u> ("<u>Linyi</u>

Chengen IV"), 45 CIT __, 539 F. Supp. 3d 1269 (2021).  Consolidated Plaintiffs

Zhejiang Dehua TB Import & Export Co. ("Dehua TB"), Taraca Pacific, Inc.

("Taraca"), and Celtic Co. ("Celtic") filed comments in opposition to the Fourth

Remand Determination.  Plaintiff Linyi Chengen Import & Export Co. ("Linyi

Chengen"), and Consolidated Plaintiff Shandong Dongfang Bayley Wood Co.

("Bayley"), both mandatory respondents, did not file comments in response to the

Fourth Remand Determination.

Dehua TB filed comments collectively on behalf of itself and Highland

Industries, Inc., Jiashan Dalin Wood Industry Co., Happy Wood Industrial Group

Co., Jiangsu High Hope Arser Co., Suqian Yaorun Trade Co., Yangzhou Hanov

International Co., G.D. Enterprise Ltd., Deqing China-Africa Foreign Trade Port

Co., Pizhou Jin Sheng Yuan International Trade Co., Xuzhou Shuiwangxing

Trading Co., Cosco Star International Co., Linyi City Dongfang Jinxin Economic

& Trade Co., Linyi City Shenrui International Trade Co., Jiangsu Qianjiuren

International Trading Co., and Qingdao Top P&Q International Corp.  Comments

Opp'n Third Remand Redetermination Behalf Consol. Pls. [Dehua TB] et. al. ("the

Dehua TB Comments" or "Dehua TB Cmts."), ECF No. 208.

Taraca filed comments collectively on behalf of itself and Canusa Wood

Products, Ltd., Concannon Corp. d/b/a Concannon Lumber Co., Fabuwood

Cabinetry Corp., Holland Southwest International, Inc., Liberty Woods

International, Inc., Northwest Hardwoods, Inc., Richmond International Forest

Products, LLC, and USPLY LLC.  Consol. Pls. [Taraca], Canusa Wood Products

Ltd., Concannon Corp. [d/b/a] Concannon Lumber Co., Fabuwood Cabinetry

Corp., Holland Southwest International Inc., Liberty Woods International, Inc.,

Northwest Hardwoods, Inc., Richmond International Forest Products, LLC, &

USPLY LLC Comments Opp'n Third Remand Redetermination ("the Taraca

Comments" or "Taraca Cmts."), ECF No. 209.

Celtic filed comments collectively on behalf of itself and Anhui Hoda Wood

Co., Far East American, Inc., Jiaxing Gsun Import & Export Co., Jiaxing Hengtong

Wood Co., Linyi Evergreen Wood Co., Linyi Glary Plywood Co., Linyi Jiahe

Wood Industry Co., Linyi Linhai Wood Co., Linyi Hengsheng Wood Industry Co.,

Linyi Huasheng Yongbin Wood Co., Linyi Mingzhu Wood Co., Linyi Sanfortune

Wood Co., Qingdao Good Faith Import & Export Co., Shanghai Futuwood Trading

Co., Shandong Qishan International Trading Co., Suining Pengxiang Wood Co.,

Suqian Hopeway International Trade Co., Suzhou Oriental Dragon Import &

Export Co., Xuzhou Andefu Wood Co., Xuzhou Jiangyang Wood Industries Co.,

Xuzhou Longyuan Wood Industry Co., Xuzhou Pinlin International Trade Co.,

Xuzhou Shengping Import & Export Co., and Xuzhou Timber International Trade

Co.  Consol. Separate Rate Pls.' Comments Opp'n Fourth Remand

Redetermination ("the Celtic Comments" or "Celtic Cmts."), ECF Nos. 210, 211.

The Court refers collectively to the non-examined parties that filed the Dehua TB Comments, the Taraca Comments, and the Celtic Comments as the "Separate Rate Plaintiffs."

Defendant United States ("Defendant") responded to the Dehua TB Comments, the Taraca Comments, and the Celtic Comments.  Def.'s Resp. Comments Remand Redetermination ("Def.'s Resp."), ECF Nos. 214, 215. Defendant-Intervenor Coalition for Fair Trade of Hardwood Plywood ("Defendant-Intervenor") filed comments in support of the Fourth Remand Determination. [Def.-Intervenor]'s Comments Supp. Commerce's Remand Redetermination ("Def.-Interv.'s Cmts."), ECF Nos. 213, 216.

The Court reviews whether Commerce's separate rate for the non-examined companies that were granted separate rate status ("all-others separate rate") is supported by substantial evidence.  For the reasons discussed below, the Court holds that the all-others separate rate is not supported by substantial evidence and remands Commerce's Fourth Remand Determination.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural history of this case and recites the facts relevant to the Court's review of the Fourth Remand Determination.  See Linyi Chengen Imp. & Exp. Co. v. United States, 43 CIT __, __, 391 F. Supp. 3d 1283, 1287–92 (2019); Linyi Chengen Imp. & Exp.

Co. v. United States, 44 CIT __, __, 433 F. Supp. 3d 1278, 1280–84 (2020); Linyi

Chengen Imp. & Exp. Co. v. United States ("Linyi Chengen III"), 44 CIT __, __,

487 F. Supp. 3d 1349, 1351–54 (2020); Linyi Chengen IV, 45 CIT at __, 539 F.

Supp. 3d at 1271–1274.

Commerce initiated an antidumping investigation after reviewing an

antidumping duty petition ("Petition") submitted by Defendant-Intervenor. See

Certain Hardwood Plywood Products from the People's Republic of China, 81 Fed.

Reg. 91,125 (Dep't of Commerce Dec. 16, 2016) (initiation of less-than-fair-value

investigation). The Petition contained price quotes, i.e., "two offers for sale for

hardwood plywood produced in [China] from a Chinese exporter," as the basis for

its estimated dumping margins ranging from 104.06% to 114.72%. See id. at

91,128–29.

Commerce accepted applications from exporters and producers seeking to

obtain separate rate status in the investigation ("separate rate applications") to

avoid the country-wide dumping margin because the investigation involved

products from China, a non-market economy. See id. at 91,129. Commerce

assigned the all-others separate rate to the companies that were not individually

examined but demonstrated their eligibility for separate rate status ("separate rate

respondents"). Final Determination, 82 Fed. Reg. at 53,462. Commerce selected

Bayley and Linyi Chengen as the only mandatory respondents in the investigation.

See Decision Mem. Prelim. Determination Antidumping Duty Investigation of

Certain Hardwood Plywood Products from the People's Republic of China (June

16, 2017) ("Prelim. DM") at 4, PR 734.[1]

In Linyi Chengen III, 44 CIT __, __, 487 F. Supp. 3d 1349, 1356 (2020), the

Court sustained as reasonable and supported by substantial evidence Commerce's

determination that Linyi Chengen's dumping margin was 0%.  Id. at 1356.  The

Court also concluded that Commerce did not support with substantial evidence its

departure from the expected method and its determination of the all-others separate

rate of 57.36% by using the simple average of Linyi Chengen's 0% rate and

Bayley's adverse facts available ("AFA") rate of 114.72% and remanded the case

for Commerce to reconsider or provide additional evidence.  Id. at 1355–59.

In Linyi Chengen IV, 45 CIT __, __, 539 F. Supp. 3d 1269, 1276 (2021), the

Court concluded that Commerce reasonably supported its determination to depart

from the expected method in determining the all-others separate rate because Linyi

Chengen's 0% rate would not be reflective of the potential dumping margins.  Id.

at 1276.  Commerce based its determination on the evidence reviewed, including

the comparability of a Petition price quote to a price from the Petition Separate

Rate Application, differences between Linyi Chengen's and the Separate Rate

---

[1] Citations to the administrative record reflect the public record ("PR") document numbers.

Plaintiffs' pricing and cost structures, and commercial invoices showing disparities

between the Separate Rate Plaintiffs' and Linyi Chengen's selling activities.  Id.

Commerce again applied "any reasonable method" and calculated the all-others

separate rate of 57.36% by using the simple average of Linyi Chengen's 0% rate

and Bayley's AFA rate of 114.72%.  Id.  This Court again concluded that

Commerce's application of the 57.36% all-others separate rate to the Separate Rate

Plaintiffs was not reasonable and was unsupported by substantial evidence.  Id. at

1278.  This Court noted that when applying "any reasonable method," Commerce

is still required to assign dumping margins as accurately as possible that are

supported by substantial evidence, and that Commerce cited as record evidence

only one commercial invoice showing an approximately 20% price difference

between the prices of the Petition Separate Rate Application and Linyi Chengen.

Id. at 1277–78.  Because Commerce's determination was not reasonable and was

unsupported by substantial evidence, the Court remanded Commerce's

determination.  Id.

        In the Fourth Remand Determination, Commerce assigned the same 57.36%

all-others separate rate to the Separate Rate Plaintiffs, again taking the arithmetic

average of the highest possible AFA rate and Linyi Chengen's 0% rate.  Fourth

Remand Determination at 9.  The Court again finds Commerce's determination to

be unsupported by substantial evidence.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction under 19 U.S.C.

§ 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).  The Court shall hold unlawful any

determination found to be unsupported by substantial evidence on the record or

otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The

Court reviews determinations made on remand for compliance with the Court's

remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __,

__, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.     Legal Framework

Commerce is authorized by statute to calculate and impose a dumping

margin on imported subject merchandise after determining that it is sold in the

United States at less than fair value.  19 U.S.C. § 1673.  Commerce determines an

estimated weighted average dumping margin for each individually examined

exporter and producer and one all-others separate rate for non-examined

companies.  19 U.S.C. § 1673d(c)(1)(B).  The Court of Appeals for the Federal

Circuit has upheld Commerce's reliance on this method for determining the

estimated all-others separate rate in § 1673d(c)(5) when "determining the separate

rate for exporters and producers from nonmarket economies that demonstrate their

independence from the government but that are not individually investigated."

Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1011 (Fed. Cir.

2017) (citing Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345,

1348 (Fed. Cir. 2016)).

> The general rule for calculating the all-others separate rate is to weight-
average the estimated weighted average dumping margins established for exporters
and producers individually investigated, excluding any zero and de minimis
margins, and any margins determined entirely on the basis of facts available,
including adverse facts available.  19 U.S.C. § 1673d(c)(5)(A).  If the estimated
weighted average dumping margins established for all exporters and producers
individually investigated are zero or de minimis, or are determined entirely under
19 U.S.C. § 1677e (i.e., determinations on basis of facts available), Commerce may
invoke an exception to the general rule.  Id. § 1673d(c)(5)(B).  The Statement of
Administrative Action provides further guidance, instructing that when the
dumping margins for all individually examined respondents are determined
entirely on the basis of the facts available or are zero or de minimis, the "expected
method" of determining the all-others separate rate is to weight-average the
margins determined pursuant to the facts available and the zero and de minimis
margins, provided that volume data is available.  Uruguay Round Agreements Act,
Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, at
873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201.

Commerce may depart from the "expected method" and use "any reasonable method" if it reasonably concludes that the expected method is not feasible or results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers.  See 19 U.S.C. § 1673d(c)(5)(B); Navneet Publications (India) Ltd. v. United States, 38 CIT __, __, 999 F. Supp. 2d 1354, 1358 (2014) ("[T]he following hierarchy [is applied] when calculating all-others rates—(1) the '[g]eneral rule' set forth in § 1673d(c)(5)(A), (2) the alternative 'expected method' under § 1673d(c)(5)(B), and (3) any other reasonable method when the 'expected method' is not feasible or does not reasonably reflect potential dumping margins"); see also SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201; Albemarle Corp., 821 F.3d at 1351–52 (quoting SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201).  Any reasonable method may include averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.  19 U.S.C. § 1673d(c)(5)(B).

While Commerce is permitted to use various methodologies, "it is possible for the application of a particular methodology to be unreasonable in a given case." Yangzhou Bestpak Gifts & Crafts Co. v. United States ("Yangzhou Bestpak"), 716 F.3d 1370, 1378 (Fed. Cir. 2013) (quoting Thai Pineapple Canning Indus. Corp. v. United States, 273 F. 3d 1077, 1085 (Fed. Cir. 2001)).  In this case, the Court

analyzes whether Commerce's methodology is reasonable as applied and supported by substantial evidence.

## II.     The Parties' Contentions

The Separate Rate Plaintiffs challenge Commerce's <u>Fourth Remand Determination</u> on numerous grounds.  The Celtic Comments challenge Commerce's <u>Fourth Remand Determination</u> by arguing that Commerce failed to calculate a margin that is reasonably reflective of the Separate Rate Plaintiffs' potential dumping margin.  Celtic Cmts. at 2.  The Celtic Comments assert that Commerce's examination of additional invoices in a supplemental questionnaire on fourth remand was flawed because the new documents reflect purchases of plywood in China from the Separate Rate Petitioner's own suppliers, rather than from additional sales of subject merchandise to the United States.  <u>Id</u>. at 3.  The Celtic Comments state that the price at which the Petition Separate Rate Application exporter bought plywood in China was not relevant to Commerce's inquiry of the U.S. sales price, and the sales price was actually higher than the price at which the products were bought.  <u>Id</u>.  The Celtic Comments note that the invoice was not the only evidence of a sale of the specific plywood in the supplement questionnaire, which contained another invoice showing higher sales prices.  <u>Id</u>.  The Celtic Comments argue that Commerce cited only two invoices showing lower sales prices than Linyi Chengen's sale of a similar product, while

ignoring other invoices on the record that show sales of similar products at higher prices than Linyi Chengen's sale. Id. at 3. The Celtic Comments contend that other information on the record that could have been considered by Commerce includes full questionnaires submitted voluntarily by Jiangyang Wood, showing sales prices that range below and above the sales prices of Linyi Chengen. Id. at 7–8. The Celtic Comments assert also that Commerce ignored relevant sales data of Bayley, who placed a full U.S. sales database on the record. Id. at 8. In addition, the Celtic Comments contend that Commerce ignored sales data on the record from numerous Separate Rate Plaintiffs that show sales prices in the range of or higher than Linyi Chengen's sales prices. Id.

The Taraca Comments challenge Commerce's assertion that the only alternative rates on the record are those rates listed in the Petition. Taraca Cmts. at 5–6. The Taraca Comments assert that Commerce ignored evidence on the record, specifically the Separate Rate Applications containing commercial invoices of over 100 companies that Commerce determined were separate from the China-wide entity. Id. at 6. The Taraca Comments contend that many of the sales invoices of the Separate Rate Plaintiffs show pricing higher than Linyi Chengen's prices. Id. The Taraca Comments note that Commerce recognized that there is no basis to choose between the two Petition rates of 114.72% and 104.06% because both are for similar subject merchandise. Id. The Taraca Comments contend that

Commerce unreasonably chose the highest potential Petition rate between a choice of the higher AFA rate of 114.72% and the lower Petition rate of 104.06%, particularly in light of information on the record consisting of invoices from forty Separate Rate Plaintiffs showing a variety of prices, some that were higher than Linyi Chengen's price.  Id.  The Taraca Comments criticize Commerce for claiming that the record provides no opportunity for Commerce to know or calculate the actual dumping margins of the Separate Rate Plaintiffs and for only relying on the rates listed in the Petition, while ignoring alternate evidence on the record of prices from the Separate Rate Plaintiffs.  Id. at 5–6.

The Dehua Comments argue similarly that Commerce complained of a limited record, which is "of Commerce's own making."  Dehua TB at 3.  The Dehua Comments contend that the information cited by Commerce is flawed, unreasonable, and does not provide substantial support for Commerce's remand determination.  Id. at 4–6.

The Government argues that Commerce's Fourth Remand Determination is supported by substantial evidence because on remand Commerce reexamined the record and identified additional evidence of commercial invoices that support Commerce's determination to rely on the Petition rate.  Def.'s Resp. at 7–8.  The Government contends that several reasons support Commerce's Fourth Remand Determination.

First, the Government contends that Commerce's reliance on the Petition rate is supported by the price quote that forms the basis of the Petition rate and the invoice that corroborates that exporter's selling practices.  Id. at 8.  Commerce explained that "comparing prices between two companies selling comparable goods is a reasonable analysis to conduct in the antidumping context, where price comparisons form the basis of all calculated rates."  Id. (quoting the Fourth Remand Determination at 29).  The Government contends that this price comparison "sufficiently tethers the actual selling activities of separate rate recipients . . . to the margins in the petition[,]" because it indicates that sales were made at even lower prices than those that resulted in the Petition rates during the period of investigation.  Id. at 8–9.  The Government asserts that Commerce analyzed additional invoices for plywood purchased by the Petition Separate Rate Exporter from each of its suppliers.  Id. at 9.  The Government contends that the Petition Separate Rate Exporter "sold plywood to the United States during the period of investigation at even lower rates than the prices identified in the petition."  Id. (citing Fourth Remand Determination at 32).

Second, the Government contends that Commerce reconsidered the 57.36% all-others separate rate applied to the Separate Rate Plaintiffs and provided a reasonable explanation of why it declined to use an alternative method for calculating the rate.  Id. at 11.  The Government argues that after the Court

sustained Commerce's decision to calculate the separate rate using any reasonable

method, Commerce investigated the other rates on the record of this investigation.

The Government contends that the Court should sustain Commerce's

determination because Commerce explained that: (1) the record does not provide

any opportunity for Commerce to know or calculate the actual dumping margins of

the Separate Rate Plaintiffs, (2) the only rates on the record of the review were the

China-wide entity rate of 114.72%, and Linyi Chengen's 0% rate, and (3) the

limited record information indicates that the selling behavior varied during the

period of investigation.  Id. at 11–13.  The Government asserts that Commerce's

determination is reasonable because the simple average of the two available rates

most accurately represents the variance in potential dumping margins.  Id.

     The Government argues that Commerce was reasonable by selecting the

higher of the two potential rates between 104.06% and 114.72% because "both of

the petition rates begin with the pricing established by the Petition [Separate Rate]

Exporter . . . [and] both of these rates are representative of the dumping behavior

of the Separate Rate Plaintiffs."  Id. at 13 (citing the Fourth Remand Determination

at 12).  The Government contends that because both of the potential rates were for

in-scope plywood products, Commerce had no basis to choose between them.  Id.

The Government argues that Commerce was reasonable in determining that

applying the average of the Petition rates (109.39%) would require it to ignore

record evidence suggesting that separate rate companies had potential dumping

margins at levels equal to, or in excess of the highest Petition rate of 114.72%.  Id.

at 14.  The Government asserts that "Commerce explained that although

Chengen's rate alone 'would not be representative of the separate rate respondents'

actual dumping margins,' neither would either of petition rates alone be the most

appropriate rate[.]"  Id. (quoting the Fourth Remand Determination at 31).  The

Government argues that the Court should sustain Commerce's determination

because by averaging Linyi Chengen's 0% rate with the China-wide entity rate

based on the highest Petition rate, Commerce calculated the most accurate all-

others separate rate for those Separate Rate Plaintiffs whose dumping more closely

resembled the levels of the Petition Separate Rate Exporter and those whose

dumping more closely resembled Linyi Chengen.  Id.

    Third, the Government contends that despite the Court's skepticism

regarding the single invoice discussed at length in Linyi Chengen IV, which

showed an approximately 20% price difference between the price at which Linyi

Chengen sold the same product as the Petition Separate Rate Exporter, the price

differential alone is not indicative of the potential dumping margin.  Id. at 15.  The

Government asserts that because a margin must be calculated by reference to a

U.S. price and normal value (i.e., the arithmetic difference between the normal

value and the U.S. sales price), the Petition Separate Rate Exporter's own

company-specific normal value is not on the record in this investigation.  Id.  The

Government argues that absent a company-specific normal value, the price

comparison merely shows that the Separate Rate Exporters priced their products at

potentially much lower levels than the pricing level for Linyi Chengen's U.S.

plywood exports.  Id.  Thus, the Government asserts that this single commercial

invoice is not a good proxy for the Separate Rate Plaintiffs' rate because it does not

inform Commerce as to the Separate Rate Plaintiffs' normal values.

Defendant-Intervenor argues that Commerce's margin calculation for the

Separate Rate Plaintiffs is reasonable, fully explained, and based on substantial

evidence.  Defendant-Intervenor contends that because (1) there are only three

calculated rates on the record (Linyi Chengen's 0% rate, and the 104.06% and

114.72% margins calculated in the petition), (2) the Court has already sustained

Commerce's finding that Linyi Chengen's 0% rate would not reasonably reflect the

Separate Rate Plaintiffs' potential dumping, (3) the 20% selling price differential

between Linyi Chengen and the Petition Separate Rate Exporter alone is not

indicative of the potential dumping differentials, and (4) given Commerce's

explanation that there was variance in the separate rate companies' dumping

margins, with some separate rate companies having potential dumping margins up

to the highest rate calculated in the Petition (114.72%), the simple average of the

highest potential AFA rate calculated in the Petition and Linyi Chengen's 0% rate

most reasonably reflects the variance in potential dumping margins.  Def.-Interv.'s

Cmts. at 6–7.

## III.    Analysis

Antidumping law is intended to calculate antidumping duties on a fair and

equitable basis.  U.S. Steel Group v, United States, 225 F.3d 1284, 1290 (Fed. Cir.

2000) (citing Koyo Seiko Co. v. United States, 36 F.3d 1565, 1573 (Fed. Cir.

1994)).  The purpose of 19 U.S.C. § 1677e is to incentivize respondents to

cooperate, and not to impose punitive, aberrational, or uncorroborated margins.

F.lli De Cecco Di Filippo Fara S. Martino S.p.A., 216 F.3d at 1032.  As the court

noted in Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370

(Fed. Cir. 2013), Commerce is not permitted to consider only information that

supports its determination while ignoring other relevant information to the

contrary.  See generally Yangzhou Bestpak, 716 F.3d 1370.

Yangzhou Bestpak is instructive here.  Commerce calculated the all-others

separate rate margin of Yangzhou Bestpak Gifts & Crafts Co. ("Bestpak") by using

the simple average of an AFA rate and a *de minimis* rate, similar to the facts in this

case.  Id. at 1372.  In Yangzhou Bestpak, Commerce selected the two largest

exporters, Ningbo Jintian Import & Export Co., Ltd. ("Jintian") and Yama Ribbons

& Bows Co., Ltd ("Yama"), as mandatory respondents for individual investigation.

Id.  Commerce received responses from Yama, but not from Jintian.  Id.  No other

exporter requested voluntary investigation, and Commerce did not select a

replacement mandatory respondent for Jintian, despite Commerce's past practice

of selecting a replacement respondent when a mandatory respondent did not

comply.  Id.  Thus, Commerce's investigation only involved one participant.

Commerce assigned a *de minimis* dumping margin to Yama, and an AFA China-

wide entity rate of 247.65% to Jintian due to its failure to cooperate in the

investigation.  Id.  Commerce calculated Bestpak's all-others separate rate using

the simple average of Yama's *de minimis* rate and Jintian's AFA China-wide entity

rate, resulting in a 123.83% all-others separate rate margin.  Id.  The U.S. Court of

International Trade remanded, noting that the calculated separate rate was

"exceptionally larger than the rate calculated for the lone cooperative mandatory

respondent."  Id.

On remand, Commerce reviewed the administrative record and compared

the estimated average unit values ("AUVs") calculated from information provided

by Jintian, Yama, and Bestpak in their Q&V questionnaire responses.  Id.  An

estimated AUV "is a ratio calculated by dividing a respondent's total value of sales

by its total quantity of sales[.]"  Id.  Using AUVs as a proxy for dumping margins,

Commerce determined that Bestpak's AUVs fell between Yama's (*de minimis*

margin) and Jintian's (AFA margin), and thus "a 'simple average of Jintian and

Yama's estimated AUVs' equaled a rate which was 'very close' to Bestpak's

'estimated AUV.'"  Id. (internal citation omitted).  Commerce argued that the

simple average of the two investigated companies' margins reasonably reflected

Bestpak's potential dumping margin.  Id.  The U.S. Court of International Trade

sustained Commerce's separate rate determination, noting that though the

determination "may [have been] unfortunate and even frustrating, . . . it [was] not

unreasonable on this limited administrative record."  Id. at 1377 (quoting

Yangzhou Bestpak Gifts & Crafts Co., Ltd., v. United States, 36 CIT 475, 483, 825

F. Supp. 2d 1346, 1353 (2012)).

On appeal, the Court of Appeals for the Federal Circuit held that substantial

evidence did not support Commerce's all-others separate rate calculation and

vacated and remanded accordingly.  Id.  The Court of Appeals for the Federal

Circuit reasoned that:

> [W]hile various methodologies are permitted by the statute, it is possible for
> the application of a particular methodology to be unreasonable in a given
> case. . . .  This court finds that this case presents that situation. . . .  Although
> Commerce may be permitted to use a simple averaging methodology to
> calculate the separate rate, the circumstances of this case renders a simple
> average of a *de minimis* and AFA Chinawide rate unreasonable as applied.
> Similarly, a review of the administrative record reveals a lack of substantial
> evidence showing that such a determination reflects economic reality.

Id. at 1378.  In addition to concluding that Commerce's selected calculation

method was unreasonable as applied, the Yangzhou Bestpak Court held that "[t]his

court does not find Commerce's late attempt to backfill with these AUV estimates,

untethered to the three respondents' actual dumping margins, as amounting to

substantial evidence." Id. at 1379.  The Court of Appeals for the Federal Circuit

concluded that even "[w]hile Bestpak's estimated AUV aligned with a simple

average of Jintian's and Yama's estimated AUVs, Commerce's inference that their

dumping margins paralleled that same correlation is speculative." Id.  The Court

stated that it was unfair and perhaps punitive to assign a fully cooperating separate

rate respondent a margin that was one half of the China-wide entity rate—a rate

reserved for those entities presumed to be under foreign government control.  Id.

Notably, the Court of Appeals for the Federal Circuit criticized Commerce's own

actions of identifying only two significant exporters for review and failing to

replace Jintian after it became clear that Jintian was unresponsive to Commerce's

requests, leading to a situation of Commerce's own making with one *de minimis*

and one AFA rate.  The Court of Appeals for the Federal Circuit also rejected

Commerce's claim that time constraints precluded it from investigating more

thoroughly, and the Yangzhou Bestpak Court ultimately found "no support in this

court's precedents or the statute's plain text for the proposition that limited

resources or statutory time constraints can override fairness and accuracy." Id.

(citing SNR Roulements v. United States, 402 F.3d 1358, 1363 (Fed. Cir. 2005)).

     Following the principles established in Yangzhou Bestpak, this Court

concludes that Commerce's determination is unreasonable as applied and not

supported by substantial evidence.  As in Yangzhou Bestpak, here Commerce

selected only two mandatory respondents and failed to replace Bayley after it

became clear that Bayley would not cooperate with Commerce's investigation, a

practice that the Court of Appeals for the Federal Circuit has frowned upon.  See

Yangzhou Bestpak, 716 F.3d 1370; but cf. Prestressed Concrete Steel Wire Strand

from the People's Republic of China, 74 Fed. Reg. 61,104 (Dep't of Commerce

Nov. 23, 2009) (Commerce added a new mandatory respondent when it became

clear that one respondent was uncooperative).  As the Court noted in Linyi

Chengen IV, Commerce created its own problem when it selected only two

mandatory respondents, which resulted in sparse information on the record to

support its assertions regarding the potential dumping margins of the separate rate

respondents.  Linyi Chengen IV, 539 F. Supp. 3d at 1277–78.  A speculative

dumping margin using the average of a *de minimis* rate and an AFA rate cannot be

upheld based on weak record evidence, particularly when Commerce itself created

the scarcity of evidence.  See Bosun Tools Co. v. United States, No. 2021-1930,

2022 WL 94172, at 4* (comparing Yangzhou Bestpak where "the record was 'so

thin' that Commerce could not have reasonably 'found evidence to support [its]

determination[,]'" while in Bosun Tools "in contrast, there was no such lack of

data").

     Commerce in this case simply averaged the *de minimis* and the AFA rate to

determine the 57.36% all-others separate rate, which is half of the AFA rate.  See

Fourth Remand Determination.  Using only two data points, Commerce reasoned

that because the "limited record information available indicat[ed] that selling

behavior varied during the [period of investigation[,]" the simple average of the

two available rates most reasonably reflected the potential variance in dumping

margins amongst the separate rate companies.  Id. at 11.  The Court observes that

the all-others separate rate assigned to the fully cooperating Separate Rate

Plaintiffs is nearly 60 times higher than that of the sole investigated respondent,

Linyi Chengen.  Similar to Yangzhou Bestpak, this Court concludes that an all-

others separate rate applied to fully cooperating respondents that is 60 times higher

than the only calculated de minimis rate and is half of the AFA rate seems unfair

and unduly punitive.

　　　With respect to the Government's argument that Commerce supported its

determination by citing additional invoices from the Petition Separate Rate

Applicant China Friend, Fourth Remand Determination at 31; Def.'s Resp. at 9–

10; Petition SRA Exporter, Supplemental SRA Questionnaire Response (May 19,

2017) ("Supplemental Questionnaire"), PR 654–655, the Court disagrees that the

invoices in the Supplemental Questionnaire support Commerce's determination

that 57.36% is a reasonably accurate all-others separate rate and reflects the

variation in prices during the period of investigation.  Commerce determined that

the Supplemental Questionnaire invoices indicate that "the Petition [Separate Rate]

Exporter made sales of significant quantities of identical plywood at potential

dumping rates higher than the Petition rates throughout the [period of

investigation][.]" Fourth Remand Determination at 33. The Court notes that while

Commerce concluded that variances in the selling behavior of the separate rate

companies *only* implies dumping levels in excess of the highest Petition rate of

114.72%, Commerce ignored other potentially contrary record evidence, including

potential evidence that the Petition SRA Exporter sold the same plywood for prices

higher than the price upon which the Petition rate is based. See Celtic Cmts. at 3;

see Supplemental Questionnaire at Ex. S-5. The Court is persuaded by the

Separate Rate Plaintiffs' argument that Commerce failed to review other

potentially contradictory evidence on the record, including for example, record

evidence showing that Separate Rate Plaintiff Jiangyang Wood had a higher

weighted average sales price than Linyi Chengen, whose rate was determined to be

0%. Celtic Cmts. at 8; see Jiangyang Wood, Section C Questionnaire (February

28, 2017) ("Jiangyang Questionnaire"), PR 351; see also Chengen, Supplemental

Questionnaire Response (May 15, 2017) ("Chengen Questionnaire"), PR 623. The

Separate Rate Plaintiffs also cite additional contrary record evidence, such as

Bayley's full U.S. sales database, Celtic Cmts. at 8; the Separate Rate Applications

containing commercial invoices of over 100 companies who were determined by

Commerce to be separate from the China-wide entity, Taraca Cmts. at 6; and

invoices from 40 Separate Rate Plaintiffs showing a variety of prices, some that
were higher than Linyi Chengen's price, id.  The Court does not purport to reweigh
the evidence, but emphasizes these examples to illustrate that Commerce is not
permitted to create a scarcity of information, to use that scarcity as justification for
its determination, and to claim that a constraint on resources prevents further
examination, while ignoring potentially contrary evidence on the record.

      The Court concludes that Commerce's determination to assign to fully
cooperating separate rate respondents an all-others separate rate margin almost 60
times higher than the only investigated respondent, and half of the AFA rate for
uncooperative respondents, is unreasonable as applied because it is unfair and
unduly punitive.  The Court also concludes that because Commerce selectively
analyzed the invoice data while ignoring other potentially contrary record
evidence, Commerce's determination is not supported by substantial evidence.

      The Court has concluded in three separate opinions, including this one, that
the all-others separate rate of 57.36% is unreasonable as applied and not supported
by substantial evidence.  The Court advises that Commerce should not submit the
same 57.36% rate again for review by this Court without new, substantial evidence
in support.  The Court reminds the Government that the rules of the U.S. Court of
International Trade require the just and speedy determination of every action and
proceeding, and submitting the same unreasonable-as-applied, punitive all-others

separate rate yet again would not be in the spirit of reaching a just and speedy resolution to this case.  See Rule 1, Rules of U.S. Court of International Trade.  On the fifth remand in this case, Commerce might choose to examine whether other evidence on the record supports a lower rate after the applicable rates are averaged. The Court advises Commerce to not submit the same rate of 57.36% for the fourth time, which could likely result in yet another remand based on being unreasonable as applied to fully cooperating respondents if still based on a scarcity of record evidence.

## CONCLUSION

For the foregoing reasons, the Court remands the Fourth Remand Determination.

Accordingly, it is hereby

**ORDERED** that the Fourth Remand Determination is remanded for Commerce to reconsider the all-others separate rate consistent with this opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1)    Commerce shall file the fifth remand determination on or before March 17, 2023;

(2)    Commerce shall file the administrative record on or before March 31, 2023;

(3)      Comments in opposition to the fifth remand determination shall

be filed on or before April 28, 2023;

(4)      Comments in support of the fifth remand determination shall be

filed on or before May 26, 2023; and

(5)      The joint appendix shall be filed on or before June 23, 2023.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: December 21, 2022
New York, New York