PUBLIC DOCUMENT

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,

                **Plaintiff,**

      **and**

CELTIC CO., LTD., *et al.,*

                **Consolidated Plaintiffs,**

      **and**

TARACA PACIFIC, INC., *et al.,*

                **Plaintiff-Intervenors,**

      **v.**

UNITED STATES,

                **Defendant,**

      **and**

COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,

                **Defendant-Intervenor.**

Before: Hon. Jennifer Choe-Groves, Judge

Consol. Court No. 18-00002

## DEFENDANT-INTERVENOR THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD'S COMMENTS IN OPPOSITION TO COMMERCE'S FIFTH REMAND REDETERMINATION

Timothy C. Brightbill, Esq.
Jeffrey O. Frank, Esq.
Stephanie M. Bell, Esq.
Elizabeth S. Lee, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Coalition for Fair Trade in Hardwood Plywood*

April 28, 2023

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND .............................................................................................................1

III.    COMMERCE'S MARGIN CALCULATION FOR SEPARATE RATE
        RESPONDENTS IS REASONABLE, FULLY EXPLAINED, AND
        BASED ON SUBSTANTIAL RECORD EVIDENCE ........................................................6

IV.     THE EXCLUSION OF CERTAIN COMPANIES THAT REQUESTED
        VOLUNTARY RESPONDENT TREATMENT IS UNSUPPORTED BY
        THE RECORD AND IS NOT IN ACCORDANCE WITH LAW ...................................11

V.      CONCLUSION.............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Changzhou Hawd Flooring Co. v. United States*,
    947 F.3d 781 (Fed. Cir. 2020)......................................................................12, 13

*Deacero S.A.P.I de CV v. United States*,
    Ct. No. 12-00345, slip op. 14-99 (Ct. Int'l Trade Aug. 28, 2014) ..........................11

*Fuyao Glass Indus. Grp. Co. v. United States*,
    30 CIT 165 (2006) ....................................................................................10

*Linyi Chengen Imp. & Exp. Co. v. United States*,
    487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) ...........................................................2

*Linyi Chengen Imp. & Exp. Co. v. United States*,
    539 F. Supp. 3d 1269 (Ct. Int'l Trade 2021)......................................................2, 7

*Linyi Chengen Imp. & Exp. Co. v. United States*,
    609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) ...............................................3, 4, 11

*Meridian Prods., LLC v. United States*,
    890 F.3d 1272 (Fed. Cir. 2018)...................................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).................................................................................10

*SKF USA Inc. v. United States*,
    630 F.3d 1365 (Fed. Cir. 2011)...................................................................10

*U.S. Steel Corp. v. United States*,
    37 CIT 1799, 953 F. Supp. 2d 1332 (2013) ..........................................................10

**Statutes**

19 U.S.C. § 1673d.........................................................................................8

19 U.S.C. § 1673d(c)(5)(B) ........................................................................5, 8

**Administrative Materials**

*Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam*,
    86 Fed. Reg. 28,559 (Dep't Commerce May 27, 2021) ........................................12

## I.      INTRODUCTION

On behalf of Defendant-Intervenor the Coalition for Fair Trade in Hardwood Plywood ("Coalition"), we respectfully submit the following comments in opposition to the fifth remand determination submitted by the Department of Commerce ("Commerce") on March 17, 2023, in the subject proceeding. Final Results of Redetermination Pursuant to Ct. Remand, *Linyi Chengen Imp. & Exp. Co. v. United States*, Consol. Ct. No. 18-00002, Slip Op. 22-150 (CIT Dec. 21, 2022) (Mar. 17, 2023), ECF No. 221 ("Fifth Remand Determination"). As explained below, Commerce's remand determination regarding the margin assigned to the Separate Rate Plaintiffs, as well as its determination to exclude certain companies from the antidumping duty order covering hardwood plywood products from the People's Republic of China ("the Order"), is unsupported by substantial evidence and not in accordance with law and is extremely harmful to the Coalition and the domestic industry members who continue to depend on this Order to provide some measure of relief against dumped Chinese imports of hardwood plywood. Accordingly, this Court should remand the Fifth Remand Determination for Commerce to provide a determination with respect to these issues that is supported by the record and in accordance with law.

## II.      BACKGROUND

The case at hand arises from an antidumping duty investigation into hardwood plywood from China. *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Hardwood Plywood Products from the People's Republic of China*, 82 Fed. Reg. 53,460 (Dep't Commerce Nov. 16, 2017) (final deter. of sales at less than fair value, and final affirm. deter. of critical circumstances, in part), P.R. 871. The Court has five times remanded the original results with instructions for Commerce to reconsider certain aspects of its final determination involving the margins calculated for the mandatory respondents and assigned to the non-selected separate rate

companies in the proceeding. In Commerce's second remand redetermination, at the direction of

the Court and under respectful protest, Commerce adjusted the margin calculated for mandatory

respondent Linyi Chengen Import and Export Co., Ltd. ("Chengen"). *See Linyi Chengen Imp. &*

*Exp. Co. v. United States*, 487 F. Supp. 3d 1349, 1353-54 (Ct. Int'l Trade 2020). As a result,

Commerce calculated a zero percent margin for Chengen, thereby removing Chengen from the

Order entirely, and calculated a dumping margin for the separate rate companies by averaging

Chengen's zero percent rate and the China-wide rate applied to the other mandatory respondent,

Shandong Dongfang Bayley Wood Co., Ltd. ("Bayley"). *Id.* at 1357-58. In considering

Commerce's second remand determination, the Court found that the agency's calculation of the

separate rate was not supported by substantial evidence and issued another remand. *Id.* at 1358-

59.

    On remand, Commerce again used "any reasonable method" to calculate the separate rate

companies' margin of 57.36% by applying the simple average of Chengen's zero percent rate with

Bayley's 114.72% adverse facts available rate. Final Results of Redetermination Pursuant to Ct.

Remand, *Linyi Chengen Imp. & Exp. Co. v. United States*, Consol. Ct. No. 18-00002, Slip Op. 20-

183 (CIT Dec. 21, 2020) (Mar. 22, 2021), ECF No. 144 at 38, 47 ("Third Remand Determination").

Commerce explained that relying only on the zero percent margin calculated for Chengen was not

appropriate because it would not be reasonably reflective of the potential dumping of the separate

rate companies. *Id.* at 24-25.

    In reviewing Commerce's third remand determination, the Court sustained "Commerce's

determination that Linyi Chengen's 0% rate would not be representative of the separate rate

respondents' actual dumping margins." *Linyi Chengen Imp. & Exp. Co. v. United States*,

539 F. Supp. 3d 1269, 1277 (Ct. Int'l Trade 2021) ("*Chengen IV*"). However, "{b}ecause

Commerce cited as record evidence only one commercial invoice showing an approximately 20% price difference, the Court conclude{d} that Commerce's 57.36% separate rate assigned to the voluntary, cooperating Separate Rate Plaintiffs is not reasonable and is unsupported by substantial evidence." *Id.* at 1278.

In its fourth remand determination, Commerce continued to calculate the margin for the separate rate companies based on the average of zero percent and 114.72%. *See* Final Results of Redetermination Pursuant to Ct. Remand, *Linyi Chengen Imp. & Exp. Co. v. United States*, Consol. Ct. No. 18-00002, Slip Op. 21-127 (CIT Sept. 24. 2021) (Nov. 10, 2021), ECF No. 206 at 12-13 ("Fourth Remand Determination"). In doing so, Commerce explained that "the record provides no opportunity for Commerce to know or to calculate the actual dumping margins of the Separate Rate Plaintiffs and, thus, it is not possible . . . to determine with certainty whether any particular rate is an accurate estimate of the actual dumping margins of the Separate Rate Plaintiffs." *Id.* at 11 (footnote omitted). Commerce also explained that, other than Chengen's margin, "the only alternative rates in this case are limited to the rates listed in the Petition," which were based on actual price quotes for subject merchandise exported during the period of investigation ("POI") by a company that was a significant exporter and a separate rate recipient in the investigation. *Id.* at 10-11. Further, Commerce highlighted that the record indicated that, while the separate rate companies had potential dumping margins of up to 114.72%, it was reasonable to conclude that their selling behavior was varied and, accordingly, that the rates calculated in the petition "would not reflect this variation in selling behavior . . . ." *Id.* at 12. Thus, because neither the petition rates nor Chengen's rate alone fully reflected the potential dumping of the separate rate companies, Commerce found "that a reasonable method to determine the separate rate is to average the rates determined in this segment of the proceeding . . . ." *Id.* Upon review of this determination, the

Court found that Commerce did not sufficiently support its determination and "failed to review other potentially contradictory evidence on the record . . . ." *Linyi Chengen Imp. & Exp. Co. v. United States*, 609 F. Supp. 3d 1392, 1404 (Ct. Int'l Trade 2022) ("*Chengen V*"). Consequently, the Court remanded again, stating that Commerce "should not submit the same 57.36% rate again" absent "new, substantial evidence in support{,}" but noting that "Commerce might choose to examine whether other evidence on the record supports a lower rate after the applicable rates are averaged." *Id.*

In its draft remand determination, Commerce reversed course, under protest, and assigned Chengen's zero percent margin to the Separate Rate Plaintiffs. Draft Results of Redetermination Pursuant to Court Remand, *Linyi Chengen Imp. & Exp. Co. v. United States*, Consol. Ct. No. 18-00002, Slip Op. 22-150 (CIT Dec. 21, 2022) (Feb. 21, 2023) at 8-10, P.R.R. 1 ("Draft Remand"). In doing so, Commerce did not state that it believed Chengen's margin was representative of the Separate Rate Plaintiffs' dumping, nor did the agency point to any information on the record to support its determination. *Id.* Instead, Commerce stated that it was taking this approach because it was "left with no viable alternative . . . ." *Id.* at 9. In addition, Commerce stated that, in light of the application of a zero percent margin to the Separate Rate Plaintiffs, it "intend{ed} to exclude the companies that requested voluntary respondent status and submitted all questionnaire responses . . . from the *Order*." *Id.* at 10. The only explanation Commerce provided to support this determination was to say that it was acting "consistent with other ruling by the courts . . . ." *Id.*

In response to the draft remand, the Coalition submitted comments explaining that Commerce's determination was not supported by the record or consistent with law and should be modified. *See generally* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Hardwood Plywood*

*Products from the People's Republic of China: Comments on Draft Results of Redetermination* (Mar. 1, 2023) ("Coalition Comments"), P.R.R. 7, C.R.R. 1. First, the Coalition highlighted that the record did not support assigning Chengen's zero percent margin to the Separate Rate Plaintiffs, as Commerce had already explained that Chengen's margin was not reasonably reflective of the Separate Rate Plaintiffs' dumping—a determination that the Court had sustained. *Id.* at 2-6. Further, Commerce pointed to no evidence to support the conclusion that Chengen's margin was reasonably reflective of the Separate Rate Plaintiffs' dumping nor did the agency provide any grounds for departing from its prior conclusion. *Id.* Second, the only basis Commerce provided for relying on Chengen's margin was its claim that it had "no viable alternative . . . ." Draft Remand at 9. However, the Coalition demonstrated that there is other information on the record that allows Commerce to calculate an above *de minimis* rate and identified four separate approaches that constituted reasonable methodologies the agency could use in this highly unusual situation without assigning Chengen's zero percent antidumping margin to the Separate Rate Plaintiffs. Coalition Comments at 6-11 (citing 19 U.S.C. § 1673d(c)(5)(B)). Finally, the Coalition explained that no Separate Rate Plaintiffs should be excluded from the Order, highlighting Commerce's prior reasoning for declining to do so in recognition of the differences between companies that receive a *de minimis* margin through individual examination versus those that are simply assigned a *de minimis* margin. *Id.* at 12-16.

In its final remand determination, Commerce made no changes. *See* Fifth Remand Determination at 9-10. In doing so, Commerce stated that it "agree{d} with the {Coalition} that that the zero percent margin we are assigning to the Separate Rate Plaintiffs under protest for purposes of this final redetermination is not supported by the record, the law, or our practice . . . ." *Id.* at 13. Nonetheless, Commerce continued to assign this margin to the Separate Rate Plaintiffs

based on the assertion that it "is simply the only margin remaining on the record that Commerce has not applied to the Separate Rate Plaintiffs—with all reasonable alternatives having been rejected by the Court." *Id.* With respect to the alternatives proposed by the Coalition, Commerce stated that it "disagree{d} that these methodologies are more appropriate than the 57.36 percent margin . . . ." *Id.* at 15. Finally, while Commerce acknowledged that it had previously provided an analysis as to why it would not exclude from an order those companies that requested voluntary treatment and submitted questionnaire responses, it ignored this reasoning because "that investigation was terminated by the International Trade Commission and did not result in an antidumping duty order" and, therefore, the determination "was never implemented or subject to judicial review." *Id.* at 21. Instead, Commerce continued to exclude certain companies from the Order based on the reasoning that "{l}imiting exclusion to companies that expended more than a minimal effort to demonstrate that they are not dumping is the more reasonable approach than excusing all companies merely requesting voluntary respondent status from the discipline of the *Order*." *Id.*

As discussed below, Commerce's remand determination is unsupported by substantial evidence and is not in accordance with law. Accordingly, the Court should remand this determination for further consideration by the agency.

## III.   COMMERCE'S APPLICATION OF CHENGEN'S MARGIN TO THE SEPARATE RATE PLAINTIFFS IS CONTRARY TO THE RECORD AND THIS COURT'S PRIOR OPINIONS

In its most recent remand determination, Commerce reiterated its prior determination— which has been sustained by this Court—that "Chengen's margin is not representative of the Separate Rate Plaintiffs' dumping . . . ." Fifth Remand Determination at 10. Commerce also stated that it "agree{d} with the {Coalition} that the zero percent margin we are assigning to the Separate

Rate Plaintiffs under protest for purposes of this final redetermination is not supported by the record, the law, or our practice . . . ." *Id.* at 13. Nonetheless, Commerce ultimately assigned Chengen's margin to the Separate Rate Plaintiffs based on its claim that, in light of the Court "advis{ing} Commerce not to submit the 57.36 percent rate without new, substantial evidence in support," the agency was "left with no viable alternative . . . ." *Id.* at 9-10. Commerce's determination is devoid of any factual support or logical reasoning and ignores both the record evidence and the Court's prior determinations. As such, Commerce's application of Chengen's zero percent margin to the Separate Rate Plaintiffs is unsupported by substantial evidence and is not in accordance with law, and it should not be affirmed.

This stand-off between the Court and Commerce has now become extremely harmful to the Coalition and the domestic industry members who continue to depend on this Order to provide some measure of relief against unfairly traded Chinese imports of hardwood plywood.  Assigning a zero percent margin to the Separate Rate Plaintiffs will seriously undermine and potentially negate the Coalition's years of work trying to address dumped Chinese hardwood plywood, as intended by the U.S. trade laws.

To start, Commerce's own remand results contradict its earlier and important remand findings – as well as the findings of this Court.  In its Third Remand Determination, Commerce provided a detailed analysis as to why relying only on the zero percent margin calculated for Chengen was not appropriate, as Chengen's margin would not be reasonably reflective of the potential dumping of the separate rate companies. Third Remand Determination at 22-25. In reviewing this determination, the Court sustained "Commerce's determination that Linyi Chengen's 0% rate ***would not be representative of the separate rate respondents' actual dumping margins***." *Chengen IV*, 539 F. Supp. 3d at 1277 (emphasis added). This was based on

Commerce's analysis of "economic evidence on the record showing differences between Linyi Chengen's and the Separate Rate Plaintiffs' selling and cost structure and pricing during the period of investigation." *Id.* Nothing in Commerce's Fifth Remand Determination detracts from or otherwise undermines the agency's prior findings. Fifth Remand Determination at 9-10. Indeed, Commerce reaffirmed its conclusion that Chengen's margin is not representative of the Separate Rate Plaintiffs' dumping. *Id.* at 10, 16. As Commerce has pointed to nothing on the record to support its assignment of Chengen's margin to the Separate Rate Plaintiffs, its conclusion to do so cannot be considered supported by substantial evidence.

Commerce's conclusion that it had "no viable alternatives" is likewise unsupported. *See id.* at 10. As Commerce acknowledges, the Coalition identified multiple other methodologies that could be used by the agency to determine a margin for the Separate Rate Plaintiffs. *Id.* at 15. But in rejecting these methodologies, Commerce claimed that they do not constitute "viable alternatives" without actually considering whether they are viable. *See id.* at 15-16. Instead, Commerce focused on its belief that these approaches are inferior to the agency's preferred approach. *Id.* This does not support Commerce's rejection of all of these methodologies in favor of a zero percent margin, which both Commerce and the Court agree is unrepresentative.

Pursuant to 19 U.S.C. § 1673d, where the margins calculated for all individually investigated companies are *de minimis* or based entirely on facts available, Commerce "may use *any reasonable method* to establish" the margin for non-individually examined companies. 19 U.S.C. § 1673d(c)(5)(B) (emphasis added). However, instead of considering this statutory directive, Commerce incorrectly framed the issue as whether the Coalition's proposals are more appropriate than the 57.36 percent previously applied by the agency. Fifth Remand Determination at 15-16. But the Coalition did not argue that its proposals were more appropriate than Commerce's preferred

approach nor did the Coalition need to make this demonstration. Instead, the Coalition demonstrated that Commerce's determination was in error because there are other usable rates on the record that are supported by the record and comply with the statute's instruction. While these alternatives are not perfect, they are supported by the record in this unusual situation. Thus, Commerce's decision after years of litigation to apply a zero percent margin as the only "viable alternative" was unsupported. Coalition Comments at 2-8.

Indeed, whether the alternatives proposed by the Coalition are more reasonable than the 57.36 percent margin is entirely irrelevant because Commerce did not apply the 57.36 percent margin to the Separate Rate Plaintiffs in its remand determination. By focusing on whether these methodologies are preferable to the 57.36 percent margin, Commerce fails to address the actual question of whether these methodologies constitute "reasonable methods" such that they are viable alternatives for the agency to rely upon. Commerce provided only cursory statements as to why it believes these alternatives are less preferable than the 57.36 percent margin, but this does not equate to a finding—much less support for the conclusion—that these approaches are not reasonable methods. Fifth Remand Determination at 15-16. As Commerce has failed to evaluate these alternatives within the context of the actual question before it, there is no rational connection between the facts found (*i.e.*, the Coalition's methodologies are less preferable than the 57.36 percent) and the choice made (*i.e.*, assigning Chengen's zero percent margin).

The fallacy of Commerce's rejection of the Coalition's proposals is underscored by its discussion of "Option 4." *See id.* Specifically, Commerce rejects this proposal, which relies in part on Chengen's data, based on the agency's determination that "Chengen's selling behavior is not reflective of the Separate Rate Plaintiffs' potential selling behavior, and, thus, not reflective of their estimated dumping during the POI . . . ." *Id.* at 15. Yet, Commerce ultimately relied on Chengen's

data alone to assign a margin to the Separate Rate Plaintiffs. In other words, Commerce rejected this

option because it relied in part on Chengen's data despite the fact that it ultimately applied a margin

based solely on Chengen's data. Such a determination is not reasonable and is not supported by

evidence. *Cf. U.S. Steel Corp. v. United States*, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336

(2013) ("To be in accordance with law, {an agency} decision must not be arbitrary and capricious

. . . and must be supported by substantial evidence and reasoned explanations.") (citing *Motor*

*Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983);

*SKF USA Inc. v. United States*, 630 F.3d 1365, 1373-74 (Fed. Cir. 2011)). As such, Commerce's

assignment of Chengen's zero percent margin to the Separate Rate Plaintiff—an action the agency

agrees "is not supported by the record, the law, or {its} practice"—based on its conclusion that it

has no other alternative is not supported by the record and is not in accordance with law. Fifth

Remand Determination at 13.

Finally, although Commerce made its determination "under protest," it still must provide

a reasoned and supported determination. *See Fuyao Glass Indus. Grp. Co. v. United States*, 30 CIT

165, 169 (2006) (remanding in part because "{t}he 'under protest' language is simply not a

sufficient explanation of Commerce's reason{ing} for recalculating plaintiffs' normal value").

This is underscored by the unique facts of this case. First, as noted above, this Court has already

affirmed Commerce's conclusion that Chengen's zero percent margin is unrepresentative of the

Separate Rate Plaintiffs' dumping. Second, this is not a proceeding where Commerce is faced with

only two options, one of which the Court has found to be unsupported, or where the Court has

otherwise directed a particular outcome. *Cf. Meridian Prods., LLC v. United States*, 890 F.3d 1272,

1276 n.3 (Fed. Cir. 2018) ("In general, Commerce will reach a remand determination under protest

under circumstances where the CIT remands with instructions that dictate a certain outcome that

is contrary to how Commerce would otherwise find."). The Court did not indicate or suggest that assigning Chengen's zero percent margin was Commerce's only option. To the contrary, the Court expressly recognized that Commerce "might choose to examine whether other evidence on the record supports a lower rate after the applicable rates are averaged." *Chengen V*, 609 F. Supp. 3d at 1404. Indeed, the Court appeared to encourage Commerce to avoid the very result that it delivered – a zero percent margin.  As discussed above, the Coalition provided four separate calculations, based on the record, of margins other than zero percent or 57.36 percent. Third, and relatedly, Commerce appears to have based its determination on the assumption that the Court has rejected "all reasonable alternatives." Fifth Remand Determination at 13. This is incorrect. The only "alternative" to the zero percent margin the Court has considered is the 57.36 percent that Commerce previously proposed. The Court has not found that there are no other viable approaches and instead recognized that the agency might consider other margins. *See Chengen V*, 609 F. Supp. 3d at 1404. Commerce's determination should not stand if it is based on an incorrect understanding of the Court's determination. *See Deacero S.A.P.I de CV v. United States*, Ct. No. 12-00345, slip op. 14-99 at 6 (Ct. Int'l Trade Aug. 28, 2014) ("Although Commerce ultimately reached a supportable result in its *Remand Results,* remand is nonetheless necessary because Commerce arrived at that result by misinterpreting *Deacero I*."). Consequently, Commerce's assignment of Chengen's zero percent margin to the Separate Rate Plaintiffs is unsupported by the record and is not in accordance with law.

## IV.     THE EXCLUSION OF CERTAIN COMPANIES THAT REQUESTED VOLUNTARY RESPONDENT TREATMENT IS UNSUPPORTED BY THE RECORD AND IS NOT IN ACCORDANCE WITH LAW

By assigning Chengen's zero percent margin to the Separate Rate Plaintiffs, in its remand determination Commerce also excluded two additional companies from the Order. Fifth Remand

Determination at 10. Specifically, Commerce excluded Zhejiang Dehua TB Import & Export Co., Ltd. ("Dehua TB") and Xuzhou Jiangyang Wood Industries Co., Ltd. ("Jiangyang Wood") as the only two companies "that requested voluntary respondent status and submitted all questionnaire responses . . . ." *Id.* Commerce's exclusion of Dehua TB and Jiangyang Wood from the Order is unsupported by substantial evidence and is otherwise not in accordance with law and again would cause serious harm to the Order that has existed for years in this case. As such, the Court should remand this issue to Commerce for further consideration.

In its draft remand determination, the only explanation Commerce provided for its decision to exclude Dehua TB and Jiangyang Wood was that it was "consistent with other rulings by the courts . . . ." Draft Remand at 10. In support, Commerce cited a single case, *Changzhou Hawd Flooring Co. v. United States*, 947 F.3d 781 (Fed. Cir. 2020). *Id.* However, as the Coalition explained in detail, *Changzhou Hawd* does not require the exclusion of companies requesting voluntary treatment and expressly left the door open for Commerce to explain why it would be appropriate to include such companies in an order. Coalition Comments at 12-13. Moreover, the Coalition highlighted that Commerce subsequently did just that and provided a detailed analysis as to why it is appropriate to include companies that request voluntary treatment (including those that submitted questionnaire responses) in an order regardless of whether they are assigned a *de minimis* margin. *Id.* at 14-16 (citing Issues and Decision Memorandum accompanying *Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam*, 86 Fed. Reg. 28,559 (Dep't Commerce May 27, 2021) (final deter. of sales at less than fair value) at 14-24 ("*PVLT Tires from Vietnam IDM*")).

Notably, in *Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam ("PVLT Tires from Vietnam")*, Commerce had recognized the difference between

companies that receive a *de minimis* margin based on individual examination and those that have been assigned a *de minimis* margin but are not individually examined and highlighted that that exclusion from an order is considered "*an extraordinary measure* and one that should only be available in limited circumstances to companies that have been subject to individual investigation and all that entails . . . ." *PVLT Tires from Vietnam IDM* at 17-24 (emphasis added). Commerce also explained that it found "no meaningful difference between" separate rate companies that requested voluntary treatment and those that did not, as none of the entities had undergone individual examination or received individual *de minimis* margins and underscored that "the fact that would-be voluntary respondents submit information in response to the initial questionnaire issued at the outset of an investigation does not make these respondents more like the individually-investigated mandatory respondents than it makes them like the other non-individually-investigated separate rate respondents{,}" noting that in many cases the actual behavior of voluntary respondents differs from that of mandatory respondents. *Id.* at 19, 22-23. Consequently, Commerce found that it would be "inappropriate to extend any exclusion based on the actual behavior of individually-investigated respondents to respondents that have not been subject to the same scrutiny of an individual investigation and all that entails." *Id.* at 24.

Notwithstanding the limitation of *Changzhou Hawd* and its detailed analysis in *PVLT Tires from Vietnam*, Commerce determined to exclude Dehua TB and Jiangyang Wood from the Order. *See* Fifth Remand Determination at 18-21. In doing so, Commerce agreed that *Changzhou Hawd* "does not compel Commerce to exclude all companies that requested voluntary status . . . ." *Id.* at 18. However, Commerce excluded Dehua TB and Jiangyang Wood because "there is a significant difference between those companies that merely submit a brief statement requesting to be selected as a voluntary respondent and those companies that provide complete questionnaire responses by

the deadlines established for the mandatory respondents . . . ." *Id.* at 20. Commerce then concluded that "{l}imiting exclusion to companies that expended more than a minimal effort to demonstrate that they are not dumping is the more reasonable approach than excusing all companies merely requesting voluntary respondent status from the discipline of the *Order*." *Id.* at 21.

Commerce's determination finds no support in the record and fails to address the actual issue at hand. In particular, Commerce's analysis is focused on a comparison of companies that requested voluntary treatment only and those that also submitted initial questionnaire responses. *Id.* at 20-21. But this comparison does not explain why it is appropriate to exclude from the Order companies that requested voluntary treatment and submitted initial responses. In other words, while it may be true that a company submitting a full questionnaire response put forth more effort than a company that only submitted a request for voluntary respondent status, Commerce fails to explain why this additional effort justifies the extraordinary measure of exclusion for those companies that submitted responses. As a result, there is no rational connection between the facts found and the choice made.

The shortcomings in Commerce's determination are highlighted by its analysis in *PVLT Tires from Vietnam*.[1] For example, in that case, Commerce explained that

> in a number of cases, Commerce has found that the actual behavior of voluntary respondents accepted for individual examination has not been similar to the initially-selected companies in any particular investigation or review. For example, mandatory respondents have had rates higher or lower than voluntary respondents selected for examination. There have been various situations where individually-examined mandatory respondents and voluntary respondents have not had similar or the same trading practices, further reinforcing that any respondent is unique in

---

[1]     While Commerce disregarded its analysis in *PVLT Tires from Vietnam* because the determination was not implemented in light of a negative determination from the U.S. International Trade Commission, Fifth Remand Determination at 21, this case is still instructive in that it demonstrates the detailed and thoughtful analysis Commerce previously undertook when examining this issue.  Not only does this highlight the lack of analysis undertaken by Commerce here, but, as discussed herein, the reasoning in *PVLT Tires from Vietnam* applies equally here. Thus, the reasoning in *PVLT Tires from Vietnam* and Commerce's failure to address it in any substantive manner underscore the failures in the agency's analysis.

> its reasons for seeking individual examination as well as its individual business situation and information. The evidence from numerous cases over the years indicates that there is often little-to-no similarity between the behavior of the individually-examined companies and those voluntary respondents that submit extensive information in proceedings before the agency.

*PVLT Tires from Vietnam IDM* at 23 (footnotes omitted). These findings apply equally here. Yet, Commerce has pointed to nothing to suggest that the filing of an initial questionnaire response is indicative of the fact that a company is similar to an individually examined company or that a company is not dumping.[2]

Similarly, in *PVLT Tires from Vietnam*, Commerce reiterated its "longstanding policy" of only excluding companies that are individually examined and emphasized that no separate rate companies—regardless of whether they request voluntary status—have been individually examined or undergone all that individual examination entails. *PVLT Tires from Vietnam IDM* at 16-17. Commerce also highlighted the fact that allowing companies requesting voluntary status to be excluded from an order "create{s} a perverse incentive for respondents to submit voluntary responses because of the possibility for an exclusion based on another individually-investigated respondent's fair-trading practices." *Id.* at 20. Notably, Commerce recognized that this was true even for companies that submitted initial questionnaire responses:

---

[2]     The Coalition notes Commerce's presumption that the filing of a full questionnaire response by a company suggests an "effort to demonstrate that {it is} not dumping . . . ." Fifth Remand Determination at 21. But there are no grounds to conclude that a company requesting voluntary treatment and submitting a questionnaire is doing so because believes it can demonstrate that it is not dumping. Indeed, a company requesting voluntary respondent status and submitting a full questionnaire response may very well know that it is dumping, but be concerned that the mandatory respondents are dumping to a greater extent and/or may fail to full comply with Commerce. Moreover, whether a company believes it may be able to demonstrate that it is not dumping does mean that the company is not actually dumping. The only means for Commerce to determine whether a company is dumping is to conduct an individual examination of that company, including all that full individual examination entails. *See PVLT Tires from Vietnam IDM* at 17. Regardless, as Commerce did not provide any support or explain the basis for its presumption, it is not supported by the record.

> Respondents may take this step (which only requires an initial questionnaire response, that may or may not be deficient), with the hope that they may never be selected as voluntary respondents because of the undue burden on the agency to select a voluntary respondent. However, the difference between a would-be voluntary respondent and mandatory respondent subject to individual examination in terms of time, resources, and scrutiny by Commerce is significant.

*Id.* Again, this reasoning applies equally here. Commerce's conclusion that a company submitting a questionnaire response does more than a company that submits only a request for voluntary treatment fails to address any of these concerns or to provide any reasoned basis for excluding such companies from an order.

Finally, Commerce's determination to exclude Dehua TB and Jiangyang Wood here is particularly concerning in light of its finding—which it reaffirmed in its remand determination—that Chengen's margin is unrepresentative of the Separate Rate Plaintiffs' dumping. *See* Fifth Remand Determination at 16. In other words, notwithstanding the fact that Commerce specifically determined here that the individually examined company is not representative of the Separate Rate Plaintiffs, the agency has still taken the "extraordinary measure" of excluding Dehua TB and Jiangyang Wood from the Order entirely based on the assignment of Chengen's rate to these companies. In short, this determination would open substantial holes in the Order that can never be closed. There is no support in the record for such a determination or result nor is there any rational connection between the facts found and the choices made. As such, the Court should remand Commerce's determination to exclude Dehua TB and Jiangyang Wood from the Order.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Coalition respectfully requests that the Court find that Commerce's calculation of the separate rate companies' margin and the exclusion of Dehua TB and Jiangyang Wood from the Order is unsupported by substantial evidence and is not otherwise in accordance with law, and remand Commerce's remand redetermination for further consideration by the agency.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Jeffrey O. Frank, Esq.
Stephanie M. Bell, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Coalition for Fair Trade in Hardwood Plywood*

April 28, 2023

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this submission complies with the word limitation requirement. The word count for the Defendant-Intervenor the Coalition for Fair Trade in Hardwood Plywood's Comments in Opposition to Commerce's Fifth Remand Redetermination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 5,290 words.

<u>*/s/ Timothy C. Brightbill*</u>
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

<u>Coalition for Fair Trade in Hardwood Plywood</u>
(Representative Of)

<u>April 28, 2023</u>
(Date)