## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD.,<br><br>     Plaintiff,<br><br>  and<br><br>SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,*<br><br>     Consolidated Plaintiffs,<br><br>  v.<br><br>UNITED STATES,<br><br>     Defendant,<br>  and<br><br>THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>     Defendant-Intervenor. | Consol. Court No. 18-00002 |

### DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
SAVANNAH ROSE MAXWELL
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
 Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7568
Email: Sosun.Bae@usdoj.gov

May 26, 2023

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ................................................................................................................. 2

    I.    Administrative Determination Under Review ...................................................... 2

    II.   Prior Remand Redeterminations ......................................................................... 2

    III.  The Court's Fifth Remand Order And Commerce's Fifth Remand
           Redetermination ................................................................................................. 5

ARGUMENT ...................................................................................................................... 6

    I.    Standard Of Review ........................................................................................... 6

    II.   Commerce's Calculation Of The Separate Rate Was In Accordance With The
           Court's Remand Order ....................................................................................... 6

    III.  Commerce Correctly Proposed To Exclude Certain Companies From The
           Order ..................................................................................................................10

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Changzhou Hawd Flooring Co. v. United States,*
  947 F.3d 781 (Fed. Cir. 2020) ...................................................................... 10, 11

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ............................................................................................. 6

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ............................................................................................. 6

*Linyi Chengen Import and Export Co. v. United States,*
  609 F. Supp.3d 1392 (Ct. Int'l Trade 2022) .............................................. 1, 5, 7

*Linyi Chengen Import and Export Co., Ltd. v. United States,*
  391 F. Supp. 1283 (Ct. Int'l Trade 2019) ........................................................... 2

*Linyi Chengen Import and Export Co., Ltd. v. United States,*
  433 F. Supp. 3d 1278 (Ct. Int'l Trade 2020) ..................................................... 3

*Linyi Chengen Import and Export Co., Ltd. v. United States,*
  487 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) ..................................................... 3

*Linyi Chengen Import and Export Co., Ltd. v. United States,*
  539 F. Supp. 3d, 1269 (Ct. Int'l Trade 2021) .................................................... 4

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ..................................................... 6

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) .................................................................................. 6

19 U.S.C. § 1673d(c)(5)(B) ...................................................................................... 3

19 U.S.C. § 1677f-1(c)(2) ....................................................................................... 12

19 U.S.C. § 1677m(a) ....................................................................................... 12, 13

## REGULATIONS

19 CFR 351.204(d) ....................................................................................................12

## FEDERAL REGISTER NOTICES

*Certain Hardwood Plywood Products from the People's Republic of China*,
    82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) ........................................................2

*Certain Hardwood Plywood Products from the People's Republic of China*,
    83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) .............................................................2

*Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam*,
    86 Fed. Reg. 28,559 (Dep't of Commerce May 27, 2021).....................................................11

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., <br>                 Plaintiff, <br><br>    and <br><br> SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,* <br><br>            Consolidated Plaintiffs, <br><br>    v. <br><br> UNITED STATES, <br><br>          Defendant, <br>    and <br><br> THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br>          Defendant-Intervenor. | Consol. Court No. 18-00002 |

## **DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by consolidated plaintiffs Xuzhou Longyuan Wood Industry Co., Ltd. and Linyi Sanfortune Wood Co., Ltd. (Xuzhou Longyuan and Linyi Sanfortune), and defendant-intervenor, the Coalition For Fair Trade of Hardwood Plywood (Coalition).  *See* Xuzhou Longyuan and Linyi Sanfortune Cmts., April 28, 2023, ECF No. 223; Coalition Cmts., April 28, 2023, ECF No. 224.  The comments concern the Department of Commerce's fifth remand redetermination, issued pursuant to this Court's opinion and order in *Linyi Chengen Import and Export Co. v. United States*, 609 F.Supp.3d 1392 (Ct. Int'l Trade 2022) (Fifth Remand Order), ECF No. 220.  *See*

Fifth Remand Redetermination, ECF No. 221. The Court should sustain the remand redetermination and enter final judgment for the United States because Commerce has complied with the Court's Fifth Remand Order.

## BACKGROUND

### I.     Administrative Determination Under Review

In November 2017, Commerce issued its final affirmative determination in the antidumping duty investigation of certain hardwood plywood products from the People's Republic of China. *See Certain Hardwood Plywood Products from the People's Republic of China* 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (final determination), P.R. 882 and the accompanying Issues and Decision Memorandum (IDM), P.R. 871. In January 2018, Commerce published the amended final determination and order. *See Certain Hardwood Plywood Products from the People's Republic of China,* 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) (amended final determination and order), P.R. 894.

### II.    Prior Remand Redeterminations

Following briefing on challenges brought by Linyi Chengen Import & Export Company (Chengen), and several companies subject to Commerce's separate rate calculations, the Court remanded Commerce's final determination to reconsider certain findings regarding Chengen's reporting of its log consumption. *See Linyi Chengen Import and Export Co., Ltd. v. United States,* 391 F. Supp. 1283, 1294, 1301 (Ct. Int'l Trade 2019) (*Linyi I*). The Court also directed that, if Commerce were to change Chengen's margin on remand, Commerce should reconsider the rates applied to the separate rate companies. *Id.* at 1301.

Under respectful protest, Commerce reconsidered the record evidence and revised Chengen's margin calculation by calculating normal value using Chengen's log factors of

production.  *See* Second Remand Redetermination at 3, ECF No. 113.  Consistent with the

Court's remand order, Commerce recalculated the rate assigned to the non-individually

examined separate rate companies by averaging Chengen's zero percent rate with the 114.72

percent rate assigned to the China-wide entity, resulting in a rate of 57.36 percent.  *See Linyi*

*Chengen Import and Export Co., Ltd. v. United States,* 433 F. Supp. 3d 1278, 1285 (Ct. Int'l

Trade 2020) (*Linyi II*); Second Remand Redetermination at 4.

      The Court sustained Commerce's revised dumping margin for Chengen as reasonable and

supported by substantial evidence.  *See Linyi Chengen Import and Export Co., Ltd. v. United*

*States*, 487 F. Supp. 3d 1349, 1359 (Ct. Int'l Trade 2020) (*Linyi III*).  However, the Court

ordered Commerce to either provide more explanation supporting its departure from the expected

method in calculating the rate applied to separate rate respondents, or to change its

determination.  *Id.* at 1358.  Specifically, the Court held that Commerce did not sufficiently

justify its departure from the "expected method" set forth in 19 U.S.C. § 1673d(c)(5)(B) because

"the margins in the Petition are 'untethered' to the actual dumping margins of the Separate Rate

Plaintiffs."  *Id.*  The Court further found that Commerce must support its departure from the

expected method with substantial evidence demonstrating that Chengen's zero percent dumping

margin rate would not be reasonably reflective of the separate rate plaintiffs' potential dumping

margins.

      On remand, Commerce provided additional explanation supporting its conclusions and

continued to calculate an estimated dumping margin for the non-examined companies receiving a

separate rate by averaging Chengen's zero percent rate with the China-wide rate.  *See* Third

Remand Redetermination at 5, ECF No. 143.  Commerce examined the relevant economic

evidence on the record, including an invoice from a commercial transaction of the separate rate

applicant exporter which had formed the basis for the price quotes in the petition, and commercial invoices submitted by each of the separate rate plaintiffs for a sale of subject merchandise during the period of investigation. *Id.* at 17 and 21.

Commerce determined that the record evidence supported its conclusion that the separate rate companies' potential dumping differed from that of Chengen's, and therefore Chengen's rate was not reflective of the separate rate companies' potential dumping activities. Accordingly, Commerce calculated the rate assigned to the non-individually examined separate rate companies by averaging Chengen's zero percent rate with the 114.72 percent rate assigned to the China-wide entity, resulting in a rate of 57.36 percent. Third Remand Redetermination at 5.

In its next remand order, the Court sustained Commerce's departure from the expected method, holding that Commerce had reasonably supported its determination that Chengen's zero percent dumping margin would not be representative of the separate rate companies' potential dumping margins. *See Linyi Chengen Import and Export Co., Ltd. v. United States,* 539 F. Supp. 3d, 1269, 1275 (Ct. Int'l Trade 2021) (*Linyi IV*). However, the Court held that Commerce's selection of the all-others separate rate of 57.36 percent was not supported by substantial evidence. *Id.* at 1277. The Court ordered Commerce to reconsider the selection of the separate rate, noting that Commerce is required to assign the most accurate dumping margin possible. *Id.* at 1278.

In its fourth remand redetermination, Commerce further considered the information on the record, but determined to maintain the 57.36 percent rate for non-examined separate rate respondents. *See* Fourth Remand Redetermination at 30, ECF No. 205.

**III.** **The Court's Fifth Remand Order And Commerce's Fifth Remand Redetermination**

In its fifth remand order, the Court again rejected Commerce's analysis, holding that Commerce had selectively analyzed certain data but had ignored record evidence that the petition separate rate applicant (SRA) exporter sold plywood at prices higher than those upon which the petition rates are based, and that Commerce had failed to review other potentially contradictory evidence on the record. *See Linyi Chengen Import and Export Co. v. United States*, 609 F.Supp.3d 1392 (Ct. Int'l Trade 2022) (*Linyi V*). Specifically, the Court held that Commerce did not consider the following: (1) evidence indicating that separate rate plaintiff Jiangyang Wood had higher weighted-average sale prices than Chengen, (2) Bayley's full U.S. sales database, and (3) additional commercial invoices of companies found to be eligible for a separate rate. *Id.* at 1404. Accordingly, the Court remanded for further consideration, and explicitly advised Commerce to *not* determine the same rate of 57.36 percent for the non-examined separate rate companies again. *Id.* at 1404.

On February 21, 2023, Commerce released its draft results of its fifth redetermination, examining the alternative rates on the record, and assigning Chengen's zero percent rate as the rate for non-examined separate rate companies. Draft Results of Remand Redetermination, P.R.R. 1. In doing so, Commerce stated that no rates other than the 57.36 percent rate and the zero percent rate were supported by the record, and therefore, in light of the Court's warning, Commerce was left with no viable alternative than the zero percent rate. In addition, Commerce proposed to exclude from the order the companies that had requested voluntary respondent status and submitted all questionnaire responses: Jiangyang Wood and Dehua TB.

After consideration of the parties' comments, Commerce issued its fifth remand redetermination. Fifth Remand Redetermination, ECF No. 221. Consistent with its draft

redetermination, and under respectful protest, Commerce continued to assign the separate rate plaintiffs' Chengen's zero percent margin, and likewise continued to propose excluding the companies that had requested voluntary respondent status and submitted all questionnaire responses—Jiangyang Wood and Dehua TB—from the order.

## ARGUMENT

### I. Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States,* 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966) (citations omitted).

### II. Commerce's Calculation Of The Separate Rate Was In Accordance With The Court's Remand Order

As explained above, while Commerce and the Court agree that Chengen's zero percent rate is not representative of the potential dumping activities of the non-examined separate rate companies, the Court again remanded Commerce's assignment of a 57.36 percent margin and cautioned Commerce against assigning that same margin again. Accordingly, Commerce was left with little choice but to use Chengen's zero percent rate as the rate for non-examined separate rate companies. This determination complies with the Court's remand order and should be sustained.

In its fourth remand redetermination, Commerce explained at length the options available to Commerce in calculating the separate rate in this proceeding, pursuant to the statute and given the limited rates on the record of this proceeding. *See* Fourth Remand Redetermination at 10-12. Specifically, Commerce noted that the record contained three different rates: two petition rates of 104.06 percent and 114.72 percent, and Chengen's calculated rate of zero percent. *Id.* Commerce also explained why it did not find that an average of the petition rates, which would result in a rate of 109.39 percent, was appropriate based on the record. *Id*. Commerce then described why its proposed methodology of averaging the highest petition rate of 114.72 percent with Chengen's zero percent rate to calculate a rate of 57.63 percent was reasonable. *Id*. at 12-14.

The Court rejected Commerce's reasoning, holding that the rate was unreasonable as applied. Specifically, the Court concluded that "Commerce's determination to assign to fully cooperating separate rate respondents an all-others separate rate margin almost 60 times higher than the only investigated respondent, and half of the AFA rate for uncooperative respondents, is unreasonable as applied because it is unfair and unduly punitive." *Linyi V*, 609 F. Supp. 3d at 1404. The Court also found that Commerce's determination unsupported by substantial evidence and advised Commerce not to submit the same rate it had calculated in previous remand redeterminations. *Id*.

Accordingly, in its fifth remand redetermination, Commerce explained that, because of the limited rates available on the record, and in light of the Court's order, Chengen's zero percent margin was the only remaining margin on the record available to Commerce. Fifth Remand Redetermination at 13. With the history of this litigation and this Court's warning in mind, Commerce then examined the Coalition's proposed alternative methodologies for calculating a

non-examined separate rate, but did not find those methodologies to be an appropriate alternative; Commerce thus used Chengen's zero percent rate as the non-examined separate rate, even while disagreeing with its representativeness. Fifth Remand Redetermination at 15-16.

In comments opposing the remand redetermination, the Coalition claims that Commerce did not sufficiently engage with its alternative arguments. Coalition Cmts. at 8-9. This contention is belied by the record. Commerce examined each of the Coalition's proposed methodologies and found them flawed. The Coalition provided four alternative margin calculations, the first three of which relied on using weight average unit values (AUVs) reported in the quantity and value submissions from all separate plaintiffs as U.S. price (with various adjustments between each option). *See* Fifth Remand Redetermination at 11-12.

In addressing these proposed methodologies, Commerce stated that it had concerns with a methodology relying on quantity and value submission AUVs as the basis for U.S. prices. *See* Fifth Remand Redetermination at 15. Commerce explained that, in its prior remands, it had carefully considered the record evidence in support of its calculation of the 57.36 percent margin based on comparisons of the petition data and the separate rate applicants' actual selling behavior during the period of investigation, and that it had intentionally compared prices and costs for products that we could identify as identical products due to often significant differences in pricing behaviors from product to product. *See*, *e.g.*, Third Remand Redetermination at 18-19 and 22; Fourth Remand Redetermination at 31-33. Commerce concluded that, although Q&V data provides a global average view of a company's selling behavior, it does so without regard to product mix, which can be significant in some cases. Fifth Remand Redetermination at 15. Thus, Commerce sufficiently explained its concerns with the first three proposed alternative calculations and determined not to rely on them.

Commerce then examined the Coalition's fourth alternative calculation, which proposed relying on product-specific normal values for Chengen and from the petition. *See* Fifth Remand Redetermination at 15-16. For the U.S. price, the Coalition proposed relying on sales documentation provided by the separate rate applicants, and where specific products are identified, matching to product-specific normal values for Chengen and the petition. *Id.* at 12. Where products include some matching details but not all, the Coalition proposed using an average of the matching models for normal value from Chengen and the petition. *See id.* at 11-12; *see also* Coalition's Cmts. on Draft Remand at 10-11, P.R.R.7.

In analyzing this fourth proposed methodology, Commerce acknowledged that this option remedied some of Commerce's concerns regarding specificity by attempting to match similar products to the corresponding normal values, but explained this methodology also suffered from certain flaws that Commerce had addressed in earlier redeterminations in this proceeding. *See* Fifth Remand Redetermination at 15. In demonstrating that Chengen's selling behavior is not reflective of the separate rate plaintiffs' potential dumping during the period of investigation, Commerce pointed to known differences between Chengen and the separate rate plaintiffs. *Id.* Specifically, in its third remand redetermination, Commerce identified factors distinguishing Chengen and the separate rate plaintiffs and explained that these differences introduced a completely different cost structure from that of a company such as Chengen. *See* Fifth Remand Redetermination at 15-16 (citing Third Remand Redetermination at 19-20, 22-24). Commerce concluded that these factors made any comparison between the selling price of such companies and normal value based on Chengen's data unreliable and, likely, unrepresentative of the separate rate plaintiffs' potential dumping. *See* Fifth Remand Redetermination at 15-16. Accordingly, Commerce found this option deficient as well.

Because Commerce examined but reasonably declined to apply any of the Coalition's proposed alternative methodologies, the Court should sustain Commerce's calculation of the separate rate.

## III.    Commerce Correctly Proposed To Exclude Certain Companies from the Order

As a result of applying a zero percent rate to the separate rate plaintiffs, Commerce stated in its fifth remand redetermination that it intended to exclude the companies that had requested voluntary respondent status and submitted all questionnaire responses—Jiangyang Wood and Dehua TB—from the order. *See* Fifth Remand Redetermination at 21. The Coalition argues that this exclusion is unwarranted and not supported by the record. Coalition Cmts. at 11-16. Xuzhou Longyuan and Linyi Sanfortune, on the other hand, argue that Commerce lawfully proposed to exclude Jiangyang Wood and Dehua TB, but that Xuzhou Longyuan and Linyi Sanfortune should likewise be excluded from the order. Xuzhou Longyuan and Linyi Sanfortune Cmts. at 1-4. Both of these arguments lack merit, as Commerce's determination is lawful and supported by substantial evidence.

In *Changzhou Hawd Flooring Co. v. United States*, 947 F.3d 781 (Fed. Cir. 2020), the Court of Appeals for the Federal Circuit held that nothing in the statutory scheme requires Commerce to exclude separate rate firms not individually investigated that are assigned a rate of zero percent. *See id.* at 790-91. In affirming Commerce's decision not to exclude non-individually examined separate rate companies as a reasonable interpretation of the statute, the Federal Circuit explained:

> A calculated "separate rate" is not itself a "weighted average dumping margin" under the statutory definition; it is not determined by the dumping margins or export prices for the "specific exporter or producer" to which that rate is applied. Even if we assume that it is clear that individually reviewed firms with *de minimis* dumping margins must be excluded from all obligations under an antidumping duty order, the statute does not speak with any clarity

> to conferring the same benefit on non-individually reviewed firms assigned a *de minimis* dumping margin or zero rate.

*Id.* However, with respect to voluntary respondent firms, the Federal Circuit concluded that the statute does not unambiguously require the inclusion of such companies in the order. *Id.* Importantly, the court also caveated its decision, stating that Commerce had not, in that particular proceeding, provided a sufficient rationale for continuing to include the voluntary respondent firms in the order but that:

> {I}t remains open to Commerce in the future, should the issue arise, to address this issue more fully than it has done in this investigation. We do not prejudge the reasonableness of any justification Commerce might yet articulate for deciding to include voluntary-review firms in an antidumping-duty order.

*Id.* at 794.

With this precedent in mind, Commerce determined to exclude the companies that had requested voluntary respondent status and met the requirements for voluntary respondent selection under the statute—Dehua TB and Jiangyang Wood. *See* Fifth Remand Redetermination at 21.

The Coalition cites *PVLT Tires from Vietnam* as support for its argument that Commerce should not exclude these companies. Coalition Cmts. at 12 (citing *Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam*, 86 Fed. Reg. 28,559 (Dep't of Commerce May 27, 2021) (final determination), and accompanying IDM at 14-24 (PVLT Tires from Vietnam) (stating that Commerce would not exclude companies that had requested voluntary respondent status and submitted questionnaire responses)). But the Coalition's reliance on *PVLT Tires from Vietnam* ignores that, here, Commerce specifically explained why it intended to exclude Dehua TB and Jiangyan Wood. And, as Commerce noted in the remand redetermination, while it had previously stated in *PVLT Tires from Vietnam* that it would not

exclude companies that requested voluntary status and submitted all questionnaire responses, that investigation was terminated by the International Trade Commission and did not result in an antidumping duty order. Fifth Remand Redetermination at 21. Therefore, that determination was never implemented or subjected to judicial review. *Id.* The Coalition cites no authority for the proposition that Commerce should be bound by statements it made in a single terminated investigation, particularly given that it explained in the remand redetermination that its decision to exclude companies that had requested voluntary respondent status and provided the necessarily information under 19 U.S.C. §1677m(a) was consistent with *Changzhou Hawd. Id.*

Xuzhou Longyuan and Linyi Sanfortune argue that they should also be excluded from the order because they submitted letters requesting voluntary respondent treatment. *See* Xuzhou Longyuan and Linyi Sanfortune Cmts. at 1-4. But, as Commerce found, these companies only submitted two-page requests to be considered as voluntary respondents, *not* the actual required information under 19 U.S.C. §1677m(a) to be selected as a voluntary respondent; accordingly, Commerce appropriately decided not to exclude them from the order. *See* Fifth Remand Redetermination at 21.

Commerce further explained that, when it lawfully limited examination of respondents in this investigation, it notified parties that, "{i}f a voluntary response is submitted in accordance with {19 U.S.C. §1677m(a)} and 19 CFR 351.204(d)," Commerce would evaluate the circumstances to determine whether it could examine another respondent or respondents in addition to the two mandatory respondents. *See* Memorandum, "Respondent Selection," dated January 9, 2017, at 7-8 (P.R. 148). And, when Commerce limits the number of exporters examined in an investigation pursuant to 19 U.S.C. § 1677f-1(c)(2), 19 U.S.C. §1677m(a) directs it to calculate individual weighted-average dumping margins for companies not initially selected

for individual examination that voluntarily provide the information requested of the mandatory respondents if: (1) *the information is submitted by the due date* specified for exporters or producers initially selected for examination; and (2) the number of such companies that have voluntarily provided such information is not so large that individual examination would be unduly burdensome and inhibit the timely completion of the investigation. *See* Fifth Remand Redetermination at 19-20.

Crucially, the relevant portion of the statute only applies to a party "who submits to the administering authority the information requested from exporters or producers selected for examination." 19 U.S.C. §1677m(a). Commerce thus reasonably found a distinction between companies that simply filed a short letter requesting voluntary respondent status and companies that requested voluntary respondent status and actually provided the full information requested from the exporters and/or producers selected for examination. *See* Fifth Remand Redetermination at 18.

Dehua TB and Jiangyang Wood both requested voluntary respondent status and timely submitted full questionnaire responses, while Xuzhou Longyuan and Linyi Sanfortune merely submitted short requests to be considered voluntary respondents. Fifth Remand Redetermination at 20. Commerce found that, in addition to not complying with the statute, these two-page requests were virtually identical in content and required no commitment or effort on behalf of these companies. *See* Longyuan Letter, "Request for Treatment as Mandatory Respondent or Request for Voluntary Respondent Treatment as an alternative," dated December 9, 2016 (P.R. 44); Sanfortune Letter, "Request for Treatment as Mandatory Respondent or Request for Voluntary Respondent Treatment as an alternative," dated December 9, 2016 (P.R. 43); Fifth Remand Redetermination at 20. In contrast, the companies meeting the statutory requirement for

consideration as voluntary respondents submitted hundreds of pages of questionnaire responses and supporting documentation, as well as sales and factor of production databases. *See*, *e.g.*, Jiangyang Wood Section A Response, dated February 13, 2017 (C.R. 245-247); Section C Response, dated February 28, 2017 (C.R. 289-292); and Section D Response, dated February 28, 2017 (C.R. 239-304).

There is a significant difference between companies that merely submit a brief statement requesting to be selected as a voluntary respondent and companies that timely provide complete questionnaire responses, as required by the statute, such that Commerce has the information before it to potentially select them as voluntary respondents and still complete the investigation without undue delay. *See* Fifth Remand Redetermination at 20-21. Thus, Commerce determined it would not appropriate to exclude them from the order. This determination should be sustained.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/Sosun Bae
SOSUN BAE
Senior Trial Counsel

14

OF COUNSEL:                          Commercial Litigation Branch
                                     Civil Division
SAVANNAH ROSE MAXWELL                United States Department of Justice
Attorney                             P.O. Box 480
Office of the Chief Counsel          Ben Franklin Station
    for Trade Enforcement and Compliance   Washington, D.C. 20044
United States Department of Commerce Tel: (202) 305-7568

May 26, 2023                         Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that the brief, Defendant's Response To Comments On Remand Redetermination, complies with the word-count limitation.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief.  According to the word count, the brief contains 3,713 words.

/s/Sosun Bae

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., ) <br> Plaintiff, ) <br> and ) <br> SHANDONG DONGFANG BAYLEY WOOD CO., LTD., *et al.,* ) <br> Consolidated Plaintiffs, ) <br> v. ) <br> UNITED STATES, ) <br> Defendant, ) <br> and ) <br> THE COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, ) <br> Defendant-Intervenor. ) | Consol. Court No. 18-00002 |

## ORDER

Upon consideration of the remand redetermination, the comments filed by the parties, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand results are sustained in all respects, and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____        _____
      New York, NY                              JUDGE