# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| LINYI CHENGEN IMPORT AND EXPORT CO., LTD., <br><br> Plaintiff, <br> and <br><br> CELTIC CO., LTD. ET AL., <br><br> Consolidated Plaintiffs, <br> v. <br><br> UNITED STATES, <br><br> Defendant, <br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD <br><br> Defendant-Intervenor. | Consol. Ct. 18-00002 |

CONSOLIDATED PLAINTIFFS TARACA PACIFIC, INC., CANUSA WOOD PRODUCTS LTD., CONCANNON CORP. DBA CONCANNON LUMBER COMPANY, FABUWOOD CABINETRY CORPORATION, HOLLAND SOUTHWEST INTERNATIONAL INC., LIBERTY WOODS INTERNATIONAL, INC., NORTHWEST HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS, LLC, AND USPLY LLC COMMENTS IN SUPPORT TO THE FIFTH REMAND REDETERMINATION

Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Ave., NW
Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

May 26, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

STANDARD OF REVIEW ................................................................................................. 2

ARGUMENT....................................................................................................................... 2

I.  COMMERCE'S SEPARATE RATE IS NOW SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW.................................................... 2

II.  COMMERCE SHOULD CONTINUE TO EXCLUDE DEHUA TB AND JIANGYANG WOOD ....................................................................................................... 6

III.  TARACA ET AL. JOIN THE COMMENTS BEING FILED BY OTHER RESPONDENT PARTIES.................................................................................................. 7

CONCLUSION ................................................................................................................... 7

# TABLE OF AUTHORITIES

## Cases

AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 310 F. Supp. 2d 1347 (2004)........... 2

Albemarle Corp. v. United States, 821 F.3d 1345 (Fed. Cir. 2016) ............................................... 3

Changzhou Hawd Flooring Co. v. United States, 947 F.3d 781 (Fed. Cir. 2020) ......................... 6

Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367 (Fed. Cir. 2012)
............................................................................................................................................................. 3

Itochu Bldg. Prods. Co v. United States, Consol. Ct. No. 12-0065, 2018 Ct. Intl. Trade LEXIS
26, *11-12. (Mar. 22, 2018) ........................................................................................................ 5

Linyi Chengen Imp. & Exp. Co. v. United States, 45 CIT _, 539 F. Supp. 3d 1269 (2021) ...... 5, 6

Linyi Chengen Imp. & Exp. Co. v. United States, 46 CIT _, 609 F. Supp. 3d 1392 (2022)
................................................................................................................................................ ..passim

Mueller Comercial De Mexico v. United States, 753 F.3d 1227 (Fed. Cir. 2014) ......................... 3

NMB Sing. Ltd. v. United States, 28 CIT 1252, F. Supp. 2d 1327 (2004) .................................... 2

Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370 (Fed. Cir. 2013) ............. 3

## Statutes

19 U.S.C. § 1516a ........................................................................................................................... 2

19 U.S.C. § 1673d ........................................................................................................................... 2

## Other Authorities

Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam, 86 Fed. Reg.
28,559 (Dep't Commerce May 27, 2021) ..................................................................................... 7

THE URUGUAY ROUND AGREEMENTS ACT, STATEMENT OF ADMINISTRATIVE ACTION, H.R. REP.
No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 ....................................................... 3

## INTRODUCTION AND SUMMARY OF ARGUMENT

In accordance with Rule 56.2(h) of the Rules of the U.S. Court of International Trade, Consolidated Plaintiffs Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC and USPLY LLC (collectively "Taraca et al."), submit these comments in response to the Final Results of Redetermination Pursuant to Court Remand filed by the Department of Commerce ("Commerce") on March 17, 2023.  See Final Results of Redetermination Pursuant to Court Remand (Mar. 17, 2023) (Public Version), ECF No. 222-1 ("Fifth Remand Redetermination").[1]

In its opinion remanding this case to Commerce for a fifth time, the Court held that "Commerce's determination to assign to fully cooperating separate rate respondents an all-others separate rate margin almost 60 times higher than the only investigated respondent, and half of the AFA rate for uncooperative respondents, is unreasonable as applied because it is unfair and unduly punitive." Linyi Chengen Imp. & Exp. Co. v. United States, 46 CIT __, __, 609 F. Supp. 3d 1392, 1403 (2022) ("Linyi Chengen V").  The Court also "conclude{d} that because Commerce selectively analyzed the invoice data while ignoring other potentially contrary record evidence, Commerce's determination is not supported by substantial evidence." Id., 46 CIT at __, 609 F. Supp. 3d. at 1404.  After numerous other attempts, Commerce has, at last, arrived at a separate rate that is in accordance with the statute and reasonable as applied.  The Court should sustain the zero percent rate for the Separate Rate Litigants and exclude Zhejiang Dehua TB Import & Export

---

[1]  All citations to the record evidence are to public record documents.

Co., Ltd. ("Dehua TB") (and its producer combination) and Xuzhou Jiangyang Wood Industries Co., Ltd. ("Jiangyang Wood") from the antidumping order.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order. See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004) (affirming on remand where agency determinations were in accordance with law, supported by substantial evidence and otherwise satisfied the remand order). Any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law. See 19 U.S.C. § 1516a(b)(1)(B); see also, e.g., AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

## ARGUMENT

### I. COMMERCE'S SEPARATE RATE IS NOW SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

Commerce is required by statute to select a reasonable separate rate. See Linyi Chengen V, 46 CIT at __, 609 F. Supp. 3d at 1398 (citing 19 U.S.C. § 1673d(c)(5)(B)). The Tariff Act of 1930, as amended, provides the following directive regarding the determination of the separate rate:

> (B) Exception. If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5)(B). The Statement of Administrative Action ("SAA") authorizes Commerce to deviate from applying the expected method in the statute if it chooses another "reasonable" method where the expected method results in an antidumping margin that is not

feasible or would result in a margin that is not "reasonably reflective of potential dumping margins" for the non-investigated companies. THE URUGUAY ROUND AGREEMENTS ACT, STATEMENT OF ADMINISTRATIVE ACTION, H.R. REP. No. 103-316 at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201. The Federal Circuit has emphasized that in determining the separate rate, "accuracy and fairness must be Commerce's primary objectives in calculating a separate rate for cooperating exporters." Albemarle Corp. v. United States, 821 F.3d 1345, 1354 (Fed. Cir. 2016); see also Mueller Comercial De Mexico v. United States, 753 F.3d 1227, 1235 (Fed. Cir. 2014) ("Commerce must have as its primary objective the calculation of an accurate rate."). "{R}ate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins." Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1380 (Fed. Cir. 2013). Further, the requirement in the statute that the method used to calculate the separate rate "be 'reasonable' imposes a duty on Commerce to select a method appropriate for the circumstances." Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1379 (Fed. Cir. 2012). The paramount requirement is that the chosen methodology be "reasonable."

Commerce has finally met this standard in its remand determination by assigning a zero percent rate to the Separate Rate Litigants. The only calculated rate on the record resulted in a zero percent margin for mandatory respondent Linyi Chengen. Meanwhile, no other evidence on the record produced a reasonable, accurate and fair separate rate in accordance with the statute and court precedent. Commerce's decision to apply a zero percent rate to the Separate Rate Litigants was the only reasonable outcome based on the record.

The Coalition disputes the revised separate rate of zero for several reasons that have already been rejected by the Court. First, the Coalition argues that the record did not support assigning

Linyi Chengen's zero percent margin to the Separate Rate Plaintiffs. See, e.g., Coalition Remand Cmts. at 5, 7. The Coalition claims that the zero percent rate is not appropriate because "the only basis Commerce provided for relying on Chengen's margin was its claim that it had 'no viable alternative.'" Def.-Intervenor Cmts. in Opp. to Commerce's Fifth Remand Redeterm. at 5, 8 (Apr. 28, 2023), ECF No. 224 ("Coalition Remand Cmts."). This statement reflects an inaccurate reading of the record. As discussed at length in the prior remand comments of Taraca et al. and the other respondent parties, the record contained multiple other pieces of evidence that undercut Commerce's prior attempts at assigning a separate rate, including Linyi Chengen's margin calculation and the information in the separate rate applications of numerous other parties. See, e.g., Taraca et al. Comments in Opp'n Fourth Remand Redeterm. at 10 (Dec. 29, 2021), ECF No. 209 ("Taraca Fourth Remand Cmts."). As explained in those earlier comments, Commerce engaged in an in-depth investigation of Linyi Chengen's consumption data, which, together with Linyi Chengen's pricing data, resulted in a zero percent margin. Because Linyi Chengen's prices were similar to many of the Separate Rate Plaintiffs, see Final Results of Redetermination Pursuant to Court Remand at 36 (Nov. 10, 2021) (Public Version), ECF No. 206-1, Commerce could not reasonably conclude that a respondent that received an AFA rate or U.S. producer consumption data from the Petition is more probative of Chinese plywood producers' experience than the experience of mandatory and fully verified respondent Linyi Chengen. The fact that Commerce would not take that information into account does not equate to a conclusion that "the record does not contain alternative data that would result in a lower rate." Fifth Remand Redetermination at 9.

Furthermore, the Court has already held that the incomplete nature of the record cannot be used as a reason to apply a separate rate that is not substantiated by actual evidence. As the Court

has now emphasized in three separate opinions, "Commerce created its own problem when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions regarding the potential dumping margins of the separate rate respondents." Linyi Chengen V, 46 CIT at __, 609 F. Supp. 3d at 1403; Linyi Chengen Imp. & Exp. Co. v. United States, 45 CIT _, 539 F. Supp. 3d 1269, 1277-78 (2021) ("Linyi Chengen IV"). Taraca et al. and the other respondent parties have already shown, on numerous occasions, that the record contains multiple other pieces of evidence including Linyi Chengen's own calculated rate and the Separate Rate Applications of over 100 companies that utterly undermined the conclusion that the 57.36 percent rate was reasonable. See Taraca Fourth Remand Cmts. at 5-9.

Noting that Commerce complied with the Court's remand order "under protest," the Coalition continues to grasp to the argument that the record evidence did support the original 57.36 percent rate. See Coalition Remand Cmts. at 7. The Coalition fails to fairly consider the contrary evidence, which the Court cited in its latest opinion, regarding evidence on the record from Jiangyang Wood and the Separate Rate Applications. The Court properly rejected Commerce's prior attempt to ignore such record evidence. See Linyi Chengen V, 46 CIT at __, 609 F. Supp. 3d at 1403-04. Indeed, as the Court recognized "an all-others separate rate applied to fully cooperating respondents that is 60 times higher than the only calculated de minimis rate and is half of the AFA rate seems unfair and unduly punitive." Id., 46 CIT at __, 609 F. Supp. 3d at 1404. The fact that Commerce changed its determination only "under protest" does not invalidate its decision. See, e.g., Itochu Bldg. Prods. Co v. United States, Consol. Ct. No. 12-0065, 2018 Ct. Intl. Trade LEXIS 26, *11-12. (Mar. 22, 2018) (sustaining Commerce remand in which Commerce appeared to conclude it had no further options, noting that "if Commerce was dissatisfied with the record data sets … it was free to reopen the record").

As Commerce found, among the remaining lawful options, "zero percent, is the only remaining alternative on the record." See Fifth Remand Redetermination at 2. Although the Coalition proposes additional contorted calculation options, Commerce did not find any of those alternatives to be superior to the zero percent margin it has now adopted. See id. at 15. Even the Coalition agrees that the Court did not direct an outcome here. See Coalition Remand Cmts. at 10. Instead, Commerce looked at the record evidence and found that there was "no other information on the record than the sole calculated margin of zero that we could reasonably apply as the margin for the Separate Rate Plaintiffs." Fifth Remand Redetermination at 14-15. The Court has already examined Commerce's prior attempts to assign what it considered a reasonable rate to the Separate Rate Litigants and found that reasoning to be legally and factually invalid. Linyi Chengen V, 46 CIT at __, 609 F. Supp. 3d at 1403-04; Linyi Chengen IV, 45 CIT at __, 609 F. Supp. 3d at 1404. The Coalition is asking the Court to reweigh the evidence and revisit arguments already decided or to implement Petitioner's late-in-the game proposed calculations that Commerce itself found to be flawed. See Coalition Remand Cmts. at 8-9. The Court has given Commerce numerous opportunities to find a reasonable alternative rate, and Commerce has now decided that the available option based on the record evidence and Court determinations is to assign the zero percent rate to the Separate Rate Litigants. Commerce's determination was supported by substantial evidence and in accordance with law.

## II. COMMERCE SHOULD CONTINUE TO EXCLUDE DEHUA TB AND JIANGYANG WOOD

Commerce correctly found in its remand results, based on precedent, that it was proper to have excluded Dehua TB and Jiangyang Wood as they provided questionnaire responses by the requisite deadlines consistent with Changzhou Hawd Flooring Co. v. United States, 947 F.3d 781 (Fed. Cir. 2020). See Fifth Remand Redetermination at 10, n. 44, 18-21. In Changzhou Hawd, the Federal Circuit found reasonable Commerce's decision to exclude separate rate companies

with a zero percent margin from the antidumping order on the basis of the facts at issue in that appeal on the grounds that "volunteering for investigation offer some reason to think that for those firms, unlike for non-volunteer firms, there is no more need for continuing coverage {of the order} than there is for individually investigated firms found to have a <u>de minimis</u> dumping margin." <u>Changzhou Hawd</u>, 947 F.3d at 794.  Here too, on remand, Commerce provided no justification for keeping Dehua TB and Jiangyang Wood in the antidumping order.  Commerce properly implemented <u>Changzhou Hawd</u>.  In its remand, Commerce also correctly noted that the case cited by the Coalition, <u>Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam</u>, 86 Fed. Reg. 28,559 (Dep't Commerce May 27, 2021), and accompanying Issues and Decision Mem. at 14-24, did not reach a final antidumping order and was not appealed to the courts and has no binding effect here.  <u>See</u> Fifth Remand Redetermination at 21.  The Court should sustain Commerce's decision on this issue.

## III. TARACA ET AL. JOIN THE COMMENTS BEING FILED BY OTHER RESPONDENT PARTIES

Taraca et al. also hereby adopt and incorporate by reference the comments being filed on the Fifth Remand Redetermination by other respondent parties regarding the recalculation of the separate rate.

## CONCLUSION

For the above reasons, the Court should sustain Commerce's Fifth Remand Redetermination.  Commerce has assigned the Separate Rate Plaintiffs a reasonable separate rate that is supported by substantial evidence.

Dated: May 26, 2023

/s/ Jill A. Cramer
Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

*Counsel to Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC and USPLY LLC*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jill A. Cramer, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 2,162 words.  This brief thus complies with the Standard Chambers Procedures.

Dated: May 26, 2023

/s/ Jill A. Cramer
Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, DC 20015
202-688-3610 (ph)
202-595-8968 (fax)
*Counsel to Taraca Pacific, Inc., Canusa Wood Products Ltd., Concannon Corp. DBA Concannon Lumber Company, Fabuwood Cabinetry Corporation, Holland Southwest International Inc., Liberty Woods International, Inc., Northwest Hardwoods, Inc., Richmond International Forest Products, LLC and USPLY LLC*