UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| Linyi Chengen Import and Export Co., Ltd )<br><br>Plaintiff, )<br>and )<br><br>Taraca Pacific, Inc., et al., )<br><br>Plaintiff-Intervenors, )<br>v. )<br>United States )<br>Defendant, )<br>and )<br><br>Coalition for Fair Trade in Hardwood Plywood )<br><br>Defendant-Intervenor. ) | **PUBLIC VERSION**<br><br>Consol. Ct. No. 18-00002 |

**CONSOLIDATED SEPARATE RATE PLAINTIFFS[1]**
**REPLY COMMENTS IN SUPPORT TO FIFTH REMAND REDETERMINATION**

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiffs*

Dated: May 26, 2023

---

[1] Consolidated Plaintiffs, Celtic Co., Ltd., Anhui Hoda Wood Co., Ltd., Far East American, Inc., Jiaxing Gsun Import and Export Co., Ltd., Jiaxing Hengtong Wood Co., Ltd., Linyi Evergreen Wood Co., Ltd., Linyi Glary Plywood Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Linhai Wood Co., Ltd., Linyi Hengsheng Wood Industry Co., Ltd., Linyi Huasheng Yongbin Wood Co., Ltd., Linyi Mingzhu Wood Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Qingdao Good Faith Import and Export Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Shandong Qishan International Trading Co., Ltd., Suining Pengxiang Wood Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Andefu wood Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Pinlin International Trade Co., Ltd., Xuzhou Shengping Import and Export Co., Ltd., and Xuzhou Timber International Trade Co., Ltd. (collectively "Separate Rate Plaintiffs").

## TABLE OF CONTENTS

I.      **The Department's Margin Calculation for the Separate Rate Plaintiff's is Lawful and Reasonably Reflective of the SRA Plaintiffs' Potential Dumping Margin............2**

II.     **The Department's Exclusion of Certain Companies from the Order is in Accordance with the Law.................................................................................7**

III.    **Conclusion .........................................................................................................12**

# TABLE OF AUTHORITIES

**Cases**

*Changzhou Hawd Flooring Co. v. United States*, 848 F. 3d 1006 (Fed. Cir. 2017)............. *passim*

*Changzhou Hawd Flooring Co. v. United States*, 324 F. Supp. 3d 1317, 1326-1328 (Ct. Int'l Trade 2018)......................................................................................................................... 8-9)

*Changzhou Hawd Flooring Co. v. United States*, 947 F.3d 781, 794 (Fed. Cir. 2020).............. 8-9

The Separate Rate Appellants hereby reply to Petitioner's remand comments on the Department's Fifth Remand Results. *See* Petitioner Remand Comments (April 28, 2023); ECF 224; see also Remand Results (March 17, 2023); ECF 221. After the Court's opinion in Chengen II, the Department determined to apply the normal methodology and calculated a margin for Chengen of 0.00%. After several more remands, now after the Court's opinion in Chengen V, the Department has finally assigned the SRA Plaintiffs Chengen's zero margin. Specifically, the Department found that "[a]fter weighing all options and considering the views of the Court, we find, under protest, that assigning the rate calculated for Linyi Chengen Import and Export Co., Ltd. (Chengen), i.e., zero percent, is the only remaining alternative on the record." Remand at 2. The Department then found that for the companies that "requested voluntary respondent status and submitted all questionnaire responses should be excluded from the Order." *Id*. (emphasis added). The Department then clarified that the companies that fulfilled these requirements were Jiangyang Wood and Dehua TB, and that the Department was excluding them from the Order consistent with other rulings by the Courts and cited to *Changzhou Hawd Flooring Co. v. United States*, 947 F.3d 781 (Fed. Cir. 2020) (non precedential). *Id*. at 10.

The SRA Plaintiffs support the Department's determination to apply the zero margin and exclude certain companies from the Order. Petitioner argues that the application of the zero margin to the SRA Plaintiffs is not fully explained by the Department not supported by the record. However, the remand results and the caselaw leading up to the determination explain the Department's position and the record supports the reasonableness of this decision. Petitioner also argues that it is contrary to the law and record to exclude Jiangyang Wood and Dehua TB

1

from the Order; however, the reasoning in *Changzhou Hawd* fully supports the Department's

position on the facts of this very similar situated case.

I.      **The Department's Margin Calculation for the Separate Rate Plaintiffs is Lawful and Reasonably Reflective of the SRA Plaintiffs' Potential Dumping Margin.**

In the second remand, after determining to apply the normal methodology and calculate a

0.00% margin for Chengen, the Department simple-averaged Chengen's now 0.00% margin and

the revised total AFA margin applied to Bayley of 114.72%. The resulting margin of 57.36%

was applied to the SRA Plaintiffs. The Court properly upheld the Department's calculation of

Chengen's 0.00% margin. Slip-Op 20-183 at 11. However, the Court has now remanded the

Department's separate rate calculation. In Chengen III, the Court found that the Department

failed to demonstrate that Chengen's dumping margin is not reasonably reflective of the SRA

Plaintiffs' potential dumping margin and remanded the Department's separate rate margin,

concluding:

> Commerce cited no credible economic evidence on the record showing that the
> Separate Rate Plaintiffs' dumping margins are different than Linyi Chengen's 0%
> rate or connecting the Separate Rate Plaintiffs' dumping margins with the rate of
> 57.36% that was derived from the average of Linyi Chengen's 0% rate and
> Bayley's AFA rate of 114.72%.

*Id*. at 16.

Nonetheless, on the third remand, the Department continued to apply the 57.36% to the

SRA Plaintiffs. The Court again considered the Department's reasoning and the parties'

comments on the separate rate margin and again found that the Department has not justified its

reliance on the 57.36% margin for the cooperating separate rate Plaintiffs:

> Commerce must support with substantial evidence its application of a 57.36% all-
> others separate rate. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). The Court notes
> Commerce's acknowledgment that the record provides no opportunity for
> Commerce to know or to calculate the actual dumping margins of the Separate

Rate Plaintiffs. *See* Third Remand Determination at 16. Nonetheless, Commerce is still required to assign dumping margins as accurately as possible. Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Commerce created its own problems when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions regarding the potential dumping margins of the separate rate respondents. *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1376–79 (Fed. Cir. 2013) (citing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 35 CIT 948, 955 n.4 (2011) ("Commerce put itself in a precarious situation when it selected only two mandatory respondents.")). Because Commerce cited as record evidence only one commercial invoice showing an approximately 20% price difference, the Court concludes that Commerce's 57.36% separate rate assigned to the voluntary, cooperating Separate Rate Plaintiffs is not reasonable and is unsupported by substantial evidence.

Slip Op. 21-127 at 18 (Chengen IV).

On the fourth remand, the Department continued to apply a margin of 57.36%, pointing

to evidence on the record as support that the Court again rejected and found was not substantial:

The Court has concluded in three separate opinions, including this one, that the all-others separate rate of 57.36% is unreasonable as applied and not supported by substantial evidence. The Court advises that Commerce should not submit the same 57.36% rate again for review by this Court without new, substantial evidence in support. The Court reminds the Government that the rules of the U.S. Court of International Trade require the just and speedy determination of every action and proceeding, and submitting the same unreasonable-as-applied, punitive all-others separate rate yet again would not be in the spirit of reaching a just and speedy resolution to this case. *See* Rule 1, Rules of U.S. Court of International Trade.

Slip. Op. 22-150 at 27 (Chengen V).

Now finally in the fifth remand, the Department determined to apply Chengen's 0.00%

margin to the SRA Plaintiffs.  The Department applied this rate "under protest" finding that the

Court's opinion left "no viable alternative but to assign Chengen's zero percent rate to the

Separate Rate Plaintiffs."  Remand at 10.  Petitioner argues that there were other viable

alternatives and thus the Department has not properly explained its determination or supported it

3

with the record.  Pet. Remand Cmts at 7-11.  Petitioner's argument fails to understand that these supposed other viable alternatives were not actually viable.

The Department reasonably rejected petitioner's arguments to rely on the Q&V AUVs as the basis for the U.S. price (to then compare to a constructed normal value) because it does not consider product mix, which can vary greatly and greatly impact price.  Remand Results at 15. The Department likewise rejected petitioner's argument to attempt product matching with sales documents from the Separate Rate Application and Chengen and the petition for several reasons. *Id*.

Moreover, petitioner's arguments all rely on the representativeness of the Petition rate. But the Court las already found that the Petition data price quote was untethered from any actual dumping margins and found that this was not credible economic evidence on the record that the SRA's dumping behavior was different than Chengen or similar to the petition or the 57.36% rate.  Slip-Op 20-183 at 15-16.  The Department's attempts to tether the petition rate to the separate rate respondents was rejected by the Court in Chengen IV and Chengen V.  Indeed, the SRA Plaintiffs demonstrated that the record taken as a whole does not support a finding that such a rate is reasonably reflective of their dumping.  *See* DH SRA Third Remand Comments (May 3, 2021), ECF 166; *see also* DH SRA Fourth Remand Comments (December 29, 2022) ECF 208. The SRA Plaintiffs reiterate certain of those most pertinent arguments here.  Petitioner's arguments to rely on the petition rate in various "viable options" presumes that it is an established, calculated margin representative of the SRA companies and comparable to the reliability of Chengen's margin.  This is demonstratively not the case.  Chengen's margin is based on Chengen's complete actual verified data on the cost of production and sales cost for

4

over 300 sales to the United States.  The petition rate is based on estimated costs of production

from a U.S. producer of plywood and a price quote.

As already explained in earlier remands, the record demonstrates substantial cost and

FOP differences between U.S. and Chinese manufacturing, undermining the comparability of the

petition estimates.  DH SRA Fourth Remand Comments (December 29, 2022) ECF 208.

Further, the surrogate value basis in the petition is far less reliable than that used for Chengen.

As explained already, the petition used a different surrogate country and was only information

put forth by petitioner rather than information vetted by all parties and decided upon by the

Department.  And again, in Chengen's margin the surrogate values were applied to actual factors

of production ("FOP") data (materials, labor, energy) from a Chinese respondent rather than

estimated costs from a U.S. producer.  The resulting normal values were applied to Chengen's

substantial number of verified sales on a CONNUM specific bases rather than to a price quote

from a single non-verified company.  The petition rate may be reasonable information to initiate

an investigation and a reasonable rate to apply as an adverse inference to a non-cooperating

party, but on the record of this investigation it is not a reasonable indicator of the dumping

margins of the cooperating SRA Plaintiffs when the Department has Chengen's margin as a

source.

Further, the SRA Plaintiffs again reiterate that the fact that Chengen's margin was

actually steeply negative (much lower than 0.00%).  The information in the SRA responses, in

Bayley's questionnaire responses, and in Jiangyang Wood's voluntary response corroborate that

Chengen's margin is reasonably reflective of the cooperating SRA Plaintiffs' margin.  The Court

agreed that the Department's previous attempts to justify relying on the petition rate ignored

record evidence:

Commerce ignored other potentially contrary record evidence, including potential evidence that the Petition SRA Exporter sold the same plywood for prices higher than the price upon which the Petition rate is based. See Celtic Cmts. at 3; see Supplemental Questionnaire at Ex. S-5. The Court is persuaded by the Separate Rate Plaintiffs' argument that Commerce failed to review other potentially contradictory evidence on the record, including for example, record evidence showing that Separate Rate Plaintiff Jiangyang Wood had a higher weighted average sales price than Linyi Chengen, whose rate was determined to be 0%. Celtic Cmts. at 8; see Jiangyang Wood, Section C Questionnaire (February 28, 2017) ("Jiangyang Questionnaire"), PR 351; see also Chengen, Supplemental Questionnaire Response (May 15, 2017) ("Chengen Questionnaire"), PR 623. The Separate Rate Plaintiffs also cite additional contrary record evidence, such as Bayley's full U.S. sales database, Celtic Cmts. at 8; the Separate Rate Applications containing commercial invoices of over 100 companies who were determined by Commerce to be separate from the China-wide entity, Taraca Cmts. at 6; and invoices from 40 Separate Rate Plaintiffs showing a variety of prices, some that were higher than Linyi Chengen's price, id. The Court does not purport to reweigh the evidence, but emphasizes these examples to illustrate that Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination, while ignoring potentially contrary evidence on the record.

Chengen V at 26-27.

Thus, considering the Court's findings, the Department properly found that petitioner's supposed viable SRA margin calculation alternatives were not actually viable. The Court rejected the representativeness of the petition. The Court rejected the cherry-picked analysis of only certain invoices supporting a higher margin, while ignoring others that support a 0.00% margin or lower. The Department's application of the 0.00% margin is justified not merely because it is the only "viable" option but because the record supports the representativeness of the sole cooperating mandatory respondent's margin based on vetted costs and verified sales database to the cooperating SRA plaintiffs.

Further, it is notable that petitioner does not consider the overarching issue that applying a total AFA margin to the cooperating SRA Plaintiffs is unreasonable and not reflective of their

potential dumping *per se*.  SRA Plaintiffs direct the Court to their argument on this point already raised before the Court that the AFA rate is not representative.  DH SRA Remand Comments (August 3, 2020) at 1-12, ECF 118; DH SRA Third Remand Comments (May 3, 2021), ECF 166; *see also* DH SRA Fourth Remand Comments (December 29, 2022) ECF 208.  Chengen's 0.00% margin is a reasonable indicator of the dumping margins of the cooperating SRA Plaintiffs.  The Court should find that the Department's separate rate margin is supported by record evidence and in accordance with the law.

## II.   The Department's Exclusion of Certain Companies from the Order is in Accordance with the Law.

The Department determined to exclude Jiangyang Wood and Dehua TB from the Order after assigning them a *de minimis* margin, stating this was consistent with Changzhou Hawd. Remand Results at 10.  Petitioner argues that *Changzhou Hawd* does not require the Department to do this, but fails to understand the same posture of *Changzhou Hawd* and this case.  The Court's reasoning in *Changzhou Hawd* applies to this case, and the Department properly determined to follow the Court's instructions in that case here.

In this investigation, the Department determined not to select "any voluntary respondents because selecting any additional company for individual examination would be unduly burdensome and will inhibit the timely completion of this investigation."  *See* Dep't Voluntary Resp. Memo (April 4, 2017) at 2; PR451.  Indeed, the Department essentially has a policy of never accepting voluntary respondents.  The Department continually selects limited respondents and refuses to accept voluntary respondents even after companies supply extensive questionnaire data.  Then, in a circumstance such as this case, where one of these limited respondents receives a *de minimis* margin and the other receives total AFA, the separate rate companies are penalized

by the inclusion of this AFA rate either in their own margin or in requiring the companies to remain subject to the Order despite no actual evidence of dumping.

These same facts were present in *Changzhou Hawd*.  Recognizing the unfairness of the Department "reject[ing] all voluntary examination requests, foreclosing any path to exclusion for respondents seeking an individual weighted average margin," in the appeal of the investigation of *Multilayered Wood Flooring from China* the Court ordered the Department to exclude all companies that requested voluntary treatment from the Order when properly assigned the cooperating respondents' zero margin.  *Changzhou Hawd Flooring Co. v. United States*, 324 F. Supp. 3d 1317, 1326-1328 (Ct. Int'l Trade 2018).

The Court first addressed that it was appropriate to consider their exclusion from the Order:

> the Voluntary Applicants may nevertheless challenge Commerce's separate and distinct decision denying them exclusion from the Order. That determination (like many Commerce determinations), just happens to comprise numerous other decisions Commerce made through the course of the proceeding: mandatory respondent selection, treatment of voluntary examination requests, the calculation of each of the mandatory respondents' margins, and the calculation of the separate rate, among others. Commerce's determination that resource constraints precluded voluntary examinations may itself have been reasonable. Having made that decision, Commerce's subsequent decision to refuse to exclude Voluntary Applicants assigned a zero percent margin is not.

*Changzhou Hawd*, 324 F. Supp. 3d at 1327.  The Court then concluded that the Department acted unreasonably and arbitrarily:

> The court believes Commerce's application of its exclusion regulation to the Voluntary Applicants it assigned "representative" zero percent margins has two insurmountable problems. The first is Commerce's refusal to conduct any voluntary examinations, preventing the Voluntary Applicants from demonstrating directly their own evidence of fair trading. The second is Commerce's continuing assumption or inference that Voluntary Applicants denied individual examination and ultimately assigned a "representative" zero percent margin were nevertheless

> unfairly trading, precluding exclusion. The court questions how a reasonable mind could maintain such an assumption or inference against the Voluntary Applicants.
> …
> the court believes the proper remedy is entry of judgment declaring Commerce's failure to exclude the Voluntary Applicants arbitrary, and directing Commerce to exclude them from the Order ab initio.

*Id*. at 1327-1328.

The Department did <u>not</u> challenge and appeal the Court's opinion that the Department must exclude the voluntary applicants.  The Petitioner challenged this decision to the CAFC; however, the CAFC found "no reversible error in the Trade Court's conclusion that Commerce did not provide an adequate justification for including the voluntary-review firms in the antidumping duty order in this case." *Changzhou Hawd Flooring Co. v. United States*, 947 F.3d 781, 794 (Fed. Cir. 2020) (non precedential).  While the CAFC left open that the Department could address "any justification Commerce might yet articulate for deciding to include voluntary-review firms in an antidumping-duty order," the case raises the same serious unfairness, unreasonableness, and arbitrary nature of not excluding voluntary applicants as raised by the lower Court and quoted above.  Further, like *Changzhou Hawd*, the Voluntary Respondent Plaintiffs have gone through five years of litigation and are past the point where the zero cash deposit rate has any impact and the only actual equitable relief available is exclusion from the Order.  The Department's decision to exclude Jiangyang Wood is justified, as *Changzhou Hawd* found, by the limited respondent selection and refusal to accept any voluntary respondents.

In this case, the Department limited themselves to only two mandatory respondents, despite Jiangyang Wood requesting to be a voluntary respondent and submitting complete questionnaire responses to the record.  Even when the Department determined to apply AFA to Bayley, a fact that become evident prior to the Preliminary Determination, the Department

continued to refuse to select an additional respondent.  Throughout the now five remands, Jiangyang Wood has also continued to demonstrate from its data that it is similar to Chengen and continued to reiterate their desire to be a voluntary respondent and have the Department test their data within the framework of the antidumping duty calculation methodology.

Petitioner unreasonably surmises the opposite from these significant efforts and repeated requests to be a voluntary respondent, stating that "a company requesting voluntary respondent status and submitting a full questionnaire response may very well know that it is dumping, but be concerned that the mandatory respondents are dumping to a greater extent and/or may fail to full comply with Commerce."  Pet. Remand Cmts at 15.  This fails to understand the enormous time and resources to submit the complete Section A, C, and D questionnaire responses and Jiangyang Wood's repeated requests to have their data examined even after Chengen was assigned a 0.00% margin.

Petitioner draws from one case, PVLT Tires from Vietnam, where the Department discussed and declined to exclude the companies that submitted voluntary questionnaire responses.  But the posture of this case is very different.  First, that decision was in the investigation itself, rather than after years of litigation where throughout the years the voluntary respondents reiterated their cooperation and willingness to have their margin calculated from their own books and records.  Second, the case did not involve a situation where the Department severely limited its respondent selection such that it knew early on before the Preliminary Results that it only had one cooperating mandatory – i.e. that Bayley would get AFA and it had serious reasons to accept one of the voluntary respondents as a mandatory respondent.  Both of these facts is what led the Court in *Changzhou Hawd* to find it was only reasonable to find the

voluntary respondents were truly like the mandatory cooperating respondent and that it was only equitable to then exclude them from the Order, like the mandatory respondent.

Further, Jiangyang Wood has also reiterated from its own data that it is like Chengen. Jiangyang Wood provided full questionnaires on the record, including a sales database with [    ] sales.  Chengen's sales prices ranged from [                ], with a weighted-average price of [            ].  *See* Chengen Supp. Qre (May 5, 2017) at Exhibit SQ6-1 (revised U.S. Sales Database); CR493, 497, PR623.  Jiangyang Wood's sales prices ranged from [

    ], with a weighted-average price of [            ].  Jiangyang Wood Section C Qre (February 28, 2017) at Exhibit C-1; CR289, PR351.  Jiangyang Wood actually had a [    ] weighted average sales price than Chengen.  Jiangyang Wood's efforts in the original investigation, Jiangyang Wood own data, and Jiangyang Wood's continued cooperation and desire to be reviewed through years of litigation and remand all demonstrate that Jiangyang Wood should be afforded the same relief as Chengen—a zero margin and exclude from the Order.

## III.    Conclusion

Based on the foregoing, the Court should sustain the Department's application of the only rate individually calculated for the cooperating exporter deemed separate from the Chinese State Entity, i.e, Chengen, to the rates for other exporters deemed separate from the Chinese State Entity, i.e. the SRA Plaintiffs.  The Court should also sustain the Department's determination to exclude Jiangyang Wood from the Order.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com

Date: May 26, 2023

## WORD COUNT CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 3,428 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**deKIEFFER & HORGAN, PLLC**